**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) | Case No. 23-90342 (CML) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION**
**FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND**
**MAINTAIN EXISTING BANK ACCOUNTS, (B) CONTINUE TO PERFORM**
**INTERCOMPANY TRANSACTIONS, AND (C) MAINTAIN EXISTING BUSINESS**
**FORMS AND BOOKS AND RECORDS, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 4:00 p.m. (prevailing Central Time) on May 15, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 15, 2023 at 4:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's home page.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance"**

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision.  The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

> **link on Judge Lopez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto (the "Interim Order" and "Final Order," respectively), (a) authorizing the Debtors to (i) continue to operate their cash management system and maintain their existing bank accounts, including honoring certain prepetition obligations related thereto, (ii) continue intercompany transactions and funding substantially consistent with their historical practices, and (iii) maintain existing business forms and books and records in the ordinary course of business, and (b) granting related relief.

### Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this motion.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105, 345, 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5.      Envision Healthcare Corporation ("EVHC" and together with certain of its Debtor and non-Debtor affiliates and subsidiaries, "Envision" or the "Company") is a leading national medical group that works in collaboration with healthcare partners, payors, and others in the healthcare industry to ensure the delivery of high-quality, accessible, and affordable patient care.

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors and their businesses, including facts and circumstances giving rise to these chapter 11 cases is set forth in the First Day Declarations,[2] filed contemporaneously with this motion and incorporated by reference herein.

7.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

---

[2]     Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in (a) the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* (the "Keglevic First Day Declaration") and (b) the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "Stogsdill First Day Declaration," and together with the Keglevic First Day Declaration, the "First Day Declarations").

## The Cash Management System

### I.    Overview.

8.      As a leading national medical group, Envision's core mission and focus is helping physicians deliver critical clinical care to patients in need.  Envision provides physician services to hospitals and health systems and serves as an operator of ambulatory surgical centers ("ASCs") in partnership with physicians across the United States.  Envision employs or partners with more than 21,000 clinicians who provide care in emergency departments, surgical suites, intensive care units, and birthing suites across the United States.  Envision operates across two business segments:   Envision Physician Services ("Physician Services") and Ambulatory Surgery ("AMSURG").

9.      Envision maintains a sophisticated cash management system to facilitate the timely and efficient collection, management, and disbursement of funds in the ordinary course of business (the "Cash Management System").  An illustrative schematic of the Cash Management System is attached as **Exhibit A**.

10.     The Cash Management System includes a total of 180 Debtor bank accounts (together with any other bank accounts the Debtors may open in the ordinary course of business, the "Bank Accounts").  A list of the Bank Accounts is attached as **Exhibit B**.[3]  The Bank Accounts are maintained by fifty-nine Debtor entities at five individual financial institutions.  The Debtors maintain the majority of the Bank Accounts at Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A. ("BoA"), with a small number of additional Bank Accounts at other financial

---

[3]     **Exhibit B** is a complete list of the Bank Accounts.  To the extent that any Bank Accounts have been inadvertently omitted from the list, the Debtors request that the Orders granting the relief sought herein apply to such Bank Accounts.

institutions (such institutions, as set forth in **Exhibit B** and together with Wells Fargo and BoA, the "Cash Management Banks").

11.     The Debtors use the Cash Management System to collect, transfer, and distribute funds and to facilitate cash monitoring, forecasting, and reporting for the entire enterprise.  The Cash Management System is typical for healthcare organizations of similar size and sophistication and is designed to manage the Debtors' cash flow in a cost-effective and efficient manner.  The complexity of the Cash Management System is driven in large part by tax considerations in the Debtors' contractual arrangements.  Physician Services contracts with health systems are structured such that a single Physician Services entity is party to each contract and maintains an individual Bank Account in connection with that contract.  This practice has resulted in a relatively large number of accounts across the Envision enterprise, including the 180 Bank Accounts.

12.     Envision's treasury department maintains daily oversight of the Cash Management System and implements cash management controls for entering, processing, and releasing funds, including in connection with certain Intercompany Transactions (as defined below).  The Debtors' treasury and accounting personnel review all Bank Account activity on a daily basis and regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly.  Cash is then moved to ensure sufficient funding for upcoming obligations such as interest payments, payroll, and accounts payable.  The Debtors' accounting system, enterprise resource planning system, and treasury management system (as described in further detail herein) are used to analyze bank account activity and coordinate cash positioning.  The Treasury Management System retrieves information from the Bank Accounts across both business segments and then analyzes and codes each account to the general ledger, providing a snapshot of where cash sits within the Company.

13.     Any disruption to the Cash Management System would have an immediate adverse effect on the Debtors' operations to the detriment of their estates and stakeholders, including patients at the Debtors' healthcare facilities.   To minimize the disruption caused by these chapter 11 cases, the Debtors request authority to continue their Cash Management System during the course of these chapter 11 cases, subject to the terms herein.

## II.     Description of Funds Processing.

14.     The Debtors depend on the timely and efficient collection, transfer, and disbursement of funds.  The Cash Management System is tailored to meet the Debtors' operating needs, enable control over the Debtors' funds, ensure cash availability and liquidity, comply with requirements under the Debtors' financing arrangements and applicable healthcare laws and regulations, and reduce administrative expenses incurred in connection with the movement of funds and the reporting of accurate account balances.  The Debtors estimate that approximately $500 million in cash collections flows through the Cash Management System monthly.

15.     The Cash Management System is structured to serve the operating needs of Physician Services and AMSURG.  As described in greater detail below, the Cash Management System also provides for certain shared-service payments between EVHC and AMSURG.

### A.     Funds Processing in Physician Services.

16.     Within Physician Services, proceeds from ordinary-course operations, including amounts received from patients, payors (such as insurers and government entities), subsidies, and other sources are deposited either in (a) receipt accounts (the "Physician Services Receipt Accounts"), or (b) collection concentration accounts maintained with non-Debtor joint venture entities, before flowing into a cash concentration account held at Wells Fargo (the "Wells Fargo Concentration Account") or to one of two intermediary accounts held at BoA (the "BoA Intermediary Accounts").   Funds from the Wells Fargo Concentration Account and the BoA

Intermediary Accounts are subsequently distributed through zero-balance Bank Accounts (each, a "ZBA") or transferred to the main Physician Services concentration account (the "Physician Services Master Concentration Account").

17.     Funds flow from the Wells Fargo Concentration Account or the Physician Services Master Concentration Account to various disbursement accounts held at Wells Fargo or BoA (the "Physician Services Disbursement Accounts"), which are dedicated to payroll, benefits, taxes, and vendor payments.  Remaining funds are held in the Physician Services Master Concentration Account.   The Debtors also maintain balances in their enterprise-wide BoA account (the "Enterprise Concentration Account") to make payments on behalf of goods and services benefiting both primary business units, debt payments, enterprise related payroll and expenses, the remittance and collection of shared services amounts, and support for EVHC ASC (defined below) activities.

**B.     Funds Processing in AMSURG.**

18.     In connection with the April 2022 financing transactions, AMSURG was segmented into two branches.  One branch, of which the top parent entity AmSurg Holdco, LLC and the borrowing entity is AmSurg, LLC (together with AmSurg Holdco, LLC and its subsidiaries and the other entities in which it holds direct and indirect equity interests, "AMSURG LLC"), holds ownership interests in certain ASCs and is a party to the shared-services agreement with EVHC executed as part of the April 2022 financing transaction (the "Shared Services Agreement"), as further described in the First Day Declaration.  The second branch ("EVHC ASC") comprises a number of Debtor and non-Debtor entities outside of AMSURG LLC that, among other things, hold ownership interests in certain ASCs and facilitate cash management transactions for AMSURG LLC pursuant to the terms of the Shared Services Agreement.  In each

branch, the vast majority of the non-Debtor ASCs are owned in part by an AMSURG LLC or EVHC ASC entity (such entity generally holds a 51% stake) and in part by the Company's physician partners.   Within both AMSURG LLC and EVHC ASC, proceeds received from patients, payors (such as insurers and government entities), and other sources are deposited in a series of collection accounts maintained by non-Debtor ASCs (the "ASC Collection Accounts"). Cash moves through a series of Debtor-controlled special-purpose Bank Accounts within each branch, and AMSURG LLC and EVHC ASC, as applicable, eventually receive proportionate shares of the cash generated at the ASC level (after expenses) in the form of monthly shareholder distributions.

