**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) ) ) ) | Case No. 23-90342 (CML) |
| Debtors. | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION
FOR ENTRY OF AN ORDER (I) APPROVING
NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN
TRANSFERS OF AND DECLARATIONS OF WORTHLESSNESS WITH
RESPECT TO COMMON STOCK AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on May 15, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 15, 2023 at 4:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision. The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) approving certain notification and hearing procedures, substantially in the form of Exhibit 1 attached to the Order (the "Procedures"), related to certain transfers of, or declarations of worthlessness with respect to, Debtor Enterprise Parent Holdings Inc.'s ("EPH") existing classes of common stock or any Beneficial Ownership[2] therein (any such record or Beneficial Ownership of common stock, collectively, the "Common Stock"); (b) directing that any purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock in violation of the Procedures shall be null and void *ab initio*; and (c) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this motion.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] "Beneficial Ownership" will be determined in accordance with the applicable rules of sections 382 and 383 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834 as amended (the "IRC"), and the U.S. Department of the Treasury regulations thereunder ("Treasury Regulations") (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)), and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

2

4.  The statutory bases for the relief requested herein are sections 105, 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 3002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5.  Envision Healthcare Corporation ("EVHC" and together with certain of its Debtor and non-Debtor affiliates and subsidiaries, "Envision" or the "Company") is a leading national medical group that works in collaboration with healthcare partners, payors, and others in the healthcare industry to ensure the delivery of high-quality, accessible, and affordable patient care.

6.  On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtors and their businesses, including facts and circumstances giving rise to these chapter 11 cases is set forth in the First Day Declarations,[3] filed contemporaneously with this motion and incorporated by reference herein.

7.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the

---

[3] Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in (a) the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* (the "Keglevic First Day Declaration") and (b) the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "Stogsdill First Day Declaration," and together with the Keglevic First Day Declaration, the "First Day Declarations").

3

appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### The Tax Attributes

8. Companies generate various Tax Attributes (as defined below) through the course of their operations. Generally, a company generates net operating losses ("NOLs") if the operating expenses it has incurred exceed the revenues it has earned during a single tax year. A company may apply or "carry forward" NOLs to reduce future tax payments (subject to certain conditions discussed below). *See* Internal Revenue Code ("IRC") § 172. Generally, a company's deduction for net business interest expense is limited to 30 percent of its adjusted taxable income plus certain other amounts. Any business interest expense disallowed is carried forward and treated as business interest expense in the following tax year ("163(j) Carryforwards"). *See* IRC § 163. Other Tax Attributes have other sources.

9. The Debtors currently estimate that, as of December 31, 2022, they had approximately $833.2 million of 163(j) Carryforwards.[4] The Debtors expect to generate substantial additional tax attributes in the 2023 tax year, including during the pendency of these chapter 11 cases (together with the aforementioned 163(j) Carryforwards and certain other tax attributes, collectively, the "Tax Attributes"). The Tax Attributes are potentially of significant value to the Debtors and their estates because the Tax Attributes may offset future federal taxable income or federal tax liability in future years.

10. The relief requested herein is expected to preserve the value of the Tax Attributes to the benefit of the Debtors' stakeholders. Conversely, a premature limitation of the Debtors' Tax

---

[4] Amounts are estimates and are subject to change. Certain tax attributes have been omitted here as they are not expected to be usable by the Debtors.

4

Attributes could cause substantial deterioration of value and significantly reduce recoveries to the Debtors' stakeholders. Failure to obtain the relief sought in this motion could, therefore, greatly increase the risk that the Debtors would be unable to maximize the value of their estates.

**I.      An "Ownership Change" May Negatively Affect the Debtors' Utilization of the Tax Attributes.**

11.     Sections 382 and 383 of the IRC limit the amount of federal taxable income and federal tax liability, respectively, that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change." Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more "5 percent" shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the 3-year testing period ending on the date of the ownership change. The total percentage point increases of stock owned by one or more "5 percent" shareholders within the measuring period is generally referred to as the amount of the "ownership shift." In situations involving multiple classes of stock with different rights, the determination of whether a shareholder is a "5 percent" shareholder is made by reference to stock value (without regard to certain considerations such as control premiums or minority discounts, and with reference to certain mechanical tests). For example, an ownership change would occur in the following situation:

> An individual ("A") owns 50.1 percent of the stock of corporation XYZ. A sells her 50.1 percent interest to another individual ("B"), who owns 5 percent of XYZ's stock. Under section 382 of the IRC, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5 percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

12. It is critical to understand that, under these rules, a company can be harmed as a result of actions by parties that are unknown to the company. As noted above, if a person unknown to the company were to acquire more than 5 percent of the company's stock (determined in accordance with the rules set forth above), the company would experience an "ownership shift" that could lead to an ownership change. By the time the company knew who the unidentified shareholder was, the shareholder would have already purchased the shares and the harm would be done. Accordingly, for the Procedures to be effective, the Procedures must bind unknown parties.

