## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) | Case No. 23-90243 (CML) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

## DEBTORS'
## EMERGENCY
## MOTION FOR ENTRY OF
## AN ORDER (I) APPROVING
## THE PROPOSED ADEQUATE
## ASSURANCE DEPOSIT FOR FUTURE
## UTILITY SERVICES, (II) PROHIBITING
## UTILITY PROVIDERS FROM ALTERING,
## REFUSING, OR DISCONTINUING SERVICES, (III)
## APPROVING THE PROPOSED ADEQUATE ASSURANCE
## PROCEDURES FOR RESOLVING ADEQUATE ASSURANCE
## REQUESTS, (IV) AUTHORIZING CERTAIN FEE PAYMENTS
## FOR SERVICES PERFORMED, AND (V) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on May 15, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 15, 2023 at 4:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision. The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:

## Relief Requested

1. The Debtors seek entry of an order, substantially in the forms attached hereto (the "Order"), (a) approving the proposed Adequate Assurance Deposit for future Utility Services, (b) prohibiting the Utility Providers (as defined herein) from altering, refusing, or discontinuing services, (c) approving the Adequate Assurance Procedures for resolving Adequate Assurance Requests, (d) authorizing fee payments to Engie and Hastings for services performed, and (e) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this motion.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

5. Envision Healthcare Corporation ("EVHC" and together with certain of its Debtor and non-Debtor affiliates and subsidiaries, "Envision" or the "Company") is a leading national

2

medical group that works in collaboration with healthcare partners, payors, and others in the healthcare industry to ensure the delivery of high-quality, accessible, and affordable patient care.

6.     On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors and their businesses, including facts and circumstances giving rise to these chapter 11 cases is set forth in the First Day Declarations,[2] filed contemporaneously with this motion and incorporated by reference herein.

7.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Utility Services and Proposed Adequate Assurance

### I.     Utility Services and Utility Providers.

8.     The Debtors obtain electricity, natural and medical gas, water and sewage, telephone, internet, medical waste, garbage, recycling, cable, fire protection, security, and other similar services (collectively, the "Utility Services") from a number of utility providers and brokers (collectively, the "Utility Providers") to operate their businesses and manage their properties in the ordinary course.  A non-exclusive list of the Utility Providers or their affiliates

---

[2]     Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in (a) the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* (the "Keglevic First Day Declaration") and (b) the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "Stogsdill First Day Declaration," and together with the Keglevic First Day Declaration, the "First Day Declarations").

that provide Utility Services to the Debtors as of the Petition Date (the "Utility Providers List") is attached to the Order as Exhibit A.[3]  On average, the Debtors spend approximately $504,000 per month on utilities calculated based on the historical average of payments made to the Utility Providers over the twelve-month period ending on March 31, 2023 excluding certain amounts and subject to certain adjustments.  As of the Petition Date, the Debtors estimate that approximately $756,000 on account of their Utility Services is due and owing.

9.      Uninterrupted Utility Services are essential to the Debtors' ongoing healthcare operations and their ability to provide care to patients.  On any given business day, patients undergo surgical procedures and receive medical treatments for which sophisticated life-sustaining equipment powered by the Utility Services is essential.  Any interruption in Utility Services would not only be detrimental to the Debtors' business but any interruption of the Utility Services, no matter how brief, could be extremely harmful to the patients at the Debtors' facilities.

10.     To manage certain of the Debtors' Utility Services, the Debtors are party to certain contracts with Engie Insight Services, Inc. (together with its predecessors and successors in interest, "Engie") (as amended, modified and supplemented from time to time, and together, the "Engie Agreements").  In general, the Utility Providers submit invoices directly to Engie, and Engie consolidates and sends the bills to the Debtors not less than three times per week.  Upon receipt of Engie's invoice, the Debtors transfer funds to Engie, which in turn pays the Utility Providers on the Debtors' behalf as payments become due.  Pursuant to the Engie Agreements, the Debtors pay Engie the amounts invoiced for the Utility Services when due to the Utility Provider,

---

[3]   Although the Debtors believe that the Utility Providers List includes all their Utility Providers, subject to the limitations set forth in the Adequate Assurance Procedures, the Debtors reserve the right to supplement the Utility Providers List if the Debtors inadvertently omitted any Utility Provider.  Additionally, the listing of an entity on the Utility Providers List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination. Additionally, the Debtors may have inadvertently omitted one or more Utility Providers.  Therefore, the Debtors request relief applicable to all Utility Providers regardless of whether such Utility Provider is identified on Exhibit A to the Order.

plus incremental fees of approximately $3,000 each month (the "Engie Services Fees") for Engie's payment processing services on behalf of both the Debtors and non-Debtor entities. As of the Petition Date, the Debtors owe approximately $4,500 under the Engie Agreements. To the extent that the Debtors pay Utility Providers and service fees on behalf of non-Debtor entities, the Debtors then bill the non-Debtor entities and are reimbursed on a monthly basis.

