**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) | Case No. 23-90342 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**EMERGENCY *EX PARTE***
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on May 15, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 15, 2023 at 4:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision. The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this emergency *ex parte* application to employ a claims, noticing, and solicitation agent (this "Application"):[2]

## **Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), authorizing the Debtors to employ Kroll Restructuring Administration LLC ("Kroll")[3] as claims, noticing, and solicitation agent (in such capacity, the "Claims and Noticing Agent") in accordance with the terms and conditions set forth in the engagement letter dated April 14, 2023 (the "Engagement Letter"), attached hereto as **Exhibit A**.  This Application is supported by the *Declaration of Benjamin J. Steele in Support of Debtors' Emergency* Ex Parte *Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent*, attached hereto as **Exhibit B** (the "Steele Declaration").

2.      Emergency consideration of this Application is requested to effectuate the Debtors' transition into bankruptcy and to immediately begin providing effective notice of pleadings and orders to interested parties.

---

[2]     Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in (a) the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* (the "Keglevic First Day Declaration") and (b) the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "Stogsdill First Day Declaration," and together with the Keglevic First Day Declaration, the "First Day Declarations").

[3]     Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.  There have not been any changes in the company's leadership, ownership, or organizational structure.

## Jurisdiction and Venue

3.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this application pursuant to 28 U.S.C. § 1334.

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Request to Employ Kroll

6.     The Debtors request approval to employ Kroll to serve as Claims and Noticing Agent in their chapter 11 cases to provide the services outlined in the Engagement Letter. The Debtors believe that Kroll's employment is in the best interest of the estates.

7.     Kroll's rates are competitive and reasonable.  Kroll has the expertise required in a complex chapter 11 case.

8.     The Debtors request this Court authorize Kroll's employment.

## Compensation

9.     The Debtors request that Kroll's fees and expenses be paid as an administrative expense in the ordinary course of the Debtors' business without further application or order of the Court.  Should a dispute develop, the matter will be brought to the Court for resolution. Kroll agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.

10.     Kroll will provide a monthly invoice to the Debtors, the Debtors' counsel, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), counsel for any official committee appointed in these chapter 11 cases, and any party-in-interest who specifically requests service of the monthly invoices.

11.     Prior to the Petition Date, the Debtors provided Kroll an advance in the amount of $100,000.  Kroll will apply these funds in accordance with the Engagement Letter.

## Indemnification

12.     The Debtors have agreed to indemnify Kroll as set forth in the Engagement Letter. Notwithstanding anything to the contrary, Kroll will not be indemnified for liability arising out of gross negligence, willful misconduct, and certain other matters identified in the proposed Order.

## Disinterestedness

13.     Kroll has reviewed its conflicts system to determine whether it has any relationships with the Debtors' creditors and parties-in-interest.  Except as disclosed in the Steele Declaration, Kroll represents that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.  To the best of the Debtors' knowledge, Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Kroll agrees that it will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

The Debtors request that the Court grant the relief requested in this Application.

Houston, Texas
May 15, 2023

*/s/ Rebecca Blake Chaikin*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Rebecca Blake Chaikin (TX Bar No. 24133055)
Vienna Anaya (TX Bar No. 24091225)
Javier Gonzalez (TX Bar No. 24119697)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:        rchaikin@jw.com
              vanaya@jw.com
              jgonzalez@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Nicole L. Greenblatt, P.C. (*pro hac vice* pending)
Anne G. Wallice (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        esassower@kirkland.com
              jsussberg@kirkland.com
              ngreenblatt@kirkland.com
              anne.wallice@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
John R. Luze (*pro hac vice* pending)
Annie L. Dreisbach (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        john.luze@kirkland.com
              annie.dreisbach@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## **<u>Certificate of Service</u>**

This Application is being filed *ex parte*.  Service will only occur by notice on the Court's CM/ECF system.

/s/ *Rebecca Blake Chaikin*
Rebecca Blake Chaikin

## Exhibit A

**Engagement Letter**



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of April 14, 2023, between Kroll Restructuring Administration LLC ("***Kroll***") and Envision Healthcare Corporation (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

   (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll will provide a discount of 10% off the attached hourly rates.  The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 20 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $100,000.00. Kroll may use such advance against unpaid fees and expenses hereunder. Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5. **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Kroll's agreement with financial institutions, Kroll may receive compensation from such institutions for the services Kroll provides pursuant to such agreement.

