# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | Case No. 23-90342 (CML) |
| | (Jointly Administered Requested) |
| Debtors. | |
| | **Re:    Docket No. 18** |

**INTERIM ORDER
(I) AUTHORIZING THE AMSURG DEBTORS TO UTILIZE
CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION TO THE AMSURG SECURED PARTIES,
(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING
A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of Envision Healthcare Corporation ("Envision"), and each of its affiliates that are debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 1075-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules and Procedure for the United States Bankruptcy Court for the Southern District of Texas (the "Local

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision.   The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37013.

[2]   Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to them in (a) the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* (the "Keglevic First Day Declaration") and (b) the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors' Emergency Motion for Entry of an Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "Stogsdill First Day Declaration," and together with the Keglevic First Day Declaration, the "First Day Declarations").

Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "Court"), seeking entry of an interim order (this "Interim Order"), among other things:

(a)    authorizing the AmSurg Debtors  to use "cash collateral" as that term is defined in section 363 of the Bankruptcy Code, which shall include, but not be limited to, all proceeds of the Prepetition AmSurg Collateral held by any of the AmSurg Debtors and any and all cash of any kind, whether in reserve accounts, blocked accounts, or otherwise, including, without limitation, and prepetition and postpetition cash and cash equivalents held by the AmSurg Debtors, in which the AmSurg Secured Parties have Prepetition AmSurg Liens  or other interests (the "AmSurg Cash Collateral");

(b)    providing adequate protection, as and to the extent set forth herein, to the AmSurg Secured Parties to protect against any Diminution in Value of their respective interests in the Prepetition AmSurg Collateral (including AmSurg Cash Collateral);

(c)    modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise to the extent necessary or appropriate to implement and effectuate the terms and provisions of this Interim Order, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, and providing for the immediate effectiveness of this Interim Order;

(d)    approval, subject to sections R and S hereof, of certain stipulations, and waivers by the AmSurg Debtors with respect to, *inter alia*, the Prepetition AmSurg Debt Documents, the Prepetition AmSurg Liens, and the Prepetition AmSurg Secured Obligations;

(e)    subject to the provisions set forth herein, waiver of the Debtors' (i) rights to surcharge any Prepetition AmSurg Collateral pursuant to section 506(c) of the Bankruptcy Code as to the AmSurg Secured Parties, and (ii) rights under the "equities of the case" exception under section 552(b) of the Bankruptcy Code as to the AmSurg Secured Parties; *provided*, that the foregoing waiver shall be without prejudice to any provisions in the final order (the "Final Order");

(f)    waiving the equitable doctrine of "marshaling" and other similar doctrines to the extent set forth herein; *provided*, that the foregoing waiver shall be without prejudice to any provisions of the Final Order;

(g)    scheduling, pursuant to Bankruptcy Rule 4001 and the Complex Case Procedures, a final hearing (the "Final Hearing") on the Motion, if

necessary, to consider entry of the Final Order authorizing the relief requested in the Motion on a final basis, which order shall be in form and substance and on terms acceptable in all respects to each of the Required Consenting AmSurg Lenders,[3] and approving the form of notice with respect to the Final Hearing, if any.

The Court, having considered the Motion, the exhibits attached thereto, the First Day Declarations, the evidence submitted and arguments proffered or adduced at the Interim Hearing held before this Court on May 15, 2023, and upon the record of the Chapter 11 Cases; and adequate notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules and Complex Case Procedures; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the AmSurg Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the AmSurg Debtors and their estates, represents a sound exercise of the AmSurg Debtors' business judgment, and is necessary for the continued operation of the AmSurg Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

---

[3]   Solely for purposes of this Interim Order and without prejudice to any rights in the Prepetition AmSurg Intercreditor Agreements, the "Required Consenting AmSurg Lenders" shall mean (a) the Required Revolving Lenders (as defined in the AmSurg Revolving Credit Agreement (as defined herein), (b) the Ad Hoc Group of First Lien AmSurg Lenders, and (c) the holders of, or investment advisors, sub-advisors or managers of funds or discretionary accounts that hold, at least 50.01% of the aggregate outstanding principal amount of the Second Lien Term Loans.

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**A.      The Petition Date.**

1.      On May 15, 2023 (the "Petition Date"), each of the AmSurg Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

**B.      Debtors in Possession.**

2.      The AmSurg Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of these Chapter 11 Cases.

**C.      Committee Formation.**

3.      As of the date hereof, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

**D.      Jurisdiction and Venue.**

4.      This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Local Bankruptcy Rules 1075-1, 2002-1, 4001-1(b), 4002-1, and 9013-1.

**E.      Debtors' Stipulations.**

5.      In requesting the use of the AmSurg Cash Collateral, and in exchange for and as a material inducement to the consent (and deemed consent) of the AmSurg Secured Parties (as defined below) to the use of their AmSurg Cash Collateral, the Debtors, for themselves, their

estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows, subject to sections R and S of this Interim Order:

(a)    **AmSurg RCF Facility.**

(i)    **AmSurg RCF Credit Agreement.**  On July 20, 2022, AmSurg HoldCo, LLC, as holdings, AmSurg, LLC, as borrower, and the guarantors from time to time party thereto, entered into that certain Revolving Credit Agreement (the "AmSurg Revolving Credit Agreement") with Credit Suisse AG, Cayman Islands Branch, as administrative agent and collateral agent (the "AmSurg RCF ~~Facility~~ Agent"), and the lenders from time to time party thereto (together with the AmSurg RCF ~~Facility~~ Agent, the "AmSurg RCF Secured Parties"), providing for a first-out-first priority senior secured revolving credit facility (the "AmSurg RCF Facility", such loans, the "AmSurg RCF Loans").  The AmSurg RCF Loans are guaranteed by AmSurg Holdco, LLC and all of its direct or indirect wholly-owned subsidiaries that are Debtors (collectively, the "AmSurg Guarantors" and, together with AmSurg, LLC, collectively, the "AmSurg Debtors").[5] The AmSurg Revolving Credit Agreement provides for a first-out, first priority revolving credit facility with maximum commitments of $300 million with a maturity of July 20, 2026.

(ii)    **AmSurg RCF Obligations.**  As of the Petition Date, AmSurg, LLC and the AmSurg Guarantors were jointly and severally, justly and lawfully indebted and liable to the AmSurg RCF Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $301 million on account of loans outstanding under the AmSurg RCF Facility, *plus* accrued but unpaid interest, reimbursement obligations, fees, costs, premiums, expenses (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, in each case, to the extent provided in the AmSurg Revolving Credit Agreement, (collectively, the "Prepetition AmSurg RCF Obligations"), which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against the applicable AmSurg Debtor's estate.

(iii)    **AmSurg RCF Liens.**  To secure the Prepetition AmSurg RCF Obligations, each of AmSurg, LLC and the AmSurg Guarantors granted to the AmSurg RCF ~~Facility~~ Agent, for the benefit of the AmSurg RCF Secured Parties, properly perfected continuing first-out, first priority liens and mortgages on, and security interests in (the "AmSurg RCF Liens") the "Collateral" as defined in the AmSurg Revolving Credit Agreement (the "Prepetition AmSurg Collateral").

(b)    **AmSurg First Lien Term Loan.**

(i)    **AmSurg First Lien Term Loan Credit Agreement.**  On April 29, 2022, AmSurg HoldCo, LLC, as holdings, AmSurg, LLC, as borrower, and the guarantors from time to time party thereto, entered into that certain Credit Agreement (as

---

[5]    The "EVPS Debtors" shall mean all Debtors in these Chapter 11 Cases except for the AmSurg Debtors.

amended, the "AmSurg First Lien Term Loan Credit Agreement") with Alter Domus (US) LLC, as administrative agent and collateral agent (the "AmSurg First Lien Term Loan Facility Agent"), and the lender parties thereto providing for a senior secured term loan facility in the initial aggregate principal amount of $1.1 billion (the "AmSurg First Lien Term Loan") and from August 15, 2022 to January 23, 2023, such parties entered into a series of amendments, establishing incremental senior secured term loan facilities totaling $250 million aggregate principal amount, each of which form a single tranche with the AmSurg First Lien Term Loan (the "AmSurg First Lien Incremental Loan Facility" and, together with the AmSurg First Lien Term Loan, the "AmSurg First Lien Credit Facilities", and the lenders thereunder, together with the AmSurg First Lien Credit Facility Agent, the "AmSurg First Lien Term Loan Secured Parties"). The AmSurg First Lien Credit Facilities are guaranteed by each of the AmSurg Guarantors. The Prepetition AmSurg First Lien Term Loan Obligations (as defined herein) mature on April 29, 2027.

(ii)     **AmSurg First Lien Term Loan Obligations.** As of the Petition Date, AmSurg, LLC and the AmSurg Guarantors were jointly and severally, justly and lawfully indebted and liable to the AmSurg First Lien Term Loan Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $1.358 billion on account of loans outstanding under the AmSurg First Lien Credit Facilities, *plus* accrued but unpaid interest, reimbursement obligations, fees, costs, premiums, expenses (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, in each case, to the extent provided in the AmSurg First Lien Term Loan Credit Agreement, (collectively, the "Prepetition AmSurg First Lien Term Loan Obligations"), which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against the applicable AmSurg Debtor's estate.

(iii)     **AmSurg First Lien Term Loan Liens.** To secure the Prepetition AmSurg First Lien Term Loan Obligations, each of AmSurg, LLC and the AmSurg Guarantors granted to the AmSurg First Lien Term Loan Facility Agent, for the benefit of the AmSurg First Lien Term Loan Secured Parties, properly perfected continuing first priority liens and mortgages on, and security interests in (the "AmSurg First Lien Term Loan Liens") the Prepetition AmSurg Collateral, subject to the Prepetition AmSurg First-Out Lien Intercreditor Agreement.

