## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | Case No. 23-90342 (CML) |
|  | (Jointly Administer~~ationed~~ ~~Requested~~) |
| Debtors. |  |
|  | **Re:    Docket No. ——18** |

### INTERIM ORDER
### (I) AUTHORIZING THE EVPS DEBTORS TO UTILIZE
### CASH COLLATERAL AND RENEW LETTERS OF CREDIT,
### (II) GRANTING (A) LIENS AND PROVIDING CLAIMS WITH
### SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND
### (B) ADEQUATE PROTECTION TO THE EVPS SECURED PARTIES,
### (IV) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A
### FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] of Envision Healthcare Corporation ("Envision"), and

each of its affiliates that are debtors and debtors in possession (collectively, the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 107,  361,

362, 363, 364, 503, 506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2002, 4001, 6003, 6004, 9014, and 9018 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), Rules 1075-1, 2002-1, 4001-1(b), 4002-1, 9013-1, and 9037-1 of the

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision.    The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37013.

[2]    Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in (a) the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* (the "Keglevic First Day Declaration") and (b) the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors' Emergency Motion for Entry of an Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "Stogsdill First Day Declaration," and together with the Keglevic First Day Declaration, the "First Day Declarations").

Local Rules of Bankruptcy Practice and Procedure for the Southern District of Texas (the "<u>Local Rules</u>"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "<u>Complex Case Procedures</u>") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>"), seeking entry of an interim order (this "<u>Interim Order</u>"), among other things:

(a)     authorizing the EVPS Debtors (as defined below) to effectuate the EVPS L/C Roll-Up (as defined below) and to renew the EVPS L/Cs (as defined below) in the ordinary course after the entry of this Interim Order and before the occurrence of a Termination Event;

(b)     authorizing the incurrence and payment of fees, costs, expenses and liabilities, and all other obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable under the EVPS L/Cs following the EVPS L/C Roll-Up (collectively, the "<u>EVPS L/C Obligations</u>") as administrative expenses, and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(c)     granting to the ABL Secured Parties and the ABL Agent, for itself and for the benefit of the ABL Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code against all EVPS Debtors in respect of all EVPS L/C Obligations;

(d)     granting to the ABL Secured Parties and the ABL Agent, for itself and for the benefit of the ABL Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens (other than with respect to EVPS Term Priority Collateral) pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the EVPS Debtors' estates and all proceeds thereof, including, subject only to and effective upon entry of the Final Order, any Avoidance Proceeds, in each case with the relative priorities set forth in this Interim Order;

(e)     authorizing the EVPS Debtors to execute, deliver and perform under the Structuring Fee Letter (as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "<u>Structuring Fee Letter</u>");

(f)     authorizing the EVPS Debtors to use "cash collateral" as that term is defined in section 363 of the Bankruptcy Code, which shall include, but not be limited to, all proceeds of the Prepetition EVPS Collateral held by the EVPS Debtors and any and all cash of any kind, whether in reserve accounts, blocked accounts, or otherwise, including, without limitation,

2

any prepetition and postpetition cash and cash equivalents held by the EVPS Debtors, in which the EVPS Secured Parties have Prepetition EVPS Liens or other interests (the "EVPS Cash Collateral");

(g)    providing adequate protection, as and to the extent set forth herein, to the EVPS Secured Parties to protect against any Diminution in Value of their respective interests in the Prepetition EVPS Collateral (including Cash Collateral);

(h)    modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise to the extent necessary or appropriate to implement and effectuate the terms and provisions of this Interim Order, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, and providing for the immediate effectiveness of this Interim Order;

(i)    approving, subject to sections R and S hereof, of certain stipulations, and waivers by the EVPS Debtors with respect to, *inter alia*, the Prepetition EVPS Debt Documents, the Prepetition EVPS Liens, and the Prepetition EVPS Secured Obligations;

(j)    waiving (i) the EVPS Debtors' rights to surcharge any Prepetition EVPS Collateral pursuant to section 506(c) of the Bankruptcy Code as to the EVPS Secured Parties and (ii) any "equities of the case" exception under section 552(b) of the Bankruptcy Code as to the EVPS Secured Parties; *provided*, that, until entry of a final order (the "Final Order"), each of the foregoing (i) and (ii) shall only apply on an interim basis;

(k)    waiving the equitable doctrine of "marshaling" and other similar doctrines to the extent set forth herein; *provided*, that, until entry of the Final Order, the foregoing shall only apply on an interim basis; and

(l)    scheduling, pursuant to Bankruptcy Rule 4001 and the Complex Case Procedures, a final hearing (the "Final Hearing") on the Motion, if necessary, to consider entry of the Final Order authorizing the relief requested in the Motion on a final basis, which order shall be in form and substance and on terms acceptable in all respects to each of the ABL Agent (acting at the direction of the Required Lenders (as defined in the ABL Credit Agreement) (the "Required ABL Lenders")) and Ad Hoc First Lien Group (as defined below), and approving the form of notice with respect to the Final Hearing, if any.

The Court, having considered the Motion, the exhibits attached thereto, the First Day Declarations, the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on May 15, 2023, and upon the record of the Chapter 11 Cases; and

adequate notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules and Complex Case Procedures; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the EVPS Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the EVPS Debtors, their estates, and their creditors, represents a sound exercise of the EVPS Debtors' business judgment, and is necessary for the continued operation of the EVPS Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

**A.     The Petition Date.**

1.      On May 15, 2023 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

**B.     Debtors in Possession.**

2.      The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of these Chapter 11 Cases.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**C.     Committee Formation.**

3.      As of the date hereof, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

**D.     Jurisdiction and Venue.**

4.      This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Local Bankruptcy Rules 1075-1, 2002-1, 4001-1(b), 4002-1, and 9013-1.

**E.     Debtors' Stipulations.**

5.      Subject only to the rights of parties in interest specifically set forth in section R and S of this Interim Order (and subject to the limitations thereon contained in such paragraph), the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows (collectively, paragraphs E(a) through E(j) below are referred to herein as the "Stipulations"):

(a)     **EVPS Prepetition ABL Facility.**

(i)     **EVPS Prepetition ABL Credit Agreement.**  Pursuant to that certain ABL credit agreement, dated as of October 11, 2018 (as amended, restated, supplemented, or otherwise modified prior to the Petition Date, the "ABL Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including, without limitation, the Transaction Security Documents and the Prepetition EVPS ABL/Term Loan Intercreditor Agreement (each as defined herein) collectively, the "ABL Credit Documents"), by and among Enterprise Intermediate Holdings Inc., a Delaware corporation ("Holdings"), Envision Healthcare Corporation, a Delaware corporation (at any time after the consummation of the Acquisition (as defined in the ABL Credit Agreement, the "Borrower"), the guarantors from time to time party thereto, the lenders from time to time party thereto (the "ABL Lenders"), the issuers of letters of credit thereunder (each, a "Letter of Credit Issuer" and together the "Letter of Credit Issuers") and Citibank, N.A., as administrative agent and collateral agent (in such capacities, the "ABL Agent"), a Letter of Credit Issuer and the swingline lender (collectively with the ABL Lenders, the ABL Agent, and the Letter of Credit Issuers, the "ABL Secured Parties"), the ABL Secured Parties provided an asset-based revolving credit and letter of credit facility (the "ABL Facility") to Envision.  Envision's obligations under the ABL Facility are guaranteed by Holdings and by each of Envision's direct and indirect subsidiaries that are Debtors, other than AmSurg Holdco, LLC and its subsidiaries that are Debtors (the "EVPS Guarantors" and together with Envision, the "EVPS Debtors") and subject to certain customary exceptions.  The ABL Credit Agreement provides for a senior secured asset-based revolving facility with maximum aggregate commitments of $550,000,000 (subject to a borrowing base composed primarily of accounts receivables and inventory), including a letter of credit sublimit of $150,000,000, with a scheduled maturity of October 11, 2023.  As of the Petition Date, the ABL Facility is fully drawn.

(ii)     **EVPS Prepetition ABL Obligations.**  As of the Petition Date, Envision, Holdings, and the other EVPS Guarantors were jointly and severally, justly and lawfully indebted and liable to the ABL Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $439.2 million on account of loans outstanding under the ABL Facility and $90.8 million in face amount of undrawn letters of credit outstanding under the ABL Facility (the "EVPS L/Cs"), *plus* accrued but unpaid interest, reimbursement obligations, fees, costs, premiums, expenses (including without limitation attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect of such loans and EVPS L/Cs and in respect of Secured Bank Product Obligations, any Secured Cash Management Agreement, or Secured Hedge Agreement (each as defined in the ABL Credit Agreement), in each case, to the extent provided in the ABL Credit Documents, (collectively, the "EVPS Prepetition ABL Obligations"), which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against each of the applicable EVPS Debtors' estates.

(iii)     **EVPS Prepetition ABL Liens.**  To secure the EVPS Prepetition ABL Obligations, each of Envision, Holdings, and the other EVPS Guarantors granted to the ABL Agent, for the benefit of the ABL Secured Parties, valid, binding, enforceable,

6

non-avoidable and properly-perfected continuing first priority liens, and mortgages on, and security interests in the ABL Priority Collateral (as defined in the ABL Credit Agreement) whether then owned or existing or thereafter acquired or arising (the "<u>ABL Priority Collateral</u>") and valid, binding, enforceable, non-avoidable and properly-perfected continuing second priority liens and mortgages on, and security interests in, the Term Priority Collateral (as defined in the ABL Credit Agreement) whether then owned or existing or thereafter acquired or arising (the "<u>EVPS Term Priority Collateral</u>", and such liens granted on the ABL Priority Collateral and EVPS Term Priority Collateral in favor of the ABL Agent, the "<u>Prepetition ABL Liens</u>", and such Collateral (as defined in the ABL Credit Agreement), the "<u>Prepetition ABL Collateral</u>").

(b)     **EVPS Term Loans.**

(i)     **EVPS Term Loan Credit Agreement.**  Pursuant to that certain Credit Agreement dated as of October 11, 2018 as amended by that certain Amendment Agreement, dated as of July 22, 2022, and as further amended, restated, supplemented, or otherwise modified from time to time, the "<u>EVPS Term Loan Credit Agreement</u>", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, collectively, the "<u>EVPS Term Loan Credit Documents</u>"), by and among Envision Healthcare Corporation, as borrower, the guarantors from time to time party thereto, and Ankura Trust Company, LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as administrative agent and collateral agent (the "<u>EVPS Term Loan Facility Agent</u>"), and the lender parties thereto provided a senior secured revolving credit facility in an aggregate principal amount of $300 million (the "<u>EVPS Revolving Credit Facility</u>") and a senior secured term loan facility in an aggregate principal amount of $5.45 billion (the "<u>EVPS Term Loan Facility</u>") to Envision.  On April 27, 2020, Envision Healthcare Corporation incurred, and the lenders thereunder provided, approximately $394.8 million of incremental term loans under the EVPS Term Loan Facility (the "<u>EVPS 2020 Incremental Term Loan</u>").  On July 20, 2022, Envision repaid all amounts outstanding and terminated all commitments under the EVPS Revolving Credit Facility.  On July 22, 2022, an additional $300 million in new money was provided by the lenders under the EVPS Term Loan Credit Agreement and the EVPS Term Loan Facility was amended into four separate tranches of term loans (such amendment, the "<u>EVPS Term Loan Facility Amendment</u>"), including:

(A)     the first-out tranche of new money EVPS Term Loans issued in the original aggregate principal amount of $300 million, pursuant to the EVPS Term Loan Credit Agreement (the "<u>EVPS First-Out Term Loans</u>");

(B)     the second-out tranche of the EVPS Term Loans issued in the original aggregate principal amount of $2.19 billion, pursuant to the EVPS Term Loan Facility Amendment and the EVPS Term Loan Credit Agreement  (the "<u>EVPS Second-Out Term Loans</u>");

(C)     the third-out tranche of the EVPS Term Loans issued in the original aggregate principal amount of $1.0 billion, pursuant the EVPS

Term Loan Facility Amendment and the EVPS Term Loan Credit Agreement (the "EVPS Third-Out Term Loans"); and

(D)     the remaining initial term loans originally issued on October 11, 2018 pursuant to the EVPS Term Loan Credit Agreement (the "EVPS 2018 Initial Term Loans"), and the remaining EVPS 2020 Incremental Term Loans (collectively with the remaining EVPS 2018 Initial Term Loans, the "EVPS Fourth-Out Term Loans", together with the EVPS First-Out Term Loans, the EVPS Second-Out Term Loans, and the EVPS Third-Out Term Loans, the "EVPS Term Loans", and the EVPS Term Loan Facility Agent together with the holders of obligations thereunder, the "EVPS Term Loan Secured Parties").

Envision's obligations under the EVPS Term Loan Facility are guaranteed by Holdings and the other EVPS Guarantors. The EVPS First-Out Term Loans, EVPS Second-Out Term Loans, and EVPS Third-Out Term Loans mature on March 31, 2027 and the EVPS Fourth-Out Term Loans mature on October 11, 2025.

(ii)     **EVPS Term Loans Obligations.**    As of the Petition Date, Envision, Holding and the other EVPS Guarantors were jointly and severally, justly and lawfully indebted and liable to the EVPS Term Loan Secured Parties, without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $3.082 billion on account of loans outstanding under the EVPS Term Loan Facility, with $302 million being outstanding under the EVPS First-Out Term Loans, $1.96 billion being outstanding under the EVPS Second-Out Term Loans, $648 million being outstanding under the EVPS Third-Out Term Loans and $171 million being outstanding under the EVPS Fourth-Out Term Loans, *plus* accrued but unpaid interest, reimbursement obligations, fees, costs, premiums (including any prepayment premiums or make-wholes), expenses (including, without limitation, attorneys', accountants', consultants', financial advisors' and other professionals fees, related expenses and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect of each of the EVPS Term Loans and all other "Obligations" (as defined in the EVPS Term Loan Credit Agreement), in each case, to the extent provided in the EVPS Term Loan Credit Documents, (collectively, the "Prepetition EVPS Term Loan Obligations"), which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against each of the applicable EVPS Debtors' estates.

(iii)     **The EVPS Term Loans Liens.**    To secure the Prepetition EVPS Term Loan Obligations, each of the Borrower, Holdings, and the other EVPS Guarantors granted to the EVPS Term Loan Facility Agent, for the benefit of the EVPS Term Loan Secured Parties, valid, binding, enforceable, non-avoidable and properly-perfected continuing first priority liens, and mortgages on, and security interests  in the EVPS Term Priority Collateral whether then owned or existing or thereafter acquired or arising and valid, binding, enforceable, non-avoidable and properly perfected continuing second priority liens and mortgages on, and security interests in,  the ABL Priority Collateral whether then owned or existing or thereafter acquired or arising , and such liens granted on the ABL Priority Collateral and EVPS Term Priority Collateral in favor of the EVPS Term Loan Facility Agent, the "Prepetition EVPS Term Loan Liens") and such Collateral

(as defined in the EVPS Term Loan Credit Agreement), the "Prepetition EVPS Term Loan Collateral").

