United States Bankruptcy Court
Southern District of Texas

**ENTERED**
May 15, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) ) ) ) | Case No. 23-90342 (CML) |
| Debtors. | ) ) ) ) | (Jointly Administered) |
|  | ) | **Re: Docket No. 6** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
(A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM
AND MAINTAIN EXISTING BANK ACCOUNTS, (B) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS, AND (C) MAINTAIN EXISTING BUSINESS
FORMS AND BOOKS AND RECORDS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (this "Order"), (a) authorizing the Debtors to (i) continue to operate their Cash Management System and maintain their existing Bank Accounts, including honoring certain prepetition obligations related thereto, (ii) continue to perform Intercompany Transactions and funding as set forth herein, and (iii) maintain existing Business Forms and Books and Records in the ordinary course of business; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and

---

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision. The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The final hearing (the "Final Hearing") on the Motion shall be held on June 16, 2023, at 1:00 p.m., prevailing Central Time. Any objections or responses to entry of a Final Order on the Motion shall be filed on or before 5:00 p.m., prevailing Central Time, on June 5, 2023. If no objections to entry of the Final Order on the Motion are timely received, the Court may enter such final order without need for the Final Hearing.

2. The Debtors are authorized, but not directed, on an interim basis and in their sole discretion, to (a) continue operating the Cash Management System, substantially as illustrated in Exhibit A to the Motion, (b) continue to use the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on Exhibit B attached to the Motion, in the names and with the account numbers existing immediately before the Petition Date, (c) pay any Bank Fees or Software Fees, irrespective of whether such fees arose prior to the Petition Date, and perform their obligations under the documents and arrangements governing the Bank Accounts, (d) continue to perform Intercompany Transactions, including the ASC Loans and the JV Capital Contributions, and take any actions related thereto in the ordinary course of business substantially consistent with

the Debtors' prepetition practice; in each case subject to the remainder of this Order, including paragraph 15 hereof.

3. To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until forty-five days after entry of this Order, without prejudice to seek an additional extension or waiver, to come into compliance with section 345(b) of the Bankruptcy Code; *provided* that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the forty-five day period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

4. Those agreements existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Cash Management Bank (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or postpetition, to the extent permitted under the applicable agreement), unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved, subject to applicable bankruptcy law.  The Debtors and the Cash

Management Banks may, without further order of this Court, agree to implement changes to the Cash Management System in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including, without limitation, the opening and closing of Bank Accounts.

5. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved in this Order.

6. The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession; *provided* that once the Debtors have exhausted their existing stock of checks, the Debtors shall ensure that any new checks are clearly labeled "Debtor In Possession" as soon as it is reasonably practicable to do so.

7. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course of business and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be (including the completion of any such transaction commenced on or before the Petition Date but not completed until on or after the Petition Date).

8. The Debtors are authorized, in the ordinary course of business, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreement with the Cash Management Banks, as applicable; *provided*, however, that all accounts opened by the Debtors on or after the Petition Date shall be at depositories that are (a) insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (b) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee Guidelines, and (c) with a bank that agrees to be bound by the terms of this Order; *provided further, however*, that such opening shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee and any statutory committee.

9. The relief granted in this Order is extended to any new bank account opened by the Debtors in the ordinary course of business and consistent with historical practice after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

10. In the course of providing cash management services to the Debtors, the Cash Management Banks are authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or

transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

11. Notwithstanding any other provision of this Order, the Cash Management Banks shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Order if a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures. Without limiting the foregoing, any of the Cash Management Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Cash Management Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

12. Each Cash Management Bank is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for (a) all checks drawn on the Debtors' accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Debtors' accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System, and (d) all reversals, returns, refunds, and chargebacks of checks,

deposited items, and other debits credited to Debtor's account after the Petition Date, regardless of the reason such item is returned or reversed.

13. The Debtors are authorized to enter into, engage in, and satisfy any payments in connection with the Intercompany Transactions, including the ASC Loans and the JV Capital Contributions, and to take any reasonable actions related thereto, in each case, in the ordinary course and consistent with the Debtors' prepetition practices; *provided that*, for the avoidance of doubt, the Debtors shall not be authorized to undertake any Intercompany Transactions or incur any intercompany claims that are (i) not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course during the prepetition period or (ii) prohibited or restricted by the terms of any Cash Collateral Order (as defined herein). The Debtors are authorized to set off mutual postpetition obligations relating to intercompany receivables and payables through the Cash Management System in the ordinary course of business consistent with the Debtors' prepetition practices. The Debtors are authorized to continue Intercompany Transactions, including the ASC Loans and the JV Capital Contributions, arising from or related to the operation of their business in the ordinary course and consistent with historical practice. All postpetition obligations owing by a Debtor to another Debtor under any postpetition Intercompany Transactions, including the ASC Loans and the JV Capital Contributions, authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that any such administrative expense status claim shall be junior and subordinate to the carve out and approved superpriority administrative expense claims provided for in any order, including the Cash Collateral Order (as defined below), entered by the Court approving the Debtors' entry into postpetition financing arrangements or use of cash collateral. In connection with the Intercompany Transactions, the Debtors shall continue to