19.     ***AMSURG Funds Processing***.   Receipts in AMSURG LLC originate at the ASC level and are deposited in the ASC Collection Accounts.   Certain ASC Collection Accounts maintained at BoA are ZBAs that sweep ASC receipts to a commingled concentration account (the "AMSURG Commingled Concentration Account").   Proceeds in the AMSURG Commingled Concentration Account can be (a) transferred to a commingled disbursement account (the "AMSURG Commingled Disbursement Account") for payment of ASC expenses, (b) sent back to the ASC Collection Accounts for use in making payments for payroll and benefits, accounts payable, equipment loans, and taxes, or (c) used to pay credit-card balances.   Other ASC Collection Accounts do not send receipts to the AMSURG Commingled Concentration Account, and instead move funds directly to certain intermediary accounts, payroll disbursement accounts, third-party accounts that process accounts payable, vendor, equipment loan payments, and shareholder distributions, or to AMSURG LLC's centralized concentration account (the "AMSURG Main Concentration Account").

20.     Within AMSURG LLC, shareholder distributions from both ASC Collection Accounts maintained at BoA and various other Cash Management Banks ultimately flow into the AMSURG Main Concentration Account.   Shareholder distributions flow from the AMSURG Commingled Concentration Account through an intercompany account held at BoA on a monthly basis, and eventually to the AMSURG Main Concentration Account.   Distributions from ASC Collection Accounts that do not sweep funds to AMSURG Commingled Concentration Account flow directly to the AMSURG Main Concentration Account.   Funds in the AMSURG Main Concentration Account are either (a) channeled through several disbursement accounts dedicated to payroll, benefits, and vendors, (b) disbursed directly from the AMSURG Main Concentration Account to third parties on account of debt-service obligations, equipment loans extended to ASCs, credit-card payments, and other expenses, or (c) transferred to Bank Accounts established for purposes of purchasing assets or to interest-bearing investment accounts.

21.     ***EVHC ASC Funds Processing***.   Collections, transfers, and disbursements within EVHC ASC function in much the same way as they do within AMSURG LLC.   Receipts generated by non-Debtor ASCs flow into a series of ASC Collection Accounts, either at BoA or other Cash Management Banks.   Funds in the ASC Collection Accounts at BoA (which are ZBAs) are swept into a commingled concentration account held at BoA (the "<u>EVHC ASC Commingled Concentration Account</u>").   From the EVHC ASC Commingled Concentration Account, funds can: (a) flow into a commingled disbursement account at BoA used for vendor payments and third-party shareholder distributions at the ASCs (the "<u>EVHC ASC Commingled Disbursement Account</u>"), (b) flow into an account used to concentrate funds generated by the non-Debtor ASCs (the "<u>EVHC ASC Concentration Account</u>"), (c) flow back to the ASCs to fund payroll, accounts payable, equipment loans, and tax payments, or (d) be applied to credit-card payments.

22.     The non-Debtor ASCs, in which the Debtors generally hold a 51% interest, make monthly shareholder distributions (after expenses) to EVHC ASC, either from the EVHC ASC Commingled Concentration Account or from the various ASC Collection Accounts that do not sweep funds to that account.  Cash in the EVHC ASC Concentration Account is used to pay taxes, bank fees, or equipment loans to individual ASCs.  Remaining funds pass through a ZBA to the Enterprise Concentration Account, Bank Accounts established for purposes of purchasing assets, or to interest-bearing investment accounts.

23.     In addition to funds flows within each of AMSURG LLC and EVHC ASC, cash also moves between the two branches on a regular basis in accordance with the Shared Services Agreement.  AMSURG LLC pre-pays funds to EVHC at the beginning of each month in an amount projected to be adequate to cover monthly shared services.  AMSURG LLC and EVHC ASC each pays some amount of expenses on behalf of the other segment in the ordinary course of business throughout a given month.  A true-up occurs at the end of each month to settle the outstanding balance with a transfer of funds between the two branches.

24.     Certain Debtors also provide management services to a small number of independent, unaffiliated ASCs that outsource functions such as accounts-payable processing to the Debtors.  The Debtors maintain five bank accounts at BoA to hold funds in connection with the management services provided to these independent ASCs.

### III.    The Bank Accounts.

25.    As of the Petition Date, the Debtors maintain a total of 180 Bank Accounts, each

of which appears on **Exhibit B**.  The Bank Accounts generally fall within one of several categories,

each of which is briefly described in the following table:

| Account[4] | Account Description | |
|---|---|---|
| Receipt Accounts | Certain of the Debtors maintain Bank Accounts that are used to collect revenue from ordinary-course transactions with patients and other payors (the "Receipt Accounts").  Overall, the Debtors maintain 132 Receipt Accounts in Physician Services, including sixty-three lockbox accounts.  The Receipt Accounts are generally swept to concentration accounts on a daily basis. | |
| Concentration Accounts | Enterprise Concentration Account | This account serves as a link between the Company's business segments and facilitates cash flows between the AMSURG Main Concentration Account, EVHC ASC Concentration Account, and, if necessary, the Physician Services Master Concentration Account. The account also makes disbursements for amounts owed on behalf of vendors and payroll, as well as disbursements to restricted bank accounts held by Debtors and non-Debtors. |
| | Physician Services Master Concentration Account | This account concentrates cash from the BoA intermediary accounts.  Funds are flowed to the Physician Services Disbursement Accounts for direct and indirect vendor payments, payroll, and taxes. |
| | Wells Fargo Concentration Account | A concentration account for non-BoA Physician Services collection accounts.  Funds are transferred to one of the Physician Services Disbursement Accounts, where funds will be routed to disbursement accounts for refunds and vendor payments.  Funds in excess of disbursements are transferred to one of the BOA intermediary accounts. |

---

[4]    Capitalized but undefined terms that appear in this table shall have the meanings ascribed to them elsewhere in this motion.

| Account[4] | Account Description | |
|---|---|---|
| | AMSURG Commingled Concentration Account | This account concentrates cash from the individual ASCs owned by AMSURG LLC on the BoA platform. Proceeds are either (i) used to directly pay vendors and credit-card providers, (ii) transferred to the AMSURG Commingled Disbursement Account for vendor payments and shareholder distributions, or (iii) distributed back to such ASCs for payroll, accounts payable, equipment loans, and tax payments. Monthly shareholder distributions are made to the AMSURG Main Concentration Account via an intercompany account. |
| | AMSURG Main Concentration Account | This account concentrates cash and distributions of AMSURG LLC and its ASCs from BoA and non-BoA banks. Funds in this account can be moved to various disbursement accounts to fund payroll, benefits, accounts payable, vendor payments, and debt service, or can be sent back to such ASCs for purposes of equipment loans, intercompany loans, or return payments. The Debtors maintain one lockbox in connection with this account. |
| | EVHC ASC Commingled Concentration Account | This account concentrates cash from the individual ASCs owned by EVHC ASC on the BoA platform. Proceeds are either (i) used to directly pay vendors or credit-card providers, (ii) sent back to such ASCs to fund equipment loans, intercompany loans, return payments, and payroll, or (iii) transferred to the EVHC ASC Commingled Disbursement Account for vendor payments and third-party shareholder distributions. This account also funds monthly shareholder distributions to the EVHC ASC Concentration Account. |