13. As one particularly salient example, companies in certain instances may enact charter restrictions to protect their tax attributes. Such charter restrictions may impose **substantive** limitations on sales and purchases of equity that are similar to the procedural limitations requested in this motion. Although such charter restrictions are put to a shareholder vote before being enacted, they always bind unknown parties (*i.e.*, persons that are not shareholders at the time the vote is taken) and do so via public information issued by the company in connection with the adoption of such charter restrictions. It is true that the relief requested in this motion is not being put to a shareholder vote—nor should it be, because the requested relief is intended to maximize the value of the Debtors for all stakeholders—but unlike charter restrictions, the relief requested in this motion merely implements **procedures** that must be observed before relevant actions are taken.

14. An "ownership change" can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder." IRC § 382(g)(4)(D). A 50-percent shareholder is any person or entity (or group of people that is treated as a single entity under the applicable rules) with Beneficial Ownership of 50 percent or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock

6

deduction is claimed.  *Id*.  If the 50-percent shareholder still owns the corporation's stock at the end of the taxable year, sections 382 and 383 of the IRC essentially treat such person or entity as newly purchasing the stock on the first day of the next taxable year.  For example, if a person or entity with fifty percent of a corporation's stock claims a worthless stock deduction with respect to the 2022 tax year but does not sell such stock in 2022, that person is treated:  (a) as not having owned the stock at the end of 2022; and (b) as having purchased the stock on the first day of the 2023 tax year.  That deemed purchase would cause an ownership change because the 50-percent shareholder would be deemed to have a fifty percentage-point increase in its stock ownership.  Notably, while the seminal case of *Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991) is generally relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

15.   If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all of the stock of the corporation prior to the ownership change multiplied by the long-term tax exempt rate that applies to the month of the ownership change.[5]  *See* IRC §§ 382(b) and 383(a).  Pre-change losses and excess credits include the Debtors' Tax Attributes and any so-called "realized built-in losses" (as defined in section 382(h)(3) of the IRC).[6]  Once a Tax Attribute is

---

[5]   The applicable long-term tax-exempt rate changes from month to month.  For ownership changes occurring in May 2023, the applicable long-term tax-exempt rate is 3.04 percent.

[6]   The rules relating to potential limitations on the ability to offset taxable income with so-called realized built-in losses are highly complex and depend on, among other things, the extent (if any) of a debtor's "net unrealized built-in loss."  A net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a

limited under section 382 or 383 of the IRC, its use may be limited forever.[7] Thus, certain transfers or worthless stock deductions with respect to the Beneficial Ownership of Common Stock effected before the effective date of the Debtors' emergence from chapter 11 protection may trigger an "ownership change" for IRC purposes, severely endangering the Debtors' ability to utilize the Tax Attributes, which would cause substantial damage to the Debtors' estates.

16. Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value. Specifically, the proposed Order will affect only: (a) holders of the equivalent of more than 14,753,767 shares of Common Stock[8] (*i.e.*, 4.5 percent or more of outstanding Common Stock); (b) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of 4.5 percent or more of Beneficial Ownership of any class (or series) of outstanding Common Stock; and (c) any "50-percent shareholder" seeking to claim a worthless stock deduction.

17. The Debtors' only current substantial shareholders are certain funds and accounts managed by Kohlberg Kravis Roberts & Co. L.P. (collectively, "KKR"). Subject to and in connection with the restructuring transactions contemplated by the Restructuring Support Agreement, and as a further demonstration of KKR's continued support for the Debtors (thereby benefiting the Debtors' stakeholders), KKR has agreed not to oppose the relief requested in this Motion.

---

corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the IRC) immediately prior to the ownership change. IRC § 382(h)(3)(A)(i).

[7] Realized built-in losses that are deducted beginning after the expiration of a five-year "recognition period" are no longer subject to limitation, but any realized built-in losses that are deducted prior to the expiration of such period are limited forever.

[8] Based on 327,861,489 shares of Common Stock outstanding as of the Petition Date.