11.     Additionally, to manage certain of the Debtors' Utility Services relating to telecommunications, the Debtors are party to certain contracts with The Hastings Group LLC (together with its predecessors and successors in interest, "Hastings") (as amended, modified and supplemented from time to time, and together, the "Hastings Agreements"). Hastings, and its affiliate TeleBright Software Corporation, assist the Debtors with managing their telecommunication utility accounts and payments, including cost allocation, auditing, and optimization. The Debtors pay Hastings fees of approximately $10,000 each month (the "Hastings Service Fees" and together with the Engie Service Fees, the "Service Fees") on behalf of Debtor entities. As of the Petition Date, the Debtors owe approximately $15,000 under the Hastings Agreements.

12.     For certain locations in which the Debtors operate, Utility Services are billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements.

13.     The Debtors seek authority to pay any outstanding Service Fees or payments to landlords on account of Utility Services and to continue to honor their obligations under the Engie Agreements, the Hastings Agreements, and applicable lease agreements as they come due in the ordinary course of business on a postpetition basis, consistent with past practice.

14.     For the avoidance of doubt, the relief requested herein is with respect to all payments made directly by the Debtors or on the Debtors' behalf to Utility Providers supplying

Utility Services directly to the Debtors, including payments remitted from the Debtors by Engie, Hastings, or the applicable landlords.

## II.     Proposed Adequate Assurance of Payment.

15.     The Debtors intend to satisfy postpetition obligations owed to the Utility Providers in the ordinary course of business.  Cash on hand and cash generated in the ordinary course of business as well as anticipated access to available cash collateral will provide the Debtors with sufficient liquidity to pay the Utility Providers for Utility Services in accordance with past practice. As additional assurance of payment, the Debtors propose to deposit approximately $252,000 (the "Adequate Assurance Deposit") into a segregated bank account (the "Adequate Assurance Account") within fifteen business days after the Order is entered.

16.     The Adequate Assurance Deposit is equal to approximately 50 percent of the Debtors' average monthly cost of Utility Services, calculated based on the historical average of payments made to the Utility Providers over the twelve-month period ending on March 31, 2023, excluding certain amounts and subject to certain adjustments.  The Adequate Assurance Account will be held in the Bank of America bank account ending in 2799 for the duration of the Debtors' chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Providers in accordance with the Adequate Assurance Procedures (as defined herein).  The Adequate Assurance Deposit, in conjunction with the Debtors' cash on hand, cash generated in the ordinary course of business, and anticipated access to cash collateral (collectively, the "Proposed Adequate Assurance"), demonstrates the Debtors' ability to pay for future Utility Services and constitutes sufficient adequate assurance in full satisfaction of section 366 of the Bankruptcy Code.

## III.     The Adequate Assurance Procedures.

17.     The Debtors propose the adequate assurance procedures set forth herein (the "Adequate Assurance Procedures") for any Utility Provider that is either (a) not satisfied with

the Proposed Adequate Assurance or (b) seeking payment of their applicable portion of the Adequate Assurance Deposit for adequate assurance of future payment (each, an "Adequate Assurance Request") during the pendency of the chapter 11 cases.  The Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Adequate Assurance Request upon certain notice parties.  The Debtors may use their discretion to resolve any Adequate Assurance Request with the Utility Provider and without further order of the Court.  The Debtors may seek resolution by the Court if the Debtors determine that the Adequate Assurance Request cannot be consensually resolved.  In addition, if postpetition amounts remain unpaid beyond the applicable grace period associated with the Utility Services, the Utility Provider may make an Adequate Assurance Request pursuant to the proposed Adequate Assurance Procedures.  Unless and until a Utility Provider files an objection or serves and Adequate Assurance Request, such Utility Provider shall be (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

**IV.  Modifications to the Utility Providers List**.

18.     The Debtors have made an extensive and good faith effort to identify all Utility Providers and include them on the Utility Providers List.  If the Debtors subsequently identify additional Utility Providers or discontinue any Utility Services, the Debtors seek authority to amend the Utility Providers List.  The Debtors further request that the Order apply to any subsequently identified Utility Provider regardless of when such Utility Provider was added to the Utility Providers List.  The Debtors will serve a copy of this motion and the Order on any Utility Provider added to the Utility Providers List.  Any subsequently added Utility Provider shall have

twenty-one days from the date of service of this motion and the Order to make a request for additional adequate assurance of payment in accordance with the Adequate Assurance Procedures. Pursuant to the Adequate Assurance Procedures, the Debtors may seek to resolve any subsequently added Utility Provider's request for adequate assurance of payment by mutual agreement with the Utility Provider without further order of this Court or the need to schedule a hearing with this Court.

## V.    Prohibitions on Altering, Refusing, or Discontinuing Service.

19.     Uninterrupted Utility Service is essential to the Debtors' ongoing business operations and overall success of these chapter 11 cases.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations could be severely disrupted.  Discontinuation of Utility Service would essentially shut down operations, and any significant disruption of operations could pose risks to public health and put these chapter 11 cases in jeopardy.