7. **Term and Termination**

   (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

   (b) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

   (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

   (d) If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8. **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

DocuSign Envelope ID: AD7E2728-F35C-4A7A-85C3-AC532E04CA42



9. **Indemnification**

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

(a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

### 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

### 13. Force Majeure

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

### 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

### 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17. <u>Effectiveness of Counterparts</u>**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18. <u>Notices</u>**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
|  | 55 East 52nd Street, 17th Floor |
|  | New York, NY 10055 |
|  | Attn:    Legal Department |
|  | Tel:      (212) 257-5450 |
|  | Email:   Legal@kbs.kroll.com |
|  |  |
| If to the Company: | Envision Healthcare Corporation |
|  | 1A Burton Hills Blvd. |
|  | Nashville, TN 37215-6187 |
|  | Attn: Ilene Moore |
|  | Tel: (303) 263-6278 |
|  | Email: Ilene.Moore@envisionhealth.com |
|  |  |
| With a copy to: | Kirkland & Ellis LLP |
|  | 601 Lexington Avenue |
|  | New York, NY 10022 |
|  | Attn: Joshua Sussberg |
|  | Tel: (212) 446-4800 |
|  | Email: jsussberg@kirkland.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By: Shira Weiner
Title: General Counsel

**Envision Healthcare Corporation**

By: Ilene Moore
Title: General Counsel



# R A T E S

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

| Claim and Noticing Rates | |
|---|---|
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 - $195 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106

DocuSign Envelope ID: AD7E2728-F35C-4A7A-85C3-AC532E04CA42



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

### Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
| --- | --- |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106

**Exhibit B**

**Steele Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVISION HEALTHCARE CORPORATION, *et al.*, [1] | ) ) ) | Case No. 23-90342 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) ) | |

**DECLARATION OF BENJAMIN J. STEELE**
**IN SUPPORT OF DEBTORS' EMERGENCY *EX PARTE***
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT**

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.      I am a Managing Director at Kroll Restructuring Administration LLC ("Kroll"),[2] a chapter 11 administrative services firm whose headquarters are located at 55 East 52nd Street, 17th Floor, New York, NY 10055.  Except as otherwise noted in this declaration (this "Declaration"), I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently as follows.

2.      I submit this Declaration in support of the *Emergency Ex Parte Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent*, filed contemporaneously

---

[1]     A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision.   The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

[2]     Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.  There has not been any change in the company's leadership, ownership, or organizational structure.

herewith (the "Application") by the above-captioned debtors and debtors in possession (collectively, the "Debtors").[3]

3.      Kroll represents the following:

(a)      Kroll, its members, and its employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b)      Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)      by accepting employment in these chapter 11 cases, Kroll waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)      in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)      Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)      Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)      in its capacity as Claims and Noticing Agent in these chapter 11 cases, Kroll will not intentionally misrepresent any fact to any person;

(h)      Kroll shall be under the supervision and control of the Office of the Clerk of the Bankruptcy Court (the "Clerk") with respect to the receipt and recordation of claims and claim transfers;

(i)      Kroll will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)      none of the services provided by Kroll as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

---

[3]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

4.      I caused to be submitted for review by our conflicts system the names of potential parties in interest in these chapter 11 cases.  The results of the conflicts check were compiled and reviewed by Kroll professionals under my supervision.  Kroll is not aware of any connection that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly file a supplemental declaration.

5.      To the best of my knowledge, and except as provided herein, neither Kroll nor any of its professionals have any materially adverse connection to the Debtors, their creditors, or other relevant parties in interest.  Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

6.      Kroll discloses the following connections, each of which Kroll believes does not present an interest adverse to the Debtors:

- I was previously an associate at Kirkland & Ellis LLP ("K&E"), counsel to the Debtors in these chapter 11 cases.  In addition, Brad Weiland, a Managing Director of Kroll, was previously a partner at K&E.  I left K&E in August 2013, and Mr. Weiland left K&E in November 2021.  Neither I nor Mr. Weiland worked on any matters involving the Debtors while employed by K&E.

- I understand that K&E has represented and currently represents Kroll in matters unrelated to the Debtors and these chapter 11 cases.  I do not believe that these connections preclude Kroll from meeting the disinterestedness standard under the Bankruptcy Code.