(c)     **AmSurg Second Lien Term Loan.**

(i)     **AmSurg Second Lien Term Loan Credit Agreement.** On April 29, 2022, AmSurg HoldCo, LLC, as holdings, AmSurg, LLC, as borrower and the guarantors from time to time party thereto, entered into that certain credit agreement (the "AmSurg Second Lien Term Loan Credit Agreement", together with the AmSurg Revolving Credit Agreement, and the AmSurg First Lien Term Loan Credit Agreement, the "Prepetition AmSurg Debt Documents") with Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent (the "AmSurg Second Lien Term Loan Facility Agent", and together with the AmSurg RCF ~~Facility~~ Agent, and AmSurg First Lien Term Loan Facility Agent, the "AmSurg Administrative Parties"), and the lender parties thereto (together with the AmSurg Second Lien Term Loan Facility Agent, the "AmSurg Second Lien Secured Parties", and together with the AmSurg RCF Secured

Parties, AmSurg First Lien Term Loan Secured Parties, the "AmSurg Secured Parties"), providing for a senior secured term loan facility (the "AmSurg Second Lien Credit Facility", such loans, the "AmSurg Second Lien Term Loans"). The AmSurg Second Lien Term Loan is guaranteed by each of the AmSurg Guarantors. The Prepetition AmSurg Second Lien Term Loan Obligations (as defined herein) mature on April 28, 2028.

        (ii)    **AmSurg Second Lien Term Loan Obligations.** As of the Petition Date, AmSurg, LLC and the AmSurg Guarantors were jointly and severally, justly and lawfully indebted and liable to the AmSurg Second Lien Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $1.493 billion on account of loans outstanding under the AmSurg Second Lien Credit Facility, *plus* accrued but unpaid interest, reimbursement obligations, fees, costs, premiums, expenses (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, in each case, to the extent provided in the AmSurg Second Lien Term Loan Credit Agreement, (collectively, the "Prepetition AmSurg Second Lien Term Loan Obligations", and together with the Prepetition AmSurg RCF Obligations, and the Prepetition AmSurg First Lien Term Loan Obligations, the "Prepetition AmSurg Secured Obligations"), which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against the applicable AmSurg Debtor's estate.

        (iii)    **AmSurg Second Lien Term Loan Liens.** To secure the Prepetition AmSurg Second Lien Term Loan Obligations, each of Amsurg, LLC and the AmSurg Guarantors granted to the AmSurg Second Lien Term Loan Facility Agent, for the benefit of the AmSurg Second Lien Secured Parties, properly perfected continuing second priority liens and mortgages on, and security interests in (the "AmSurg Second Lien Term Loan Liens", and together with the AmSurg RCF Liens, and the AmSurg First Lien Term Loan Liens, the "Prepetition AmSurg Liens") the Prepetition AmSurg Collateral, subject to the AmSurg RCF Liens and the AmSurg First Lien Term Loan Liens.

(d)      **Relative Priority of Prepetition AmSurg Liens Under, and Enforceability of, the Prepetition AmSurg Intercreditor Agreements.**

(i)      **AmSurg First-Out First Lien Intercreditor Agreement.**  The Amsurg RCF ~~Facility~~ Agent, AmSurg First Lien Term Loan Facility Agent, AmSurg HoldCo, LLC, as holdings, AmSurg, LLC, and the AmSurg Guarantors are party to that certain First-Out First Lien Intercreditor Agreement, dated as of July 20, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition AmSurg First-Out First Lien Intercreditor Agreement"), which sets forth the relative lien priorities and other rights and remedies of the AmSurg RCF Secured Parties and the AmSurg First Lien Term Loan Secured Parties with respect to, among other things, the Prepetition AmSurg Collateral. The Prepetition AmSurg First-Out First Lien Intercreditor Agreement is binding and enforceable against the parties thereto in accordance with its terms.

(ii)      **AmSurg First Lien-Second Lien Intercreditor Agreement.**  The AmSurg Administrative Parties, AmSurg, LLC, and the AmSurg Guarantors are party to that certain Intercreditor Agreement, dated as of April 29, 2022 (as amended, restated, amended and restated, supplemented (including by the Joinder Agreement dated July 20, 2022 pursuant to which the AmSurg RCF ~~Facility~~ Agent became party thereto), or otherwise modified from time to time prior to the Petition Date, the "Prepetition AmSurg First Lien-Second Lien Intercreditor Agreement", and together with the Prepetition AmSurg First-Out First Lien Intercreditor Agreement, the "Prepetition AmSurg Intercreditor Agreements"), which sets forth the relative lien priorities and other rights and remedies of the AmSurg Secured Parties with respect to, among other things, the Prepetition AmSurg Collateral. The Prepetition AmSurg First Lien-Second Lien Intercreditor Agreement is binding and enforceable against the parties thereto in accordance with its terms.

(e)     **Validity and Enforceability of Prepetition AmSurg Secured Obligations**.  The Prepetition AmSurg Secured Obligations constitute the legal, valid and binding obligations of the AmSurg Debtors, as applicable, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (A) no portion of the Prepetition AmSurg Secured Obligations and no amounts paid or payments made at any time to the AmSurg Secured Parties in respect of or applied to the Prepetition AmSurg Secured Obligations, the Prepetition AmSurg Debt Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, disgorgement, reduction, disallowance, recovery or subordination, challenge or any other claim or cause of action of any kind or nature whatsoever, whether pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (B) the AmSurg Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Prepetition AmSurg Secured Obligations or the Prepetition AmSurg Debt Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable non-bankruptcy law against the AmSurg Secured Parties, and each of their respective Representatives (as defined herein), and (C) the Prepetition AmSurg Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against the respective estates of the AmSurg Debtors.

(f)     **Validity and Enforceability of Prepetition AmSurg Liens.**  The Prepetition AmSurg Liens (A) have been properly recorded and are valid, binding, enforceable, non avoidable and fully perfected liens and security interests in the Prepetition AmSurg Collateral, (B) are not subject to any offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination (whether equitable, contractual, or otherwise), recharacterization, disgorgement, disallowance, avoidance, challenge or any other claim or cause of action of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or other applicable law, (C) were granted to or for the benefit of the AmSurg Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations or consideration secured or obtained thereby, (D) as of the Petition Date, are senior with priority over any and all other liens and security interests in the Prepetition AmSurg Collateral, subject only to (x) valid, non-avoidable liens permitted to be senior to the respective Prepetition AmSurg Liens under the applicable Prepetition AmSurg Debt Documents that were properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), in each case, to the extent such permitted liens are senior to the

Prepetition AmSurg Liens (the "Permitted Prior Senior Liens")[6] and (y) the relative rights and priorities set forth in the Prepetition AmSurg Intercreditor Agreements.

(g)     **No Control.**  None of the AmSurg Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order or the Prepetition AmSurg Debt Documents.

(h)     **No Claims, Defenses, or Causes of Action.**  As of the date hereof, there exist no claims, cross-claims, counterclaims, defenses or causes of action, including claims and Causes of Action[7] arising under chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "Avoidance Actions") or actions for recovery, recoupment, offset, setoff, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), or disgorgement, against any of the AmSurg Secured Parties or their Representatives with respect to, in connection with, related to, or arising from the Prepetition AmSurg Secured Obligations or any of the Prepetition AmSurg Debt Documents, any action or conduct of any Prepetition Secured Party in respect thereof, or any of the transactions contemplated thereunder, that may be asserted by any of the Debtors, their respective estates, or any other person or entity.  Each of the AmSurg Debtors and their estates irrevocably waives, for itself and its subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validation, priority, or enforceability of the Prepetition AmSurg Secured Obligations, the Prepetition AmSurg Debt Documents, and the Prepetition AmSurg Liens.

(i)     **AmSurg Cash Collateral**.  Any and all of the AmSurg Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located (including,

---

[6]   Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Senior Lien is valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the AmSurg Secured Parties, and the Official Committee (if any), in each case to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Senior Lien and/or security interests.  For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Senior Lien.

[7]   As used in this Interim Order, "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

without limitation, all cash or cash equivalents in the control of or on deposit or maintained by any of the AmSurg Debtors in any account or accounts, any amounts generated by the sale or other disposition of Prepetition AmSurg Collateral, and all income, proceeds, products, rents or profits of any Prepetition AmSurg Collateral, constitutes AmSurg Cash Collateral.

(j)      **Default.**  The AmSurg Debtors are in default under each of the Prepetition AmSurg Debt Documents, including as a result of the Chapter 11 Cases, and an event of default has occurred and is continuing under each of the Prepetition AmSurg Debt Documents.

**F.      Findings Regarding Use of AmSurg Cash Collateral.**

6.      *Good Cause*.  Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the AmSurg Debtors to use AmSurg Cash Collateral as set forth herein.

7.      *Need for Use of AmSurg Cash Collateral*.  The AmSurg Debtors seek authority on an interim basis to continue to use their respective Prepetition AmSurg Collateral (including AmSurg Cash Collateral) on the terms described herein in order to, among other things:  (a) to permit the orderly continuation of the operation of their businesses; (b) to pay the costs, fees, and expenses of administration of the Chapter 11 Cases of the AmSurg Debtors and claims and amounts relating to the AmSurg Debtors approved by this Court in the "first" and "second" day orders or as required under the Bankruptcy Code; (c) fund the AmSurg Debtors' general corporate and working capital purposes; (d) pay adequate protection payments to the AmSurg Secured Parties to the extent set forth herein; and (e) to fund the Carve Out (as defined herein) in accordance with this Interim Order, in each case, subject to the terms and conditions set forth herein (including the Approved Budget (subject to Permitted Budget Variances)).  The AmSurg Debtors' access to sufficient working capital and liquidity through the use of their respective AmSurg Cash Collateral and other Prepetition AmSurg Collateral is necessary and vital to preserve and maintain the going concern values of the AmSurg Debtors.  The terms of this Interim Order are fair and reasonable, reflect the AmSurg Debtors' exercise of their prudent

business judgment, and are supported by reasonably equivalent value and fair consideration. Absent the ability to continue to use the AmSurg Cash Collateral upon the terms set forth herein, the AmSurg Debtors and their estates will be seriously and irreparably harmed.

8.      *Use of AmSurg Cash Collateral.*  As a condition to providing their consent to use AmSurg Cash Collateral, each of the AmSurg Secured Parties require, and the AmSurg Debtors have agreed, that the AmSurg Cash Collateral will be used solely for the purposes permitted in and in accordance with the terms of the Approved Budget (subject to Permitted Budget Variances) and this Interim Order, including, without limitation, (a) to pay the costs of administration of the Chapter 11 Cases of the AmSurg Debtors and claims or amounts related to the AmSurg Debtors approved by this Court in the "first" and "second" day orders reasonably acceptable to the Required Consenting AmSurg Lenders, (b) for the AmSurg Debtors' general corporate and working capital purposes, (c) to pay adequate protection payments in this Interim Order, and (d) to fund the Carve Out in accordance with this Interim Order.