    (c)    **Intercompany Loans.**

    (i)    **Intercompany Loans Parties.**  Pursuant to that certain Credit Agreement (the "Intercompany Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, collectively, the "Intercompany Credit Documents", and such Intercompany Credit Documents together with the EVPS Term Loan Credit Documents and the ABL Credit Documents, the "Prepetition EVPS Debt Documents") dated April 29, 2022, among Enterprise Intermediate Holdings Inc., as Holdings, Envision Healthcare Corporation, as borrower, AmSurg, LLC, as lender (the "Intercompany Secured Party", and together with the ABL Secured Parties and the EVPS Term Loan Secured Parties, the "EVPS Secured Parties"), the guarantors from time to time party thereto, and Wilmington Savings Fund Society, FSB, as the administrative agent and collateral agent (the "Intercompany Loan Agent", and together with the ABL Agent and the EVPS Term Loan Facility Agent, the "Prepetition EVPS Administrative Parties") for the Intercompany Secured Party provided certain senior secured loans to Envision (the "Intercompany Loan Facility", and together with the ABL Facility and the EVPS Term Loan Facility, the "EVPS Facilities").

    (ii)    **Intercompany Loans Obligations.**  As of the Petition Date, Envision and the EVPS Guarantors were jointly and severally, justly and lawfully indebted and liable to the Intercompany Secured Party, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $1,771 million on account of loans outstanding under the Intercompany Loan Facility, with $983 million being outstanding under the loans maturing April 27, 2024 (the "Short-Term Intercompany Loans") and $848 million being outstanding under the loans maturing April 29, 2028 (the "Long-Term Intercompany Loans"), *plus* accrued but unpaid interest, reimbursement obligations, fees, costs, premiums, expenses (including, without limitation, attorneys' fees, financial advisors' fees, related expenses, and disbursements), charges, disbursements, indemnification obligations, and other amounts, contingent or otherwise,  whenever arising or accruing, that may be due, owing, or chargeable in respect thereof, in each case, to the extent provided in the Intercompany Credit Agreement, (collectively, the "Prepetition Intercompany Loan Obligations" and together with the EVPS Prepetition ABL Obligations and Prepetition EVPS Term Loan Obligations, the "Prepetition EVPS Secured Obligations"), which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against the applicable EVPS Debtors' estate.

    (iii)    **Intercompany Loans Liens.**  To secure the Prepetition Intercompany Loan Obligations, each of the Borrower, Holdings, and the other EVPS Guarantors granted to the Intercompany Loan Agent, for the benefit of the Intercompany Secured Party, properly-perfected first lien secured on a *pari passu* basis with the Prepetition EVPS Term Loan Obligations with respect to the EVPS Term Priority Collateral and properly-perfected second lien secured on a *pari passu* basis with the Prepetition EVPS Term Loan Obligations with respect to the ABL Priority Collateral (such first priority and second priority liens on such collateral, collectively, the "Prepetition Intercompany Loan Liens", and together with the Prepetition ABL Liens and

Prepetition EVPS Term Loan Liens, the "Prepetition EVPS Liens" and such Collateral (as defined in the Intercompany Credit Agreement), the "Prepetition Intercompany Loan Collateral", and together with the Prepetition ABL Collateral and the Prepetition EVPS Term Loan Collateral, the "Prepetition EVPS Collateral").

(d)     **Relative Priority of Prepetition EVPS Liens Under, and Enforceability of, the Prepetition EVPS Intercreditor Agreements.**

(i)     **EVPS Prepetition ABL/Term Loan Intercreditor Agreement.** The Prepetition EVPS Administrative Parties, Envision, Holdings, and the other EVPS Guarantors are party to that certain ABL Intercreditor Agreement, dated as of October 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition EVPS ABL/Term Loan Intercreditor Agreement"), which sets forth the relative lien priorities and other rights and remedies of the EVPS Secured Parties with respect to, among other things, the Prepetition EVPS Collateral.  The Prepetition EVPS ABL/Term Loan Intercreditor Agreement is binding and enforceable against the parties thereto in accordance with its terms and shall not be deemed to be otherwise amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

(ii)     **EVPS *Pari Passu* Intercreditor Agreement.**  The EVPS Term Loan Facility Agent, the Intercompany Loan Agent, the Borrower, Holdings, and the other EVPS Guarantors are party to that certain First Lien Intercreditor Agreement, dated as of April 29, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition EVPS *Pari Passu* Intercreditor Agreement" and together with the Prepetition EVPS ABL/Term Loan Intercreditor Agreement, the "Prepetition EVPS Intercreditor Agreements"), which sets forth the relative lien priorities and other rights and remedies of the EVPS Term Loan Secured Parties and the Intercompany Secured Party with respect to, among other things, the Prepetition EVPS Term Loan Collateral and the Prepetition Intercompany Loan Collateral.  The Prepetition EVPS *Pari Passu* Intercreditor Agreement is binding and enforceable against the parties thereto in accordance with its terms and shall not be deemed to be otherwise amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

(e)      **Validity and Enforceability of Prepetition EVPS Secured Obligations**. (A) The Prepetition EVPS Secured Obligations constitute the legal, valid, binding, and non-avoidable obligations of the EVPS Debtors, as applicable, enforceable in accordance with the terms of their applicable Prepetition EVPS Debt Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code as modified in accordance with the terms of this Interim Order), (B) no portion of the Prepetition EVPS Secured Obligations and no amounts paid or payments made at any time to the EVPS Secured Parties in respect of or applied to the Prepetition EVPS Secured Obligations, the Prepetition EVPS Debt Documents, or the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, disgorgement, reduction, disallowance, recovery or subordination (equitable or otherwise), challenge or any other claim or cause of action of any kind or nature whatsoever, whether pursuant to the Bankruptcy Code, applicable nonbankruptcy law or otherwise, (C) without limiting the stipulation in clause (h) below, the EVPS Debtors do not have any claims, counterclaims, Causes of Action (as defined below), defenses or setoff rights related to the Prepetition EVPS Secured Obligations or the Prepetition EVPS Debt Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable nonbankruptcy law against the EVPS Secured Parties, and each of their respective Representatives (as defined below), and (D) the Prepetition EVPS Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(f)      **Validity and Enforceability of Prepetition EVPS Liens.**  The Prepetition EVPS Liens (A) have been properly recorded and are legal, valid, binding, enforceable, non avoidable and fully perfected liens and security interests in the Prepetition EVPS Collateral, (B) are not subject to any contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, disgorgement, reduction, disallowance, recovery or subordination (equitable or otherwise), challenge or any other claim or cause of action of any kind or nature whatsoever, whether pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (C) were granted to or for the benefit of the EVPS Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations or consideration secured or obtained thereby, and (D) as of the Petition Date, are senior with priority over any and all other liens and security interests in the Prepetition EVPS Collateral, subject only to (x) valid, non-avoidable liens permitted to be senior to the respective Prepetition EVPS Liens under the applicable Prepetition EVPS Debt Documents that were properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), in each case, to the extent such permitted liens are senior to the

12

Prepetition EVPS Liens (the "<u>Permitted Prior Senior Liens</u>")[4] and (y) the relative rights and priorities set forth in the Prepetition EVPS Intercreditor Agreements.

(g) **No Control.** None of the EVPS Secured Parties control (or in the past has controlled) the EVPS Debtors or their properties or operations, has authority to determine the manner in which any of the EVPS Debtors' operations are conducted, or is a control person or insider of the EVPS Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order or the Prepetition EVPS Debt Documents.

(h) **No Claims, Defenses, or Causes of Action.** As of the date hereof, there exist no claims, cross-claims, counterclaims, defenses or causes of action, including claims and Causes of Action[5] arising under chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "<u>Avoidance Actions</u>") or actions for recovery, recoupment, offset, setoff, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), or disgorgement, against any of the EVPS Secured Parties, any of their respective affiliates or any of the respective affiliates, directors, officers, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, other advisors, trustees, partners, or equity holders of each of the foregoing and their respective successors and assigns (collectively, "<u>Representatives</u>") with respect to, in connection with, related to, or arising from the Prepetition EVPS Secured Obligations or any of the Prepetition EVPS Debt Documents, any action or conduct of any EVPS Secured Party in respect thereof, or any of the transactions contemplated thereunder, that may be asserted by the Debtors, their respective estates, or any other person or entity.

---

[4] Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Senior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the EVPS Debtors, the EVPS Secured Parties, and the Official Committee (if any), in each case to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Senior Lien and/or security interests. For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Senior Lien.

[5] As used in this Interim Order, "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

(i)      **Cash Collateral**.  Any and all of the EVPS Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located (including, without limitation, all cash or cash equivalents in the control of or on deposit or maintained by the EVPS Debtors in any account or accounts (including reserve accounts, blocked accounts or otherwise), any amounts generated by the sale or other disposition of Prepetition EVPS Collateral, and all income, proceeds, products, rents or profits of any Prepetition EVPS Collateral, constitutes "cash collateral" of the EVPS Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(j)      **Default.**  The EVPS Debtors are in default under the Prepetition EVPS Debt Documents, including as a result of these Chapter 11 Cases, and an event of default has occurred under the Prepetition EVPS Debt Documents.

F.   **Findings Regarding the EVPS L/C Roll-Up and Use of Cash Collateral.**[6]

6.     *Good Cause*.  Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the EVPS Debtors to use Cash Collateral as set forth herein.

7.     *Need for Use of Cash Collateral and Access to Letters of Credit*.  The EVPS Debtors seek authority on an interim basis to continue to use their respective Prepetition EVPS Collateral (including Cash Collateral) on the terms described herein in order to, among other things:  (a) to permit the orderly continuation of the operation of their businesses; (b) to pay the costs, fees, and expenses of administration of these Chapter 11 Cases and claims and amounts approved by this Court in the "first" and "second" day orders or as required under the Bankruptcy Code; (c) for general corporate and working capital purposes; (d) to pay adequate protection payments to the extent set forth herein, in accordance with the Approved Budget and subject to Permitted Variances; and (e) to fund the Carve Out (as defined herein) in accordance with this Interim Order, in each case, subject to the terms and conditions set forth herein

---

[6]   Solely for purposes of this Interim Order and without prejudice to any rights in the EVPS Term Loan Credit Agreement, the Ad Hoc First Lien Group constitutes the requisite threshold of lenders pursuant to the terms of the EVPS Term Loan Credit Agreement to direct the EVPS Term Loan Facility Agent.  To the extent at any point the Ad Hoc First Lien Group does not constitute such requisite threshold pursuant to the terms of the EVPS Term Loan Credit Agreement, any action or waiver that requires the consent of the Ad Hoc First Lien Group shall also require the consent of the EVPS Term Loan Facility Agent (acting at the direction of requisite threshold of lenders pursuant to the terms of the EVPS Term Loan Credit Agreement).

(including the Approved Budget (subject to Permitted Variances)).  The EVPS Debtors' access to sufficient working capital, liquidity, and letters of credit through the use of Cash Collateral and other Prepetition EVPS Collateral and the EVPS L/C Roll-Up is necessary and vital to preserve and maintain the going concern values of the EVPS Debtors.  The terms of this Interim Order are fair and reasonable, reflect the EVPS Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the EVPS Debtors, their estates, their creditors and other parties-in-interest will be seriously and irreparably harmed.

8.      *No Credit Available on More Favorable Terms*. The EVPS Debtors are unable to obtain credit on more favorable terms from sources other than the ABL Secured Parties and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The EVPS Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and/or 364(c)(3) of the Bankruptcy Code without granting to the ABL Secured Parties all of the EVPS L/C Liens (as defined herein) and incurring the ABL Adequate Protection Obligations (as defined herein) under the terms and conditions set forth in this Interim Order.

9.      *Use of Cash Collateral*.  As a condition to providing their consent to use Cash Collateral, each of the EVPS Secured Parties require, and the EVPS Debtors have agreed, that the EVPS Cash Collateral will be used solely for the purposes permitted in and in accordance with the terms of this Interim Order, including, without limitation, (a) to pay the costs of administration of these Chapter 11 Cases and claims or amounts approved by this Court in the "first" and "second" day orders acceptable to the ABL Agent (acting at the direction of the Required ABL Lenders) and the Ad Hoc First Lien Group and in accordance with the Approved Budget, (b) for general corporate and working capital purposes in accordance with the Approved

15

Budget, (c) to pay adequate protection payments to the extent set forth herein, in accordance with the Approved Budget and subject to Permitted Variances, and (d) to fund the Carve Out in accordance with this Interim Order.

10.    *EVPS L/C Roll-Up*. The EVPS L/C Roll-Up reflects the EVPS Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The EVPS Prepetition ABL Lenders and Letter of Credit Issuers would not otherwise consent to the use of their Cash Collateral or the renewal of the EVPS L/Cs without the EVPS L/C Roll-Up. The EVPS L/C Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition ABL Secured Parties to permit use of their Cash Collateral and to renew the EVPS L/Cs. The EVPS L/C Roll-Up will benefit the EVPS Debtors and their estates because it will enable the EVPS Debtors to maintain access to necessary Cash Collateral and letters of credit critical to administering these Chapter 11 Cases and funding their operations. Because the EVPS L/C Roll-Up is subject to the reservation of rights in paragraph 57, it will not prejudice any party in interest.

11.    *Structuring Fee Letter*. Entry into and performance under the Structuring Fee Letter reflects the EVPS Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The Structuring Fee Letter is the product of extensive good faith, arm's-length negotiations among the EVPS Debtors and the ABL Agent, and the terms are fair and reasonable and in the best interests of the EVPS Debtors, their estates, and their creditors. The EVPS Debtors would not have been able to obtain consent to the use of Cash Collateral or the renewal of the EVPS L/Cs without entering into and performing under the Structuring Fee Letter.

12.    *Confidential Nature of the Structuring Fee Letter*. The Structuring Fee Letter contains commercially sensitive information not typically disclosed to the public or to competing financial institutions.  In light of the highly competitive nature of the finance lending institutions,

it is of critical importance that the confidential information contained in the Structuring Fee Letter be kept confidential so that the ABL Agent's competitors may not use the information contained therein to gain a strategic advantage over them in the marketplace. Moreover, pursuant to the Structuring Fee Letter, the EVPS Debtors agreed to keep its terms confidential. The terms of the Structuring Fee Letter reflects closely-guarded proprietary and commercial information of the ABL Agent. As such, disclosure of the terms of the Structuring Fee Letter likely would cause substantial harm to the ABL Agent, create an unfair advantage for their competitors, and violate the EVPS Debtors' agreement with the ABL Agent to keep the terms of the Structuring Fee Letter confidential. Disclosure of the terms of the Structuring Fee Letter would also jeopardize the EVPS Debtors' ability to obtain consent to the use of Cash Collateral and the renewal of the EVPS L/Cs.

13.    *Adequate Protection.*    The EVPS Secured Parties are entitled to adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code as set forth in this Interim Order against any diminution in value of the EVPS Secured Parties' liens and security interests in the Prepetition EVPS Collateral (including Cash Collateral) from and after the Petition Date resulting from, among other things, (a) the use, sale or lease by the EVPS Debtors of such collateral, (b) the market value decline of such collateral, (c) the aggregate amount of Cash Collateral used by each of the EVPS Debtors on a dollar-for-dollar basis, (d) the imposition of the automatic stay, (e) the subordination of their Prepetition EVPS Liens and Prepetition EVPS Secured Obligations to the Carve Out and the EVPS L/C Liens upon the terms set forth herein, and (f) any other act or omission which causes diminution in the value of their interests in the Prepetition EVPS Collateral (collectively, and to the fullest extent permitted under the Bankruptcy Code, the "Diminution in Value"), *provided, however*, that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the EVPS Secured Parties for

the use of the EVPS Cash Collateral or other Prepetition EVPS Collateral other than on the terms expressly set forth in this Interim Order (or as otherwise required under the Prepetition EVPS Intercreditor Agreements), (y) be construed as a consent by any party to the terms of any financing or any other lien encumbering the Prepetition EVPS Collateral (whether senior or junior) (except for the EVPS Adequate Protection Liens, the EVPS Adequate Protection Claims (each as defined herein), and the Carve Out, or as otherwise required under the Prepetition EVPS Intercreditor Agreements), or (z) prejudice, limit or otherwise impair the rights of any of the EVPS Secured Parties to seek new, different or additional adequate protection (subject to the Prepetition EVPS Intercreditor Agreements).  Based on the Motion, the First Day Declarations, and other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing, the terms of the adequate protection arrangements and of the use of Prepetition EVPS Collateral (including Cash Collateral) are fair and reasonable, reflect the EVPS Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition EVPS Collateral (including Cash Collateral).