maintain current and complete records with respect to all Intercompany Transactions, including all transfers of cash, so that all Intercompany Transactions may be readily ascertained, traced, properly recorded on intercompany accounts, and distinguished between prepetition and postpetition transactions. No later than the thirtieth day following the last business day of each month, the Debtors shall provide the U.S. Trustee, counsel to the Ad Hoc Group of First Lien AmSurg Lenders, counsel to the AmSurg 2L Group, and counsel to the Envision Ad Hoc Group with a reasonably detailed summary of (i) gross and net payments under the Shared Services Agreement and (ii) a reasonably detailed summary of all other Intercompany Transactions, in each case during the preceding month. Such records shall be made available upon request by the U.S. Trustee, Envision Ad Hoc Group, and any official statutory committee. To the extent that the transfers within the Cash Management system are disbursements, they will be noted and reflected on the monthly operating reports. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes the disbursements or pays those disbursements. The Debtors shall not make any material changes in their Cash Management System without obtaining the prior written consent of the Controlling Collateral Agent (as defined in that certain First-Out First Lien Intercreditor Agreement, dated as of July 20, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date)), the Required Consenting AmSurg Second Lien Term Lenders (as defined in the AMSURG Restructuring Support Agreement), and the Required Consenting Lenders (as defined in the EVPS Restructuring Support Agreement).

14.     Notwithstanding any other provision of this Order, but subject to paragraph 17 below, (i) Intercompany Transactions between any Debtor that is a part of AMSURG LLC on the

one hand, and any Debtor that is not part of AMSURG LLC or any subsidiaries, owned ASCs, or joint ventures of any Debtor that is not part of AMSURG LLC, on the other, and any subsidiaries or owned ASCs or joint ventures of any Debtors that is not part of AMSURG LLC, on the other, shall be conducted strictly in accordance with the Shared Services Agreement, and (ii) the Debtors shall not commingle cash of AMSURG LLC with cash of (w) a Debtor that is not part of AMSURG LLC, (x) EVHC ASC, (y) Physician Services, or (z) any of their respective subsidiaries and ASCs and joint ventures and shall, consistent with the Cash Management System, maintain separate accounts for receipt and collection of funds of or owing to AMSURG LLC.

15. The Debtors are authorized, but not directed, to continue issuing credit cards and reimbursing expenses incurred under the Credit Card Programs in the ordinary course of business consistent with prepetition practices, including by paying obligations outstanding with respect thereto and applying any charges against prepetition deposits on a prepetition and postpetition basis, subject to the limitations of this Order.

16. Without limiting paragraph 15 of this Order, the Debtors are authorized, but not directed, to continue to use the Credit Card Programs in the ordinary course of business in accordance with the terms of the contract under the Credit Card Programs, to honor all past and future contractual obligations under the Credit Card Programs, and to make timely payments on account of charges that were made under the Credit Card Programs prior to the Petition Date. The Debtors are further authorized, but not directed, to continue operating the Credit Card Contract Collateral Account, which serves as a collateral account for certain obligations under the KeyBank Credit Card Program, in the ordinary course of business, and any prepetition security interest in the Credit Card Contract Collateral Account held by KeyBank shall continue. The terms and conditions of the prepetition Credit Card Programs shall remain in effect, the Credit Card Contract

Collateral Account shall continue to secure all prepetition obligations with respect to the KeyBank Credit Card Program and the Credit Card Contract Collateral Account shall also secure all obligations with respect to the KeyBank Credit Card Program arising postpetition, without any additional documentation executed between the Debtors and KeyBank.  KeyBank, WEX, and Bento Technologies, Inc. may rely on the representations of the Debtors with respect to their use of the Credit Card Programs pursuant to the contracts thereunder, and KeyBank, WEX, and Bento Technologies, Inc. shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

17.     For the avoidance of doubt, the relief granted in this Order with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom shall not constitute a finding as to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transaction from which such Intercompany Balance may have arisen, and the Debtors expressly reserve any and all rights with regard to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transaction from which such Intercompany Balance may have arisen.  The Debtors also expressly reserve any and all rights to contest the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transaction from which such Intercompany Balance may have arisen.  The rights of any party in interest to challenge or object to any Intercompany Claim or Intercompany Claim Balance are likewise expressly preserved.

18.     The Debtors will not be required to establish separate bank accounts for cash collateral and/or tax payments.

19.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the amount of, basis for, or

validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested in the Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) an authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief granted herein are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

20.     The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

21.     Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made and any relief or authorization granted hereunder shall be limited by, and shall be subject to, the requirements imposed on the Debtors in any orders entered by this Court authorizing the Debtors' use of cash collateral (any such order, a "Cash Collateral Order"), including, for the avoidance of doubt, the cash collateral budget.  To the extent of any conflict (but

solely to the extent of such conflict) between the terms of this Interim Order and the terms of any Cash Collateral Order, the terms of the Cash Collateral Order will govern.

22. Notwithstanding anything to the contrary in the Motion or this Order, any payments made under this Order that are attributable to the EVPS Debtors (as defined in the Restructuring Support Agreements) shall be satisfied solely by the EVPS Debtors and any payments made under this Order that are attributable to the AMSURG Debtors (as defined in the Restructuring Support Agreements) shall be satisfied solely by the AMSURG Debtors, in each case in the ordinary course of business, consistent with past practice, and in accordance with the shared-services agreement dated April 29, 2022, by and between AmSurg, LLC and Envision Healthcare Corporation, and in accordance with the Cash Collateral Orders and the corresponding cash collateral budgets.

23. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

24. Notice of the Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules.

25. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

26. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: May 15, 2023

_____
Christopher Lopez
United States Bankruptcy Judge