| Account[4] | Account Description | |
|---|---|---|
| | EVHC ASC Concentration Account | This account concentrates cash for distributions, reimbursements, repayments of equipment and intercompany loans, and return payments from ASCs within EVHC ASC. This account also disburses funds for equipment and intercompany loans to such ASCs, bank fees, and tax payments, as well as shared service payments to AMSURG LLC. The EVHC ASC Concentration Account is a ZBA, and balances are swept daily into the Enterprise Concentration Account. |
| Disbursement Accounts | Certain of the Debtors within Physician Services, AMSURG LLC, and EVHC ASC maintain eighteen Bank Accounts used to fund general corporate disbursements, including payroll, benefits, vendor payments, and debt service, among other things (the "Disbursement Accounts"). | |
| Other Accounts | Intermediary Bank Accounts | Seven of these accounts pass through receipts from physician collections at Physician Services from Debtor and non-Debtor bank accounts to the Physician Services Master Concentration Account. Five of these accounts are ASC intermediary accounts, which hold funds in connection with accounts-payable processing services provided by five non-Debtor ASCs. |
| | Asset Sale Proceeds Accounts | These accounts hold proceeds from sales of assets that meet certain criteria. Funds are held in these accounts until such time as the Debtors make qualified investments in additional assets. |
| | Investment Accounts | These two accounts hold funds that earn interest, which is subsequently distributed to the Physician Services Master Concentration Account. |
| | Credit Card Collateral Account | This account holds collateral securing the KeyBank Credit Card Program. |
| | Intercompany Account | This AMSURG LLC intercompany account tracks and reconciles ASC inflows and outflows (*i.e.*, management fees, reimbursements, equipment loans, intercompany loans, benefits payments, and return payments) with the AMSURG LLC Concentration Account. |

| Account[4] | Account Description | |
|---|---|---|
| | Pass Thru Account | This AMSURG LLC pass-thru account used for certain ACH disbursements that do not pass through the AMSURG LLC Main Concentration Account. |
| | Political Action Committee Account | This account funds the Debtors' political action committee, which makes donations to candidates for public office. |
| | Adequate Assurance Account | This account will hold an adequate assurance deposit for the benefit of the Debtors' utility providers throughout the course of these chapter 11 cases.[5] |

## IV.     Bank Fees and Software Fees.

26.     ***Bank Fees***.   The Debtors incur periodic service charges and other fees in connection with maintaining the Bank Accounts (the "Bank Fees").   The Bank Fees primarily consist of service charges from the Cash Management Banks.   The Debtors incur approximately $190,000 per month, in the aggregate, in Bank Fees, though earnings credits offered by Cash Management Banks such as BoA and Wells Fargo offset a portion of the monthly Bank Fees.   As of the Petition Date, the Debtors estimate that they owe the Cash Management Banks approximately $100,000, irrespective of any applicable earnings credits, on account of unpaid Bank Fees.

27.     ***Software Fees***.   The Debtors also incur certain fees related to software that facilitates the operation of the Cash Management System and their businesses more broadly (the "Software Fees").   The Debtors use Integrity, a treasury-management platform provided by

---

[5]     The adequate assurance deposit is described further in the *Debtors' Emergency Motion for Entry of an Order (I) Approving the Proposed Adequate Assurance Deposit for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Proposed Adequate Assurance Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief*, filed substantially contemporaneously herewith.

FIS Capital Markets US LLC, to automate cash management functions such as cash positioning and forecasting, bank account administration, and risk management.  Integrity plays a key role in the Debtors' cash management and accounting processes.  The Debtors' monthly average spend on account of Software Fees incurred in connection with Integrity is approximately $9,000.  The Debtors estimate that they owe approximately $11,000 on account of unpaid Software Fees as of the Petition Date.  The Debtors seek authority to pay Bank Fees and Software Fees (including any accrued but unpaid prepetition Bank Fees and Software Fees) in the ordinary course of business on a postpetition basis.

## V.     Compliance with the U.S. Trustee Guidelines and the Bankruptcy Code.

28.     The *Region 7 Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines") require chapter 11 debtors to deposit all estate funds into an account with an approved depository that agrees to comply with the requirements of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").  As of the Petition Date, the Debtors maintain the vast majority of their Bank Accounts at BoA and Wells Fargo, with a single account at Key Bank.  Each of these institutions is designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee Guidelines.  The two remaining Cash Management Banks—at which the Debtors maintain only thirty-four Bank Accounts—are not authorized depositories.  Old National Bank ("ONB") and Frontier State Bank ("FSB") are well capitalized, financially stable, and reputable institutions.  ONB is an authorized depository in Region 8, Region 9, and Region 10, which suggests that location, rather than the quality of its operations, is the reason for ONB's absence from the authorized depository list for Region 7.  ONB is a midsized regional bank with $46 billion in total assets and has branches in only seven states.[6]  The Debtors maintain

---

[6]     *See* Old National, *About Us*, https://www.oldnational.com/about-us/our-company/our-history.

thirty-three Bank Accounts at ONB—primarily receipt and lockbox accounts—that are used in the day-to-day operations of the Debtors' businesses.  The Debtors maintain only one Bank Account at FSB (a receipt account), which holds a *de minimis* cash balance as of the Petition Date and never exceeds the $250,000 insurance coverage limit of the Federal Deposit Insurance Corporation ("FDIC").

29.     A key characteristic of both ONB and FSB is the proximity of their branches to the facilities of the Debtors and non-Debtor ASCs in certain of the regions where the Debtors operate. These financial institutions are well positioned to continue performing depository and cash management functions during these chapter 11 cases.  Cause exists to allow the Debtors to continue utilizing the existing Bank Accounts consistent with historical practices.

30.     Section 345(b) of the Bankruptcy Code requires that a debtor's bank post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).  The Bank Accounts comply with section 345(b) of the Bankruptcy Code because the Federal Deposit Insurance Corporation insures the Cash Management Banks where the Bank Accounts are maintained.

## VI.     Business Forms and Books and Records.

31.     As part of the Cash Management System, the Debtors use a variety of preprinted business forms (including checks, letterhead, correspondence forms, invoices, and other business forms) in the ordinary course of business (collectively, the "Business Forms").  The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records").  The Debtors request authorization to continue using all of the Business Forms and Books and Records in a manner consistent with prepetition practice, without reference to the Debtors' status as chapter 11 debtors in possession.

16

**VII.    Credit Card Program.**

32.     As part of the Cash Management System, the Debtors maintain several credit-card programs administered by KeyBank National Association ("KeyBank," and such program, the "KeyBank Credit Card Program"), WEX Inc. ("WEX," and such program, the "WEX Credit Card Program"), and Bento Technologies, Inc. (the "Bento Credit Card Program," and, together with the KeyBank Credit Card Program and the WEX Credit Card Program, the "Credit Card Programs").  The Debtors use the credit cards provided pursuant to the Credit Card Programs to fund payments for accounts payable across the enterprise, in addition to travel and other expenses. Certain non-Debtor ASCs and joint venture entities also use the Credit Card Programs to fund accounts payable.