18.     To maximize the use of the Tax Attributes and enhance recoveries for the Debtors' stakeholders, the Debtors seek limited relief that will enable them to closely monitor certain transfers of Beneficial Ownership of Common Stock and certain worthless stock deductions with respect to Beneficial Ownership of Common Stock so as to be in a position to act expeditiously to prevent such transfers or worthlessness deductions, if necessary, with the purpose of preserving the Tax Attributes. By establishing and implementing such Procedures, the Debtors will be in a position to object to "ownership changes" that threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

**II.     Proposed Procedures for Transfers of or Declarations of Worthlessness with Respect to Common Stock.**

19.     The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock to ensure preservation of the Tax Attributes. The Procedures, which are fully set forth in Exhibit 1 to the Order, are detailed below.[9]

Procedures for Transfers of Common Stock

> a.  Any entity (as defined in section 101(15) of the Bankruptcy Code) that is a Substantial Shareholder (as defined herein) must file with the Court, and serve upon: (i) the Debtors, Envision Healthcare Corporation, 1A Burton Hills Boulevard, Nashville, Tennessee 37215, Attn.: Matthew Musso (mmuso@envisionhealth.com); (ii) proposed co-counsel to the Debtors, (A) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Nicole L. Greenblatt, P.C. (ngreenblatt@kirkland.com), and Anne G. Wallice (anne.wallice@kirkland.com), and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: John R. Luze (john.luze@kirkland.com) and Annie L. Dreisbach

---

[9]  Capitalized terms used in this section but not otherwise defined herein have the meanings given to them in the Procedures. To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

(annie.dreisbach@kirkland.com), and (B) Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Rebecca Blake Chaikin (rchaikin@jw.com), Vienna Anaya (vanaya@jw.com), and Javier Gonzalez (jgonzalez@jw.com); (iii) counsel to any statutory committee appointed in these cases (if any); (iv) counsel to the Envision Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn.: Scott J. Greenberg (sgreenberg@gibsondunn.com), Jason Zachary Goldstein (jgoldstein@gibsondunn.com), Steven A. Domanowski (sdomanowski@gibsondunn.com); (v) counsel to the AmSurg 2L Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.: Dennis Dunne (ddunne@milbank.com), Samuel Khalil (skhalil@milbank.com), Michael Price (mprice@milbank.com); (vi) counsel to the Consenting Sponsors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn.: Brian S. Hermann (bhermann@paulweiss.com), Brian Bolin (bbolin@paulweiss.com), Jacob Adlerstein (jadlerstein@paulweiss.com); (vii) counsel to the ABL Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017. Attn: Eli J. Vonnegut (eli.vonnegut@davispolk.com) and Gene S. Goldmintz (gene.goldmintz@davispolk.com); (viii) co-counsel to the ABL Agent, Hunton Andrews Kurth LLP, 600 Travis, Suite 4200, Houston, Texas 77002, Attn: Tad Davidson (taddavidson@huntonak.com) and Ashley Harper (ashleyharper@huntonoak.com); (ix) counsel to the RCF Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Atn.: Brian M. Resnick (brian.resnick@davispolk.com) and Michael Pera (michael.pera@davispolk.com), and (x) the U.S. Trustee for the Southern District of Texas, Office of the U.S. Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.: Ha Nguyen (Ha.Nguyen@usdoj.gov) (collectively, the "Notice Parties"), a declaration of such status, substantially in the form attached to the Procedures as Exhibit 1A (each, a "Declaration of Status as a Substantial Shareholder"), on or before the later of (A) twenty calendar days after the date of the Notice of Order, or (B) ten calendar days after becoming a Substantial Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.

b.  Prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in an increase in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual becoming a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock substantially in the form attached to the Procedures as Exhibit 1B (each, a "Declaration of Intent to Accumulate Common Stock").

10

c.  Prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in a decrease in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock substantially in the form attached to the Procedures as Exhibit 1C (each, a "Declaration of Intent to Transfer Common Stock," and together with a Declaration of Intent to Accumulate Common Stock, each, a "Declaration of Proposed Transfer").

d.  The Debtors and the other Notice Parties shall have twenty calendar days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such Substantial Shareholder or potential Substantial Shareholder an objection to any proposed transfer of Beneficial Ownership of Common Stock described in the Declaration of Proposed Transfer on the grounds that such transfer might adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors or any of the other Notice Parties file an objection, such transaction will remain ineffective unless such objection is withdrawn, or such transaction is approved by a final and non-appealable order of the Court. If the Debtors and the other Notice Parties do not object within such twenty-day period, such transaction can proceed solely as set forth in the Declaration of Proposed Transfer. Further transactions within the scope of this paragraph must be the subject of additional notices in accordance with the procedures set forth herein, with an additional twenty-day waiting period for each Declaration of Proposed Transfer. To the extent that the Debtors receive an appropriate Declaration of Proposed Transfer and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these chapter 11 cases.