20.     The Debtors request that, pending the entry of the Order and the resolution of any Additional Assurance Request, objection, or Determination Hearing, the Utility Providers, including any Additional Utility Provider, are prohibited from (a) discriminating against the Debtors, (b) altering, refusing, or discontinuing service to the Debtors, or (c) requiring payment of a deposit or receipt of any other security for continued service other than the Adequate Assurance Deposit as a result of these chapter 11 cases or any unpaid prepetition invoices.

## Basis for Relief

21.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date.  *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires a debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within 30 days of

the Petition Date or the utility provider may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). A non-exhaustive list of examples for what constitutes "assurance of payment" is contained in section 366 of the Bankruptcy Code. 11 U.S.C. § 366(c)(1) (listing "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; and (v) a prepayment of utility consumption" as examples of adequate assurance requests).

22. Assurance of payment need not constitute an absolute guarantee of a debtors' ability to pay. *See In re Great Atl. & Pac. Tea Co.*, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"). A court should examine the totality of the circumstances to decide whether a utility company will be subject to an "unreasonable risk of nonpayment" when considering whether a proposed assurance amount is "adequate." *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). The "focus" should be on "the need of the utility for assurance" to ensure that the debtor will "supply *no more than that*" because the debtor "has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) (quotations omitted). Accordingly, a utility company's demand for a guarantee of payment should be refused when the debtor has already afforded adequate assurance of payment based on the specific circumstances.

23. Termination of the Utility Services could result in the Debtors' inability to provide care to patients and would impair the Debtors' ability to operate the hospitals to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."). The Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit, the Debtors' ongoing ability to meet

obligations as they come due in the ordinary course, and anticipated access to use of cash collateral provides assurance of the Debtors' payment of their future obligations. The Debtors intend to allocate approximately $252,000 in the Adequate Assurance Account, which is segregated from the Debtors' cash management system. The Adequate Assurance Deposit is equal to approximately 50 percent of the Debtors' average monthly cost of Utility Services, calculated based on the historical average of payments made to the Utility Providers over the twelve-month period ending on March 31, 2023, excluding certain amounts and subject to certain adjustments.

24. In addition, the Debtors have proposed Adequate Assurance Procedures that give Utility Providers an opportunity to seek additional adequate assurance as appropriate. These procedures should be permitted because they facilitate the Debtors' ability to provide assurance of future payment. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores, Inc.*, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy Code allows the Court to adopt the [p]rocedures set forth in the [u]tility [o]rder"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* If the Debtors are inundated with requests, a Utility Provider could seize on the chaos and make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay amounts beyond what would be required under section 366 in response to the threat of losing critical Utility Services. The proposed Adequate Assurance Procedures prevent such an outcome and create an "orderly process" while preserving the Utility Providers' rights under sections 366(b) and (c)(2) of the Bankruptcy Code. Any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are preserved under the Adequate Assurance

Procedures.  The Utility Providers still have the right to request modification of the Proposed Adequate Assurance in accordance with such procedures.

25.     This Court possesses the power under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Here, the Order is necessary and appropriate to carry out section 366 of the Bankruptcy Code.  If neither the Adequate Assurance Procedures nor the Proposed Adequate Assurance are approved, then there is a substantial risk that Utility Providers could attempt to terminate the Debtors' Utility Services.  The Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## Emergency Consideration

26.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Failure to receive the relief requested in this motion during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  The Debtors have satisfied the "immediate and irreparable" harm standard in Bankruptcy Rule 6003 and request that the Court approve the relief requested on an emergency basis.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

27.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that

the Court has not authorized will be honored inadvertently. Therefore, the Debtors request that the Court authorize and direct all applicable financial institutions at the Debtors' request to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

28.      The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h), which is necessary to implement the relief requested in this motion.

**Reservation of Rights**

29.      Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested in this motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties

in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

30.    The Debtors will provide notice of this motion to the following:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the ABL Agent; (d) counsel to the RCF Agent; (e) counsel to the Ad Hoc Group of First Lien AmSurg Lenders; (f) counsel to the AmSurg 2L Group; (g) counsel to the Envision Ad Hoc Group; (h) counsel to the Unsecured Notes Group; (i) counsel to the Consenting Sponsors; (j) the United States Attorney's Office for the Southern District of Texas; (k)  the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m)  the state attorneys general for states in which the Debtors conduct business; (n) the Utility Providers; (o) Engie; (p) Hastings; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
May 15, 2023

*/s/ John R. Luze*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Nicole L. Greenblatt, P.C. (*pro hac vice* pending)
Anne G. Wallice (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          esassower@kirkland.com
                jsussberg@kirkland.com
                ngreenblatt@kirkland.com
                anne.wallice@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
John R. Luze (*pro hac vice* pending)
Annie L. Dreisbach (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
Email:          john.luze@kirkland.com
                annie.dreisbach@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Rebecca Blake Chaikin*
Rebecca Blake Chaikin

**<u>Certificate of Service</u>**

I certify that on May 15, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Rebecca Blake Chaikin*
Rebecca Blake Chaikin