- Jessica Stamelman, Kroll's divisional President, was previously an associate at The Carlyle Group Employee Co., L.L.C., an affiliate of The Carlyle Group ("Carlyle").  Certain funds managed by Carlyle are lenders in these chapter 11 cases.  Ms. Stamelman left Carlyle in December 2019 and did not work on any matters involving the Debtors while at Carlyle.

- Shira D. Weiner is General Counsel of Kroll and its divisional affiliates.  Ms. Weiner was formerly an associate at Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel to a group of lenders to the Debtors in these chapter 11

cases.  Ms. Weiner left Gibson Dunn in April 2017.  Ms. Weiner did not work on any matters involving the Debtors during her time at Gibson Dunn.  Additionally, Ms. Weiner's husband, Marc Penziner, is a principal at Bernstein Global Wealth Management ("BGWM"), the private wealth management division of AllianceBernstein L.P., a lender in these cases.  The business of BGWM is focused on investment research and management and BGWM does not engage in investment banking or proprietary trading, nor does it have any overlap with, involvement in, or discretion over, portfolio/fund investment decisions.  Ms. Weiner's role is primarily administrative and she does not generally work on any of the firm's cases.

- Georgia Faust, a Director at Kroll, was formerly a paralegal at Kasowitz Benson Torres LLP ("Kasowitz"), one of the Debtors' vendors.  Ms. Faust left Kasowitz in 2010 and did not work on any matters involving the Debtors during her time at Kasowitz.

- Adam Adler, a Managing Director at Kroll, was previously an associate at Fried Frank Harris Shriver & Jackson LLP ("Fried Frank"), one of the Debtors' vendors.  Mr. Adler left Fried Frank in 2006.  Mr. Adler did not work on any matters involving the Debtors during his time at Fried Frank.

- Oleg Bitman, a Senior Consultant at Kroll, was previously an associate at at Baker & Hostetler LLP ("Baker"), one of the Debtors' vendors and ordinary course professionals.  Mr. Bitman left Baker in 2016.  Mr. Bitman did not work on any matters involving the Debtors during his time at Baker.  Additionally, Eric Usitalo, a director at Kroll, is the spouse of Michelle Usitalo.  Ms. Usitalo is a partner at Baker & Hostetler.

- Robert DeStefano, an associate at Kroll, was formally an analyst at Ducera Partners LLC ("Ducera"), investment banker to certain lenders of the Debtors in these chapter 11 cases.  Mr. DeStefano left Ducera in January 2021 and did not work on any matters involving the Debtors during his time at Ducera.  Mr. DeStefano's role at Kroll is purely administrative and, as such, he does not work on any of the firm's cases.

- Heidi Stern, Chief Financial Officer for Kroll and its divisional affiliates, and Diana Shih, Controller at Kroll, were formerly associates at PWC, one of the Debtors' vendors.  Ms. Stern and Ms. Shih left PWC in 2011.  Neither Ms. Stern nor Ms. Shih worked on any matters involving the Debtors during their time at PWC.

- Jordan Searles, a Director at Kroll, was previously an audit associate at KPMG US LLP ("KPMG"), one of the Debtors' professionals.  Mr. Searles left KPMG in 2014.  Mr. Searles did not work on any matters involving the Debtors during his time at KPMG.

- Stacey Corr-Irvine, a Director at Kroll, was formally a partner at Jones Day, one of the Debtors' vendors. Ms. Corr-Irvine left Jones Day in 2020. Ms. Corr-Irvine did not work on any matters involving the Debtors during her time at Jones Day. Mrs. Corr-Irvine's husband is a Vice President of Fixed Income Finance at JP Morgan Chase Bank, N.A., one of the Debtors' banks.  Mr. Irvine's role is administrative in nature, and he is not involved in any investment decisions.

- RSM US LLP is listed on the Potential Parties in Interest List as an ordinary course professional.  RSM US LLP also provides certain tax advisory services to Kroll.

- Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent").  Kroll Parent is the world's premier provider of services and digital products related to governance, risk and transparency.  Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent.  As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders.  Kroll Parent is not currently identified on the Potential Parties in Interest list, but Kroll makes this disclosure out of an abundance of caution.

- Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data or under which Kroll would be compensated for claims data made available by Kroll.

7.     I believe Kroll is a "disinterested person" as the term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:  May 15, 2023

/s/  Benjamin J. Steele
Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC
55 East 52nd Street, 17th Floor
New York, NY 10055