9.      *Adequate Protection.*  As adequate protection against any diminution in value of the AmSurg Secured Parties' respective liens and security interests in the Prepetition AmSurg Collateral (including AmSurg Cash Collateral) from and after the Petition Date resulting from, among other things, (a) the use, sale or lease by the AmSurg Debtors of such collateral, (b) the market value decline of such collateral, (c) the aggregate amount of AmSurg Cash Collateral used by each of the AmSurg Debtors on a dollar-for-dollar basis, (d) the imposition of the automatic stay, (e) the subordination of their Prepetition AmSurg Liens and Prepetition AmSurg Secured Obligations to the Carve Out upon the terms set forth herein, and (f) any other act or omission which causes diminution in the value of their respective interests in the Prepetition AmSurg Collateral (collectively, and to the fullest extent permitted under the Bankruptcy Code, the "Diminution in Value"), the AmSurg Secured Parties are entitled to adequate protection

pursuant to sections 361, 362, and 363 of the Bankruptcy Code as set forth in this Interim Order; *provided, however*, that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the AmSurg Secured Parties for the use of their AmSurg Cash Collateral or other Prepetition AmSurg Collateral other than on the terms expressly set forth in this Interim Order, (y) be construed as a consent by any party to the terms of any financing or any other lien encumbering the Prepetition AmSurg Collateral (whether senior or junior) (except for the AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims (each as defined herein), and the Carve Out), or (z) prejudice, limit or otherwise impair the rights of any of the AmSurg Secured Parties to seek new, different or additional adequate protection. Based on the Motion, the First Day Declarations, and other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing, the terms of the adequate protection arrangements and of the use of Prepetition AmSurg Collateral (including AmSurg Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition AmSurg Collateral (including AmSurg Cash Collateral).

10.     *Consent*.  The AmSurg Secured Parties have consented to or are deemed to have consented, pursuant to the provisions of the Prepetition AmSurg Debt Documents, to the AmSurg Debtors' use of the Prepetition AmSurg Collateral (including AmSurg Cash Collateral), solely in accordance with and subject to the terms and conditions of this Interim Order.

11.     *Limitation on Charging Expenses Against Collateral*.  As a material inducement and in exchange for (a) the AmSurg Secured Parties' agreement to subordinate their respective Prepetition AmSurg Liens to the Carve Out and (b) the AmSurg Secured Parties' consent (or deemed consent) to the use of the AmSurg Cash Collateral, in each case, in accordance with the terms and conditions of this Interim Order, except to the extent of the Carve Out, no costs or

expenses of administration of these Chapter 11 Cases or any Successor Cases (as defined herein), shall be charged against or recovered from the Prepetition AmSurg Collateral (including AmSurg Cash Collateral) or the AmSurg Adequate Protection Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of each AmSurg Administrative Party that holds a lien on the relevant asset (email shall suffice), and no such consent shall be implied from any other action, inaction, or acquiescence by any of the AmSurg Administrative Parties or other AmSurg Secured Parties; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following the entry of such Final Order.

12. *No Marshaling.* Except to the extent of the Carve Out, in no event shall the AmSurg Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition AmSurg Collateral or the Prepetition AmSurg Secured Obligations; *provided* that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order.  In no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the AmSurg Secured Parties or the Prepetition AmSurg Collateral, or the AmSurg Adequate Protection Collateral, or, in each case, or any proceeds, products, offspring, or profits therefrom; *provided* that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order.

13. *Proper Exercise of Business Judgment.*  Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, (a) the terms of adequate protection granted to the AmSurg Secured Parties, (b) the terms on which the AmSurg Debtors may continue to use the Prepetition AmSurg Collateral (including the AmSurg Cash Collateral), and (c) the AmSurg Cash Collateral arrangements described herein pursuant to this

Interim Order, (i) are fair, reasonable, and the best available to the AmSurg Debtors under the circumstances; (ii) reflect the AmSurg Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and fair consideration.  The use of the Prepetition AmSurg Collateral (including the AmSurg Cash Collateral) was negotiated in good faith and at arm's length among the AmSurg Debtors and the AmSurg Secured Parties.

14.     *Good Faith of AmSurg Secured Parties*.  The AmSurg Secured Parties have acted in good faith regarding the AmSurg Debtors' continued use of the Prepetition AmSurg Collateral (including the AmSurg Cash Collateral) to fund the administration of the AmSurg Debtors' estates and the continued operation of their businesses in accordance with the terms hereof, and the incurrence and payment of the AmSurg Adequate Protection Claims (as defined below), security interests and liens, and other rights, benefits and protections granted to the AmSurg Secured Parties (and their successors and assigns thereof) pursuant to this Interim Order, and the AmSurg Secured Parties shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

15.     *Initial Budget*.  The AmSurg Debtors have prepared, in form and substance acceptable to the Required Consenting AmSurg Lenders, and delivered to the AmSurg Secured Parties the initial 13-week cash disbursements and receipts budget set forth on **Exhibit 1** attached hereto (the "Initial Budget").  The Initial Budget is an integral part of this Interim Order, and the AmSurg Secured Parties are relying, in part, upon the AmSurg Debtors' agreement to comply, subject to Permitted Budget Variances, with the Initial Budget (as updated by the AmSurg Debtors and approved by the Required Consenting AmSurg Lenders from time to time pursuant to and in accordance with the terms hereof, the "Approved Budget"), in accordance

with the terms hereof, to allow the AmSurg Debtors to use the AmSurg Cash Collateral subject to the terms of this Interim Order.

16.     *Notice*.   Proper, timely, adequate, and sufficient notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

17.     *Relief Essential*.   The Court concludes that entry of this Interim Order is necessary to avoid immediate and irreparable harm, and is in the best interests of the AmSurg Debtors' estates, and is necessary, essential, and appropriate for the continued operation of the AmSurg Debtors' businesses and the management and preservation of their assets and properties.

**NOW THEREFORE,** based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

**G.     Motion Approved.**

18.     The Motion is hereby granted on an interim basis in accordance with and subject to the terms and conditions of this Interim Order.  Any objections or other statements to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby overruled.

**H.     Use of AmSurg Cash Collateral.**

19.     The use of proceeds of the Prepetition AmSurg Collateral (including AmSurg Cash Collateral) by the AmSurg Debtors, is authorized and approved, solely in the manner and for the purposes expressly permitted under this Interim Order, including the Approved Budget

(subject to Permitted Budget Variances), including, without limitation: (a) to pay the costs of administration of the Chapter 11 Cases of the AmSurg Debtors and claims or amounts relating to the AmSurg Debtors approved by this Court in the "first" and "second" day orders or as required under the Bankruptcy Code; (b) for the AmSurg Debtors' general corporate and working capital purposes, in accordance with the Approved Budget and subject to Permitted Budget Variances; (c) pay adequate protection payments to the AmSurg Secured Parties to the extent set forth herein; and (d) to fund the Carve Out in accordance with this Interim Order. For the avoidance of doubt, none of the AmSurg Debtors will use any proceeds of the Prepetition AmSurg Collateral (including AmSurg Cash Collateral) in a manner or for a purpose other than those consistent with the Approved Budget (subject to Permitted Budget Variances) and this Interim Order. Additionally, for the avoidance of doubt, AmSurg LLC, in its capacity as Intercompany Secured Party under the Intercompany Credit Agreement[8] and the Intercompany Loan Agent, shall not amend or grant any consent with respect to the EVPS Interim Order without the prior written consent of the Required Consenting AmSurg Lenders.

20.    None of the AmSurg Secured Parties shall have any obligation or responsibility to monitor any AmSurg Debtors' use of the AmSurg Cash Collateral, and each AmSurg Secured Party may rely upon each AmSurg Debtors' representations that the use of the proceeds of the AmSurg Cash Collateral is in accordance with the requirements of this Interim Order.

21.    This Interim Order shall constitute valid, binding, enforceable, and non-avoidable obligation of each of the Debtors, and shall be fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or

---

[8]    "Intercompany Credit Agreement" shall mean that certain Credit Agreement dated April 29, 2022, among Enterprise Intermediate Holdings Inc., as Holdings, Envision Healthcare Corporate, as borrower, AmSurg, LLC, as lender (in such capacity, the "Intercompany Secured Party"), the guarantors from time to time party thereto, and Wilmington Savings Fund Society, SB, as the administrative agent and collateral agent (the "Intercompany Loan Agent").

trustee appointed in any of these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of these Chapter 11 Cases or any such successor cases (collectively, the "Successor Cases"), and their creditors and other parties in interest, in each case, in accordance with the terms thereof and this Interim Order.  Subject to this Interim Order and after the expiration of the Remedies Notice Period (as defined herein), the use of the AmSurg Cash Collateral shall automatically cease upon the occurrence of a Termination Event (as defined herein).  No obligation, payment, transfer, or grant of security under this Interim Order to the AmSurg Secured Parties shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, avoidance, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law.

## I.     AmSurg Adequate Protection Claims and Liens.

22.     **Adequate Protection for AmSurg Secured Parties.**  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the AmSurg Debtors hereby grant the AmSurg Secured Parties adequate protection of their interests in all Prepetition AmSurg Collateral, including AmSurg Cash Collateral, to the extent of any Diminution in Value of the AmSurg Secured Parties' interests in the Prepetition AmSurg Collateral (including the AmSurg Cash Collateral) from and after the Petition Date as follows:

(a)     **AmSurg Adequate Protection Claims.**  Solely to the extent of any Diminution in Value in Prepetition AmSurg Collateral, the AmSurg Administrative Parties (on behalf of the applicable AmSurg Secured

Parties) shall each have allowed superpriority claims against each of the AmSurg Debtors (on a joint and several basis) as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against any of the AmSurg Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), (subject to entry of the Final Order) 506(c), 507(a) (other than 507(a)(1)), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases, any Successor Cases, or any subsequent proceedings under the Bankruptcy Code (the "AmSurg Adequate Protection Claims"), subject and subordinate to the Carve Out and, with respect to (a) the AmSurg First Lien Term Loan Secured Parties, subject and subordinate to the AmSurg Adequate Protection Claims of the AmSurg RCF Secured Parties and (b) the AmSurg Second Lien Secured Parties, subject and subordinate to the AmSurg Adequate Protection Claims of the AmSurg RCF Secured Parties and the AmSurg First Lien Term Loan Secured Parties.