14.     *Consent*.  The EVPS Secured Parties have consented to or are deemed to have consented, pursuant to the provisions of the Prepetition EVPS Debt Documents and the Prepetition EVPS Intercreditor Agreements, to the EVPS Debtors' use of Prepetition EVPS Collateral (including Cash Collateral), solely in accordance with and subject to the terms and conditions of this Interim Order.

15.     *Limitation on Charging Expenses against Collateral*.  As a material inducement and in exchange for (a) the EVPS Secured Parties' agreement (or deemed agreement) to subordinate their Prepetition EVPS Liens to the Carve Out and the EVPS L/C Liens and (b) the EVPS Secured Parties' consent (or deemed consent) to the use of their Cash Collateral, in each

case, in accordance with the terms and conditions of this Interim Order, except to the extent of the Carve Out, no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases,[67] shall be charged against or recovered from their respective Prepetition EVPS Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, without the respective prior written consent of the ABL Agent (acting at the direction of the Required ABL Lenders) and Ad Hoc First Lien Group (email shall suffice), and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition EVPS Administrative Parties or any lender, and nothing in this Interim Order shall be deemed to be a consent by the Prepetition EVPS Administrative Parties to any charge, lien, assessment, or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order.

16.    *No Marshaling; Section 552(b) of the Bankruptcy Code.*  Except to the extent of the Carve Out, in no event shall the EVPS Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition EVPS Collateral or their Prepetition EVPS Secured Obligations and all proceeds shall be received and applied in accordance with the Prepetition EVPS Debt Documents, as applicable.  The EVPS Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the EVPS Secured Parties with respect to proceeds, products, offspring, or profits of any kind of the Prepetition EVPS Collateral; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order.

---

[67]    "Successor Cases" shall mean any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of these Chapter 11 Cases or any such successor cases.

17.     *Proper Exercise of Business Judgment and Good Faith Pursuant to Section 364(e)*.  Based on the Motion, the First Day Declarations, and the record presented to the Court at the Interim Hearing, (a) the terms of the EVPS L/C Roll-Up, (b) the terms of adequate protection granted to the EVPS Secured Parties, (b) the fees and other amounts paid and to be paid under the foregoing, (c) the terms on which the EVPS Debtors may continue to use the Prepetition EVPS Collateral (including Cash Collateral), and (d) the Cash Collateral arrangements described herein pursuant to this Interim Order, (i) are fair, reasonable, and the best available to the EVPS Debtors under the circumstances; (ii) reflect the EVPS Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and fair consideration.  The EVPS L/C Roll-Up and the use of the Prepetition EVPS Collateral (including Cash Collateral) was negotiated in good faith and at arm's length among the EVPS Debtors and EVPS Secured Parties.  The use of Prepetition EVPS Collateral (including Cash Collateral) and the credit to be extended under the EVPS L/C Roll-Up shall be deemed to have been so allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the EVPS Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

18.     *Good Faith*.  The EVPS Secured Parties have acted in good faith regarding the EVPS Debtors' continued use of the Prepetition EVPS Collateral (including Cash Collateral) to fund the administration of the EVPS Debtors' estates and the continued operation of their businesses in accordance with the terms hereof, and the incurrence and payment of the EVPS Adequate Protection Claims, security interests and liens, and other rights, benefits and protections granted to the EVPS Secured Parties (and their successors and assigns thereof) pursuant to this Interim Order, and the EVPS Secured Parties shall be entitled to the full

protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

19.    *Initial Budget*.  The EVPS Debtors have prepared, in consultation with the ABL Agent and Ad Hoc First Lien Group, and delivered to the EVPS Secured Parties the initial 13-week cash disbursements and receipts budget set forth on **Exhibit 1** attached hereto (the "Initial Budget").  The Initial Budget is an integral part of this Interim Order, and the EVPS Secured Parties are relying, in part, upon the EVPS Debtors' agreement to comply, subject to Permitted Variances, with the Initial Budget, in accordance with the terms hereof, to allow the EVPS Debtors to use Cash Collateral subject to the terms of this Interim Order.

20.    *Notice*.  Proper, timely, adequate, and sufficient notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

21.    *Relief Essential*.  The Court concludes that entry of this Interim Order is necessary to avoid immediate and irreparable harm, and is in the best interests of the EVPS Debtors' estates, and is necessary, essential, and appropriate for the continued operation of the EVPS Debtors' businesses and the management and preservation of their assets and properties.

**NOW THEREFORE,** based upon the foregoing findings and conclusions, the Motion, the First Day Declarations, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

**G.    Motion Approved.**

22.    The Motion is hereby granted on an interim basis in accordance with and subject to the terms and conditions of this Interim Order.  Any objections or other statements to any of

the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby overruled.

**H.      Use of Cash Collateral.**

23.      The use of proceeds of the Prepetition EVPS Collateral (including Cash Collateral) by the EVPS Debtors is authorized and approved, in each case, solely in the manner and for the purposes expressly permitted under this Interim Order, including the Approved Budget (subject to Permitted Variances), including, without limitation:  (a) to permit the orderly continuation of the operation of their businesses; (b) to pay the costs, fees, and expenses of administration of these Chapter 11 Cases and claims and amounts approved by this Court in the "first" and "second" day orders or as required under the Bankruptcy Code in accordance with the Approved Budget (subject to Permitted Variances); (c) for general corporate and working capital purposes in accordance with the Approved Budget (subject to Permitted Variances); (d) to pay adequate protection payments to the extent set forth herein, in accordance with the Approved Budget and subject to Permitted Variances; and (e) to fund the Carve Out in accordance with this Interim Order.  For the avoidance of doubt, none of the EVPS Debtors will use any proceeds of the Prepetition EVPS Collateral (including Cash Collateral) in a manner or for a purpose other than those consistent with the Approved Budget (subject to Permitted Variances) and this Interim Order.

24.      None of the EVPS Secured Parties shall have any obligation or responsibility to monitor any EVPS Debtors' use of Cash Collateral, and each EVPS Secured Party may rely upon each EVPS Debtors' representations that the use of the proceeds of Cash Collateral is in accordance with the requirements of this Interim Order but may enforce the terms of this Interim Order in the event of any violation of such terms.

25.     The Debtors' obligations under this Interim Order shall constitute legal, valid, binding, enforceable, and non-avoidable obligation of each of the Debtors, and shall be fully enforceable in accordance with the terms of this Interim Order against each of the Debtors, and their estates, and any successors thereto, including without limitation any estate representative or trustee appointed in any of these Chapter 11 Cases or any Successor Cases, and their creditors and other parties in interest, in each case, in accordance with the terms thereof and this Interim Order.  Subject to this Interim Order and after the expiration of the Remedies Notice Period (as defined herein), the use of Cash Collateral shall automatically cease upon the occurrence of a Termination Event (as defined herein).  No obligation, payment, transfer, or grant of security under this Interim Order to the EVPS Secured Parties (including their respective Representatives) shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

26.     **EVPS L/C Roll-Up**. Upon entry of this Interim Order, subject only to paragraph 57 of this Interim Order, all EVPS Prepetition ABL Obligations under or relating to outstanding EVPS L/Cs shall be converted into EVPS L/C Superpriority Claims secured by the EVPS L/C Liens (the "EVPS L/SC Roll-Up").  The EVPS L/C Roll-Up authorized upon entry of this Interim Order shall be final, subject only to the right of parties in interest (other than the Debtors and the EVPS Secured Parties) to seek a determination in accordance with paragraph S of this

Interim Order that the EVPS L/C Roll-Up resulted in the payment of an unsecured prepetition claim.  For the avoidance of doubt, nothing in this Interim Order shall (a) permit the issuance of new letters of credit under the ABL Facility or (b) obligate the Letter of Credit Issuers to renew (or prohibit the Letter of Credit Issuers from sending non-renewal notices with respect to) any EVPS L/Cs after termination of consensual use of Cash Collateral under this Interim Order. Upon entry of this Interim Order, cash securing all existing cash collateralized EVPS L/Cs shall be released.

27.     Upon entry of this Interim Order and until the occurrence of a Termination Event, the Letter of Credit Issuers are directed to not send any notices of non-renewal on account of the EVPS L/Cs so long as consensual use of Cash Collateral under this Interim Order has not been terminated; *provided*, that, for the avoidance of doubt, nothing contained herein shall prohibit, limit, or impair such Letter of Credit Issuers' right to send any notices of non-renewal in accordance with the ABL Agreement following termination of consensual use of Cash Collateral under this Interim Order.

28.     **EVPS L/C Superpriority Claims**. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the EVPS L/C Obligations shall constitute allowed superpriority administrative expense claims against the EVPS Debtors on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the EVPS Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503, 506, 507(a), 507(b), 546, 552, 726, 1113 or 1114 of the Bankruptcy Code (including the EVPS Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual

24

lien, levy or attachment, which allowed claims (the "EVPS L/C Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which EVPS L/C Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the EVPS Debtors and all proceeds thereof (excluding Avoidance Actions but, subject to the entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds")) in accordance with this Interim Order. The EVPS L/C Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

29.    **EVPS L/C Liens**. As security for the EVPS L/C Obligations, effective and automatically and properly perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filing by any of the EVPS Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, intellectual property filing or other similar documents, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the ABL Agent of, or over, any EVPS L/C Collateral, without any further action by the ABL Agent or the ABL Secured Parties, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens (all security interests and liens granted pursuant to this Interim Order to the ABL Agent, for its benefit and for the benefit of the ABL Secured Parties to secure the EVPS L/C Obligations, the "EVPS L/C Liens") are hereby granted to the ABL Agent for its own benefit and the benefit of the ABL Secured Parties a security interest in and lien on all prepetition and postpetition property of the EVPS Debtors, in each case with the priority

identified in the following clauses (a) through (d) (including without limitation all products and proceeds of thereof, collectively, the "EVPS L/C Collateral"), subject and subordinate to the Carve Out; notwithstanding the foregoing, the EVPS L/C Collateral shall exclude all Avoidance Actions, but, subject to entry of a Final Order, shall include Avoidance Proceeds:

(a)     **First Liens on EVPS Unencumbered Property**. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon any and all prepetition and postpetition property of the EVPS Debtors that on or as of the Petition Date, is not subject to (A) a valid, perfected and non-avoidable lien or (B) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the EVPS Debtors (whether maintained with any of the ABL Secured Parties or otherwise) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (the "EVPS Unencumbered Property") (but, for the avoidance of doubt, subject to entry of the Final Order, including Avoidance Proceeds);

(b)     **Junior Liens on Encumbered Property.** Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien (subject to the Carve-Out and junior and subject only to (i) the EVPS Term Loan Adequate Protection Liens, (ii) the Prepetition EVPS Term Loan Liens and Prepetition Intercompany Loans, and (iii) any Permitted Prior Senior Liens (x) in existence and properly perfected immediately prior to the Petition Date or (y) in existence immediately prior to the Petition Date that is perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code) in and lien upon the EVPS Term Priority Collateral and any other encumbered assets other than those of the same nature, scope, and type as the ABL Priority Collateral, other than the Avoidance Actions (but, for the avoidance of doubt, subject to entry of the Final Order, including Avoidance Proceeds);

26

(c)  **Liens Priming the EVPS Prepetition Secured Parties' Liens on ABL Priority Collateral**. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming (subject only to Permitted Prior Senior Liens (i) in existence and properly perfected immediately prior to the Petition Date or (ii) in existence immediately prior to the Petition Date that is perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code) security interest in and lien upon all prepetition and postpetition property of each EVPS Debtor of the same nature, scope, and type as the ABL Priority Collateral, regardless of where located, regardless whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which shall prime in all respects the interests of the Prepetition Secured Parties on the ABL Priority Collateral arising from the current and future liens of the Prepetition Secured Parties (including without limitation the Adequate Protection Liens granted to the Prepetition Secured Parties); and

(d)  **Liens Senior to Certain Other Liens**. The EVPS L/C Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Interim Order, any liens or security interests arising after the Petition Date, including without limitation any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the EVPS Debtors, or (C) any intercompany or affiliate liens of the EVPS Debtors or security interests of the EVPS Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

I.  **The Structuring Fee Letter**.

30.  **Entry Into the Structuring Fee Letter**. The EVPS Debtors are authorized to enter into the Structuring Fee Letter, and the prior execution thereof is hereby ratified, approved, and authorized.  The EVPS Debtors are further authorized to comply with the terms of the Structuring Fee Letter and take any and all actions necessary to implement the terms thereof and pay the fees, expenses, and indemnity obligations set forth in the Structuring Fee Letter, including, without limitation, any fees and expenses incurred prior to the date of this Interim Order, in each case, pursuant to the terms and conditions set forth in the Structuring Fee Letter without further notice, hearing, or order of this Court.  The EVPS Debtors and the ABL Agent

are authorized to enter into any amendment, modification, supplement, or waiver to any provision of the Structuring Fee Letter in accordance with the terms thereof without further notice, hearing, or order of this Court. The *EVPS Debtors' obligations* in respect of the fees, expenses, and indemnity obligations pursuant to the Structuring Fee Letter shall constitute EVPS L/C Obligations.

31.     **L/C Reimbursement**. If any of the EVPS L/Cs are drawn upon, the EVPS Debtors shall reimburse the applicable Letter of Credit Issuer for such drawing in the same currency in which such drawing was made unless the Letter of Credit Issuer (at its option) shall have specified in the notice of drawing that it will require reimbursement in Dollars (as defined in the ABL Credit Agreement) (such reimbursement, a "<u>L/C Reimbursement</u>"). Any L/C Reimbursement shall be made by the EVPS Debtors to the ABL Agent in immediately available funds no later than the date that is one business day after the date on which any of the EVPS Debtors receives written notice of such payment or disbursement on account of a drawing under an EVPS L/C (the "<u>Reimbursement Date</u>"), with interest on the amount so paid or disbursed by the Letter of Credit Issuer, to the extent not reimbursed prior to 5:00 p.m. (prevailing Central Time) on the Reimbursement Date, from the Reimbursement Date to the date the Letter of Credit is reimbursed therefor at a rate per annum equal to the Applicable Margin for ABR Loans that are Revolving Credit Loans plus the ABR (each as defined in the ABL Credit Agreement) as in effect from time to time.