33.     The Debtors' combined monthly average spend under the Credit Card Programs is approximately $26 million, comprising approximately $18.1 million of monthly spend under the KeyBank Credit Card Program, approximately $1.2 million of monthly spend the WEX Credit Card Program, and approximately $6.4 million of monthly spend under the Bento Credit Card Program.  All current and future obligations owed to KeyBank as part of the KeyBank Credit Card Program are secured by cash collateral deposited in a collateral account held with KeyBank ending in 3365 (the "Credit Card Contract Collateral Account").  The Debtors maintain a balance of approximately $2.4 million in the Credit Card Contract Collateral Account and are required under the KeyBank Credit Card Program to maintain a zero (or less) balance against daily invoices.  The KeyBank Credit Card Program is subject to immediate suspension or termination upon failure to pay (among other defaults).  The Debtors also monitor spending under the WEX Credit Card Program consistent with that program's $1.8 million monthly credit limit.  The Bento Credit Card Program, meanwhile, is a fully prepaid program with initial funding of $6.4 million that the Debtors replenish on a rolling three-week basis.

34.     In some circumstances, the Debtors may owe prepetition amounts under the Credit Card Programs where, for example, charges by employees in various locations have not been offset against the balance due to processing delays by merchants, among other factors.  To the extent any such amounts are due, the Debtors estimate that such prepetition obligations will not exceed $4.2 million.

35.     The Debtors' inability to maintain the Credit Card Programs would impose a substantial hardship on the continued operation of the Debtors' businesses.  The Debtors rely on the Credit Card Programs to pay a large number of their vendors, which provide services that are critical to patient care across the Debtors' enterprise.  Use of the Credit Card Programs is an integral part of the Debtors' Cash Management System and is essential to the uninterrupted operation of the Debtors' business.  The Debtors request that the Court authorize the Debtors to continue such programs and policies and pay any prepetition or postpetition claims and fees with respect thereto, in each case, in the ordinary course of business on a postpetition basis.  The Debtors will not seek to pay any outstanding expenses or fees related to the Credit Card Programs in advance of the date they become payable.

**VIII.   Intercompany Transactions.**

36.     The Debtors engage in business transactions with each other and with non-Debtor subsidiaries and affiliates (each, a "Non-Debtor Affiliate"), including making payments or providing services for each other's benefit (collectively, the "Intercompany Transactions") that result in intercompany receivables and payables (the "Intercompany Balances").  Intercompany Transactions include, among other things, transactions related to the collection of cash and payment of salaries, wages, benefits, contract labor, supplies, professional fees, purchased services, taxes, fees, and insurance.  At any given time, ordinary-course operations may result in Intercompany Balances owed by one Debtor or Non-Debtor Affiliate to another Debtor or

Non-Debtor Affiliate.  For example, some Debtor Bank Accounts facilitate payment of funds for payroll and equipment loans on behalf of the ASCs, which are Non-Debtor Affiliates. Intercompany Transactions are generally reflected in the Debtors' books and records and accrued amounts owing to a given Debtor entity are from time to time offset against amounts owed to other Debtors and Non-Debtor Affiliates, as needed, in the ordinary course of business.

37.     The Intercompany Transactions are an essential component of the Debtors' complex operations.  They are integral to the Debtors' ability to process payroll and payments to third party vendors, provide enterprise-wide management and support services, and otherwise facilitate operations on a daily basis.  The Debtors can ascertain, trace, and account for all Intercompany Transactions through bank cash balance reports, which reflect actual cash movements, and will continue tracking Intercompany Transactions on a postpetition basis, including those involving Non-Debtor Affiliates, substantially consistent with historical practice. The Debtors would be unduly burdened, both financially and logistically, if the Debtors were required to halt Intercompany Transactions or otherwise make material changes to the Cash Management System.  The Debtors seek the authority to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis and to grant administrative expense status to Intercompany Balances due from Debtors to other Debtors and to Non-Debtor Affiliates as a result of Intercompany Transactions.

38.     ***ASC Loans.***  In the ordinary course of business, certain Debtors issue intercompany loans in modest amounts to non-Debtor ASCs to finance construction or equipment requirements or otherwise provide working capital on an as-needed basis (the "ASC Loans").  As of the Petition Date, there is approximately $53.5 million in aggregate principal amount outstanding under 182 ASC Loans.  The ASC Loans are essential to the uninterrupted operations of the ASCs and

discontinuing these transactions would disrupt the Cash Management System, and the Debtors'
businesses more broadly, to the detriment of the Debtors, their creditors, and other stakeholders.
The Debtors seek authority to continue funding the ASC Loans, together with all other
Intercompany Transactions, in the ordinary course of business on a postpetition basis.

39.     ***JV Capital Contributions***.   In the ordinary course of business, certain Debtors
extend funding in modest amounts to non-Debtor joint-venture entities to provide working capital
on an as-needed basis (the "JV Capital Contributions").   In 2022, JV Capital Contributions totaled
approximately $32.9 million.   The Debtors have not made any further JV Capital Contributions
in 2023.   The JV Contributions are essential to the uninterrupted operations of the joint ventures
and discontinuing these transactions would disrupt the Cash Management System, and the
Debtors' businesses more broadly, to the detriment of the Debtors, their creditors, and other
stakeholders.   The Debtors seek authority to continue funding the JV Capital Contributions,
together with all other Intercompany Transactions, in the ordinary course of business on a
postpetition basis.

## Basis for Relief

**I.     The Court Should Approve the Debtors' Use of the Cash Management System and Payment of the Bank Fees and Software Fees.**

40.     The U.S. Trustee Guidelines require debtors in possession to, among other things,
(a) close all existing bank accounts and open new debtor-in-possession bank accounts,
(b) establish one debtor-in-possession account for all estate monies required for payment of taxes
including payroll taxes, (c) physically set aside all monies required by law to be withheld from
employees or collected from others for taxes, (d) open a new set of books and records as of the
commencement date of the case, (e) use new business forms indicating the debtor-in-possession
status of the chapter 11 debtor, including checks that bear the designation "debtor in possession"

and reference the bankruptcy case number on such checks, and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement.  *See U.S. Trustee Guidelines*.   These guidelines are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.  Considering the breadth and complexity of the Debtors' financial affairs and the volume of collections, disbursements, and movement of funds through the Cash Management System on a daily basis, enforcement of these provisions of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt, if not cripple, the Debtors' operations.  The Debtors request that the Court allow them to operate each of the Bank Accounts that comprise the Cash Management System as each was maintained in the ordinary course of business before the Petition Date and as described herein.

41.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."  *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  Courts have also recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 99 F.2d 1039 (3d Cir. 1993); *see also In re BJ Servs., LLC*, Case No. 20-33627 (MI) (Bankr. S.D. Tex. July 22, 2020) (approving the debtors' continued use of existing cash management systems); *In re Brazos Elec. Power Cooperative, Inc.*, Case No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 3, 2021) (same).

As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *See Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

42.     Requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations.  The Cash Management System provides the Debtors with the ability to quickly assess the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.  Any disruption of the Cash Management System could have a severe adverse effect on the Debtors' operational stability and patient care.  Maintaining the current Cash Management System will facilitate the Debtors' smooth transition into chapter 11 by minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Maintaining the current Cash Management System will also allow the Debtors' treasury and accounting employees to focus on their daily responsibilities as opposed to reconstructing the Cash Management System.

43.     Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that Debtor entities will not make unauthorized payments on account of prepetition obligations.  With the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors'

treasury department.  In light of such protective measures, maintaining the Cash Management System is in the best interests of the Debtors' estates and creditors.

44.     The Debtors request that the Court authorize the Debtors to continue to pay the Bank Fees and Software Fees, including any prepetition Bank Fees and Software Fees.  In light of the material benefit of maintaining the Cash Management System to avoid unnecessary disruption and costly delay, such relief is warranted under the circumstances.