e.  For purposes of these Procedures (including, for the avoidance of doubt, with respect to both transfers and declarations of worthlessness): (i) a "Substantial Shareholder" is any entity or individual person that has Beneficial Ownership of at least: (A) 14,753,767 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock); and (ii) "Beneficial Ownership" will be determined in accordance with the applicable rules of section 382 of the IRC, and the Treasury Regulations promulgated thereunder (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)) and includes direct, indirect, and constructive ownership (e.g., (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would

11

be considered to beneficially own equity securities that such holder has an Option (as defined herein) to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

Procedures for Declarations of Worthlessness of Common Stock

a. Any person or entity that currently is or becomes a 50-Percent Shareholder[10] must file with the Court and serve upon the Notice Parties a declaration of such status, substantially in the form attached to the Procedures as Exhibit 1D (each, a "Declaration of Status as a 50-Percent Shareholder"), on or before the later of (i) twenty calendar days after the date of the Notice of Order and (ii) ten calendar days after becoming a 50-Percent Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50-Percent Shareholder even if no Declaration of Status as a 50-Percent Shareholder has been filed.

b. Prior to filing any federal or state tax return, or any amendment to such a return, or taking any other action that claims any deduction for worthlessness of Beneficial Ownership of Common Stock for a taxable year ending before the Debtors' emergence from chapter 11 protection, such 50-Percent Shareholder must file with the Court and serve upon the Notice Parties a declaration of intent to claim a worthless stock deduction (a "Declaration of Intent to Claim a Worthless Stock Deduction"), substantially in the form attached to the Procedures as Exhibit 1E.

  i. The Debtors and the other Notice Parties shall have twenty calendar days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50-Percent Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

  ii. If the Debtors or the other Notice Parties timely object, the filing of the tax return or amendment thereto with such claim will not be permitted unless approved by a final and non-appealable order of the Court, unless such objection is withdrawn.

---

[10] For purposes of the Procedures, a "50-Percent Shareholder" is any person or entity that, at any time since December 31, 2019, has owned Beneficial Ownership of 50 percent or more of the Common Stock (determined in accordance with section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations thereunder).

      iii. If the Debtors and the other Notice Parties do not object within such twenty-day period, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Stock Deduction.  Additional returns and amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional twenty-day waiting period.  To the extent that the Debtors receive an appropriate Declaration of Intent to Claim a Worthless Stock Deduction and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these chapter 11 cases.

<u>Notice Procedures</u>

    a. No later than three business days following entry of the Order, the Debtors shall serve a notice by first class or overnight mail, postage prepaid, substantially in the form attached to the Procedures as <u>Exhibit 1F</u> (the "<u>Notice of Order</u>"), on:  (i) the U.S. Trustee for the Southern District of Texas; (ii) the entities listed on the consolidated list of creditors holding the 30 largest unsecured claims; (iii) the U.S. Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) any official committees appointed in these chapter 11 cases; (v) the Notice Parties; and (vi) to the extent known, other than Individual Holders, all registered and nominee holders of Common Stock (with instructions to serve down to the beneficial holders (other than Individual Holders) of Common Stock, as applicable).

    b. All registered and nominee holders of Common Stock shall be required to serve the Notice of Order, as applicable, on any holder for whose benefit such registered or nominee holder holds such Common Stock, down the chain of ownership for all such holders of Common Stock.

    c. Any entity or individual, or broker or agent acting on such entity's or individual's behalf who sells Common Stock to another entity or individual, shall be required to serve a copy of the Notice of Order, as applicable, on such purchaser of such Common Stock, or any broker or agent acting on such purchaser's behalf.

    d. To the extent confidential information is required in any declaration described in the Procedures, such confidential information may be filed and served in redacted form; *provided*, *however*, that any such declarations served on the Debtors **shall not** be in redacted form.  The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except:  (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided*, *however*, that the Debtors may

    disclose the contents thereof to their professional advisors, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. To the extent confidential information is necessary to respond to an objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

  e.  The Debtors may retroactively or prospectively waive any and all restrictions, stays, and notification procedures set forth in this Motion.