(b)     **AmSurg Adequate Protection Liens.**  As security for and solely to the extent of any Diminution in Value, effective as of the Petition Date and perfected without the necessity of the execution by the AmSurg Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the AmSurg Administrative Parties, as applicable, of any AmSurg Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to each of the AmSurg Administrative Parties separately for the benefit of themselves and the applicable AmSurg Secured Parties (all property identified in clauses (i), (ii) and (iii) below being collectively referred to as the "AmSurg Adequate Protection Collateral"), subject and subordinate to the Carve Out (all such liens and security interests, the "AmSurg Adequate Protection Liens" and such AmSurg Adequate Protection Liens together with the AmSurg Adequate Protection Claims, the "AmSurg Adequate Protection Obligations").

(i)     **Liens Junior to Certain Existing Liens.**  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, tangible and intangible, real property and personal prepetition and postpetition property of each AmSurg Debtor, whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (other than property described in clauses (ii) and (iii) of this paragraph 22(b)) that is subject to a Permitted Prior Senior Lien; *provided* that, (x) the AmSurg Adequate Protection Liens of the

AmSurg RCF Secured Parties and the AmSurg First Lien Term Loan Secured Parties shall be *pari passu* as between the AmSurg RCF ~~Facility~~ Agent and the AmSurg First Lien Credit Facility Agent (but subject to the Prepetition AmSurg First-Out First Lien Intercreditor Agreement), and senior to the AmSurg Adequate Protection Liens of the Second Lien Secured Parties and (y) the AmSurg Adequate Protection Liens of the AmSurg Second Lien Term Loan Secured Parties shall be junior to the AmSurg Adequate Protection Liens of the AmSurg RCF Secured Parties and the AmSurg First Lien Term Loan Secured Parties.

(ii)    **Liens Senior to Certain Existing Liens.** Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition AmSurg Collateral (including, without limitation, all products and proceeds of Prepetition AmSurg Collateral); *provided* that such AmSurg Adequate Protection Liens shall not prime (x) the Permitted Prior Senior Liens, and (y) with respect to the AmSurg Adequate Protection Liens of the AmSurg Second Lien Secured Parties, the AmSurg RCF Liens, the AmSurg Adequate Protection Liens of the AmSurg RCF Secured Parties, the AmSurg First Lien Term Loan Liens, or the AmSurg Adequate Protection Liens of the AmSurg First Lien Term Loan Secured Parties; *provided further* that the AmSurg Adequate Protection Liens of the AmSurg RCF Secured Parties and the AmSurg First Lien Term Loan Secured Parties shall be *pari passu* (but subject to the Prepetition AmSurg First-Out First Lien Intercreditor Agreement).

(iii)    **Additional AmSurg Adequate Protection Liens**. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, (i) a valid, binding, enforceable, fully-perfected non-voidable first-priority lien on, and security interest in any unencumbered tangible and intangible, real property and personal prepetition and postpetition property of each AmSurg Debtor, whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise; and (ii) subject to entry of the Final Order (except with respect to proceeds of actions under section 549 of the Bankruptcy, the proceeds of which are subject to this paragraph upon entry of this Interim Order), a valid, binding, enforceable, fully-perfected non-voidable lien on, and security interest in, any proceeds of Avoidance Actions and the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code; *provided*, that the AmSurg Adequate Protection Liens described in this paragraph (iii) shall be (x) as between the AmSurg RCF ~~Facility~~ Agent and the AmSurg First Lien Credit Facility Agent, *pari passu* (but subject to the Prepetition AmSurg First-Out First Lien Intercreditor Agreement),

(y) with respect to the AmSurg First Lien Term Loan Secured Parties and the AmSurg RCF Secured Parties, subject to the Prepetition AmSurg First-Out First Lien Intercreditor Agreement, and (z) with respect to the AmSurg Second Lien Secured Parties, junior to the AmSurg Adequate Protection Liens of the AmSurg RCF Secured Parties and the AmSurg First Lien Secured Parties.

(iv) **Status of the AmSurg Adequate Protection Liens.** The AmSurg Adequate Protection Liens shall not be (x) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the AmSurg Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate only to the Carve Out, or (y) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 22(b), subordinated to or made *pari passu* with any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

23. **Additional Adequate Protection for AmSurg Secured Parties.** As additional adequate protection of the AmSurg Secured Parties' security interests in the Prepetition AmSurg Collateral, including the AmSurg Cash Collateral:

(a) **Reporting; Budget Approval.** The AmSurg Debtors shall comply with the reporting requirements set forth in the AmSurg Prepetition Debt Documents, all of which shall be provided to the AmSurg Secured Parties and the advisors to the AmSurg Secured parties. In addition, the AmSurg Debtors shall provide the following additional reporting to the AmSurg Secured Parties and the advisors to the AmSurg Secured Parties:

(i) No later than 5:00 p.m. New York City time the Thursday following the first four weeks after the Petition Date and each fourth calendar week thereafter (or such later time as agreed to in writing (including via e-mail) by the Required Consenting AmSurg Lenders (in their sole discretion), an updated rolling 13-week cash flow forecast of the AmSurg Debtors substantially in the form and level of detail set forth in the Initial Budget, including the same line-items provided with the Initial Budget, and otherwise in form and substance acceptable to the Required Consenting AmSurg Lenders, in their sole discretion. Upon, and subject to, the approval of any such updated budget by the Required Consenting AmSurg Lenders in their sole discretion, such supplemented budget shall constitute the then Approved Budget, effective as of the beginning of the first week immediately following the week in which it was delivered; *provided* that unless and until the Required Consenting AmSurg Lenders approve such supplemental budget in

its sole discretion, the then-current Approved Budget shall remain in effect;

(ii)     no later than 5:00 p.m. New York City time on the Thursday of every fourth calendar week (or such later time as agreed to in writing (including via e-mail) by the Required Consenting AmSurg Lenders in their sole discretion) commencing on the date that is the fifth Thursday following the Petition Date, a reconciliation report setting forth material intercompany cash transactions between any AmSurg Debtors or ambulatory surgery centers owned in whole or in part by an AmSurg Debtor (each, an "AmSurg ASC") on the one hand and any Envision Debtor or ambulatory surgery centers owned in whole or in part by an Envision Debtor (each, an "EVHC ASC") on the other hand made during the prior month then-ended;

(iii)    no later than 5:00 p.m. New York City time on the Thursday (or such later time as agreed to in writing (including via e-mail) by the Required Consenting AmSurg Lenders in their sole discretion) following the (i) first two full weeks (the "First Variance Report Date") and (ii) first four full weeks and thereafter on a four-week trailing basis (the "Variance Report Date") following the Petition Date, a variance report (each, a "Variance Report"), reasonably acceptable to the Required Consenting AmSurg Lenders in their sole discretion, setting forth, in reasonable detail any variances between actual amounts in the Approved Budget for the Variance Testing Period (as defined herein) versus projected amounts set forth in the applicable Approved Budget on a cumulative basis for such Variance Testing Period.  The Variance Report shall also provide a reasonably detailed explanation for any negative variance in such Variance Report in excess of 15% in actual receipts and any positive variance in such Variance Report in excess of 15% in actual operating disbursements during the Variance Testing Period as compared to projections during the Variance Testing Period as set forth in the then Approved Budget;

(iv)     A prompt update of any developments with respect to all material asset or equity sales (it being agreed that any sale with a purchase price of at least $10 million shall be material) and shall promptly (and in any event not later than five Business Days after delivery or receipt thereof) deliver copies of any term sheets, proposals, bids, letters of intent, indications of interest, purchase agreements, presentation decks or other documents delivered or received by any AmSurg Debtors in connection with any material asset or equity sale; and

(v)      Such other reports and information as the AmSurg Secured Parties may reasonably request, including at all times and as requested by any of the Required Consenting AmSurg Lenders, all information related to business performance of the AmSurg Debtors and their

non-AmSurg Debtor subsidiaries as such Required Consenting AmSurg Lenders may request from time to time.

(b)     **Variance Testing.** Commencing with the initial two (2)-week period and thereafter tested on a rolling four (4)-week basis (such two (2)-week or four (4)-week period up to and through the Saturday of the week most recently ended prior to the applicable First Variance Report Date or Variance Report Date, the "Variance Testing Period"), there shall not be (a) any negative variance greater than 15% (the "Receipts Permitted Variance") between the actual receipts of the AmSurg Debtors  and the amount described in the Approved Budget (as may be updated pursuant to paragraph 23(a) of this Interim Order); and (b) any positive variance greater than 15% (the "Disbursements Permitted Variance" and together with  the Receipts Permitted Variance, the "Permitted Budget Variances") between the actual disbursements of the AmSurg Debtors  and the amount described in the Approved Budget (as may be updated pursuant to paragraph 23 of this Interim Order); *provided* that the cash disbursements considered for determining compliance with this covenant shall exclude the AmSurg Debtors' disbursements in respect of (i) the restructuring professional fees (including, without limitation, fees and expenses of the advisors to the Debtors and/or the Official Committee (if any) and the AmSurg Secured Parties on account of professional fees under paragraph 23(c) of this Interim Order), and (ii) U.S. Trustee's fees.

(c)     **Fees and Expenses.**  The AmSurg Debtors are authorized and directed to pay the reasonable and documented invoiced fees, costs and out-of-pocket expenses, whether incurred prepetition or postpetition of (i) the AmSurg RCF Agent; (ii) Davis Polk & Wardwell LLP and Porter Hedges LLP, as counsel to the AmSurg RCF Agent; (iii) Berkeley Research Group, LLC, as financial advisor to the AmSurg RCF Agent; (iv) Wachtell Lipton Rosen & Katz LLP, Vinson & Elkins LLP, and a financial advisor (to the extent engaged on behalf of the Consenting AmSurg First Lien Term Lenders) on behalf of the Consenting AmSurg First Lien Term Lenders, in connection with these Chapter 11 Cases; (v) the AmSurg First Lien Term Loan Facility Agent; (vi) Holland & Knight LLP, as counsel to the AmSurg First Lien Term Loan Facility Agent; (vii) Milbank LLP and Ducera Partners, LLC on behalf of the Consenting AmSurg Second Lien Term Lenders in connection with these Chapter 11 Cases; and (vi)(viii) the AmSurg Second Lien Term Loan Facility Agent; and (ix) Seward & Kissel LLP, as counsel to the AmSurg Second Lien Term Loan Facility Agent; and (x) all local counsel engaged by or on behalf of the Consenting Cash Collateral Lenders, subject to the review procedures set forth in paragraph 26 of this Interim Order.  The AmSurg Debtors are authorized and directed to pay the amounts provided in this paragraph 26 whether or not contained in the Approved Budget and without being limited by the dollar estimates contained in the Approved Budget.