**J.      EVPS Adequate Protection Claims and Liens.**

32.     **Adequate Protection Claims and Liens for ABL Secured Parties.** Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the EVPS Debtors hereby grant the ABL Secured Parties adequate protection of their interests in all Prepetition EVPS Collateral (including Cash Collateral) to the extent of any Diminution in Value of the ABL Secured Parties'

interests in the Prepetition EVPS Collateral (including Cash Collateral) from and after the Petition Date as follows:

(a)     **ABL Adequate Protection Claims.**   Solely to the extent of any Diminution in Value in Prepetition EVPS Collateral, the ABL Agent (on behalf of the ABL Secured Parties) shall have allowed joint and several superpriority claims against each of the EVPS Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against any of the EVPS Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 328, 330, 331, 503(b), (subject to entry of the Final Order) 506(c), 507(a) (other than 507(a)(1)), 507(b), 546(c), 726 (to the extent permitted by law), 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the EVPS Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases of the EVPS Debtors or any Successor Cases (the "ABL Adequate Protection Claims"), subject and subordinate only to (i) the Carve Out and the EVPS L/C Superpriority Claims and, (ii) with respect to all Prepetition EVPS Collateral and prepetition and postpetition property of the EVPS Debtors of the same nature, scope, and type as the EVPS Term Priority Collateral without regard to whether such property constitutes Prepetition EVPS Term Loan Collateral or Prepetition Intercompany Loan Collateral, the EVPS Term Loan Adequate Protection Claims (defined below).

(b)     **ABL Adequate Protection Liens.**  As security for and solely to the extent of any Diminution in Value in Prepetition EVPS Collateral, effective as of the Petition Date and perfected without the necessity of the execution by the EVPS Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the ABL Agent of any ABL Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the ABL Agent for the benefit of itself and the other ABL Secured Parties (all property identified in clauses (i), (ii), and (iii) below being collectively referred to as the "ABL Adequate Protection Collateral"), subject and subordinate to the Carve Out and the EVPS L/C Liens (all such liens and security interests, the "ABL Adequate Protection Liens", such ABL Adequate Protection Liens together with the ABL Adequate Protection Claims, the "ABL Adequate Protection Obligations").

(i)     **Liens Junior to Certain Existing Liens.**   Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, the EVPS Term Priority Collateral (including, without limitation, all products and proceeds of EVPS Term Priority Collateral), that is

subject to (w) the EVPS L/C Liens, (x) the Prepetition EVPS Term Loan Liens and the EVPS Term Loan Adequate Protection Liens, (y) the Prepetition ABL Liens, and (z) the Permitted Prior Senior Liens.

(ii)     **Liens Senior to Certain Existing Liens.**   Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, ABL Priority Collateral (including, without limitation, all products and proceeds of ABL Priority Collateral); *provided* that such liens and security interests shall not prime (x) the EVPS L/C Liens, (y) the Prepetition ABL Liens or (z) the Permitted Prior Senior Liens.

(iii)    **Additional EVPS Adequate Protection Liens.** Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, (i) a valid, binding, enforceable, fully-perfected non-voidable first-priority lien on prepetition and postpetition property of each EVPS Debtor that is not included in paragraphs 22(b)(i)-(ii) and is of the same nature, scope, and type as the ABL Priority Collateral, (ii) a valid, binding, enforceable, fully-perfected non-voidable second-priority lien on, and security interest in any prepetition and postpetition property of each EVPS Debtor of the same nature, scope, and type as the EVPS Term Priority Collateral, in each case, whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, and (iii) subject to entry of the Final Order, a valid, binding, enforceable, fully-perfected non-voidable second-priority lien on, and security interest in, any Avoidance Proceeds (*provided*, *however*, that no ABL Secured Party shall have a lien on Avoidance Proceeds obtained from such ABL Secured Party for actual or constructive fraud, willful misconduct, lender liability or other intentional wrongful acts) and the EVPS Debtors' rights under section 506(c) and 550 of the Bankruptcy Code; *provided further* that such liens and security interests described in this paragraph (iii) shall be subject and subordinate to the EVPS L/C Liens.

(iv)    **Status of the ABL EVPS Adequate Protection Liens.**  The ABL Adequate Protection Liens shall not be (1) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the EVPS Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate to the Carve Out, or (2) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 22(b), subordinated to or made *pari passu* with any other lien or security interest, now or hereafter existing and

30

whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

33. **Adequate Protection Claims and Liens for EVPS Term Loan Secured Parties and Intercompany Secured Party.** Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the EVPS Term Loan Secured Parties and Intercompany Secured Party (collectively, the "EVPS *Pari Passu* Secured Parties") are entitled to adequate protection of their interests in all the Prepetition EVPS Collateral (including Cash Collateral). Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the EVPS Debtors hereby grant the EVPS *Pari Passu* Secured Parties adequate protection of their interests in all Prepetition EVPS Collateral ~~and all EVPS L/C Collateral~~, to the extent of any Diminution in Value of the EVPS *Pari Passu* Secured Parties' interests in the Prepetition EVPS Collateral (including Cash Collateral) from and after the Petition Date as follows:

(a)  **EVPS Term Loan Adequate Protection Claims.** Solely to the extent of any Diminution in Value in Prepetition EVPS Collateral, the EVPS Term Loan Facility Agent and Intercompany Loan Agent (on behalf of the applicable EVPS *Pari Passu* Secured Parties) shall have allowed joint and several superpriority claims against each of the EVPS Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against any of the EVPS Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), (subject to entry of the Final Order) 506(c), 507(a) (other than 507(a)(1)), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the EVPS Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases of the EVPS Debtors or any subsequent proceedings under the Bankruptcy Code (the "EVPS Term Loan Adequate Protection Claims," together with the ABL Adequate Protection Claims, the "EVPS Adequate Protection Claims"), subject and subordinate only to the Carve Out and the EVPS L/C Superpriority Claims and, solely with respect to all Prepetition EVPS Collateral and prepetition and postpetition property of the EVPS Debtors of the same nature, scope, and type as the ABL Priority Collateral, the ABL Adequate Protection Claims.

(b)  **EVPS Term Loan Adequate Protection Liens.** As security for and solely to the extent of any Diminution in Value, effective as of the Petition Date and perfected without the necessity of the execution by the EVPS

Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the EVPS Term Loan Facility Agent or Intercompany Loan Agent, as applicable, of any EVPS Term Loan Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the EVPS Term Loan Facility Agent and Intercompany Loan Agent for the benefit of themselves and the other EVPS *Pari Passu* Secured Parties (all property identified in clauses (i), (ii) and (iii) below being collectively referred to as the "EVPS Term Loan Adequate Protection Collateral," together with the ABL Adequate Protection Collateral, the "EVPS Adequate Protection Collateral"), subject and subordinate to the Carve Out (all such liens and security interests, the "EVPS Term Loan Adequate Protection Liens," together with the ABL Adequate Protection Liens, the "EVPS Adequate Protection Liens") (such EVPS Term Loan Adequate Protection Liens together with the EVPS Term Loan Adequate Protection Claims, the "EVPS Term Loan Adequate Protection Obligations").

(i)     **Liens Junior to Certain Existing Liens.**     Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, ABL Priority Collateral (including, without limitation, all products and proceeds of ABL Priority Collateral), that is subject to (w) the EVPS L/C Liens, (x) the Prepetition ABL Liens and the ABL Adequate Protection Liens, (y) the Prepetition EVPS Term Loan Liens and the Prepetition Intercompany Loan Liens, and (z) the Permitted Prior Senior Liens.

(ii)    **Liens Senior to Certain Existing Liens.**     Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the EVPS Term Priority Collateral (including, without limitation, all products and proceeds of EVPS Term Priority Collateral); *provided* that such liens and security interests shall not prime (x) the Prepetition EVPS Term Loan Liens and the Prepetition Intercompany Loan Liens, or (y) the Permitted Prior Senior Liens.

(iii)   **Additional EVPS Adequate Protection Liens**. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, (i) a valid, binding, enforceable, fully-perfected non-voidable first-priority lien on all prepetition and postpetition property of each EVPS Debtor of the same nature, scope, and type as EVPS Term Priority Collateral, (ii) a valid, binding, enforceable, fully-perfected, non-avoidable second-priority lien on, and security interest in any property of each EVPS Debtor of the same nature, scope, and type as ABL Priority Collateral, in each case, whether existing on the Petition Date or thereafter acquired, and wherever located, and the

proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, and (iii) subject to entry of the Final Order (except with respect to proceeds of actions under section 549 of the Bankruptcy Code, the proceeds of which are subject to this paragraph upon entry of this Interim Order), a valid, binding, enforceable, fully-perfected non-voidable first-priority lien on, and security interest in, any Avoidance Proceeds, subject to EVPS L/C Liens (*provided, however*, that no EVPS *Pari Passu* Secured Party shall have a lien on Avoidance Proceeds obtained from such EVPS *Pari Passu* Secured Party for actual or constructive fraud, willful misconduct, lender liability, or other intentional wrongful acts) and the EVPS Debtors' rights under section 506(c) and 550 of the Bankruptcy Code.

(iv) **Status of the EVPS Term Loan Adequate Protection Liens.** The EVPS Term Loan Adequate Protection Liens shall not be (x) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the EVPS Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate to the Carve Out, or (y) except as otherwise set forth in clauses                                    (i), (ii), and (iii) of this paragraph 23(b), subordinated to or made *pari passu* with any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

34. **Additional Adequate Protection for ABL Secured Parties and EVPS Term Loan Secured Parties.** As additional adequate protection of the ABL Secured Parties' ~~or~~and EVPS Term Loan Secured Parties' security interests in the Prepetition EVPS Collateral, including the Cash Collateral (the following adequate protection together with the ABL Adequate Protection Obligations and the EVPS Term Loan Adequate Protection Obligations, the "EVPS Adequate Protection Obligations"):

(a) **Approved Budget.** Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the EVPS Debtors' use of Cash Collateral during the period beginning with the Petition Date and ending on a Termination Date (as defined below), in a manner consistent with this Interim Order and the Approved Budget.

(i) **Approved Budget; Budget Period.** As used in this Interim Order: (i) "Approved Budget" means the Initial Budget, as such Initial Budget may be modified from time to time by the EVPS

Debtors with the prior written consent of the ABL Agent (acting at the direction of the Required ABL Lenders) and the Ad Hoc First Lien Group as set forth in this paragraph and this Interim Order; and (ii) "Budget Period" means the first four full weeks and thereafter on a four-week (4-week) trailing period thereafter set forth in the Approved Budget in effect at such time.

(ii)     **Budget Testing**.  The EVPS Debtors may use Cash Collateral strictly in accordance with the Approved Budget, subject only to Permitted Variances.  Permitted Variances for each Approved Budget shall be tested on the ~~second~~third Thursday after the Petition Date and every second Thursday thereafter (the "Testing Date").  On or before 5:00 p.m. (prevailing Central time) on each Testing Date or, to the extent such Testing Date is not a business day, the next business day thereafter, the EVPS Debtors shall prepare and deliver to the ABL Agent, the ABL Advisors, the EVPS Term Loan Facility Agent, the Ad Hoc First Lien Group, and the Ad Hoc First Lien Group Advisors (as defined below), in form and substance reasonably acceptable to the ABL Agent (acting at the direction of the Required ABL Lenders) and the Ad Hoc First Lien Group, a variance report (the "Variance Report") setting forth in reasonable detail actual cash receipts and disbursements for the prior two-week period or four-week period for the EVPS Debtors and all variances, in each case on an aggregate basis, as compared to the previously delivered Budget.

(iii)     **Permitted Variances and Minimum Liquidity Amount**.  The EVPS Debtors shall not permit during any Budget Period, the EVPS Debtors' (x) actual disbursements on an aggregate basis for the initial two-week period and any four-week period during such Budget Period to be more than 115% of the projected disbursements in the aggregate as set forth in the Approved Budget over such time, and (y) actual receipts on an aggregate basis for the initial two-week period and any four-week period during such Budget Period to be less than 85% of the projected receipts in the aggregate as set forth in the Approved Budget over such time period (such deviations from the applicable projected amounts set forth in the Approved Budget, the "Permitted Variances"); *provided* that the cash disbursements considered for determining compliance with this covenant shall exclude the EVPS Debtors' disbursements during the applicable period in respect of (i) the restructuring professional fees (including, without limitation, fees and expenses of the advisors to the Debtors and/or the Official Committee (if any) and the EVPS Secured Parties on account of professional fees under paragraph 34(c) of this Interim Order), and (ii) U.S. Trustee's fees; *provided, further*, that unrestricted cash and cash equivalents of the EVPS Debtors shall not be less than

$175 million at the end of any week (such amounts in this clause (ii), the "Minimum Liquidity Amount").

(iv) **Budget Reporting**. By no later than 5:00 p.m. (prevailing Central Time) on the Thursday following each Budget Period (or, if such day is not a business day, the next business day thereafter), the EVPS Debtors shall deliver to the ABL Advisors and, Ad Hoc First Lien Group Advisors, and EVPS Agent Advisors an updated budget, consistent with the form and level of detail set forth in the Initial Budget, including the same line-items provided with the Initial Budget, and otherwise in form and substance acceptable to the ABL Agent (acting at the direction of the Required ABL Lenders) and the Ad Hoc First Lien Group (the "Proposed Budget"), and each Proposed Budget shall constitute the "Budget" for purposes of this Interim Order upon written approval delivered by counsel to the ABL Agent or the Ad Hoc First Lien Group (email being sufficient). In the absence of such approval, the prior Approved Budget shall remain in full force and effect; *provided*, however, that in the event the ABL Agent (acting at the direction of the Required ABL Lenders) and/or the Ad Hoc First Lien Group does not approve of a Proposed Budget within ten (10) business days of its delivery, upon five (5) business days' written notice to the ABL Agent and Ad Hoc First Lien Group Advisors, the EVPS Debtors may request an immediate hearing with the Court to seek Court approval of the Proposed Budget to be deemed an Approved Budget for purposes of this Interim Order.

(b) **Reporting.** The EVPS Debtors shall comply with all reporting requirements set forth in the EVPS Term Loan Credit Agreement and the ABL Credit Agreement, and shall provide, subject to any applicable limitations set forth below, to (i) the ABL Agent; (ii) the ABL Advisors; (iii) the Ad Hoc First Lien Group; (iv) the Ad Hoc First Lien Group Advisors; and (v) the EVPS Term Loan Facility Agent:

(i) weekly (or more frequently as may be agreed to between the EVPS Debtors, the Ad Hoc First Lien Group, and the ABL Agent) calls between the EVPS Debtor advisors and the Ad Hoc First Lien Group Advisors and the ABL Agent Advisors with respect to (a) business, financial, and operational updates, (b) the Variance Report, (c) the Chapter 11 cases and restructuring efforts, (d) the EVPS Debtors' discussions with any potential financing party, strategic partner, or acquirer, (e) the status of any material litigation, litigation claims, and other claims, and/or (f) any other updates in form and scope reasonably agreed by the EVPS Debtors, the ABL Agent, and the Ad Hoc First Lien Group;

(ii) weekly status reports on (x) any sale process regarding AmSurg LLC and its subsidiaries and/or affiliates, including any entity or

35

assets relating to the ambulatory surgical centers business and (y) payor contract and subsidy negotiations;

(iii)   at the times specified herein, the Variance Report required by this Interim Order;

(iv)   deliver the unaudited annual financial report for fiscal year 2022 required under section 9.01(a) of the EVPS Term Loan Credit Agreement no later thirty (30) days after the Petition Date (and post the same to the public side of Syndtrak or other data room generally accessible to the EVPS Term Loan Secured Parties);

(v)   deliver the unaudited quarterly financial reports for the first quarter of 2023 required under section 9.01(b) of the EVPS Term Loan Credit Agreement no later sixty (60) days after the Petition Date (and post the same to the public side of Syndtrak or other data room generally accessible to the EVPS Term Loan Secured Parties);

(vi)   timely delivery of each Proposed Budget as set forth in this Interim Order;

(vii)   prompt notice of the of the EVPS Debtors' Liquidity falling below the Minimum Liquidity Amount at the end of any week;

(viii)   weekly delivery of current cash and bank account balances held by the EVPS Debtors;

(ix)   promptly, and in any event by the thirtieth (30th) calendar day of the subsequent month, beginning with the period ended April 30, 2023, a monthly financial report, monthly operating report, and any other reports or analyses prepared in compliance with applicable reporting requirements in these Chapter 11 Cases;

(x)   the Debtors will grant access to any data room established in connection with third-party diligence commenced in connection with any restructuring or sale of one or more of the Debtors or its assets to the ABL Advisors and, Ad Hoc First Lien Group Advisors, EVPS Agent Advisors on a professional eyes only basis; and

(xi)   as soon as reasonably practicable after written request from either the ABL Advisors or, the Ad Hoc First Lien Group Advisors, and the EVPS Agent Advisors, the EVPS Debtors will provide the ABL Agent, the ABL Advisors, the Ad Hoc First Lien Group, the EVPS Agent Advisors, and the Ad Hoc First Lien Group Advisors with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by any EVPS Debtor in any of the Chapter 11 Cases.