## II.     Authorizing the Banks to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted.

45.     The Debtors request that the Court authorize and direct the Cash Management Banks to receive, process, honor, and pay, to the extent funds are available in each applicable Bank Account, any and all checks, electronic fund transfers, credit card payments, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, credit-card, or ACH payments are dated prior or subsequent to the Petition Date.  The Debtors also request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.  The Debtors need to conduct transactions by debit, electronic fund, ACH payments, and other similar methods.  If the Debtors are denied the opportunity to conduct transactions by debit, electronic fund, ACH

payments, or other methods used in the ordinary course of business, the Debtors likely would have difficulty performing on their contracts and the Debtors' business operations would be disrupted unnecessarily, burdening the Debtors and their creditors with additional costs.

### III. The Debtors Should Be Granted Authority to Use Existing Business Forms and Books and Records.

46.     The Debtors request that they be authorized to continue to use their Business Forms and Books and Records, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms such as letterhead would be an unnecessary additional expense and unduly burdensome.

47.     The Debtors should be permitted to maintain their existing Books and Records rather than open a new set as required under the U.S. Trustee Guidelines.  The Debtors use a sophisticated recordkeeping system that enables them to consolidate their Books and Records for financial reporting purposes while maintaining separate records on an entity-by-entity basis to track the operations and results of individual entities across their corporate structure.  Continued use of the Debtors' current Books and Records will maximize efficiency and decrease administrative burden while maintaining the precise entity-by-entity reporting contemplated by the U.S. Trustee.

### IV. Payment of Bank Fees and Prepetition Obligations Related to the Bank Accounts Will Facilitate a Smooth Transition into Chapter 11.

48.     The Debtors can pay prepetition Bank Fees and continue satisfying Bank Fees as they arise during these chapter 11 cases because such payments are ordinary course. *See* 11 U.S.C. § 363(c) ("If the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may

use property of the estate in the ordinary course of business without notice or a hearing."). This motion seeks authority to pay such fees and satisfy such obligations out of an abundance of caution to the extent that payment of these obligations is not considered ordinary course.

49.     Subject to court approval, Section 363(b) of the Bankruptcy Code permits a debtor to pay prepetition obligations where a sound business purpose exists for doing so. *See In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  Under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *See  In re CEI  Roofing,  Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

50.     Under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a); *see also In re CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay pre-petition claims); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business).  The above-referenced sections of the Bankruptcy Code have been interpreted to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.  *See, e.g.*, *In re CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

51.     The Debtors request authority to pay prepetition Bank Fees as they become due in the ordinary course.  Authority to make such payments is necessary to the Debtors' operations, which are predicated on an uninterrupted flow of funds between Bank Accounts.  If the Debtors do not pay their Bank Fees, their crucial relationships with the Cash Management Banks may be materially damaged.  The Debtors' management and advisors may also be forced to spend time and resources on unnecessary disputes with the Cash Management Banks at this critical juncture. Any interference or delay in any of these programs is unnecessary and unduly burdensome.

**V.     The Court Should Authorize the Debtors to Engage in Intercompany Transactions and Grant Administrative Expense Status to Intercompany Balances.**

52.     The Debtors seek authority to enter into such Intercompany Transactions in the ordinary course of business and consistent with historical practice.  The Debtors will continue to maintain records of Intercompany Transactions, including records of all current intercompany accounts receivables and payables.  Discontinuing the Intercompany Transactions, including the provision of intercompany financing sources such as the ASC Loans and the JV Capital Contributions, would disrupt the Cash management System and related administrative controls. The Debtors' continued performance of the Intercompany Transactions postpetition is in the best interests of the Debtors' estates and stakeholders.

53.     To ensure that the Debtors' creditors are sufficiently protected, the Debtors request that each payment (or other transfer of cash, whether to or from the Debtors) from a Debtor to another Debtor under any postpetition Intercompany Transaction be granted administrative expense status under section 503(b) of the Bankruptcy Code.[7]  This relief will ensure that each

---

[7]     Notwithstanding the administrative expense status requested for the Intercompany Transactions between and among Debtors, each Debtor reserves the right to dispute any Intercompany Transaction (or payment made on account of an Intercompany Transaction) on any ground, including the methodology for calculation of such transaction or payment, and to claw back or avoid such transactions and/or payments.

entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtors' respective creditors.

**VI.    Cause Exists for Waiving the U.S. Trustee Guidelines Regarding Authorized Depositories on an Interim and Final Basis.**

54.    To the extent the Cash Management System does not comply with section 345 of the Bankruptcy Code, the Debtors seek a waiver of the deposit and investment requirements set forth therein.

55.    Section 345(a) of the Bankruptcy Code authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise."  Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more Authorized Depositories.

56.    Courts may waive compliance with section 345 of the Bankruptcy Code for "cause."  In evaluating whether "cause" exists, courts have considered a number of factors such as:

(1)    the sophistication of the debtor's business;

(2)    the size of the debtor's business operations;

(3)    the amount of the investments involved;

(4)    the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

(5)    the complexity of the case;

(6)    the safeguards in place within the debtor's own business for ensuring the safety of the funds;

(7)    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(8)    the benefit to the debtor;

(9)    the harm, if any, to the debtor;

(10)    the harm, if any, to the estate; and

(11)    the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

57.    The Bank Accounts comply with section 345(b) of the Bankruptcy Code because such Bank Accounts are maintained at banks insured by the FDIC. *See* 11 U.S.C. § 345(b). Additionally, because the Bank Accounts are vital to the Cash Management System, requiring the Debtors to transfer funds to other banks would be unduly burdensome to the Debtors' operations and would potentially have consequences detrimental to the Debtors' estates. These financial institutions are well positioned to continue performing depository and cash management functions during these chapter 11 cases. Therefore, the Debtors submit that cause exists to waive the U.S. Trustee Guidelines and allow the Debtors to continue to maintain the Bank Accounts in the ordinary course of business.

## **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

58.    The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations

and anticipated access to cash collateral and debtor in possession financing.  Under the Debtors'

existing cash management system, the Debtors can readily identify checks or wire transfer requests

as relating to an authorized payment in respect of the relief requested herein.  There is minimal

risk that checks or wire transfer requests that the Court has not authorized will be honored

inadvertently.  The Debtors request that the Court authorize and direct all applicable financial

institutions at the Debtors' request to receive, process, honor, and pay any and all checks or wire

transfer requests in respect of the relief requested in this motion.

## Emergency Consideration

59.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one

days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm."  Failure to receive the relief requested in this motion during the first twenty-one days of

these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  The

Debtors have satisfied the "immediate and irreparable" harm standard in Bankruptcy Rule 6003

and request that the Court approve the relief requested on an emergency basis.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

60.     The Debtors request that the Court enter an order providing that notice of the relief

requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to

exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h), which is

necessary to implement the relief requested in this motion.

## Reservation of Rights

61.     Nothing contained herein or any actions taken pursuant to such relief requested is

intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any

claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law,

(b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any

grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested in this motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## <u>Notice</u>

62.     The Debtors will provide notice of this motion to the following:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the ABL Agent; (d) counsel to the RCF Agent; (e) counsel to the Ad Hoc Group of First Lien AmSurg Lenders; (f) counsel to the AmSurg 2L Group; (g) counsel to the Envision Ad Hoc Group; (h) counsel to the Unsecured Notes Group; (i) counsel to the Consenting Sponsors; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the state attorneys general for states in which the Debtors conduct

business; (n) the Cash Management Banks; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

The Debtors request that the Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
May 15, 2023

/s/ Rebecca Blake Chaikin

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Rebecca Blake Chaikin (TX Bar No. 24133055)
Vienna Anaya (TX Bar No. 24091225)
Javier Gonzalez (TX Bar No. 24119697)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          rchaikin@jw.com
                    vanaya@jw.com
                    jgonzalez@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Nicole L. Greenblatt, P.C. (*pro hac vice* pending)
Anne G. Wallice (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          esassower@kirkland.com
                    jsussberg@kirkland.com
                    ngreenblatt@kirkland.com
                    anne.wallice@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
John R. Luze (*pro hac vice* pending)
Annie L. Dreisbach (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          john.luze@kirkland.com
                    annie.dreisbach@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Rebecca Blake Chaikin*
Rebecca Blake Chaikin

**<u>Certificate of Service</u>**

I certify that on May 15, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Rebecca Blake Chaikin*
Rebecca Blake Chaikin

## Exhibit A

**Cash Management System Schematic**



## Envision Healthcare Corporation - Envision Physician Services

(1) 1,291 Accounts, includes 135 Debtor and 1,156 Non-Debtor accounts. Of the Debtor accounts, 5 are Intermediary bank accounts and 130 are receipt accounts, consisting of 67 bank accounts and 63 lockboxes. Debtor bank accounts include: Bank of America, Wells Fargo, Old National Bank, and Frontier State Bank. Non-Debtor accounts consists of 626 bank accounts and 530 lockboxes. Non-Debtor bank accounts include: Bank of America, Wells Fargo, Old National Bank, and Frontier State Bank.