## Basis for Relief

20. Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The Tax Attributes are property of the Debtors' estates. *See Official Comm. of Unsecured Creditors v. PSS Steamship Co.* (*In re Prudential Lines Inc.*), 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."); *Official Comm. of Unsecured Creditors v. Forman* (*In re Forman Enters., Inc.*), 273 B.R. 408, 416 (Bankr. W.D. Pa. 2002) (finding that NOLs are property of the debtors' estates); *Nisselson v. Drew Indus., Inc.* (*In re White Metal Rolling & Stamping Corp.*), 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same). Section 362(a)(3) of the Bankruptcy Code, moreover, stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination, or limits use, of the Tax Attributes violates the automatic stay. *See, e.g.*, *In re Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate.").

21.     Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates.  Under sections 382 and 383 of the IRC, certain transfers of or declarations of worthlessness with respect to Beneficial Ownership of Common Stock prior to the consummation of a chapter 11 plan could cause the termination or limit the use of the Tax Attributes.  As stated above, the Debtors estimate that as of December 31, 2022, they had approximately $833.2 million of 163(j) Carryforwards, and certain other tax attributes, and, in addition, the Debtors expect to generate substantial additional Tax Attributes in the 2023 tax year.  As noted above, these Tax Attributes may be necessary to address tax consequences resulting from the implementation of the Plan and, depending upon the structure utilized to consummate the Plan, they may provide the potential for material future tax savings (including in post-emergence years).  The termination or limitation of the Tax Attributes could, therefore, be materially detrimental to all parties in interest, including by potentially limiting the Debtors' ability to utilize certain structures to consummate the Plan.  Granting the relief requested herein will preserve the Debtors' flexibility in operating their businesses during the pendency of these chapter 11 cases and implementing an exit plan that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.

22.     Additionally, the Procedures do not bar all transfers of or declarations of worthlessness with respect to Beneficial Ownership of Common Stock.  The Debtors seek to establish procedures only to monitor those types of transactions that would pose a serious risk under the ownership change test pursuant to sections 382 and 383 of the IRC and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the Debtors' utilization of the Tax Attributes.  Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties in interest, the benefits of

15

implementing the Procedures outweigh the drawbacks of subjecting a small subset of transfers to the Procedures.

**Emergency Consideration**

23. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Failure to receive the relief requested in this motion during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. The Debtors have satisfied the "immediate and irreparable" harm standard in Bankruptcy Rule 6003 and request that the Court approve the relief requested on an emergency basis.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

24. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be honored inadvertently. Therefore, the Debtors request that the Court authorize and direct all applicable financial institutions at the Debtors' request to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to

exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h), which is necessary to implement the relief requested in this motion.

## Reservation of Rights

26.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested in this motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

27. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the ABL Agent; (d) counsel to the RCF Agent; (e) counsel to the Ad Hoc Group of First Lien AmSurg Lenders; (f) counsel to the AmSurg 2L Group; (g) counsel to the Envision Ad Hoc Group; (h) counsel to the Unsecured Notes Group; (i) counsel to the Consenting Sponsors; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

**No Prior Request**

28. No prior request for the relief sought in this motion has been made to this or any other court.

The Debtors respectfully request entry of an order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
May 15, 2023

*/s/ Vienna Anaya*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Rebecca Blake Chaikin (TX Bar No. 24133055) | Edward O. Sassower, P.C. |
| Vienna Anaya (TX Bar No. 24091225) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Javier Gonzalez (TX Bar No. 24119697) | Nicole L. Greenblatt, P.C. (*pro hac vice* pending) |
| 1401 McKinney Street, Suite 1900 | Anne G. Wallice (*pro hac vice* pending) |
| Houston, TX 77010 | 601 Lexington Avenue |
| Telephone:  (713) 752-4200 | New York, New York 10022 |
| Facsimile:   (713) 752-4221 | Telephone:   (212) 446-4800 |
| Email:        rchaikin@jw.com | Facsimile:    (212) 446-4900 |
|                    vanaya@jw.com | Email:         esassower@kirkland.com |
|                    jgonzalez@jw.com |                     jsussberg@kirkland.com |
| | ngreenblatt@kirkland.com |
| | anne.wallice@kirkland.com |

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
John R. Luze (*pro hac vice* pending)
Annie L. Dreisbach (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:         john.luze@kirkland.com
                     annie.dreisbach@kirkland.com

*Proposed Co-Counsel to the Debtors*            *Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*                              *and Debtors in Possession*

**Certificate of Accuracy Certificate of Accuracy**

  I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                */s/ Vienna Anaya*
                Vienna Anaya

**Certificate of Service**

  I certify that on May 15, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                */s/ Vienna Anaya*
                Vienna Anaya