(d)     **Cash Management Covenant.** The AmSurg Debtors shall maintain their cash management arrangements in a manner consistent with those

described in the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions, and (C) Maintain Existing Business Forms and Books and Records, and (II) Granting Related Relief*.

(e)     **Adequate Protection Payments.**   From and after entry of this Interim Order, the AmSurg RCF Secured Parties and AmSurg First Lien Term Loan Secured Parties shall receive cash payment in immediately available funds, as and when due under the AmSurg Revolving Credit Agreement and AmSurg First Lien Term Loan Credit Agreement, as applicable, of all interest in respect of unpaid principal outstanding (which, with respect to the AmSurg First Lien Term Loan Credit Agreement, shall include the "Prepayment Premium" (as defined in the AmSurg First Lien Term Loan Credit Agreement) calculated as of the Petition Date). Interest due hereunder to the AmSurg RCF Secured Parties and AmSurg First Lien Secured Parties shall be calculated at the rates under the AmSurg Revolving Credit Agreement and AmSurg First Lien Term Loan Credit Agreement, as applicable (including at the applicable default rates for the period from and after the Petition Date),  and shall be paid on the same dates as currently required by the AmSurg Revolving Credit Agreement and AmSurg First Lien Term Loan Credit Agreement, as applicable.  The Debtors are authorized and directed to pay the amounts provided in this subparagraph whether or not contained in the Approved Budget and without being limited by the dollar estimates contained in the Approved Budget.  Notwithstanding anything to the contrary herein, in the event that the Prepetition AmSurg RCF Obligations are not Discharged (as defined in the Prepetition AmSurg First-Out First Lien Intercreditor Agreement) on the effective date of any plan of reorganization or otherwise in connection with these Chapter 11 Cases, the Debtors and/or the AmSurg RCF Secured Parties shall be entitled to seek disgorgement of any payments made to the AmSurg First Lien Term Loan Secured Parties under this paragraph 23(e), and such payments shall be applied in accordance with Section 2.01 of the Prepetition AmSurg First-Out First Lien Intercreditor Agreement.

(f)     All Professional Persons shall ensure that all fees and expenses that such Professional Person incurs shall be allocated (on a time entry by time entry basis) as follows:

(i)     Time, activities, or expenses that relate solely to the EVPS Debtors and/or their estates and creditors shall be allocated 100% to the Envision Debtors (such fees and expenses, the "Envision Only Fees").

(ii)    Time, activities, or expenses that relate solely to the AmSurg Debtors and/or their estates and creditors shall be allocated 100%

to the AmSurg Debtors (such fees and expenses, the "AmSurg Only Fees").

(iii)    Time, activities, or expenses that relate to both EVPS Debtors and AmSurg Debtors (or are unable to be allocated such as monthly financial advisor fees), shall be allocated 30% to the AmSurg Debtors (such fees and expenses, the "AmSurg Allocated Fees" and together with the AmSurg Only Fees, the "AmSurg Payable Fees") and 70 to the EVPS Debtors (such fees and expenses, the "Envision Allocated Fees" and together with the Envision Only Fees, the "Envision Payable Fees") in no event shall the AmSurg Cash Collateral be used to pay Envision Payable Fees.

24.    **Adequate Protection Fees and Expenses**.  The payment of all reasonable and documented invoiced professional fees and expenses provided for herein as adequate protection shall not be required to comply with the U.S. Trustee guidelines nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable herein, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the AmSurg Debtors, counsel to any Official Committee, if any, and the U.S. Trustee (the "Fee Notice Parties"); *provided, however*, that if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten calendar days after delivery of such invoices (the "Fee Objection Period"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the AmSurg Debtors and, in any event, within 5 business days thereof.  If a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested postpetition fees

and expenses, then only the disputed portion of such fees and expenses shall not be paid until such objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the AmSurg Debtors.   Notwithstanding the foregoing, the AmSurg Debtors are authorized and directed to pay all adequate protection fees and expenses incurred under this paragraph 24 on or prior to the Petition Date without the need for any applicable professional to first deliver a copy of its invoice or other supporting documentation.  Any and all fees, costs and expenses paid prior to the Petition Date by any of the AmSurg Debtors to or on behalf of the AmSurg Secured Parties, in connection with or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement, or any similar form of recovery by the AmSurg Debtors or any other person.

**J.     Carve Out.**

25.     Carve Out.  As used in this Interim Order, the "Carve Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below) with respect to the Chapter 11 Cases of the AmSurg Debtors; (b) all reasonable fees and expenses up to $100,000 incurred by a trustee of the AmSurg Debtors under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses constituting AmSurg Payable Fees (the "Allowed Professional Fees") incurred by persons or firms retained by the AmSurg Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Official Committee (if appointed)  pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Required

Consenting AmSurg Lenders of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (d) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,000,000 incurred after the first business day following delivery by the Required Consenting AmSurg Lenders of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (d) being the "Post-Carve Out Trigger Notice Cap"); *provided, however*, that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described in clauses (a) through (d) of this paragraph 25 on any grounds.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Required Consenting AmSurg Lenders to the AmSurg Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Official Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon termination of the AmSurg Debtors' right to use AmSurg Cash Collateral by the AmSurg Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

26.    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the Required Consenting AmSurg Lenders to the AmSurg Debtors (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the AmSurg Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any AmSurg Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees accrued prior to the Termination Declaration Date.  The AmSurg Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees incurred through the Termination Declaration Date (the "Pre-Carve Out Trigger Notice

Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the AmSurg Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any AmSurg Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a) through (c) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay, subject to the terms of the Prepetition AmSurg Intercreditor Agreements, the AmSurg Administrative Parties for the benefit of the AmSurg Secured Parties, unless the Prepetition AmSurg Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the AmSurg Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (d) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay, subject to the terms of the Prepetition AmSurg Intercreditor Agreements, the AmSurg Administrative Parties for the benefit of the AmSurg Secured Parties, unless the Prepetition AmSurg Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the AmSurg Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Prepetition AmSurg Debt Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 25, then, any

excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 25, prior to making any payments to the AmSurg Administrative Parties or any of the AmSurg Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition AmSurg Debt Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the AmSurg Administrative Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the AmSurg Debtors until the Carve Out Reserves have been fully funded, but shall have an automatically perfected lien and security interest in any residual interest in the Carve Out Reserves, with any excess paid to the AmSurg Administrative Parties for application in accordance with the Prepetition AmSurg Intercreditor Agreements and the other Prepetition AmSurg Debt Documents, except as otherwise expressly set forth herein.  Further, notwithstanding anything to the contrary in this Interim Order, (a) disbursements by the AmSurg Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the Prepetition AmSurg Debt Documents or increase or reduce the Prepetition AmSurg Secured Obligations, (b) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (c) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Prepetition AmSurg Debt Documents, the Carve Out shall be senior to all liens and claims securing the Collateral, the AmSurg Adequate Protection Liens, the Adequate Protection Obligations, and the AmSurg

Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition AmSurg Secured Obligations.

27.     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

28.     <u>No Direct Obligation To Pay Allowed Professional Fees</u>. Notwithstanding anything herein to the contrary, none of the AmSurg Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases of the AmSurg Debtors or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the AmSurg Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the AmSurg Debtors have sufficient funds to pay such compensation or reimbursement.

29.     <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

30.     Notwithstanding anything to the contrary in this Interim Order, the liens, security interests, and superpriority claims granted herein and/or under the Prepetition AmSurg Debt Documents, including the AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims, the Adequate Protection Obligations, and the Prepetition AmSurg Liens, shall be subject in all respects and subordinate to the Carve Out.

**K.     Reservation of Rights of AmSurg Secured Parties.**

31.     Notwithstanding any other provision hereof, the grant of adequate protection to the AmSurg Secured Parties pursuant to this Interim Order shall not be deemed an admission that the interests of such AmSurg Secured Parties are indeed adequately protected, and is without prejudice to the right of the AmSurg Secured Parties to seek additional relief with respect to the use of Prepetition AmSurg Collateral (including AmSurg Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the AmSurg Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the AmSurg Secured Parties under the Prepetition AmSurg Debt Documents or under applicable law, and the AmSurg Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition AmSurg Debt Documents and/or applicable law.  Without limiting the foregoing, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the AmSurg Secured Parties for any Diminution in Value during these Chapter 11 Cases.

**L.     Modification of Automatic Stay.**

32.     The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the AmSurg Debtors to take all appropriate actions (to the extent any further action is necessary) to incur the AmSurg Adequate Protection Obligations and to grant the AmSurg Adequate Protection Liens and the AmSurg Adequate Protection Claims set forth herein, and to take all appropriate actions (including such actions as the applicable AmSurg Secured Parties may reasonably request) to ensure that the AmSurg Adequate Protection Liens

granted hereunder are perfected and maintain the priority set forth herein; (b) the AmSurg Debtors to pay all amounts referred to, required to be paid under, and in accordance with, this Interim Order, and the AmSurg Secured Parties to retain and apply payments made in accordance with the terms of this Interim Order and the Prepetition AmSurg Debt Documents; (c) the applicable AmSurg Secured Parties to retain and apply payments made in accordance with the Prepetition AmSurg Debt Documents and this Interim Order; (d) subject to paragraph 54 of this Interim Order (including but not limited to the Remedies Notice Period), the AmSurg Secured Parties to exercise, upon the occurrence and during the continuance of any Termination Event, all rights and remedies provided for in paragraph 54 of this Interim Order; and (e) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order, without further notice, motion or application to, or order of this Court.