36

(c) **Fees and Expenses.** The EVPS Debtors are authorized and directed to pay, within five (5) business days after the receipt of invoices therefor, all reasonable and documented professional fees, expenses and disbursements of: (i) the ABL Agent; (ii) Davis Polk & Wardwell LLP, Davis Wright Tremaine LLP, and Hunton Andrews Kurth LLP, as counsel to the ABL Agent; (iii) FTI Consulting, as financial advisor to the ABL Agent (together with the advisors in the foregoing clause (ii), the "ABL Advisors"); (iv) the EVPS Term Loan Facility Agent; (v) Gibson, Dunn & Crutcher LLP and Munsch Hardt Kopf & Harr, P.C., as counsel to the ad hoc group of certain holders of the EVPS Term Loans (the "Ad Hoc First Lien Group"); (vi) Evercore Group, LLC and AlixPartners LLP, as financial advisors to the Ad Hoc First Lien Group (the advisors in the foregoing clauses (v) through (vi), collectively the "Ad Hoc First Lien Group Advisors"); and (vii) Kilpatrick Townsend & Stockton LLP, as counsel to the EVPS Term Loan Facility Agent (the "EVPS Agent Advisors"); (viii) the Intercompany Loan Agent; and (ix) Seward & Kissel LLP, as counsel to the Intercompany Loan Agent. Notwithstanding the foregoing, the ABL Agent and the Ad Hoc First Lien Group may retain such other professionals as are reasonably necessary in connection with the Chapter 11 Cases, on advance notice to the EVPS Debtors, and in such circumstance, such additional professionals shall be deemed to be ABL Advisors or Ad Hoc First Lien Group Advisors, as applicable, for purposes of this Interim Order. Further, the EVPS Debtors shall pay to the ABL Agent a structuring fee set forth in that certain fee letter, by and between the EVPS Debtors and the ABL Agent (the "Fee Letter"). The EVPS Debtors are authorized and directed to pay the amounts provided in this paragraph 34 whether or not contained in the Approved Budget and without being limited by the dollar estimates contained in the Approved Budget.

(d) **Cash Management Covenant**. The EVPS Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order.

(e) **Other Covenants.** The EVPS Debtors shall not use, sell, or lease any assets with an aggregate fair market value in excess of $10 million in any single transaction or series of related transactions outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the ABL Agent (acting at the direction of the Required ABL Lenders and the Ad Hoc First Lien Group (with email to the Debtors' counsel being sufficient).

The EVPS Debtors shall comply with the covenants contained in Article IX of the EVPS Term Loan Credit Agreement and Section 9 of the ABL Credit Agreement regarding conduct of business, including, without limitation, preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual

37

property rights material to the conduct of its business and the maintenance of properties and insurance.

The EVPS Debtors shall comply with each provision of the ABL Credit Agreement that is applicable after the commencement and during the continuance of a Cash Dominion Period (as defined in the ABL Credit Agreement) (assuming for purposes of such definition that the "Revolving Credit Commitments" were in effect after the Petition Date notwithstanding the termination thereof upon the filing of these Chapter 11 Cases) and the ABL Secured Parties shall be entitled to take or refrain from taking any action in connection therewith as permitted under the ABL Credit Agreement.

The EVPS Debtors shall provide to the ABL Advisors at the same time as such documents are provided to the Ad Hoc First Lien Group or the Ad Hoc First Lien Group Advisors all Definitive Documents (as defined in the Restructuring Support Agreement) and declarations related thereto (other than declarations in support of, or related to, retention applications, fee applications, or fee statements) that the EVPS Debtors are required to provide to the Ad Hoc First Lien Group or the Ad Hoc First Lien Group Advisors under the Restructuring Support Agreement or otherwise.

(f)     **Adequate Protection Payments.**  From and after entry of this Interim Order, the ABL Secured Parties shall receive cash payment in immediately available funds, (x) promptly upon the entry of this Interim Order, all accrued and unpaid amounts (whether accrued prior to or after the Petition Date) in respect of (i) as to the applicable ABL Secured Parties, the Structuring Fee Letter and (ii) the ABL Credit Agreement and (y) thereafter, as and when due under the ABL Credit Agreement, all interest at the LIBOR rate, *plus* the Applicable Margin for LIBOR loans (as defined in the ABL Credit Agreement), *plus* a default interest rate of 2.00 per annum%; *provided* that following the expiration of current LIBOR contracts for the loans, the obligations shall bear interest at a rate equal to the ABR rate, *plus* the Applicable Margin for ABR loans (as defined in the ABL Credit Agreement), *plus* a default interest rate of 2.00% per annum, in respect of unpaid principal outstanding under the ABL Credit Agreement.  Interest due hereunder to the ABL Secured Parties shall be calculated at the rates under the ABL Credit Agreement and shall be paid on the same dates as currently required by the ABL Credit Agreement.

If at any time (x) the sum of (i) the aggregate principal amount of EVPS Prepetition ABL Obligations then outstanding plus (ii) the aggregate amount of EVPS L/C Obligations then outstanding exceeds (y) the Borrowing Base (as defined in, and determined in accordance with, the ABL Credit Agreement (*provided*, that without limiting the ABL Agent's Permitted Discretion (as defined in the ABL Credit Agreement) to take other reserves as provided in the ABL Credit Agreement, immediately following entry of this Interim Order, "Reserves" shall also include an additional reserve (the "Carve-Out Reserve") in an aggregate amount

equal to the full Carve Out (as calculated including the estimated Pre-Carve Out Trigger Notice Reserve as of the most recent Calculation Date), which Carve-Out Reserve may be adjusted by the ABL Agent at any time in its Permitted Discretion to account for any inaccuracies in any Weekly Statement or Final Statement delivered in accordance with the terms of this Interim Order), then the EVPS Debtors shall finally and indefeasibly repay the EVPS Prepetition ABL Obligations to the ABL Agent (for the benefit of the ABL Lenders) in the amount of such excess (and, to the extent the EVPS Prepetition ABL Obligations have been fully repaid, the EVPS Debtors shall cash collateralize the EVPS L/C Obligations in the amount of such excess) . The EVPS Debtors are authorized and directed to pay the amounts provided in this subparagraph whether or not contained in the Approved Budget and without being limited by the dollar estimates contained in the Approved Budget.

35. **Adequate Protection Fees and Expenses**.  The payment of all reasonable and documented invoiced professional fees and expenses provided for herein as adequate protection shall not be required to comply with the U.S. Trustee guidelines nor shall the applicable professionals to the ABL Secured Parties or EVPS Term Loan Secured Parties be required to file fee applications with the Court with respect to any fees or expenses payable herein nor shall such fees or expenses be subject to allowance or review by the Court, and all invoices therefor may be in summary form only (and shall not be required to contain time detail, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, any benefits of the attorney work product doctrine, or any other evidentiary privilege or protection recognized under applicable law), and shall be provided to counsel to the Debtors, counsel to any Official Committee (if any) and the U.S. Trustee (the "Fee Notice Parties"); *provided*, *however*, that if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten calendar days after delivery of such invoices (the "Fee Objection Period"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or

notice to any other party, such fees and expenses shall be promptly paid by the EVPS Debtors and, in any event, within 5 business days thereof.  If a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses described in this paragraph, then only the disputed portion of such fees and expenses shall not be paid until such objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the EVPS Debtors. Notwithstanding the foregoing, the EVPS Debtors are authorized and directed to pay upon entry of this Interim Order any EVPS L/C Fees and Expenses and adequate protection fees and expenses described in this paragraph incurred on or prior to such date without the need for any ABL Advisor or Ad Hoc First Lien Group Advisor to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtors).  No ABL Advisor ~~or~~, Ad Hoc First Lien Group Advisor, or EVPS Agent Advisor shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

36.          Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the ABL Secured Parties or EVPS Term Loan Secured Parties in connection with or with respect to these Chapter 11 Cases, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement, or any similar form of recovery by the Debtors or any other person.

**K.      Carve Out.**

37.   Carve Out.  As used in this Interim Order, the "Carve Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below) with respect to the Chapter 11 Cases of the EVPS Debtors; (b) all reasonable fees and expenses up to $100,000 incurred by a trustee of

the EVPS Debtors under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses attributable to the EVPS Debtors' Chapter 11 Cases and payable by the EVPS Debtors (the "Allowed Professional Fees") incurred by persons or firms retained by the EVPS Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Official Committee (if appointed)  pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") (in each case, other than any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) at any time before or on the first business day following delivery by the ABL Agent or Ad Hoc First Lien Group of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (d) Allowed Professional Fees of Professional Persons attributable to the EVPS Debtors' Chapter 11 Cases in an aggregate amount not to exceed $7,000,000 incurred after the first business day following delivery by the ABL Agent or Ad Hoc First Lien Group of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (d) being the "Post-Carve Out Trigger Notice Cap"); *provided, however*, that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described in clauses (a) through (d) of this paragraph 37 on any grounds.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the ABL Agent or Ad Hoc First Lien Group to the EVPS Debtors, their lead restructuring counsel, the U.S. Trustee, and lead restructuring counsel to the Official Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon

termination of the EVPS Debtors' right to use Cash Collateral by the EVPS Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

38.    <u>Delivery of Weekly Fee Statements</u>.  Not later than 5:00 p.m. (Prevailing Central Time) on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the EVPS Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "<u>Estimated Fees and Expenses</u>") incurred during the preceding week by such Professional Person attributable to the EVPS Debtors' Chapter 11 Cases and payable by the EVPS Debtors (through Saturday of such week, the "<u>Calculation Date</u>"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses attributable to the EVPS Debtors' Chapter 11 Cases and payable by the EVPS Debtors incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the EVPS Debtors (each such statement, a "<u>Weekly Statement</u>"); *provided* that, within one business day of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "<u>Final Statement</u>") setting forth a good-faith estimate of the amount of fees and expenses attributable to the EVPS Debtors' Chapter 11 Cases and payable by the EVPS Debtors incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the EVPS Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the ABL Advisors and, the Ad Hoc First Lien Advisors, and the EVPS Agent Advisors).  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the

applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

39.     <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the ABL Agent or Ad Hoc First Lien Group to the EVPS Debtors (the "<u>Carve Out Notice Delivery Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the EVPS Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any EVPS Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees payable by the EVPS Debtors accrued prior to the Carve Out Notice Delivery Date.  The EVPS Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees incurred through the Carve Out Notice Delivery Date Date (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Carve Out Notice Delivery Date, after funding the Pre-Carve Out Trigger Notice Reserve, the EVPS Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any EVPS Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a) through (c) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay, subject to the terms of the Prepetition EVPS Intercreditor Agreements, the Prepetition EVPS Administrative Parties for the benefit of the EVPS Secured Parties, unless the Prepetition EVPS Secured Obligations have been indefeasibly paid in full, in

cash, in which case any such excess shall be paid to the EVPS Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (d) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay, subject to the terms of the Prepetition EVPS Intercreditor Agreements, the Prepetition EVPS Administrative Parties for the benefit of the EVPS Secured Parties, unless the Prepetition EVPS Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the EVPS Debtors' creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition EVPS Debt Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 37, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 37, prior to making any payments to the Prepetition EVPS Administrative Parties or any of the EVPS Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition EVPS Debt Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the Prepetition EVPS Administrative Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the EVPS Debtors until the Carve Out Reserves have been fully funded, but shall have an automatically perfected lien and security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition EVPS Administrative Parties for application in accordance with the Prepetition EVPS Intercreditor Agreements and the other Prepetition EVPS Debt Documents, except as otherwise expressly set forth herein.  Further, notwithstanding anything to the contrary

in this Interim Order, (a) disbursements by the EVPS Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the Prepetition EVPS Debt Documents or increase or reduce the Prepetition EVPS Secured Obligations, (b) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (c) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the EVPS Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Prepetition EVPS Debt Documents, the Carve Out shall be senior to all liens and claims securing the EVPS L/C Collateral, the EVPS Adequate Protection Liens, the EVPS Adequate Protection Obligations, and the EVPS Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition EVPS Secured Obligations.

40.     <u>Payment of Allowed Professional Fees Prior to the Carve Out Notice Delivery Date</u>.  Any payment or reimbursement made prior to the occurrence of the Carve Out Notice Delivery Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

41.     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  Notwithstanding anything herein to the contrary, none of the EVPS Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the EVPS Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the EVPS Debtors have sufficient funds to pay such compensation or reimbursement.

42.     <u>Payment of Carve Out On or After the Carve Out Notice Delivery Date</u>.  Any payment or reimbursement made on or after the occurrence of the Carve Out Notice Delivery Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

43.     Notwithstanding anything to the contrary in this Interim Order, the liens, security interests, and superpriority claims granted herein and/or under the Prepetition EVPS Debt Documents, including the EVPS Adequate Protection Liens, the EVPS Adequate Protection Claims, the EVPS Adequate Protection Obligations, and the Prepetition EVPS Liens, shall be subject in all respects and subordinate to the Carve Out.

**L.     Reservation of Rights of EVPS Secured Parties.**

44.     Notwithstanding any other provision hereof, the grant of adequate protection to the EVPS Secured Parties pursuant to this Interim Order shall not be deemed an admission that the interests of such EVPS Secured Parties are indeed adequately protected, and is without prejudice to the right of the EVPS Secured Parties to seek additional relief with respect to the use of Prepetition EVPS Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, subject to the applicable provisions of any Prepetition EVPS Intercreditor Agreements and without prejudice to the right of the EVPS Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the EVPS Secured Parties under the Prepetition EVPS Debt Documents or under applicable law, and the EVPS Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition EVPS Debt Documents and/or applicable law.   Without limiting the foregoing, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the

46

Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the EVPS Secured Parties for any Diminution in Value during these Chapter 11 Cases.