(2) Represents 4 Non-Debtor JV concentration accounts, with receipts from 18 Intermediary accounts and 524 receipt accounts (270 bank accounts and 254 lockboxes). The 4 Non-Debtor JV concentration accounts are HCA Sheridan Holdings, LLC (BOA6631), HCA-Emcare Holdings, LLC (WB663469), HCA Sheridan Holdings, LLC (WF555827), and Integrated Health Ventures, LLC (WF561472). The Non-Debtor bank accounts include: Bank of America, Wells Fargo, and Old National Bank.

(3) Represents 2 Debtor BoA Intermediary accounts: Sheridan Holdings, Inc. (BOA9174) and EmCare Holdings, Inc. (BOA0279).

(4) Represents 2 Debtor receipt accounts: Envision Physician Services, LLC (BOA3744) and Envision Physician Services, LLC – Non-AR (BOA5786).

(5) Funds disbursed directly to vendors and debt service payments, as well as to Debtor's Payroll Disbursement account (BOA3071) for clinical G&A payroll (ZBA), the restricted Debtor account Political Action Committee, and non-Debtor restricted accounts, including Charitable Fund Employee Relief Fund and Captive Account.

(6) Represents 2 Debtor accounts: Investment Account (BOA2103) and Asset Sale Proceeds Account (BOA2750).



**Envision Healthcare Corporation - Amsurg LLC**

Disbursement accounts

Receipt accounts

(1) 240 Non-Debtor accounts, consisting of 234 bank accounts and 6 lockboxes; Reflects ASC collection accounts at BoA that ZBAs into the Amsurg LLC Commingled Concentration Account (BOA6372).

(2) 24 Non-Debtor accounts. Amsurg LLC distributions are via ACH directly to the Amsurg LLC Main Concentration Account (BOA2393) after satisfying expenses related to ASCs. Various bank accounts are with Bank of America, Enterprise Bank & Trust, Fifth Third Bank, InTrust Bank, and Key Bank.

(3) Represents 5 Debtor accounts, and serves as intermediary bank accounts for disbursements for non-Envision owned ASCs.

(4) Other Accounts reflects Debtor's Investment Account and Asset Sale Proceeds Account.

(5) Debtor's ACH Pass-Thru account used for some ACH disbursements that do not pass through the Amsurg LLC Main Concentration Account (BOA2393).

(6) Includes 1 lockbox account.

(7) Other payments includes Debt service, NPDB fees, collection fees, and bank fees.



Envision Healthcare Corporation - EVHC ASC

(1) 50 Non-Debtor accounts; Reflects ASC collection accounts at BoA that are ZBA'd into the EVHC ASC Commingled Concentration Account.
(2) 4 Non-Debtor accounts; collection accounts at various banks are sent via ACH directly to the EVHC ASC Concentration Account (BOA7939) after satisfying expenses related to ASCs. Various bank accounts are with Bank of America, Pacific Western Bank, Peoples Security, and SunTrust.
(3) I Other Account represents Debtor's Asset Sale Proceeds account (BOA2750).