**M.     Perfection of AmSurg Adequate Protection Liens.**

33.     This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted herein, including, without limitation, the AmSurg Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any Prepetition AmSurg Collateral, AmSurg Adequate Protection Collateral, or AmSurg Cash Collateral (collectively, the "Collateral")) to attach, validate, perfect or prioritize such liens and security interests, or to entitle the AmSurg Secured Parties to the priorities granted herein (each, a

"Perfection Act") (other than, to the extent applicable, any such filings required under applicable foreign law to attach, validate, perfect or prioritize such liens).

34.     Notwithstanding the foregoing, the AmSurg Administrative Parties are hereby authorized, as each in its sole discretion may determine for any reason, to execute, file, record or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or to otherwise evidence such liens and security interests in all Collateral.

35.     Regardless of whether the AmSurg Administrative Parties, on behalf of the AmSurg Secured Parties, shall, in its sole discretion, choose to execute, file, record or otherwise effectuate any Perfection Act, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

36.     A certified copy of this Interim Order may, in the discretion of the AmSurg Administrative Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.   The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the AmSurg Administrative Parties to take all actions, as applicable, referenced in this section M.

**N.     Preservation of Rights Granted Under this Interim Order.**

37.     Other than the Carve Out, and except as otherwise expressly provided in or permitted by this Interim Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to any of the AmSurg Secured Parties shall be granted or allowed, and the AmSurg Adequate Protection Liens and the AmSurg Adequate Protection

Claims:  (a) shall not be made junior or subordinated to or *pari passu* with (i) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, whether under section 364(d) of the Bankruptcy Code or otherwise, (ii) any lien that is avoided and preserved for the benefit of the AmSurg Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (iii) any lien arising after the Petition Date including, without limitation, any lien or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the AmSurg Debtors, or (iv) any intercompany or affiliate lien or claim; and (b) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

38.     Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (a) the AmSurg Adequate Protection Claims, the AmSurg Adequate Protection Liens, the Adequate Protection Obligations, and all other claims, liens, and security interests granted hereunder shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all AmSurg Adequate Protection Claims, AmSurg Adequate Protection Liens, Adequate Protection Obligations, and all other claims, liens, and security interests granted hereunder shall have been paid and satisfied in full in cash (each of which shall, notwithstanding such dismissal, remain binding on all parties in interest); and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (a) above.

39.     The AmSurg Secured Parties have acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and upon the record made at the Interim Hearing and during these

Chapter 11 Cases, the AmSurg Secured Parties are entitled to the protections provided by the Bankruptcy Code and this Interim Order, and if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court of competent jurisdiction, any such reversal, stay, modification or vacatur shall not affect the validity, priority, perfection or enforceability of the AmSurg Adequate Protection Claims, the AmSurg Adequate Protection Liens, the Adequate Protection Obligations, or any other claims, liens, or security interests granted hereunder that were incurred prior to the actual receipt of written notice by the AmSurg Administrative Parties (as applicable) of the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification or vacatur, any such claim, lien, or security interest (including, without limitation, the AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims, and the Adequate Protection Obligations) incurred by the AmSurg Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the AmSurg Administrative Parties (as applicable) of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the AmSurg Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted hereunder.

40.    The adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in these Chapter 11 Cases or any Successor Cases.

**O.    Monitoring of Collateral.**

41.    Without limitation of the Prepetition AmSurg Debt Documents, the AmSurg Debtors shall (a) provide the AmSurg Secured Parties with reasonable access, upon reasonable notice and during regular business hours to the AmSurg Debtors' books and records, assets and

35

properties, for purposes of monitoring the AmSurg Debtors' businesses and operations and the value of the Collateral, and (b) reasonably cooperate and consult with, and provide information reasonably requested by the AmSurg Secured Parties (and applicable counsel) concerning the Debtors' businesses, financial condition, properties, business operations and assets (and the AmSurg Debtors hereby authorize their accountants, attorneys, financial advisors, investment bankers, and consultants to cooperate and consult with, and promptly provide all such information).

**P.    Maintenance of Collateral.**

42.    The AmSurg Debtors shall comply with the covenants contained in the Prepetition AmSurg Debt Documents regarding the maintenance and insurance of the Prepetition AmSurg Collateral, as applicable.

**Q.    Proofs of Claim.**

43.    The AmSurg Secured Parties shall not be required to file proofs of claim in any of these Chapter 11 Cases or any of the Successors Cases for any claim allowed herein or therein in respect of the Adequate Protection Obligations or Prepetition AmSurg Secured Obligations.  The statements of claim in respect of such obligations set forth in this Interim Order are deemed sufficient in respect of such debt and such secured status.  Any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases shall not apply to the AmSurg Secured Parties; *provided* that, notwithstanding any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases to the contrary, any of the AmSurg Administrative Parties, on behalf of themselves and the other AmSurg Secured Parties (as applicable), may (but are not required to) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may

(but is not required to be) filed as one consolidated master proof of claim in the lead case for these Chapter 11 Cases, *In re Envision Healthcare Corporation*, *et al.*, Case No. 23-[_____]23-90342 (———CML) (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each and every Debtor. These Master Proofs of Claim shall not be required to identify whether any AmSurg Secured Party acquired its claim from another party and the identity of such party. Any proof of claim filed by or on behalf of any of the AmSurg Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest. The Master Proofs of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the AmSurg Debtors to the applicable AmSurg Secured Parties, which instruments, agreements, or other documents will be provided upon written request to counsel to the applicable AmSurg Administrative Party.

R.      **Limitations on the AmSurg Adequate Protection Collateral, Prepetition AmSurg Collateral, the AmSurg Cash Collateral, the Carve Out, and Other Funds.**

44.     Notwithstanding anything contained in this Interim Order or any other order of the Court to the contrary, no AmSurg Adequate Protection Collateral, Prepetition AmSurg Collateral, AmSurg Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out, or any other cash or funds may be used, directly or indirectly, by any of the Debtors, any Official Committee (if appointed), or any trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith):  (a) to object to, contest, prevent, hinder, delay, or interfere with, in any way, the AmSurg Secured Parties' enforcement or realization upon any of the AmSurg Adequate Protection Collateral, Prepetition AmSurg Collateral, or AmSurg Cash Collateral; or (b) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support, or prosecute any action, or seek standing to prosecute any action, for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, against any of the AmSurg Secured Parties or their Representatives with respect to any transaction, occurrence, omission, action, or other matter arising under, in connection with, or related to this Interim Order, the AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims, the Adequate Protection Obligations, the Prepetition AmSurg Liens, the Prepetition AmSurg Secured Obligations, the Prepetition AmSurg Debt Documents, or the transactions contemplated therein or thereby, including, without limitation, (A) any Avoidance Actions, (B) any so-called "lender liability" claims and causes of action, (C) any claim or Cause of Action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the Prepetition AmSurg Debt Documents, the Prepetition AmSurg Liens, the Prepetition AmSurg Secured

Obligations, the AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims, or the Adequate Protection Obligations, (D) any claim or Cause of Action seeking to challenge, invalidate, modify, set aside, avoid, marshal, subordinate, or recharacterize in whole or in part, the AmSurg Adequate Protection Collateral, the Prepetition AmSurg Collateral, the Prepetition AmSurg Liens, the Prepetition AmSurg Secured Obligations, the AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims, or the Adequate Protection Obligations, or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any of the AmSurg Secured Parties hereunder or under any of the Prepetition AmSurg Debt Documents, as applicable (in each case, including, without limitation, claims, proceedings, or actions that might prevent, hinder, or delay any of the AmSurg Secured Parties' assertions, enforcements, realizations, or remedies on or against the AmSurg Adequate Protection Collateral or Prepetition AmSurg Collateral in accordance with the applicable Prepetition AmSurg Debt Documents and this Interim Order); *provided* that no more than $250,000 may be used for allowed fees and expenses incurred solely by any Official Committee (if appointed) in investigating, but not objecting to, commencing any motion, proceeding or contested matter, challenging, litigating, opposing, prosecuting, or seeking to subordinate or recharacterize the validity, enforceability, perfection, and priority of the Prepetition AmSurg Liens, the Prepetition AmSurg Secured Obligations or the Prepetition AmSurg Debt Documents prior to expiration of the Challenge Period (as defined herein).

**S.      Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**

45.     The stipulations, admissions, agreements and releases contained in section E of this Interim Order (collectively, the "Stipulations"), shall be binding upon the Debtors, their estates, and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.  The Stipulations shall be binding upon all other parties in interest (including without limitation, any Official Committee, if appointed) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless:  (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) the date on which the Plan (as defined in the Restructuring Support Agreement) is confirmed in these Chapter 11 Cases, (y) 75 calendar days after entry of this Interim Order, and (z) solely for any Official Committee, 60 calendar days after the appointment of any Official Committee if appointed within 30 days after the Petition Date, (ii) any such later date as has been agreed to, in writing, by the Required Consenting AmSurg Lenders, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the deadline to commence a Challenge (as defined herein) (the time period established by the foregoing clauses (i), (ii), and (iii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition AmSurg Debt Documents, the Prepetition AmSurg Secured Obligations or the Prepetition AmSurg Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, recharacterization, subordination, disgorgement, offset, Avoidance Actions or any other claims, counterclaims or causes of action,

objections, contests, defenses, or other challenges (collectively, the "Challenges") against any of the AmSurg Secured Parties or any of their Representatives (in each case, in their respective capacities as such) arising under, in connection with, or related to the (i) Prepetition AmSurg Debt Documents, (ii) Prepetition AmSurg Secured Obligations, (iii) Prepetition AmSurg Liens, or (iv) Prepetition AmSurg Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; *provided*, *further*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; *provided, further*, that any motion filed with the Court seeking requisite standing and authority to pursue a Challenge must include a draft complaint attached thereto.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then:  (a) the Debtors' Stipulations contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Official Committee (if any); (b) the Prepetition AmSurg Secured Obligations shall constitute allowed claims, the Prepetition AmSurg Debt Documents shall be deemed valid and enforceable, and the Prepetition AmSurg Liens shall be deemed to be legal, valid, binding, perfected, and enforceable, in each case, against the AmSurg Debtors in these Chapter 11 Cases and any Successor Cases; and (c) the Prepetition AmSurg Secured Obligations, the Prepetition AmSurg Liens, and the Prepetition AmSurg Debt Documents shall not be subject to any other or further claim, Cause of Action, or Challenge, whether arising under the Bankruptcy Code or otherwise, by the Official Committee (if any), any non-statutory committees appointed or formed in these Chapter 11 Cases, or any

other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the AmSurg Debtors in these Chapter 11 Cases or any Successor Cases, against any of the AmSurg Secured Parties or any of their representatives (in each case, in their respective capacities as such) arising out of, in connection with, or relating to the Prepetition AmSurg Debt Documents, the Prepetition AmSurg Liens, or the Prepetition AmSurg Secured Obligations, shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Official Committee (if any), and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Official Committee (if any), standing or authority to pursue any claim or cause of action belonging to the AmSurg Debtors or their estates and all rights to object to such standing are expressly reserved.