**M.      Modification of Automatic Stay.**

45.     The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the EVPS Debtors to take all appropriate actions (to the extent any further action is necessary) to incur the EVPS L/C Obligations and EVPS Adequate Protection Obligations and to grant the EVPS L/C Liens, the EVPS L/C Superpriority Claims, EVPS Adequate Protection Liens and the EVPS Adequate Protection Claims set forth herein, and to take all appropriate actions (including such actions as the applicable EVPS Secured Parties may reasonably request) to ensure that the EVPS L/C Liens and the EVPS Adequate Protection Liens granted hereunder are perfected and maintain the priority set forth herein; (b) the EVPS Debtors to pay all amounts referred to, required to be paid under, and in accordance with, this Interim Order, and the EVPS Secured Parties to retain and apply payments made in accordance with the terms of this Interim Order and the Prepetition EVPS Debt Documents; (c) the applicable EVPS Secured Parties to retain and apply payments made in accordance with the Prepetition EVPS Debt Documents and this Interim Order; (d) subject to paragraph 63 of this Interim Order (including but not limited to the Remedies Notice Period), the EVPS Secured Parties to exercise, upon the occurrence and during the continuance of any Termination Event, all rights, actions, and remedies provided for in paragraph 63 of this Interim Order; and (e) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order, without further notice, motion or application to, or order of this Court.

**N.      Perfection of EVPS L/C Liens and EVPS Adequate Protection Liens.**

46.     This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted herein, including, without limitation, the EVPS L/C Liens and the EVPS Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the amendment or modification of security documents, or entry into, amendment, or modification of intercreditor agreements, or subordination of existing liens, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any collateral) to attach, validate, perfect or prioritize such liens and security interests, or to entitle the EVPS Secured Parties to the priorities granted herein (each, a "Perfection Act") (other than, to the extent applicable, any such filings required under applicable foreign law to attach, validate, perfect or prioritize such liens).

47.     Notwithstanding the foregoing, the Prepetition EVPS Administrative Parties are hereby authorized, as each in its sole discretion may determine for any reason, to execute, file, record or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or to otherwise evidence such liens and security interests in all collateral, in each case in a manner not inconsistent with this Interim Order.

48.     Whether or not the Prepetition EVPS Administrative Parties, on behalf of the EVPS Secured Parties, shall, in their sole discretion, choose to execute, file, record or otherwise effectuate any Perfection Act, such liens and security interests shall nonetheless be deemed valid,

perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

49.    A certified copy of this Interim Order may, in the discretion of the Prepetition EVPS Administrative Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Prepetition EVPS Administrative Parties to take all actions, as applicable, referenced in this section N.

**O.    Preservation of Rights Granted Under this Interim Order.**

50.    Other than the Carve Out, and except as otherwise expressly provided in or permitted by this Interim Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to any of the EVPS Secured Parties shall be granted or allowed, and the EVPS Adequate Protection Liens and the EVPS Adequate Protection Claims: (a) shall not be made junior or subordinated to or *pari passu* with (i) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, whether under section 364(d) of the Bankruptcy Code or otherwise, (ii) any lien that is avoided and preserved for the benefit of the EVPS Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (iii) any lien arising after the Petition Date including without limitation any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the EVPS Debtors, or (iv) any intercompany or affiliate liens or claims; and (b) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

51.     Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (a) the EVPS L/C Liens, EVPS L/C Superpriority Claims, EVPS L/C Obligations, EVPS Adequate Protection Claims, the EVPS Adequate Protection Liens, the EVPS Adequate Protection Obligations, and all other claims, liens, and security interests granted hereunder shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all EVPS L/C Liens, EVPS L/C Superpriority Claims, EVPS L/C Obligations, EVPS Adequate Protection Claims, EVPS Adequate Protection Liens, EVPS Adequate Protection Obligations, and all other claims, liens, and security interests granted hereunder shall have been paid and satisfied in full in cash (each of which shall, notwithstanding such dismissal, remain binding on all parties in interest); and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (a) of this paragraph.

52.     The EVPS Secured Parties have acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and upon the record made at the Interim Hearing and during these Chapter 11 Cases, the EVPS Secured Parties are entitled to the protections provided by the Bankruptcy Code and this Interim Order, and if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect the validity, priority, perfection or enforceability of the EVPS L/C Liens, EVPS L/C Superpriority Claims, the EVPS L/C Obligations, the EVPS Adequate Protection Claims, the EVPS Adequate Protection Liens, the EVPS Adequate Protection Obligations, or any other claims, liens, or security interests granted hereunder that were incurred prior to the actual receipt of written notice by the Prepetition EVPS Administrative Parties (as applicable) of the effective date of such

50

reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification or

vacatur, any such claim, lien, or security interest (including, without limitation, the EVPS L/C

Liens, EVPS L/C Superpriority Claims, the EVPS L/C Obligations, the EVPS Adequate

Protection Liens, the EVPS Adequate Protection Claims, and the EVPS Adequate Protection

Obligations) incurred by the EVPS Debtors hereunder, as the case may be, prior to the actual

receipt of written notice by the applicable Prepetition EVPS Administrative Parties of the

effective date of such reversal, stay, modification or vacatur shall be governed in all respects by

the original provisions of this Interim Order, and the EVPS Secured Parties shall be entitled to all

of the rights, remedies, privileges and benefits granted hereunder.

53. The adequate protection payments made pursuant to this Interim Order shall not

be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in

these Chapter 11 Cases or any Successor Cases.

**P.      Monitoring of Collateral.**

54. Without limitation of the Prepetition EVPS Debt Documents, the EVPS Debtors

shall (a) provide the EVPS Secured Parties, and their respective consultants, advisors and

professionals with reasonable access, upon reasonable notice and during regular business hours,

to the EVPS Debtors' books and records, assets and properties, for purposes of monitoring the

EVPS Debtors' businesses and operations and the value of the EVPS Adequate Protection

Collateral, and (b) reasonably cooperate and consult with, and provide information reasonably

requested by the Prepetition EVPS Administrative Parties and the Ad Hoc First Lien Group (and

any of their respective consultants, advisors, or professionals, including, without limitations, the

ABL Advisors and, the Ad Hoc First Lien Group Advisors, and the EVPS Agent Advisors)

concerning the EVPS Debtors' businesses, financial condition, properties, business operations

and assets (and the EVPS Debtors hereby authorize their accountants, attorneys, financial

advisors, investment bankers, and consultants to cooperate and consult with, and promptly provide all such information).

**Q.     Proofs of Claim.**

55.    The EVPS Secured Parties shall not be required to file proofs of claim in any of these Chapter 11 Cases or any of the Successors Cases for any claim allowed herein or therein in respect of the EVPS Adequate Protection Obligations or Prepetition EVPS Secured Obligations. Any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases shall not apply to the EVPS Secured Parties; *provided* that, notwithstanding any order entered by the Court establishing a bar date in any of these Chapter 11 Cases or any Successor Cases to the contrary, any of the Prepetition EVPS Administrative Parties, on behalf of themselves and the other EVPS Secured Parties (as applicable), may (but are not required to) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the EVPS Debtors' lead Case against all of the EVPS Debtors, which shall be deemed to have been filed against each and every EVPS Debtor.  Any proof of claim filed by or on behalf of any of the EVPS Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors-in-interest.

R.      **Limitations on Use of the EVPS L/C Collateral, the EVPS Adequate Protection Collateral, Prepetition EVPS Collateral, the Cash Collateral, the Carve Out, and Other Funds.**

56.     Notwithstanding anything contained in this Interim Order or any other order of the

Court to the contrary, no EVPS L/C Collateral, EVPS Adequate Protection Collateral,

Prepetition EVPS Collateral, Cash Collateral, proceeds of any of the foregoing, any portion of

the Carve Out, or any other cash or funds may be used, directly or indirectly, by any of the EVPS

Debtors, any Official Committee (if appointed), or any trustee or other estate representative

appointed in these Chapter 11 Cases or any Successor Cases or any other person or entity (or to

pay any professional fees, disbursements, costs or expenses incurred in connection therewith):

(a) to object to, contest, prevent, hinder, delay, or interfere with, in any way, the ABL Secured

Parties' or EVPS Term Loan Secured Parties' enforcement or realization upon any of the EVPS

L/C Collateral, EVPS Adequate Protection Collateral, Prepetition EVPS Collateral, or Cash

Collateral; or (b) to investigate (including by way of examinations or discovery proceedings,

whether formal or informal), prepare, assert, join, commence, support, or prosecute any action,

or seek standing to prosecute any action, for any claim, counter-claim, action, proceeding,

application, motion, objection, defense, or other contested matter seeking any order, judgment,

determination, or similar relief against, or adverse to the interests of, in any capacity, against any

of the ABL Secured Parties' or EVPS Term Loan Secured Parties' or their representatives with

respect to any transaction, occurrence, omission, action, or other matter arising under, in

connection with, or related to this Interim Order, the EVPS L/C Liens, EVPS L/C Superpriority

Claims, EVPS L/C Obligations, the EVPS Adequate Protection Liens, the EVPS Adequate

Protection Claims, the EVPS Adequate Protection Obligations, the Prepetition EVPS Liens, the

Prepetition EVPS Secured Obligations, the Prepetition EVPS Debt Documents, or the

transactions contemplated therein or thereby, including, without limitation, (A) any Avoidance

Actions, (B) any so-called "lender liability" claims and causes of action, (C) any claim or Cause

of Action with respect to the validity, enforceability, priority and extent of, or asserting any

defense, counterclaim, or offset to, the ABL Credit Documents, the EVPS Term Loan Credit Documents, the Prepetition ABL Obligations, the Prepetition EVPS Term Loan Obligations, the EVPS L/C Liens, the EVPS L/C Superpriority Claims, EVPS L/C Obligations, the EVPS Prepetition ABL Liens, the EVPS Term Loan Liens, the EVPS Adequate Protection Liens, the EVPS Adequate Protection Claims, or the EVPS Adequate Protection Obligations, (D) any claim or Cause of Action seeking to challenge, invalidate, modify, set aside, avoid, marshal, subordinate, or recharacterize in whole or in part, the EVPS L/C Collateral, the EVPS Adequate Protection Collateral, the Prepetition ABL EVPS Collateral, the Prepetition EVPS Term Loan Collateral, the EVPS L/C Liens, the Prepetition ABL Liens, the Prepetition EVPS Term Loan Liens, the EVPS Adequate Protection Liens, the EVPS L/C Superpriority Claims, the EVPS Adequate Protection Claims, the EVPS L/C Obligations, the EVPS Adequate Protection Obligations, the Prepetition ABL Obligations, or the Prepetition EVPS Term Loan Obligations, or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any of the ABL Secured Parties or EVPS Term Loan Secured Parties hereunder or under any of the Prepetition EVPS Debt Documents, as applicable (in each case, including, without limitation, claims, proceedings, or actions that might prevent, hinder, or delay any of the ABL Secured Parties' or EVPS Term Loan Secured Parties' assertions, enforcements, realizations, or remedies on or against the EVPS L/C Collateral, EVPS Adequate Protection Collateral or Prepetition EVPS Collateral in accordance with the applicable Prepetition EVPS Debt Documents and this Interim Order) or (c) take any other action in furtherance of any of the actions described in the foregoing clauses (a) and (b); *provided* that no more than $250,000 in the aggregate may be used for allowed fees and expenses incurred solely by any Official Committee (if appointed) solely in investigating, but not objecting to, commencing any motion, proceeding or contested matter, challenging, litigating, opposing, prosecuting, or seeking to

subordinate or recharacterize within the Challenge Period in compliance with the terms hereof, any claims, Causes of Action, adversary proceedings, or other litigation concerning the validity, enforceability, perfection, and priority of the Prepetition ABL Liens, the Prepetition EVPS Term Loan Liens, the Prepetition ABL Obligations, the Prepetition EVPS Term Loan Obligations, the ABL Credit Documents, or the EVPS Term Loan Credit Documents.

**S.      Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**

57.     The Stipulations shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.  The Stipulations shall be binding upon all other parties in interest (including without limitation, any Official Committee, if appointed, and any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any Chapter 7 or Chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or Successor Cases) in all circumstances and for all purposes unless, only as to such party:  (a) such other party in interest with requisite standing (in each case, subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) the date on which the Plan (as defined in the Restructuring Support Agreement) is confirmed in these Chapter 11 Cases, (y) 75 calendar days after entry of this Interim Order, and (z) solely for any Official Committee, 60 calendar days after the appointment of any Official Committee if appointed within 30 days after the Petition Date, (ii) any such later date as has been agreed to, in writing, by (a) the ABL Agent (acting at the direction of the requisite ABL Lenders under the ABL Credit Agreement ) with respect to the ABL Facility, the EVPS Prepetition ABL Obligations, the Prepetition ABL Liens, or the ABL Secured Parties, and (b) the Ad Hoc First Lien Group with respect to the EVPS Term Loan Facility, the Prepetition EVPS Term Loan Obligations, the Prepetition EVPS Term Loan Liens, or the EVPS Term Loan Secured Parties, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the deadline to commence a Challenge (as defined herein) (the

time period established by the foregoing clauses (i), (ii), and (iii), the "Challenge Period"),
(A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent
of the Prepetition EVPS Debt Documents, the Prepetition EVPS Secured Obligations or the
Prepetition EVPS Liens, or (B) otherwise asserting or prosecuting any action for preferences,
fraudulent transfers or conveyances, recharacterization, subordination, disgorgement, offset,
Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests,
defenses, or other challenges (collectively, the "Challenges") against any of the EVPS Secured
Parties or any of their respective Representatives (in each case, in their respective capacities as
such) arising under, in connection with, or related to the (i) Prepetition EVPS Debt Documents,
(ii) Prepetition EVPS Secured Obligations, (iii) Prepetition EVPS Liens, or (iv) Prepetition
EVPS Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining
any such Challenge in any such timely filed adversary proceeding or contested matter; *provided,
however*, as to the EVPS Debtors, any and all such Challenges are hereby irrevocably waived
and relinquished as of the Petition Date; *provided, further*, that any pleadings or complaints filed
in connection with any Challenge shall set forth with specificity the basis for such Challenge or
claim and any Challenges or claims not so specified prior to the expiration of the Challenge
Period shall be deemed forever, waived, released and barred, including any amended or
additional claims or Challenges that may or could have been asserted thereafter through an
amended complaint under Fed. R. Civ. P. 15 or otherwise; *provided, further*, that any motion
filed with the Court seeking requisite standing and authority to pursue a Challenge must include
a draft complaint attached thereto identifying and describing all claims and causes of action on
behalf of such estates for which such party in interest is seeking standing.  If no such Challenge
is timely and properly filed during the Challenge Period or the Court does not rule in favor of the
plaintiff in any such proceeding then:  (a) the Stipulations contained in this Interim Order shall

be binding on all parties in interest, including, without limitation, the Official Committee (if any), in these Chapter 11 Cases and any Successor Cases; (b) the Prepetition EVPS Secured Obligations shall constitute allowed claims, the Prepetition EVPS Debt Documents shall be deemed valid and enforceable, and the Prepetition EVPS Liens shall be deemed to be legal, valid, binding, perfected, and enforceable, in each case, against the EVPS Debtors in these Chapter 11 Cases and any Successor Cases and not subject to defense, claim, counterclaim, recharacterization, subordination, recoupment, offset, or avoidance; and (c) the Prepetition EVPS Secured Obligations, the Prepetition EVPS Liens, and the Prepetition EVPS Debt Documents shall not be subject to any other or further claim, Cause of Action, or Challenge, whether arising under the Bankruptcy Code or otherwise, by the Official Committee (if any), any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party in interest, whether acting or seeking to act on behalf of the EVPS Debtors' estates or otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the EVPS Debtors in these Chapter 11 Cases or any Successor Cases, and any defense, claim, counterclaim, recharacterization, subordination, recoupment, offset, or avoidance by any of the immediately foregoing parties against any of the EVPS Secured Parties or any of their respective Representatives (in each case, in their respective capacities as such) arising out of, in connection with, or relating to the Prepetition EVPS Debt Documents, the Prepetition EVPS Liens, or the Prepetition EVPS Secured Obligations, which claims shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) (x) on any Official Committee (if any), on each other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity that did not file a Challenge and (y) except to the extent that such

Stipulations were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Interim Order is intended to or shall (a) vest or confer on any Person (as defined in the Bankruptcy Code), including the Official Committee (if any) and any other statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the EVPS Debtors or their estates, including without limitation, Challenges, and all rights to object to such standing are expressly reserved and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization or (b) modify or affect the Automatic Stay to permit any person or entity, including any person or entity acting or seeking to act on behalf of any Debtor's estate, to assert any Challenge or seek recovery in respect thereof, including to assert any Challenge against, or recovery in respect thereof from, any Debtor.