## **Exhibit B**

**Bank Accounts**

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| All Women's Healthcare of West Broward, Inc. | Old National Bank | x1761 | Receipt | Physician Services Receipt Account | - |
| All Women's Healthcare Services, Inc. | Old National Bank | x1772 | Receipt | Physician Services Receipt Account | - |
| Amsurg, LLC | Bank of America | x2137 | Other | Investment Account | $206,421,566 |
| Amsurg, LLC | Bank of America | x2768 | Other | Asset Sale Proceeds Account | $319 |
| Amsurg, LLC | Bank of America | x6372 | Concentration | AmSurg Commingled Concentration Account | $27,877,617 |
| Amsurg, LLC | Bank of America | x2393 | Concentration | AmSurg Main Concentration Account | $58,650,569 |
| Amsurg, LLC | Bank of America | x2435 | Disbursement | Disbursements - AP Vendors | - |
| Amsurg, LLC | Bank of America | x6380 | Disbursement | Commingled Disbursements - ASC AP | - |
| Amsurg, LLC | Bank of America | x4290 | Disbursement | Disbursements - Benefits | - |
| Amsurg, LLC | Bank of America | x6342 | Disbursement | Disbursements - Payroll Account | $5,387,950 |
| Amsurg, LLC | Bank of America | x3550 | Disbursement | Disbursements - Payroll Account | $2,274,945 |
| Amsurg, LLC | Bank of America | x3994 | Disbursement | Disbursements - Payroll Account | $496,481 |
| Amsurg, LLC | Bank of America | x2833 | Other | Intercompany | - |
| Amsurg, LLC | Bank of America | x2823 | Other | Pass-Thru | $3,792,478 |
| Anesthesiologists of Greater Orlando, Inc. | Bank of America | x3226 | Receipt | Physician Services Receipt Account | - |
| Anesthesiology Associates of Tallahassee, Inc. | Bank of America | x0297 | Receipt | Physician Services Receipt Account | - |
| Bay Area Anesthesia, L.L.C. | Bank of America | x3096 | Receipt | Physician Services Receipt Account | - |
| Bethesda Anesthesia Associates, Inc. | Bank of America | x7194 | Receipt | Physician Services Receipt Account | - |
| Boca Anesthesia Service, Inc. | Bank of America | x6099 | Receipt | Physician Services Receipt Account | - |
| Centennial Emergency Physicians, LLC | Wells Fargo | x0388 | Receipt | Physician Services Receipt Account | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| Chandler Emergency Medical Group, L.L.C. | Frontier State Bank | x1779 | Receipt | Physician Services Receipt Account | $4,014 |
| Chandler Emergency Medical Group, L.L.C. | Wells Fargo | x5075 | Receipt | Physician Services Receipt Account | - |
| Children's Anesthesia Associates, Inc. | Bank of America | x7633 | Receipt | Physician Services Receipt Account | - |
| Coastal Anesthesiology Consultants, LLC | Bank of America | x8577 | Receipt | Physician Services Receipt Account | - |
| Drs. Ellis, Rojas, Ross & Debs, Inc. | Bank of America | x8036 | Receipt | Physician Services Receipt Account | - |
| Emcare Anesthesia Providers, Inc. | Wells Fargo | x5656 | Receipt | Physician Services Receipt Account | - |
| Emcare Holdings, LLC (F/K/A Emcare Holdings, Inc.) | Bank of America | x0279 | Other | Intermediary | - |
| Emcare Holdings, LLC (F/K/A Emcare Holdings, Inc.) | Bank of America | x4854 | Disbursement | Disbursements - Tax | - |
| Emcare Physician Providers, Inc. | Wells Fargo | x3637 | Receipt | Physician Services Receipt Account | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Wells Fargo | x3098 | Concentration | Wells Fargo Concentration Account | $213,868,221 |
| Emcare, LLC (F/K/A Emcare, Inc.) | Wells Fargo | x1817 | Disbursement | Disbursement Intermediary Account | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Old National Bank | x1440 | Other | Intermediary | $1,864,027 |
| Emcare, LLC (F/K/A Emcare, Inc.) | Bank of America | x4402 | Receipt | Physician Services Receipt Account | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Wells Fargo | x5736 | Receipt | Physician Services Receipt Account | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Wells Fargo | x5135 | Other | Intermediary | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Wells Fargo | x2595 | Receipt | Physician Services Receipt Account | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Wells Fargo | x8587 | Other | Intermediary | - |
| Ems Management LLC | Wells Fargo | x0236 | Disbursement | Disbursements - AP Vendors | - |
| Envision Anesthesia Services of Delaware, Inc. | Bank of America | x0741 | Receipt | Physician Services Receipt Account | - |
| Envision Children's Healthcare Services of North Mississippi, Inc. | Old National Bank | x1937 | Receipt | Physician Services Receipt Account | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| Envision Healthcare Corporation | Bank of America | x2799 | Other | Adequate Assurance Account | - |
| Envision Healthcare Corporation | Bank of America | x3363 | Other | Intermediary | $4,500 |
| Envision Healthcare Corporation | Bank of America | x2660 | Other | Intermediary | - |
| Envision Healthcare Corporation | Bank of America | x2652 | Other | Intermediary | - |
| Envision Healthcare Corporation | Bank of America | x1323 | Other | Intermediary | - |
| Envision Healthcare Corporation | Bank of America | x4829 | Other | Intermediary | - |
| Envision Healthcare Corporation | Bank of America | x2750 | Other | Asset Sale Proceeds Account | - |
| Envision Healthcare Corporation | Bank of America | x3089 | Concentration | Enterprise Concentration Account | $42,846,570 |
| Envision Healthcare Corporation | Bank of America | x7962 | Concentration | EVHC ASC Commingled Concentration Account | $18,873,595 |
| Envision Healthcare Corporation | Bank of America | x7939 | Concentration | EVHC ASC Concentration Account | - |
| Envision Healthcare Corporation | Key Bank | x3365 | Other | Credit Card Collateral Account | $2,400,000 |
| Envision Healthcare Corporation | Bank of America | x7970 | Disbursement | Commingled Disbursements - ASC AP | - |
| Envision Healthcare Corporation | Bank of America | x1779 | Disbursement | Disbursements - Benefits | - |
| Envision Healthcare Corporation | Bank of America | x3071 | Disbursement | Disbursements - Payroll Account | - |
| Envision Healthcare Corporation | Bank of America | x7954 | Disbursement | Disbursements - Payroll Account | $1,186,242 |
| Envision Healthcare Corporation | Bank of America | x2103 | Other | Investment Account | $30,481,510 |
| Envision Healthcare Corporation | Bank of America | x7410 | Other | Political Action Committee Account | $76,725 |
| Envision Physician Services, LLC | Bank of America | x3412 | Concentration | EVPS Master Concentration Account | $62,207,340 |
| Envision Physician Services, LLC | Bank of America | x4456 | Disbursement | Disbursements - Payroll & Vendors | - |
| Envision Physician Services, LLC | Bank of America | x3058 | Disbursement | Disbursements - Payroll Account | - |
| Envision Physician Services, LLC | Bank of America | x5786 | Receipt | Other Receipt Account | - |
| Envision Physician Services, LLC | Bank of America | x3744 | Receipt | Other Receipt Account | - |
| Enterprise Parent Holdings, Inc. | Bank of America | x5881 | Concentration | Enterprise Parent Concentration Account | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| Flamingo Anesthesia Associates, Inc. | Bank of America | x7080 | Receipt | Physician Services Receipt Account | - |
| Greater Florida Anesthesiologists, LLC | Bank of America | x1364 | Receipt | Physician Services Receipt Account | - |
| Imaging Advantage LLC | Bank of America | x0492 | Receipt | Physician Services Receipt Account | - |
| Jacksonville Beaches Anesthesia Associates, Inc. | Bank of America | x0110 | Receipt | Physician Services Receipt Account | - |
| Jupiter Anesthesia Associates, L.L.C. | Bank of America | x2525 | Receipt | Physician Services Receipt Account | - |
| North Florida Anesthesia Consultants, Inc. | Bank of America | x3765 | Receipt | Physician Services Receipt Account | - |
| North Florida Perinatal Associates, Inc. | Old National Bank | x1783 | Receipt | Physician Services Receipt Account | - |
| Northwood Anesthesia Associates, LLC | Bank of America | x4430 | Receipt | Physician Services Receipt Account | - |
| Phoenix Physicians, LLC | Wells Fargo | x6773 | Other | Intermediary | - |
| Reimbursement Technologies, Inc. | Wells Fargo | x5553 | Disbursement | Disbursements - Refunds | - |
| Reimbursement Technologies, Inc. | Wells Fargo | x5364 | Receipt | Other Receipt Account | - |
| Sheridan Anesthesia Services of Virginia, Inc. | Bank of America | x6297 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Healthcare Services of Arizona, Inc. | Old National Bank | x1904 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Healthcare Services of Louisiana, Inc. | Old National Bank | x1871 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Healthcare Services of New Mexico, Inc. | Old National Bank | x1794 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Healthcare Services of Virginia, Inc. | Bank of America | x2533 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Healthcare Services of Virginia, Inc. | Old National Bank | x1838 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Healthcare Services, Inc. | Bank of America | x2423 | Receipt | Physician Services Receipt Account | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| Sheridan Children's Healthcare Services, Inc. | Old National Bank | x1805 | Receipt | Physician Services Receipt Account | - |
| Sheridan Children's Services of Alabama, Inc. | Old National Bank | x1915 | Receipt | Physician Services Receipt Account | - |
| Sheridan Emergency Physician Services, Inc. | Wells Fargo | x5835 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcare of Louisiana, Inc. | Bank of America | x4631 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcare of Missouri, Inc. | Bank of America | x4846 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcare of Vermont, Inc. | Bank of America | x7477 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcare of West Virginia, Inc. | Bank of America | x3448 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcare, LLC (F/K/A Sheridan Healthcare, Inc.) | Bank of America | x2162 | Disbursement | Disbursements - Payroll Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x4392 | Disbursement | Disbursements - Payroll Account | - |
| Sheridan Healthcorp, Inc. | Wells Fargo | x5819 | Other | Intermediary | - |
| Sheridan Healthcorp, Inc. | Bank of America | x2397 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x5562 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x3151 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x0699 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x5559 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x3148 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x0686 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x6185 | Receipt | Physician Services Receipt Account | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|--------|------|-----------|--------------|---------------------|-----------------|
| Sheridan Healthcorp, Inc. | Bank of America | x4340 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x1123 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x1149 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthcorp, Inc. | Bank of America | x1136 | Receipt | Physician Services Receipt Account | - |
| Sheridan Healthy Hearing Services, Inc. | Old National Bank | x1893 | Receipt | Physician Services Receipt Account | - |
| Sheridan Holdings, LLC (F/K/A Sheridan Holdings, Inc. (F/K/A Vestar/Sheridan Holdings, Inc.)) | Bank of America | x9174 | Other | Intermediary | - |
| Sheridan Hospitalist Services of Florida, Inc. | Wells Fargo | x9919 | Receipt | Physician Services Receipt Account | - |
| Sheridan Radiology Management Services, Inc. | Bank of America | x7631 | Receipt | Physician Services Receipt Account | - |
| Sheridan Rop Services of Alabama, Inc. | Old National Bank | x2003 | Receipt | Physician Services Receipt Account | - |
| Sheridan Rop Services of Florida, Inc. | Old National Bank | x1948 | Receipt | Physician Services Receipt Account | - |
| Sheridan Rop Services of Virginia, Inc. | Old National Bank | x1882 | Receipt | Physician Services Receipt Account | - |
| Southeast Perinatal Associates, Inc. | Old National Bank | x1959 | Receipt | Physician Services Receipt Account | - |
| St. Lucie Anesthesia Associates, LLC | Bank of America | x9459 | Receipt | Physician Services Receipt Account | - |
| Tennessee Valley Neonatology, Inc. | Old National Bank | x1860 | Receipt | Physician Services Receipt Account | - |
| Valley Anesthesiology Consultants, Inc. | Bank of America | x0199 | Receipt | Physician Services Receipt Account | - |
| Valley Anesthesiology Consultants, Inc. | Bank of America | x9167 | Receipt | Physician Services Receipt Account | - |
| West Fairview Emergency Physicians, LLC | Wells Fargo | x7235 | Receipt | Physician Services Receipt Account | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| All Women's Healthcare of West Broward, Inc. | Old National Bank | x3427 | Receipt | Physician Services Lockbox | - |
| All Women's Healthcare Services, Inc. | Old National Bank | x3428 | Receipt | Physician Services Lockbox | - |
| AmSurg, LLC | Bank of America | x6660 | Concentration | AmSurg Lockbox | - |
| Anesthesiologists of Greater Orlando, Inc. | Bank of America | x4536 | Receipt | Physician Services Lockbox | - |
| Anesthesiology Associates of Tallahassee, Inc. | Bank of America | x4515 | Receipt | Physician Services Lockbox | - |
| Bay Area Anesthesia, L.L.C. | Bank of America | x3617 | Receipt | Physician Services Lockbox | - |
| Bethesda Anesthesia Associates, Inc. | Bank of America | x4512 | Receipt | Physician Services Lockbox | - |
| Boca Anesthesia Service, Inc. | Bank of America | x4159 | Receipt | Physician Services Lockbox | - |
| Centennial Emergency Physicians, LLC | Wells Fargo | x9093 | Receipt | Physician Services Lockbox | - |
| Chandler Emergency Medical Group, L.L.C. | Wells Fargo | x1657 | Receipt | Physician Services Lockbox | - |
| Chandler Emergency Medical Group, L.L.C. | Wells Fargo | x9127 | Receipt | Physician Services Lockbox | - |
| Children's Anesthesia Associates, Inc. | Bank of America | x4480 | Receipt | Physician Services Lockbox | - |
| Coastal Anesthesiology Consultants, LLC | Bank of America | x3600 | Receipt | Physician Services Lockbox | - |
| Coastal Anesthesiology Consultants, LLC | Bank of America | x4571 | Receipt | Physician Services Lockbox | - |
| Drs. Ellis, Rojas, Ross & Debs, Inc. | Bank of America | x4567 | Receipt | Physician Services Lockbox | - |
| Emcare, LLC (F/K/A Emcare, Inc.) | Bank of America | x7032 | Receipt | Physician Services Lockbox | - |
| Envision Anesthesia Services of Delaware, Inc. | Bank of America | x4471 | Receipt | Physician Services Lockbox | - |
| Envision Children's Healthcare Services of North Mississippi, Inc. | Old National Bank | x3423 | Receipt | Physician Services Lockbox | - |
| Envision Physician Services, LLC | Bank of America | x5739 | Receipt | Physician Services Lockbox | - |
| Envision Physician Services, LLC | Bank of America | x6658 | Receipt | Physician Services Lockbox | - |
| Flamingo Anesthesia Associates, Inc. | Bank of America | x4563 | Receipt | Physician Services Lockbox | - |
| Greater Florida Anesthesiologists, LLC | Bank of America | x5723 | Receipt | Physician Services Lockbox | - |
| Imaging Advantage LLC | Bank of America | x4881 | Receipt | Physician Services Lockbox | - |
| Jacksonville Beaches Anesthesia Associates, Inc. | Bank of America | x4561 | Receipt | Physician Services Lockbox | - |
| Jupiter Anesthesia Associates, L.L.C. | Bank of America | x4559 | Receipt | Physician Services Lockbox | - |
| North Florida Anesthesia Consultants, Inc. | Bank of America | x5304 | Receipt | Physician Services Lockbox | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| North Florida Perinatal Associates, Inc. | Old National Bank | x3429 | Receipt | Physician Services Lockbox | - |
| Northwood Anesthesia Associates, LLC | Bank of America | x4429 | Receipt | Lockbox | - |
| Sheridan Anesthesia Services of Virginia, Inc. | Bank of America | x4580 | Receipt | Physician Services Lockbox | - |
| Sheridan Children's Healthcare Services of Arizona, Inc. | Old National Bank | x3424 | Receipt | Physician Services Lockbox | - |
| Sheridan Children's Healthcare Services of Louisiana, Inc. | Old National Bank | x3435 | Receipt | Physician Services Lockbox | - |
| Sheridan Children's Healthcare Services of New Mexico, Inc. | Old National Bank | x3430 | Receipt | Physician Services Lockbox | - |
| Sheridan Children's Healthcare Services of Virginia, Inc. | Old National Bank | x3432 | Receipt | Physician Services Lockbox | - |
| Sheridan Children's Healthcare Services, Inc. | Old National Bank | x3431 | Receipt | Physician Services Lockbox | - |
| Sheridan Children's Services of Alabama, Inc. | Old National Bank | x3440 | Receipt | Physician Services Lockbox | - |
| Sheridan Emergency Physician Services, Inc. | Wells Fargo | x0217 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcare of Louisiana, Inc. | Bank of America | x4574 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcare of Missouri, Inc. | Bank of America | x4548 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcare of Vermont, Inc. | Bank of America | x4544 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcare of West Virginia, Inc. | Bank of America | x4542 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x3854 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x3850 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x7191 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x0929 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x0557 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x4538 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x4071 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x4069 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x4883 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x3950 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x3946 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthcorp, Inc. | Bank of America | x4484 | Receipt | Physician Services Lockbox | - |