**T.  Limitations on Charging Expenses.**

46.  Except to the extent of the Carve Out, no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the AmSurg Secured Parties (as the case may be) upon the AmSurg Adequate Protection Collateral or Prepetition AmSurg Collateral (as the case may be), shall be charged against or recovered from, the AmSurg Secured Parties, the Prepetition AmSurg Collateral, the AmSurg Adequate Protection Collateral, or any of the Prepetition AmSurg Secured Obligations, in each case, pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or

equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior express written consent (email shall suffice) of the requisite lenders under the Prepetition AmSurg Debt Documents (as applicable) or the affected AmSurg Secured Party, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or any other action, inaction, or acquiescence by any of the AmSurg Secured Parties; *provided* that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order.

**U.**     **Payments Free and Clear.**

47.     Subject and subordinate only to the Carve Out, any and all payments or proceeds remitted to the AmSurg Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable (subject only to the fee review provisions in paragraph 26 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or section 552(b) of the Bankruptcy Code.

**V.**     **No Marshalling.**

48.     Except to the extent of the Carve Out, in no event shall the AmSurg Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition AmSurg Collateral, the Adequate Protection Collateral, or the Prepetition AmSurg Secured Obligations, provided that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order and all proceeds shall be received and applied in accordance with the Prepetition AmSurg Debt

Documents, as applicable.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the AmSurg Secured Parties or the Prepetition AmSurg Collateral; *provided* that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order.

**W.     Joint and Several Liability.**

49.     Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the AmSurg Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Interim Order.

**X.     Right to Credit Bid**

50.     Subject to and effective upon entry of the Final Order, each AmSurg Secured Party or its designee, on behalf of the applicable AmSurg Secured Party, shall have the right to credit bid, subject to and in accordance with the applicable AmSurg Prepetition Debt Documents, up to the full amount of the Prepetition AmSurg Secured Obligations under the applicable prepetition facility, in each case, in connection with any sale or other disposition of all or any portion of the AmSurg Adequate Protection Collateral or Prepetition AmSurg Collateral (as applicable), without the need for further Court order authorizing the same, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, and shall each automatically be deemed a "qualified bidder" with respect to any disposition of AmSurg Adequate Protection Collateral or Prepetition AmSurg Collateral (as applicable) under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy

Code, in each case, in accordance with and subject to the terms of the Prepetition AmSurg Intercreditor Agreements, including the prohibition of credit bidding by the AmSurg Second Lien Secured Parties so long as a Discharge (as defined in the AmSurg First Lien-Second Lien Intercreditor Agreement) of the Senior Priority Obligations (as defined in the AmSurg First Lien-Second Lien Intercreditor Agreement) has not occurred; *provided* that, with respect to parties in interest other than the AmSurg Debtors, the foregoing shall be subject to challenge under, and in accordance with provisions of Section R and S of this Interim Order.

**Y.      Termination Events.**

51.      Subject to paragraph 54 herein, the Debtors' right to use AmSurg Cash Collateral pursuant to this Interim Order shall terminate without further notice or court proceeding on the date of the occurrence of the termination events set forth in **Exhibit 2** attached hereto or the occurrence and continuance of any event or condition set forth in paragraph 54 of this Interim Order (each a "Termination Event," and the date on which such Termination Event occurs, the "Termination Date"), unless waived in writing by the Required Consenting AmSurg Lenders.

**Z.      Remedies Upon a Termination Event.**

52.      **AmSurg Debtors AmSurg Cash Collateral Termination Event.**   Without further order from the Court and without the need for filing any motion (except as expressly required by this paragraph 55) for relief from the automatic stay or any other pleading, immediately upon the date of delivery of a written notice (with a copy filed with the Court) (a "AmSurg Default Notice," and the date of delivery of such AmSurg Default Notice, the "AmSurg Cash Collateral Termination Date") by any of the AmSurg Administrative Parties (in the case of the AmSurg RCF Agent, acting at the direction of the Required Revolving Lenders) or the Required Consenting AmSurg Lenders to the AmSurg Debtors, any Official Committee formed with respect to the AmSurg Debtors, and the U.S. Trustee of the occurrence of a

Termination Event, as applicable, unless such Termination Event is subsequently waived by the AmSurg Administrative Parties (in the case of the AmSurg RCF Agent, acting at the direction of the Required Revolving Lenders) or the Required Consenting AmSurg Lenders, as applicable, (a) the AmSurg Debtors' authority to use AmSurg Cash Collateral shall immediately terminate (subject only to the Carve Out and except as set forth in this paragraph 55) and (b) the AmSurg Secured Parties shall be entitled to exercise all of their rights and remedies in accordance with the applicable Prepetition AmSurg Intercreditor Agreements and the applicable Prepetition AmSurg Debt Documents and this Interim Order to satisfy the applicable Prepetition AmSurg Secured Obligations and the applicable Adequate Protection Obligations, including all rights and remedies with respect to the Prepetition AmSurg Collateral and applicable AmSurg Adequate Protection Collateral, subject to the Carve Out (to the extent applicable); *provided*, that the AmSurg Administrative Parties or the Required Consenting AmSurg Lenders, as applicable, shall first file a motion (the "Stay Relief Motion") with the Court seeking emergency relief to exercise the remedies set forth in the immediately preceding subparagraph (b) on at least five (5) business days' written notice (which shall be the Remedies Notice Period) seeking a hearing before the court (the "Stay Relief Hearing").  At the Stay Relief Hearing the Court may consider whether a Termination Event has occurred and any other appropriate relief and may fashion an appropriate remedy, including permitting the AmSurg Secured Parties to exercise any or all of their respective rights and remedies set forth in this Interim Order pursuant to and subject to the terms and provisions of this Interim Order and the applicable Prepetition AmSurg Debt Documents; *provided*, *further*, that, the AmSurg Debtors may seek an emergency hearing before the Court, and must provide prompt notice of such hearing to the AmSurg Administrative Parties and the Required Consenting AmSurg Lenders, to contest whether a Termination Event has occurred and to seek non-consensual use of AmSurg Cash Collateral; *provided*, *further*, that the

AmSurg Debtors shall be entitled to continue to use AmSurg Cash Collateral in accordance with the terms of this Interim Order during any Remedies Notice Period only to make payroll of the AmSurg Debtors and fund critical expenses of the AmSurg Debtors necessary to the preserve the Prepetition AmSurg Collateral, in each case in accordance with the terms of the Approved Budget and this Interim Order.

**AA.    Rights Preserved.**

53.    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the rights of the AmSurg Secured Parties to seek any other or supplemental relief in respect of the AmSurg Debtors (subject to the Prepetition AmSurg Intercreditor Agreements); (b) the rights of the AmSurg Secured Parties under the Prepetition AmSurg Debt Documents, the Prepetition AmSurg Intercreditor Agreements, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of these Chapter 11 Cases, conversion of any or all of these Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the AmSurg Secured Parties (subject to the Prepetition AmSurg Intercreditor Agreements).  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

**BB.    Prepetition AmSurg Intercreditor Agreements.**

54.     Pursuant to section 510 of the Bankruptcy Code, the Prepetition AmSurg Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition AmSurg Debt Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the AmSurg Secured Parties (including, for the avoidance of doubt, with respect to the AmSurg Adequate Protection Collateral and AmSurg Adequate Protection Liens), and (iii) shall not be deemed amended, altered or modified by the terms of this Interim Order, except to the extent expressly set forth herein.

**CC.     No Waiver by Failure to Seek Relief.**

55.     The failure or delay on the part of any of the AmSurg Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition AmSurg Debt Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise.  No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this Interim Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the Required Consenting AmSurg Lenders.  No consents required hereunder by any of the AmSurg Secured Parties shall be implied by any inaction or acquiescence by any of the AmSurg Secured Parties.

**DD.     Binding Effect of this Interim Order.**

56.     Immediately upon entry of this Interim Order by the Court, effective as of the Petition Date, the provisions of this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in these Chapter 11 Cases and any Successor

Cases, including without limitation, the AmSurg Secured Parties, the Official Committee (if appointed), or any other committee appointed in these Chapter 11 Cases and any Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtors, and shall inure to the benefit of the each of the AmSurg Debtors and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Interim Order, the AmSurg Secured Parties shall have no obligation to permit the use of the Prepetition AmSurg Collateral (including AmSurg Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in these Chapter 11 Cases or any Successor Cases.

**EE.    Survival.**

57.    The terms and provisions of this Interim Order including, without limitation, all of the rights, privileges, benefits, and protections granted to the AmSurg Secured Parties under this Interim Order (including the AmSurg Adequate Protection Liens, the Adequate Protection Obligations and the AmSurg Adequate Protection Claims, and any other claims, liens, security interests, and other protections (as applicable)), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties in interest, and shall maintain their priorities, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (a) confirming any chapter 11 plan in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases, or (e) approving the sale or

disposition of any Collateral, in each case, until all of the Prepetition AmSurg Secured Obligations have been indefeasibly paid in full in cash (or other form of payment pursuant to the Plan (or, in respect of outstanding letters of credit (if any), cash collateralized)).  This Court shall retain jurisdiction, notwithstanding any such confirmation, conversion, or dismissal, for the purposes of enforcing this Interim Order, and all of the protections, rights, remedies, liens, claims, priorities, privileges, and benefits granted to the AmSurg Secured Parties hereunder or thereunder.

**FF.**     **Discharge Waiver/Release.**

58.     The AmSurg Adequate Protection Liens, the AmSurg Adequate Protection Claims, and the Adequate Protection Obligations shall not be discharged by the entry of an order confirming any chapter 11 plan in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code (the AmSurg Debtors having hereby waived such discharge pursuant to section 1141(d) of the Bankruptcy Code, which waiver is hereby approved), unless the requisite AmSurg Secured Parties have otherwise agreed in writing in respect of the applicable obligations owed to each of them.