**T.      Limitations on Charging Expenses.**

58.      Except to the extent of the Carve Out, no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the EVPS Secured Parties (as the case may be) upon the EVPS L/C Collateral, EVPS Adequate Protection Collateral or Prepetition EVPS Collateral (as the case may be), shall be charged against or recovered from, the EVPS Secured Parties, the Collateral, the Prepetition EVPS Collateral, the EVPS Adequate Protection Collateral, or any of the Prepetition EVPS Secured Obligations, in each case, pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior express written consent (email shall suffice) of the requisite lenders under the Prepetition EVPS Debt Documents (as applicable) or the affected EVPS Secured Party, each

in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or approval of any budget hereunder) or any other action, inaction or acquiescence by any of the EVPS Secured Parties; *provided* that the foregoing waiver shall be immediately applicable and without prejudice to any provisions of the Final Order.

**U.**     **Payments Free and Clear.**

59.     Subject and subordinate only to the Carve Out, any and all payments or proceeds remitted to the EVPS Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable (subject only to the fee review provisions in paragraph 35 of this Interim Order solely with respect to the fees and expenses described therein), received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the EVPS Debtors) or section 552(b) of the Bankruptcy Code.

**V.**     **No Marshaling.**

60.     Except to the extent of the Carve Out, in no event shall the EVPS Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the EVPS L/C Collateral, EVPS Adequate Protection Collateral, the EVPS L/C Obligations, the EVPS Adequate Protection Obligations, the Prepetition EVPS Collateral, or their Prepetition EVPS Secured Obligations and all proceeds shall be received and applied in accordance with this Interim Order and the Prepetition EVPS Debt Documents, as applicable.  The EVPS Secured Parties shall (i) each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the EVPS Secured Parties, including, without

limitation, the EVPS Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition EVPS Collateral or the EVPS L/C Collateral; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order.

**W.      Joint and Several Liability.**

61.      Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the EVPS Debtors' estates, it being understood, however, that the Debtors (or the EVPS Debtors, as applicable) shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Interim Order.

**X.      Termination Events.**

62.      Subject to paragraph 64 herein, the EVPS Debtors' right to use Cash Collateral pursuant to this Interim Order shall terminate without further notice or court proceeding on the date of the occurrence of the termination events set forth in **Exhibit 2** attached hereto or the occurrence and continuance of any event or condition set forth in paragraph 63 of this Interim Order (each a "Termination Event," and the date on which such Termination Event occurs, the "Termination Date"), unless waived in writing by the ABL Agent (acting at the direction of the Required ABL Lenders) and Ad Hoc First Lien Group.

**Y.      Effect of Maturity or Termination Event.**

63.      **EVPS Debtors Cash Collateral and EVPS L/Cs.**

(a)      Notwithstanding anything to the contrary contained herein, the EVPS Debtors' authorization to use Cash Collateral hereunder shall automatically terminate (subject only to the Carve Out and except as set forth in this paragraph 63), immediately without further notice or court proceeding on the Maturity Date.[7 8]

---

[7 8]   The "Maturity Date" shall be the earlier of (x) the occurrence of the effective date of any plan of reorganization confirmed in these Chapter 11 Cases, (y) the date on which all or substantially all of the assets of the EVPS Debtors are sold in a sale under any chapter 11 plan or pursuant to section 363 of the Bankruptcy Code, or (z) the day that is six months after the Petition Date, which may be extended by up to two 3-month extensions, in each case, subject to (i) the prior written consent of the ABL Agent (acting at the direction of the Required ABL Lenders), (ii) the indefeasible payment in full in cash of a 0.50% extension fee to the ABL Agent (for the benefit of the ABL Secured Parties), (iii) receipt of updated Cash Collateral projections through the applicable

(b)     The EVPS Debtors' authorization to use Cash Collateral hereunder shall also automatically terminate (subject only to the Carve Out and except as set forth in this paragraph 63) immediately without further notice or court proceeding, five (5) business days from the date (the "Termination Declaration Date") on which written notice of the occurrence of any Termination Event is given (which notice may be given by electronic mail or other electronic means) by the ABL Agent (acting at the direction of the Required ABL Lenders), EVPS Term Loan Facility Agent, or Ad Hoc First Lien Group to the Debtors' lead restructuring counsel, lead restructuring counsel to an Official Committee (if appointed), and the U.S. Trustee and filed on the docket of the Court (the "Termination Declaration" and such period commencing on the Termination Declaration Date and ending five (5) business days later, the "Remedies Notice Period") unless, prior to the expiration of the Remedies Notice Period with respect to such Termination Event, (i) such Termination Event is cured by the EVPS Debtors (ii) such Termination Event is waived in writing by the ABL Agent (acting at the direction of the Required ABL Lenders), the EVPS Term Loan Facility Agent, or the Ad Hoc First Lien Group in their respective sole discretion, or (iii) the Court rules that a Termination Event has not in fact occurred.

(c)     During the Remedies Notice Period, the EVPS Debtors may (a) continue to use Cash Collateral to make payments in respect of expenses reasonably necessary to keep the business of the EVPS Debtors operating in accordance with the Approved Budget, (b) contest or cure any alleged Termination Event, and (c) seek non-consensual use of Cash Collateral.

(d)     Immediately upon termination of the consensual use of Cash Collateral hereunder (whether due to the occurrence of the Maturity Date or a Termination Event), the EVPS Debtors shall be required to cash collateralize each EVPS L/C in accordance with the terms of the ABL Credit Agreement. If the EVPS Debtors fail to so cash collateralize the outstanding EVPS L/Cs, the ABL Secured Parties shall be permitted to exercise all remedies set forth herein, in the ABL Credit Documents, in the Intercreditor Agreements, and as otherwise available at law or in equity, without further relief from the court.

(e)     Following termination of the consensual use of Cash Collateral hereunder, the ABL Secured Parties and EVPS Term Loan Secured Parties shall be permitted to exercise all remedies set forth herein, in the ABL Credit Documents and EVPS Term Loan Credit Documents and in the Prepetition EVPS Intercreditor Agreements, and as otherwise available at law or in equity; *provided* that the ABL Agent, the EVPS Term Loan Facility Agent, or the Required Consenting EVPS Term Loan Lenders, as applicable, shall first file a motion with the Court seeking relief from the

---

extended period, (iiiiv) absence of any Termination Event having occurred and continuing, (iv) the EVPS Debtors being in compliance with all terms and conditions set forth in this Interim Order.

automatic stay to exercise such remedies (other than those set forth in paragraph 60(d) with respect to the EVPS L/Cs, which shall require no further relief from the Court) and seeking a hearing before the Court.

**Z.     Rights Preserved.**

64.     Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the rights of the EVPS Secured Parties to seek any other or supplemental relief in respect of the EVPS Debtors (subject to the Prepetition EVPS Intercreditor Agreements); (b) the rights of the EVPS Secured Parties under the Prepetition EVPS Debt Documents, the Bankruptcy Code or applicable non-bankruptcy law (subject in all instances to the Prepetition EVPS Intercreditor Agreements), including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of these Chapter 11 Cases, conversion of any or all of these Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the EVPS Secured Parties (subject to the Prepetition EVPS Intercreditor Agreements).  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the EVPS Debtors' or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

**AA.    Prepetition EVPS Intercreditor Agreements.**

65.     Pursuant to section 510 of the Bankruptcy Code, the Prepetition EVPS Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition EVPS Debt Documents (i) shall remain in full force and

effect, (ii) shall govern the relative priorities, rights, and remedies of the Prepetition EVPS Collateral, the EVPS Secured Parties, the EVPS L/C Collateral, the EVPS Adequate Protection Collateral, and EVPS Adequate Protection Liens), and (iii) shall not be deemed amended, altered or modified by the terms of this Interim Order, except to the extent expressly set forth herein.

**BB.    No Waiver by Failure to Seek Relief.**

66.    The failure or delay on the part of any of the EVPS Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition EVPS Debt Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise.  No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy (subject to the Prepetition EVPS Intercreditor Agreements).  None of the rights or remedies of any party under this Interim Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the ABL Agent (acting at the direction of the Required ABL Lenders) and the Ad Hoc First Lien Group.  No consents required hereunder by any of the EVPS Secured Parties shall be implied by any inaction or acquiescence by any of the EVPS Secured Parties.

**CC.    Release**

67.    Subject to the rights and limitations set forth in paragraph 57 of this Interim Order, effective upon entry of this Interim Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the ABL Secured Parties and EVPS Term Loan Secured Parties (each in their respective roles as such),

and each of their respective Representatives, including, without limitation, their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, agents, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, Causes of Action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating the EVPS L/C Roll-Up, EVPS Term Loans, the ABL Loans, the Prepetition EVPS Term Loan Liens, the Prepetition ABL Liens, the Prepetition EVPS Term Loan Obligations, the Prepetition ABL Obligations, the EVPS Term Loan Credit Documents, the ABL Credit Documents, the Prepetition EVPS Intercreditor Agreements, or this Interim Order, as applicable, and/or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the ABL Secured Parties and EVPS Term Loan Secured Parties; provided, however, that no such parties will be released to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence, fraud, or willful misconduct.

**DD.    No Third Party Rights**

68.     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**EE.    Binding Effect of this Interim Order.**

69.     Immediately upon entry of this Interim Order by the Court, effective as of the Petition Date, the provisions of this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in these Chapter 11 Cases and any Successor Cases, including without limitation, the EVPS Secured Parties, the Official Committee (if appointed), or any other committee appointed in these Chapter 11 Cases and any Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the EVPS Debtors or with respect to the property of the estate of any of the EVPS Debtors, and shall inure to the benefit of the each of the EVPS Debtors and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Interim Order, the EVPS Secured Parties shall have no obligation to permit the use of the Prepetition EVPS Collateral (including Cash Collateral), other than as set forth in the Prepetition EVPS Intercreditor Agreements or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in these Chapter 11 Cases or any Successor Cases.

**FF.    Survival.**

70.     The terms and provisions of this Interim Order including, without limitation, all of the rights, privileges, benefits, and protections granted to the EVPS Secured Parties under this Interim Order (including the EVPS L/C Liens, the EVPS L/C Superpriority Claims, the EVPS

L/C Obligations, EVPS Adequate Protection Liens, the EVPS Adequate Protection Obligations and the EVPS Adequate Protection Claims, and any other claims, liens, security interests, and other protections (as applicable)), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties in interest, and shall maintain their priorities, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (a) confirming any chapter 11 plan in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases, or (e) approving the sale or disposition of any EVPS Adequate Protection Collateral, in each case, until all of the EVPS L/C Obligations and the Prepetition EVPS Secured Obligations have been indefeasibly paid in full in cash (or other form of payment pursuant to the Plan (or, in respect of any outstanding EVPS L/Cs, cash collateralized in accordance with the ABL Credit Agreement)).   This Court shall retain jurisdiction, notwithstanding any such confirmation, conversion, dismissal, sale or disposition, for the purposes of enforcing this Interim Order, and all of the protections, rights, remedies, liens, claims, priorities, privileges, and benefits granted to the EVPS Secured Parties hereunder or thereunder.

**GG.   Discharge Waiver/Release.**

71.    The EVPS L/C Liens, the EVPS L/C Superpriority Claims, the EVPS L/C Obligations, the EVPS Adequate Protection Liens, the EVPS Adequate Protection Claims, and the EVPS Adequate Protection Obligations shall not be discharged by the entry of an order confirming any chapter 11 plan in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code (the EVPS Debtors having hereby waived such discharge pursuant to section 1141(d) of the Bankruptcy Code, which waiver is hereby

approved), unless the ABL Agent (acting at the direction of the Required ABL Lenders) and Ad Hoc First Lien Group have otherwise agreed in writing in respect of the applicable obligations owed to each of them.

**HH.    Limitation of Liability.**

72.     In determining to permit the use of Cash Collateral, or in exercising any rights or remedies, in each case, pursuant to this Interim Order or the Prepetition EVPS Debt Documents (as applicable), the EVPS Secured Parties shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29, U.S. §§ 9601 et seq., as amended, or any similar federal or state statute).

**II.    Insurance Proceeds and Policies.**

73.     As of the date of entry of this Interim Order and to the fullest extent provided by applicable law, the Prepetition EVPS Administrative Parties (on behalf of the EVPS Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the EVPS Debtors that in any way relates to the EVPS Adequate Protection Collateral (in each case with the same relative priority of liens and claims thereunder relative to the priority of the EVPS L/C Liens, the Prepetition EVPS Liens, and the EVPS Adequate Protection Liens, as set forth herein).

**JJ.    No Modification of Interim Order.**

74.     Until and unless the EVPS L/C Obligations and the Prepetition EVPS Secured Obligations have been indefeasibly paid in full in cash (or receive other form of payment

pursuant to a plan of reorganization in accordance with and subject to the Restructuring Support Agreement and the terms hereof, with respect to the EVPS L/Cs, are cash collateralized in accordance with the ABL Credit Agreement), the EVPS Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the ABL Agent (acting at the direction of the Required ABL Lenders) and Ad Hoc First Lien Group, any order authorizing the use of Cash Collateral resulting from the Prepetition EVPS Collateral that is inconsistent with this Interim Order; or (b) without the prior written consent of the ABL Agent (acting at the direction of the Required ABL Lenders) and Ad Hoc First Lien Group, grant of any lien or security interest on any of the Prepetition EVPS Collateral with priority equal or senior to the EVPS L/C Liens, Prepetition EVPS Liens or the EVPS Adequate Protection Liens, except to the extent expressly provided in this Interim Order.

**KK.**   **Exculpation.**

75.    Nothing in this Interim Order or any other documents related to the transactions contemplated hereunder shall in any way be construed or interpreted to impose or allow the imposition upon the EVPS Secured Parties (in each case, in their capacities as such) of (a) any liability for any claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including without limitation reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, contingent or matured, arising from, related to or in connection with the prepetition or postpetition activities of the EVPS Debtors in the operation of their business, their restructuring efforts, any aspect of the negotiation, consummation or enforcement of any of the ancillary documents and security arrangements related thereto, or (b) any fiduciary duties to the EVPS Debtors, their respective creditors, shareholders, or estates.  In addition, (a) the EVPS Secured Parties shall not, in any way or manner, be liable or responsible for (i) the

safekeeping of the EVPS Adequate Protection Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Prepetition EVPS Collateral shall be borne solely by the EVPS Debtors.