| Debtor | Bank | Account # | Account Type | Account Subcategory | Account Balance |
|---|---|---|---|---|---|
| Sheridan Healthcorp, Inc. | Bank of America | x4193 | Receipt | Physician Services Lockbox | - |
| Sheridan Healthy Hearing Services, Inc. | Old National Bank | x3439 | Receipt | Physician Services Lockbox | - |
| Sheridan Hospitalist Services of Florida, Inc. | Wells Fargo | x0315 | Receipt | Physician Services Lockbox | - |
| Sheridan Radiology Management Services, Inc. | Bank of America | x4879 | Receipt | Physician Services Lockbox | - |
| Sheridan Rop Services of Alabama, Inc. | Old National Bank | x3446 | Receipt | Physician Services Lockbox | - |
| Sheridan Rop Services of Florida, Inc. | Old National Bank | x3422 | Receipt | Physician Services Lockbox | - |
| Sheridan Rop Services of Virginia, Inc. | Old National Bank | x3436 | Receipt | Physician Services Lockbox | - |
| Southeast Perinatal Associates, Inc. | Old National Bank | x216 | Receipt | Physician Services Lockbox | - |
| St. Lucie Anesthesia Associates, LLC | Bank of America | x5923 | Receipt | Physician Services Lockbox | - |
| Tennessee Valley Neonatology, Inc. | Old National Bank | x3434 | Receipt | Physician Services Lockbox | - |
| Valley Anesthesiology Consultants, Inc. | Bank of America | x9092 | Receipt | Physician Services Lockbox | - |
| West Fairview Emergency Physicians, LLC | Wells Fargo | x0223 | Receipt | Physician Services Lockbox | - |