**GG.**     **Limitation of Liability.**

59.     In permitting the use of AmSurg Cash Collateral, or in exercising any rights or remedies, in each case, as and when permitted pursuant to this Interim Order or the Prepetition AmSurg Debt Documents (as applicable), the AmSurg Secured Parties shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the AmSurg Debtors (as such terms or any similar terms are used in the United States Comprehensive

Environmental Response, Compensation and Liability Act, 29, U.S. §§ 9601 et seq., as amended, or any similar federal or state statute).

**HH.    Insurance Proceeds and Policies.**

60.     As of the date of entry of the Interim Order and to the fullest extent provided by applicable law, the AmSurg Administrative Parties (on behalf of the AmSurg Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the AmSurg Debtors that in any way relates to the Collateral.

**II.    No Modification of Interim Order.**

61.     Until and unless the Prepetition AmSurg Secured Obligations have been indefeasibly paid in full in cash (or receive other form of payment pursuant to the Plan in accordance with and subject to the Restructuring Support Agreement), the AmSurg Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Required Consenting AmSurg Lenders, any order authorizing the use of AmSurg Cash Collateral resulting from the Collateral that is inconsistent with this Interim Order; or (b) without the prior written consent of the Required Consenting AmSurg Lenders, grant of any lien on any of the Collateral with priority equal or superior to the Prepetition AmSurg Liens or the AmSurg Adequate Protection Liens, except to the extent expressly provided in this Interim Order.

**JJ.    Exculpation.**

62.     Nothing in this Interim Order or any other documents related to the transactions contemplated hereunder shall in any way be construed or interpreted to impose or allow the imposition upon the AmSurg Secured Parties (in each case, in their capacities as such) of (a) any liability for any claims, controversies, disputes, liabilities, obligations, demands, damages,

expenses (including without limitation reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, contingent or matured, arising from, related to or in connection with the prepetition or postpetition activities of the AmSurg Debtors in the operation of their business, their restructuring efforts, any aspect of the negotiation, consummation or enforcement of any of the ancillary documents and security arrangements related thereto, or (b) any fiduciary duties to the Debtors, their respective creditors, shareholders, or estates.  In addition, (a) the AmSurg Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Collateral shall be borne solely by the Debtors.

**KK.  Interim Order Controls.**

63.    Notwithstanding anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order, including, without limitation, the Approved Budget (subject to Permitted Budget Variances).

**LL.  Effectiveness.**

64.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

**MM.  Bankruptcy Rules.**

65.     The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

**NN.    Headings.**

66.     Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

**OO.    Necessary Action.**

67.     The AmSurg Debtors are authorized to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Interim Order.

**PP.    Final Hearing.**

68.     The Final Hearing is scheduled for [  ], 2023, at [  ]:00 [  ].m., prevailing Central Time before this Court.

**QQ.    Notice of Entry of this Interim Order.**

69.     The Debtors' counsel shall serve a copy of this Interim Order or a suitable notice thereof on the Notice Parties.

**RR.    Retention of Jurisdiction.**

70.     The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the Prepetition AmSurg Intercreditor Agreements and this Interim Order.

**SS.    Release**.

71.      Subject to and effective upon entry of the Final Order and with respect to parties in interest other than the AmSurg Debtors upon expiration of the Challenge Period (unless any such party in interest has commenced a Challenge in accordance with this Interim Order or the Final Order prior to expiration of the Challenge Period), subject to section R of this Interim Order, the AmSurg Debtors, on behalf of and their respective estates, hereby forever and

irrevocably release and forever discharge the AmSurg Secured Parties (in each case, solely in their capacity as such) and each of their respective former, current, and future officers, directors, employees, shareholders, stockholders, equityholders, owners, members, managers, partners, subsidiaries, affiliates, funds or managed accounts, agents, advisors, attorneys, accountants, investment bankers, consultants, and other representatives, together with each of their predecessors and successors in interest (collectively, the "Representatives") from any and all claims, offsets, defenses, counterclaims, set off rights, objections, challenges, causes of action and/or choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations (including, attorneys' fees), premiums, fees, costs, expenses, or judgments of every type, whether known or unknown, asserted or unasserted, fixed or contingent, pending or threatened, of any kind or nature whatsoever, whether arising at law or in equity (including, without limitation, any theory of so called "lender liability" or equitable subordination or any claim or defense asserting recharacterization, subordination, or avoidance, any claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or any other provision of the Bankruptcy Code or of applicable state or federal law, or any other claim, cause of action, or defense arising under the Bankruptcy Code or applicable nonbankruptcy law), in each case, arising under, in connection with, or related to the Debtors or their estates, the extent, amount, validity, enforceability, priority, security, and perfection of the Prepetition AmSurg Secured Obligations, the AmSurg Prepetition Liens, the AmSurg Prepetition Debt Documents, and/or the transactions contemplated thereunder, or the negotiation thereof, other than as a result of the gross negligence, fraud or willful misconduct of the applicable AmSurg Secured Party as determined in a final, non-appealable order of court of competent jurisdiction.

Dated: _____, 2023

                                                _____

CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Initial Budget**

**Exhibit 2**

**Termination Events**

The occurrence of any of the following events shall constitute a Termination Event:

(a)     failure of the AmSurg Debtors to make any payment under the Interim Order to any of the AmSurg RCF Secured Parties or AmSurg First Lien Term Loan Secured Parties within five Business Days after such payment becomes due;

(b)     failure of the AmSurg Debtors to: (i) observe or perform any of the material terms or material provisions contained in the Interim Order, provided that the terms and provisions with respect to adequate protection shall be deemed material under this clause (i); or (ii) comply with any other covenant or agreement specified in the Interim Order (other than those described in clause (i) above) in any material respect in each case unless waived in writing by the Required Consenting AmSurg Lenders and such failure remains uncured for ten Business Days;

(c)     an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order without the prior written consent of the Required Consenting AmSurg Lenders;

(d)     the entry of an order in the Chapter 11 Cases charging any of the Prepetition AmSurg Collateral or AmSurg Adequate Protection Collateral of the AmSurg Secured Parties under sections 506(c) or 552(b) of the Bankruptcy Code against any of the AmSurg Secured Parties under which any person takes action against such collateral or that becomes a final non-appealable order, or the commencement of other actions that are materially adverse to any of the AmSurg Secured Parties or their respective rights and remedies under the Prepetition AmSurg Debt Documents in the Chapter 11 Cases (or any order requiring any of the AmSurg Secured Parties to be subject to the equitable doctrine of "marshaling");

(e)     the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $10 million;

(f)     the payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by any of the AmSurg Secured Parties, other than as permitted by an order entered in the Chapter 11 Cases;

(g)     the Court shall have entered an order dismissing any of the Chapter 11 Cases;

(h)     the Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(i)     the Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Required Consenting AmSurg Lenders;

(j)     a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Intercompany Credit Agreement  or asserting any other cause of action against and/or with respect to the Intercompany Credit Agreement or the obligations thereunder;

(k)     a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition AmSurg Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition AmSurg Secured Obligations, the Prepetition AmSurg Collateral, or any of the AmSurg Secured Parties, (or if the AmSurg Debtors support or fail to contest any such motion, pleading, application or adversary proceeding commenced by any third party);

(l)     the Debtors, or any person claiming by or through the AmSurg Debtors shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or proceeding against any of AmSurg Secured Parties relating to the Prepetition AmSurg Secured Obligations except as expressly permitted under the Interim Order;

(m)     the existence of any claims or charges, or the entry of any order of the Court authorizing any claims or charges, other than as permitted under the Interim Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code pari passu or senior to the Prepetition AmSurg Secured Obligations, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the AmSurg Secured Parties' 507(b) Claims, or (ii) subject to any Other Permitted Liens, any lien on the Prepetition AmSurg Collateral or AmSurg Adequate Protection Collateral having a priority senior to or pari passu with the liens and security interests granted herein, except as expressly provided in the Interim Order;

(n)     the entry of an order by this Court or any other court having jurisdiction to do so (i) authorizing the sale of all or substantially all of an AmSurg Debtor's assets, or (ii) authorizing any other sale or disposition of any of the Prepetition AmSurg Collateral outside the ordinary course of business without the prior written consent of the Required Consenting AmSurg Lenders;

3

(o)     The failure of the Debtors to obtain a Final Order on the Motion on terms reasonably acceptable to the Required Consenting AmSurg Lenders on or before thirty-five (35) days after the Petition Date;

(p)     except with respect to any financings or related transactions contemplated by the Motion, the filing of a motion by and of the AmSurg Debtors: (i) to obtain additional financing under section 364(d) of the Bankruptcy Code not otherwise permitted pursuant to this Interim Order; (ii) to grant any lien other than Permitted Prior Senior Liens upon or affecting any Prepetition AmSurg Collateral; or (iii) except as provided in this Interim Order (including the Approved Budget), to use Cash Collateral under section 363(c) of the Bankruptcy Code;

(q)     any AmSurg Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than payments under customary "first day orders" or this Interim Order approved by the Court;

(r)     any Debtor shall challenge, support or encourage a challenge of any payments made with respect to the Prepetition AmSurg Secured Obligations or the AmSurg Adequate Protection Obligations;

(s)     the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any AmSurg Secured Party arising under the AmSurg Prepetition Debt Documents, unless (i) the Debtors have sought a stay of such order within five (5) business days after the date of such issuance, and such order is stayed, reversed or vacated within ten (10) business days after the date of such issuance or (ii) the Required Consenting AmSurg Lenders have consented to such order;

(t)     the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Interim Order or any orders relating to cash management, the filing by a Debtor of a motion for reconsideration with respect to the Interim Order or any orders relating to cash management or the Interim Order shall cease to be in full force and effect; and

(u)     the entry of an order other than the Interim Order or the Final Order, if any, in any of the Chapter 11 Cases authorizing the use of cash collateral or granting adequate protection to any party without the consent of the Required Consenting AmSurg Lenders.

| Summary report:<br>**Litera Compare for Word 11.0.0.61 Document comparison done on<br>5/15/2023 4:36:32 PM** | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.kirkland.com/LEGAL/96906574/1 | |
| **Modified DMS:** iw://dms.kirkland.com/LEGAL/96906574/3 | |
| **Changes:** | |
| Add | 8 |
| Delete | 14 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 22 |