**LL.     Expenses; Invoices; Disputes; Indemnification.**

76.     Any of the EVPS Debtors' obligations to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, or any other amounts described in the Prepetition Documents or this Interim Order as such amounts become due, shall not require the EVPS Debtors or any party to obtain further Court approval.  For the avoidance of doubt, such payments include, without limitation, the fees and expenses of the ABL Agent, including the ABL Advisor fees and expenses, the fees and expenses of the EVPS Term Loan Facility Agent, the Ad Hoc First Lien Group fees, including the EVPS Agent Advisors fees and expenses, Ad Hoc First Lien Group Advisor fees and expenses, and the reasonable and documented fees and disbursements of counsel and other professionals and any other principal, interest, fees, payments, expenses as set forth in paragraph 35 of this Interim Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Interim Order.

77.     Subject to any restrictions imposed by applicable law, nothing in this Interim Order shall abrogate the indemnification provisions set forth in any of the ABL Credit Documents or EVPS Term Loan Credit Documents. In addition, the Debtors will indemnify each of the ABL Secured Parties and EVPS Term Loan Secured Parties and their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs, expenses (including but not limited to reasonable

and documented legal fees and expenses), and liabilities arising out of or relating to the transactions, procedures, and/or relief contemplated hereby. No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions, procedures, and/or relief contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's fraud or willful misconduct, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

**MM.    Credit Bidding**

78.    Subject to (i) the rights and limitations set forth in paragraph 57 of this Interim Order and (ii) the provisions of section 363(k) of the Bankruptcy Code, the ABL Agent and the EVPS Term Loan Facility Agent shall have the right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the EVPS Secured Parties' respective claims, including, for the avoidance of doubt, the EVPS L/C Superpriority Claims and their respective Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition EVPS Collateral or the EVPS Adequate Protection Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan and no EVPS Debtor shall object to, or solicit, support, or encourage any objection to, any rights set forth in this paragraph 67 and all relevant provisions of the Prepetition EVPS Intercreditor Agreements shall apply and be binding with respect to any and all rights set forth in this paragraph 78.

**NN.    Interim Order Controls.**

79.    Notwithstanding anything contained in any other order entered by this Court to the contrary, (i) any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order, including, without limitation, compliance with the Approved Budget (subject to Permitted Variances) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of such other order and this Interim Order, this Interim Order shall control, in each case, except to the extent expressly provided otherwise in such other order.

**OO.    Effectiveness.**

80.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil

Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

**PP.     Bankruptcy Rules.**

81.     The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

**QQ.     Headings.**

82.     Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

**RR.     Necessary Action.**

83.     The EVPS Debtors are authorized to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Interim Order.

**SS.     Final Hearing.**

84.     The Final Hearing is scheduled for [   ], 2023, at [   ]:00 [   ].m., prevailing Central Time before this Court.

**TT.     Notice of Entry of this Interim Order.**

85.     The EVPS Debtors' counsel shall serve a copy of this Interim Order or a suitable notice thereof on the Notice Parties.

**UU.     Retention of Jurisdiction.**

86.     The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the Prepetition EVPS Intercreditor Agreements and this Interim Order.


Dated: _____, 2023          _____
                                   CHRISTOPHER M. LOPEZ
                                   UNITED STATES BANKRUPTCY JUDGE

74

**Exhibit 1**

**Initial Budget**

**Exhibit 2**

**Termination Events**

The occurrence of any of the following events shall constitute a Termination Event unless waived or consented to in writing by the ABL Agent (acting at the direction of the Required ABL Lenders) and the Ad Hoc First Lien Group (email being sufficient):

(a)     failure of the EVPS Debtors to make any payment required under this Interim Order that is not cured within five (5) business days of receipt by the Debtors of notice from the ABL Agent or Ad Hoc First Lien Group of such default, violation or breach (which may be provided to the Debtors by email);

(b)     failure of any EVPS Debtor in the due performance or observance by it of any term, covenant, or agreement of the ABL Credit Agreement; *provided*, that (i) no Restricted Payments shall be permitted under clauses (B), (C), (E), or (G) of Section 10.5(a)(iii) of the ABL Credit Agreement, (ii) no Restricted Payments shall be permitted under clauses (4), (6), (7), (10), (11), (14), (17), (19), (20), (21) or (24) of Section 10.5(b) of the ABL Credit Agreement, (iii) no Permitted Acquisitions shall be permitted, (iv) no Permitted Investments may be made in reliance on clauses (viii), (xiii), (xv),  (xxiii), or (xxiv) of the definition of "Permitted Investments", and for the avoidance of doubt, no Investments shall be permitted in AmSurg Holdco, LLC and its subsidiaries, (v) no Indebtedness for borrowed money in excess of $25,000,000 shall be permitted to be Incurred, and (vi) no Indebtedness for borrowed money secured by a lien on any assets of the same nature, scope, and type as the ABL Priority Collateral shall be permitted to be Incurred;

(c)     failure of the Debtors to: (i) observe or perform any of the material terms or material provisions contained in this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order (other than those described in clause (a) above) in any material respect and such failure remains uncured for five (5)  business days;

(d)     an order shall be entered revoking, reversing, amending, supplementing, staying, vacating, contradicting, or otherwise modifying this Interim Order, or any EVPS Debtor files any motion, pleading, application, or proceeding (or solicits or supports any other party to file any motion, pleading, application, or proceeding) seeking or consenting to the granting of the foregoing;

(e)     any Debtor files any motion, pleading, application, or proceeding (or solicits or supports any other party to file any motion, pleading, application, or proceeding) seeking or consenting to, or an order is entered granting (i) the invalidation, subordination, or other challenge to the EVPS L/C Liens, EVPS L/C Superpriority Claims, the ABL Secured Parties' or

2

EVPS Term Loan Secured Parties' indebtedness, the ABL Secured Parties' or EVPS Term Loan Secured Parties' Prepetition Liens, the ABL Secured Parties' or EVPS Term Loan Secured Parties' EVPS Adequate Protection Liens, or the ABL Secured Parties' or EVPS Term Loan Secured Parties' Adequate Protection Superpriority Claims, or (ii) any relief under sections 506(c) or 552 of the Bankruptcy Code with respect to any EVPS L/C Collateral, ABL Secured Parties' or EVPS Term Loan Secured Parties' Prepetition EVPS Collateral, ABL Secured Parties' or EVPS Term Loan Secured Parties' EVPS Adequate Protection Collateral, or any Collateral, including the Cash Collateral, or against any of the ABL Secured Parties or EVPS Term Loan Secured Parties, or the commencement of other actions that are materially adverse to any of the ABL Secured Parties or EVPS Term Loan Secured Parties or their respective rights and remedies under the Prepetition EVPS Debt Documents in the Chapter 11 Cases (or any order requiring any of the ABL Secured Parties or EVPS Term Loan Secured Parties to be subject to the equitable doctrine of "marshaling");

(f)     the entry of an order in the Chapter 11 Cases charging any of the EVPS L/C Collateral, Prepetition EVPS Collateral or EVPS Adequate Protection Collateral under sections 506(c) or 552(b) of the Bankruptcy Code or otherwise against any of EVPS Secured Parties under which any person takes action against such collateral or that becomes a final non-appealable order, or the commencement of other actions that are materially adverse to any of the EVPS Secured Parties or their respective rights and remedies under the Prepetition EVPS Debt Documents, as applicable, in the Chapter 11 Cases (or any order requiring any of the EVPS Secured Parties to be subject to the equitable doctrine of "marshaling");

(g)     the entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset of an EVPS Debtor with a value in excess of $5,000,000 or any Debtor files any motion, pleading, application, or proceeding (or solicits or supports any other party to file any motion, pleading, application, or proceeding) seeking or consenting to the granting of the foregoing;

(h)     the payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by any of the EVPS Secured Parties, other than as permitted by an order entered in the Chapter 11 Cases;

(i)     the Court shall have entered an order dismissing any of the Chapter 11 Cases or  any Debtor files any motion, pleading, application, or proceeding (or solicits or supports any other party to file any motion,

3

pleading, application, or proceeding) seeking or consenting to the granting of, or an order is entered granting, a transfer of the Chapter 11 Cases;

(j)      the Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or any Debtor files any motion, pleading, application, or proceeding (or solicits or supports any other party to file any motion, pleading, application, or proceeding) seeking or consenting to the granting of, or an order is entered granting, any of the same;

(k)      the Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, or any Debtor files any motion, pleading, application, or proceeding (or solicits or supports any other party to file any motion, pleading, application or proceeding) seeking or consenting to the granting of, or an order is entered granting, any of the same;

(l)      a filing by any Debtor of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the EVPS L/C Obligations, Prepetition ABL Obligations or Prepetition EVPS Term Loan Obligations or asserting any other cause of action against and/or with respect to the EVPS L/C Obligations, Prepetition ABL Obligations or Prepetition EVPS Term Loan Obligations, the EVPS L/C Liens, the Prepetition ABL Liens, or Prepetition EVPS Term Loan Liens, or any of the ABL Secured Parties and EVPS Term Loan Secured Parties, (or if the Debtors support or fail to contest any such motion, pleading, application or adversary proceeding commenced by any third party);

(m)      any Debtor, or any person claiming by or through any Debtor shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or proceeding against any of ABL Secured Parties and EVPS Term Loan Secured Parties relating to the EVPS L/C Obligations, Prepetition ABL Obligations or Prepetition EVPS Term Loan Obligations, except as expressly permitted under this Interim Order;

(n)      the existence of any claims or charges, or the entry of any order of the Court authorizing any claims or charges, other than as permitted under this Interim Order, entitled to superpriority under section 364(c)(1) or section 364(d) of the Bankruptcy Code pari passu or senior to the EVPS L/C Obligations or the Prepetition EVPS Secured Obligations, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the EVPS L/C Superpriority Claims or the EVPS

4

Secured Parties' 507(b) Claims, or (ii) subject to any Permitted Prior Senior Liens, any lien on the EVPS L/C Collateral, Prepetition EVPS Collateral or EVPS Adequate Protection Collateral having a priority senior to or pari passu with the liens and security interests granted herein, except as expressly provided in this Interim Order;

(o)    the entry of an order other than this Interim Order or the Final Order, if any, in any of the Chapter 11 Cases authorizing the use of cash collateral, approving the terms of any debtor-in-possession financing, or granting adequate protection to any party or the entry of a subsequent order of the Court terminating the EVPS Debtors' use of Cash Collateral;

(p)    termination of the AmSurg Debtors' (as defined in the Restructuring Support Agreement) (i) right to use cash collateral under the AmSurg Cash Collateral Order (as defined in the Restructuring Support Agreement), or (ii) debtor in possession financing, in each case approved in the Chapter 11 Cases;

(q)    the termination of the restructuring support agreement entered into by the AmSurg Debtors (the "AmSurg RSA")  or a material modification to the AmSurg RSA such that the AmSurg RSA (as amended) no longer requires the parties thereto to support a plan of reorganization or other documentation incorporating the terms of the sale of the EHC AmSurg Debtors' equity interests (the "EHC AmSurg Debtors Sale Transaction");

(r)    any EVPS Debtor shall be enjoined from conducting any portion of its business, any disruption of the business operations of the EVPS Debtors shall occur, or any material damage to or loss of material assets of any EVPS Debtor shall occur;

(s)    the failure by the EVPS Debtors to (i) comply with an Approved Budget in any manner except with respect to Permitted Variances or (ii) at the end of any week, maintain liquidity in an amount equal to or greater than the Minimum Liquidity Amount, that is not cured within five (5) business days of receipt by the Debtors of notice of such default, violation or breach (which may be provided to the Debtors by email);

(t)    any Debtor files any motion, pleading, or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading, or proceeding) seeking or consenting to the granting of, or an order is entered granting, any relief which could reasonably be expected to result in an impairment of the rights or interests of the Prepetition EVPS Secured Parties or any occurrence of any Termination Event, except any motion or other pleading otherwise expressly permitted by this Interim Order;

(u)    the failure by the EVPS Debtors to deliver to the ABL Agent and/or the Ad Hoc First Lien Group any of the documents or other information

5

required to be delivered to such applicable party pursuant to this Interim Order within seven business days of when due, or any such documents or other information shall contain a material misrepresentation;

(v)    the EVPS Debtors shall file a chapter 11 plan, seek to modify, amend or waive any provision of a filed Chapter 11 plan, or take steps in furtherance of any plan or other transaction, in each case, that (A) does not provide for the indefeasible payment, in full and in cash, or such treatment as is otherwise consented to by the ABL Agent (acting at the direction of the Required ABL Lenders) or the Ad Hoc First Lien Group, of all EVPS L/C Obligations and EVPS Prepetition ABL Obligations, or (B) is otherwise not acceptable to the Ad Hoc First Lien Group;[9]

(w)    any EVPS Debtor files any motion, pleading, application or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading, application, or proceeding) seeking or consenting to the granting of, or an order is entered granting, any termination and/or shortening, reduction of, or other modification to, the EVPS Debtors' exclusive periods to file and/or solicit a chapter 11 plan pursuant to the Bankruptcy Code (collectively, the "Exclusive Periods") or the EVPS Debtors otherwise do not seek to extend the Exclusive Periods if and when applicable;

(x)    any Debtor files any motion, pleading, or proceeding seeking the granting of, or an order is entered granting, the assumption or rejection of any material executory contract or unexpired lease without the prior written consent of the Ad Hoc First Lien Group;

(y)    termination of the Restructuring Support Agreement;

(z)    the entry of any post-petition judgment against any EVPS Debtor in excess of $5,000,000; and

(aa)    failure by the EVPS Debtors to comply with the following milestones:

(i)    not later than 5 Business Days following the Petition Date, the Bankruptcy Court shall have entered the EVPS Cash Collateralthis Interim Order on an interim basis;

(ii)    not later than 25 days following the Petition Date, the Debtors shall have retained the advisors to provide consulting services to analyze and facilitate the operational separation of the Reorganized

[9]  A chapter 11 plan of the EVPS Debtors that satisfies (A) and is acceptable to the Ad Hoc First Lien Group, an "Acceptable Plan."

6

AmSurg Debtors and the Reorganized EVPS Debtors on the plan effective date;

(iii)    not later than 35 days following the Petition Date, the Bankruptcy Court shall have entered (a) the ~~EVPS Cash Collateral~~Final Order ~~on a final basis~~ and (b) an order approving the $20 million termination fee related to the EHC AmSurg Debtors Sale Transaction;

(iv)    not later than 35 days following the Petition Date, the EVPS Debtors shall have filed an Acceptable Plan;

(v)    ~~(iv)~~ not later than 65 days following the Petition Date, the Bankruptcy Court shall have entered the order approving the ~~D~~disclosure ~~S~~statement ~~Order~~for an Acceptable Plan;

(vi)    ~~(v)~~ not later than 120 days following the Petition Date, the Bankruptcy Court shall have entered the ~~Confirmation O~~order confirming an Acceptable Plan; and

(vii)    ~~(vi)~~ not later than 150 days following the Petition Date, the ~~Plan Effective Date shall have occurred~~EVPS Debtors shall have consummated an Acceptable Plan and emerged from these Chapter 11 Cases.