United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 11, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-90342 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### REVISED ORDER CONFIRMING THE
### THIRD AMENDED JOINT CHAPTER 11 PLAN OF
### REORGANIZATION OF THE EVPS DEBTORS (TECHNICAL MODIFICATIONS)

The above-captioned debtors (collectively, the "Debtors") having:

a.     entered into that certain Restructuring Support Agreement, dated as of May 14, 2023 (as further modified, supplemented, or otherwise amended from time to time in accordance with its terms, the "EVPS Restructuring Support Agreement");

b.     commenced these chapter 11 cases (the "Chapter 11 Cases") on May 15, 2023 (the "Petition Date") by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules");

c.     Filed,[2] on May 15, 2023, the *Declaration of Paul Keglevic, Chief Restructuring Officer of Envision Healthcare Corporation, in Support of the Debtors' Chapter 11 Petitions* [Docket No. 2] and the *Declaration of Dennis Stogsdill, Managing Director of Alvarez & Marsal North America, LLC, in Support of (I) the Debtors' First Day Motions and (II) the Debtors'* Emergency *Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling*

---

[1]     A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Envision.   The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

[2]     Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*a Final Hearing, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* [Docket No. 3], detailing the facts and circumstances of these Chapter 11 Cases;

d.      continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

e.      Filed, on June 29, 2023, (i) the *Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 479], (ii) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 477], (iii) the *Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 481], (iv) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 480], and (v) the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statements, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plans of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 482] (the "Disclosure Statement Motion");

f.      Filed, on August 2, 2023, (i) the *First Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1205], (ii) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1204], (iii) the *First Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 1206], and (iv) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 1203];

g.      Filed, on August 2, 2023, (i) the *Second Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1228], (ii) the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1231] (as modified, amended, or supplemented from time to time, the "EVPS Disclosure Statement"),[3] (iii) the *Second Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 1229], and (iv) the *Second Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 1230];

h.      obtained, on August 2, 2023, entry of the *Order (I) Approving the Adequacy of the Disclosure Statements, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of*

---

3   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the EVPS Plan, the EVPS Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable.  The rules of interpretation set forth in Article I.B of the EVPS Plan apply to this EVPS Confirmation Order.

*Reorganizations, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 1234] (the "Disclosure Statement Order") approving the EVPS Disclosure Statement and the related solicitation and voting procedures (the "Solicitation and Voting Procedures"), notices of the hearing to be held to consider confirmation of the EVPS Plan (the "Confirmation Hearing," and such notice, the "Confirmation Hearing Notice") and non-voting status (the "Non-Voting Status Notice"), ballots (the "Ballots"), cover letter, and other forms (collectively, the "Solicitation Packages");

i.      caused the Solicitation Packages, including the Confirmation Hearing Notice, to be distributed on or about August 2, 2023, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Procedures for Complex Chapter 11 Bankruptcy Cases* for the U.S. Bankruptcy Court for the Southern District of Texas, the Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by the certificates of service with respect to solicitation [Docket No. 1401] (together with all the exhibits thereto, the "Solicitation Materials Affidavit");

j.      caused the Confirmation Hearing Notice to be published in *The New York Times* (national edition) on August 7, 2023, as evidenced by the *Affidavit of Publication of the New York Times* [Docket No. 1274] (the "New York Times Publication Affidavit");

k.      Filed, on September 25, 2023, the *Plan Supplement for the EVPS Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 1536];

l.      Filed, on September 30, 2023, the *Amended Plan Supplement for the EVPS Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 1568];

m.      Filed, on October 5, 2023, (i) the *Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1603] and (ii) the *Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors* [Docket No. 1604].

n.      Filed, on October 6, 2023, the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on (I) the Second Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors, and (II) the Second Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1628], which accounts for Ballots received up to the Voting Deadline (defined below) (the "Voting Report");

o.      Filed, on October 9, 2023, the *Debtors' Memorandum of Law in Support of Confirmation of (I) the Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors and (II) the Third Amended Joint Chapter 11 Plan of*

*Reorganization of the EVPS Debtors* [Docket No. 1641] (the "<u>Confirmation Brief</u>");

p.  Filed, on October 9, 2023, the *Debtors' Omnibus Reply in Support of Confirmation of (I) the Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors and (II) the Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1640] (the "<u>Reply Brief</u>");

q.  Filed, on October 9, 2023, the *Declaration of Dennis Stogsdill in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors and the Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1643] (the "<u>Stogsdill Declaration</u>");

r.  Filed, on October 9, 2023, the *Declaration of Steven Zelin in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors and the Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1645] (the "<u>Zelin Declaration</u>");

s.  Filed, on October 9, 2023, the *Declaration of Independent Director Gary D. Begeman Concerning Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors and the Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1646] (the "<u>Begeman Declaration</u>");

t.  Filed, on October 9, 2023, the *Declaration of Chief Restructuring Officer and Lead Disinterested Director Paul Keglevic in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors and the Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1644] (the "<u>Keglevic Declaration</u>," and together with the Stogsdill Declaration, the Zelin Declaration, and the Begeman Declaration, the "<u>Confirmation Declarations</u>"); and

u.  Filed, on October 10, 2023, (i) the *Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors (Technical Modifications)* [Docket No. 1651] (as modified, amended, or supplemented from time to time, the "<u>EVPS Plan</u>") attached hereto as **<u>Exhibit A</u>** and (ii) the *Third Amended Joint Chapter 11 Plan of Reorganization of the AmSurg Debtors (Technical Modifications)* [Docket No. 1650] (the "<u>AmSurg Plan</u>").

v.  Filed, on October 10, 2023, the *Second Amended Plan Supplement for the EVPS Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (Technical Modifications)* [Docket No. 1658] (as modified, amended, or supplemented from time to time, the "<u>EVPS Plan Supplement</u>," and which, for purposes of the EVPS Plan and this EVPS Confirmation Order, is included in the definition of "Plan");

The Court having:

a.      entered, on August 2, 2023, the Disclosure Statement Order, that among other things, approved the EVPS Disclosure Statement on a final basis as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, set the filing deadline for objections to the adequacy of the EVPS Plan, set the deadline for filing the initial Plan Supplement, receiving Ballots, and filing the Voting Report;

b.      scheduled October 2, 2023, at 5:00 p.m. (prevailing Central Time) as the deadline for voting on the Plans;[4]

c.      scheduled October 11, 2023, at **2:00 p.m.** (prevailing Central Time), as the date and time for the Confirmation Hearing, pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, as set forth in the Disclosure Statement Order;

a.      entered, contemporaneously herewith, the *Order (I) Authorizing Entry into the EHC ASC Debtors SPA, (II) Approving the EHC ASC Debtors Termination Fee, and (III) Granting Related Relief Filed by Debtor Envision Healthcare Corporation*;

b.      reviewed the EVPS Plan, the EVPS Disclosure Statement, the Disclosure Statement Motion, the Disclosure Statement Order, the EVPS Plan Supplement, the Confirmation Brief, the Reply Brief, the Confirmation Declarations, the Solicitation Materials Affidavit, the Publication Affidavit, the Voting Report, the Confirmation Hearing Notice, and all Filed pleadings, exhibits, statements, and comments regarding approval of the EVPS Disclosure Statement and confirmation of the EVPS Plan, including all objections, statements, and reservations of rights;

c.      considered the Restructuring Transactions incorporated and described in the EVPS Plan or EVPS Plan Supplement, as applicable;

d.      held the Confirmation Hearing on **October 11, 2023**;

e.      heard the statements and arguments made by counsel in respect of confirmation of the EVPS Plan ("Confirmation");

---

4    Despite originally scheduling the Voting and Objection Deadline for September 6, 2023 and the Confirmation Hearing for September 14, 2023, on September 8, 2023, the court entered the *Stipulation and Agreed Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and Associated Proceedings, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [Docket No. 1461] (the "Confirmation Scheduling Stipulation"), which, among other things, revised the Confirmation Hearing date to October 10, 2023, and the Voting Deadline and Objection Deadline to October 2, 2023.  Pursuant to the *Notice of Reset of Confirmation Hearing* [Docket No. 1602], the Confirmation Hearing was moved from October 10, 2023, to October 11, 2023.

f. considered all oral representations, testimony, documents, filings, exhibits and other evidence regarding Confirmation;

g. overruled (i) any and all objections to the EVPS Plan and to Confirmation, except as otherwise stated or indicated on the record, and (ii) all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

h. taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the EVPS Plan having been adequate and appropriate as to all parties affected or to be affected by the EVPS Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of Confirmation of the EVPS Plan and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A. Findings and Conclusions.**

1. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of whether the EVPS Plan complies with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.      The EVPS Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, each of the EVPS Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 61], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the EVPS Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.      Appointment of the Committee.**

5.      On May 30, 2023, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the Debtors in the Chapter 11 Cases [Docket No. 240].

### F.     Plan Supplement.

6.     The EVPS Plan Supplement (including as amended, supplemented, or otherwise modified from time to time) complies with the Bankruptcy Code and the terms of the EVPS Plan, and the EVPS Debtors provided good and proper notice of the filing of the EVPS Plan Supplement in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements.  No other or further notice will be required with respect to the EVPS Plan Supplement or any of the documents contained therein or related thereto.  All documents included in the EVPS Plan Supplement and all other documents necessary or appropriate to implement the EVPS Plan are integral to, part of, and incorporated by reference into the EVPS Plan.  Subject to the terms of the EVPS Plan and the EVPS Restructuring Support Agreement, and only consistent therewith and subject to all consent rights provided therein, the EVPS Debtors reserve the right to alter, amend, update, or modify the EVPS Plan Supplement and any of the documents contained therein or related thereto or the EVPS Plan before the Effective Date.

### G.     Modifications to the EVPS Plan.

7.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the EVPS Plan described or set forth in this EVPS Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the EVPS Plan, including those Holders of EVPS Unsecured Notes Claims (now Class 6), who were originally part of EVPS Unsecured Term Loan Claims (now Class 7).  Each holder of Class 6 Claims shall receive:  its Pro Rata share of: (a) $35 million in Cash; and (b) 1.5% of Reorganized Envision Parent New Common Stock, subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants.

For the avoidance of doubt, distribution to holders of Allowed EVPS Unsecured Notes Claims shall be allocated first to principal outstanding and then, if principal is paid in full, to interest, under the EVPS Plan.  These modifications are consistent with the disclosures previously made pursuant to the EVPS Disclosure Statement and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the EVPS Plan under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the EVPS Plan. Accordingly, the EVPS Plan is properly before this Court and all votes cast with respect to the EVPS Plan prior to such modification shall be binding and shall apply with respect to the EVPS Plan.

### H.      Objections Overruled.

8.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

### I.      Disclosure Statement Order.

9.      On August 2, 2023, the Court entered the Disclosure Statement Order, scheduling October 2, 2023, at 4:00 p.m. (prevailing Central Time), as the deadline for voting to accept or reject the EVPS Plan, as well as the deadline for objecting to the EVPS Plan (the "Voting Deadline").[5]

---

[5]   The Voting Deadline was originally scheduled for September 6, 2023, but was revised to October 2, 2023, pursuant to the Confirmation Scheduling Stipulation.

**J.      Notice.**

10.      As evidenced by the Solicitation Materials Affidavit and the Voting Report, the EVPS Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the EVPS Plan (and the opportunity to opt out of the third-party release contained in the EVPS Plan (the "Third-Party Release")), the EVPS Disclosure Statement, the Confirmation Hearing, the EVPS Plan Supplement, and all other materials distributed by the EVPS Debtors in connection with Confirmation of the EVPS Plan in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3019, and 3020(b), the Bankruptcy Local Rules, and the procedures set forth in the EVPS Disclosure Statement Order.  Further, the Confirmation Hearing Notice was published in *The New York Times* (national edition) on August 7, 2023, in compliance with Bankruptcy Rule 2002(i).  Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**K.      Solicitation.**

11.      As described in the Voting Report, the solicitation of votes on the EVPS Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

12.      As described in the Voting Report and the Solicitation Materials Affidavit, as applicable, the Solicitation Packages were transmitted and served, including to all holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126

thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No further notice is required.

13.    As set forth in the Voting Report, the Solicitation Packages were distributed to holders in the Voting Classes that held a Claim or Interest as of July 28, 2023 (the "Voting Record Date").   The establishment and notice of the Voting Record Date were reasonable and sufficient.

14.    The period during which the EVPS Debtors solicited acceptances of or rejections to the EVPS Plan was a reasonable and sufficient period of time for each holder in the Voting Classes to make an informed decision to accept or reject the EVPS Plan.

15.    Under section 1126(f) of the Bankruptcy Code, holders of Claims in Class 1 (Other EVPS Secured Claims), Class 2 (Other EVPS Priority Claims), and Class 3 (EVPS ABL Claims) (collectively, the "Unimpaired Classes") are Unimpaired and conclusively presumed to have accepted the EVPS Plan.  The EVPS Debtors were not required to solicit votes from the holders of Claims and Interests in Class 7 (EVPS Unsecured Term Loan Claims), Class 8 (Intercompany Loan Claims), Class 12 (Equity Interests in Envision Parent), and Class 13 (Section 510(b) Claims) (collectively, the "Deemed Rejecting Classes"), which were Impaired and deemed to reject the EVPS Plan under the Bankruptcy Code.  Holders of Claims and Interests in Class 10 (Intercompany Claims) and Class 11 (Intercompany Interests) (the "Deemed Accepting/Rejecting Classes" and, together with the Unimpaired Classes and the Deemed Rejecting Classes, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the EVPS Plan (to the extent reinstated) or are Impaired and deemed to reject the

EVPS Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the EVPS Plan.

16.     The EVPS Debtors served the Confirmation Hearing Notice or the Non-Voting Status Notice on the entire creditor matrix, including all creditors who hold debt issued by the EVPS Debtors, and all equity holders of record, as applicable.   The Notices adequately summarized the material terms of the EVPS Plan, including the history that led to the EVPS Debtors' Chapter 11 filing, the classification and treatment of claims and the release, exculpation, and injunction provisions of the EVPS Plan.   Further, because the form enabling stakeholders to opt out of the Third-Party Release (the "Opt Out Form") was included in both the Ballots and the Notice of Non-Voting Status, every known stakeholder, including unimpaired creditors and equity holders, was provided with the means by which the stakeholders could opt out of the Third-Party Release, including pre-addressed prepaid return envelopes.

### L.     Voting.

17.     As evidenced by the Voting Report, votes to accept or reject the EVPS Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the EVPS Disclosure Statement, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.   As evidenced by the Voting Report, Classes 4, 5, and 6 have voted to accept the EVPS Plan.

### M.     Bankruptcy Rule 3016.

18.     The EVPS Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).   The EVPS Debtors appropriately filed the EVPS Disclosure Statement and EVPS Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).   The injunction, release, and exculpation provisions in the EVPS Disclosure Statement and EVPS Plan describe, in bold font and with specific and

conspicuous language, all acts to be enjoined by such injunction and identify the Entities that will be subject to such injunction, thereby satisfying Bankruptcy Rule 3016(c).

**N.      Burden of Proof—Confirmation of the EVPS Plan.**

19.      The EVPS Debtors, as proponents of the EVPS Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the EVPS Plan is confirmable under the clear and convincing evidentiary standard.

**O.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

20.      The EVPS Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the EVPS Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

(i)      *Proper Classification—Sections 1122 and 1123.*

21.      Article III of the EVPS Plan provides for the separate classification of Claims and Interests into 13 Classes other than Administrative Claims, Professional Claims, and Priority Tax Claims, which need not be classified.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the EVPS Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

(ii)     *Specified Unimpaired Classes—Section 1123(a)(2).*

22.     Article III of the EVPS Plan specifies that Claims, as applicable, in the following Classes are Unimpaired under the EVPS Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Claims and Interests |
|-------|---------------------|
| 1 | Other EVPS Secured Claims |
| 2 | Other EVPS Priority Claims |
| 3 | EVPS ABL Claims |

23.     Holders of Intercompany Claims and Intercompany Interests are either Unimpaired and conclusively presumed to have accepted the EVPS Plan, or are Impaired and deemed to reject the EVPS Plan, and, in either event, are not entitled to vote to accept or reject the EVPS Plan.  Additionally, Article II of the EVPS Plan specifies that Allowed Administrative Claims, Professional Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the EVPS Plan, although these Claims are not classified under the EVPS Plan. Accordingly, the EVPS Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iii)     *Specified Treatment of Impaired Classes—Section 1123(a)(3).*

24.     The EVPS Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.  Article III of the EVPS Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the EVPS Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Claims and Interests |
|-------|---------------------|
| 4 | EVPS First-Out Term Loan Claims |
| 5 | EVPS Second-Out Term Loan Claims |
| 6 | EVPS Unsecured Notes Claims |
| 7 | EVPS Unsecured Term Loan Claims |

14

| Class | Claims and Interests |
|-------|----------------------|
| 8 | Intercompany Loan Claims |
| 9 | General Unsecured Claims against EVPS Debtors |
| 12 | Equity Interests in Envision Parent |
| 13 | Section 510(b) Claims |

   (iv)  *No Discrimination—Section 1123(a)(4).*

   25.  The EVPS Plan provides for the same treatment by the EVPS Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Accordingly, the EVPS Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

   (v)  *Adequate Means for Plan Implementation—Section 1123(a)(5).*

   26.  The provisions in Article IV and elsewhere in the EVPS Plan, and in the exhibits and attachments to the EVPS Plan (including the EVPS Plan Supplement) and the EVPS Disclosure Statement, provide, in detail, adequate and proper means for the EVPS Plan's implementation, including regarding:  (a) the general settlement of Claims and Interests; (b) authorization for the EVPS Debtors and/or Reorganized EVPS Debtors to take all actions necessary to effectuate the EVPS Plan, including those actions necessary or appropriate to effect the Restructuring Transactions, including, without limitation, the EHC AmSurg Debtors Sale Transaction and any restructuring transaction steps set forth herein or in the EVPS Plan Supplement, as applicable, as the same may be modified or amended from time to time prior to the Effective Date; (c) the entry into, delivery of and implementation of the Definitive Documents and other transaction documents contemplated by the EVPS Plan; (d) the adoption, authorization, and entry of the New Reorganized Envision Parent Organizational Documents; (e) the funding and sources of consideration for the EVPS Plan distributions; (f) the authorization to implement, if applicable, the Management Incentive Plan; (g) the vesting of

assets in the Reorganized EVPS Debtors; (h) except as otherwise provided in the EVPS Plan and EVPS Confirmation Order, the cancellation of existing securities and agreements; (i) the authorization and approval of the New EVPS ABL Facility, the Exit Term Loans, the Reorganized Envision Parent New Common Stock, and the New Warrants and entry into any agreements related to the same as set forth in the EVPS Plan or the EVPS Plan Supplement; (j) the authorization, approval, and entry of corporate actions under the EVPS Plan; (k) the creation of the Professional Fee Escrow Account; (l) the appointment of the board of directors of Reorganized Envision Parent; (m) the granting of new, and the continuation of existing, Liens and security interests to secure the Exit Term Loans; (n) the authorization, approval, entry into, delivery, and implementation of the TSA and the services contemplated thereunder; and (o) the effectuation and implementation of documents and further transactions. Accordingly, the EVPS Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

27.     The precise terms governing the execution of these transactions are set forth in greater detail in the applicable Definitive Documents or forms of agreements or other documents included in the Plan Supplement or other documents related to the EVPS Plan. Accordingly, the EVPS Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vi)     *Voting Power of Equity Securities—Section 1123(a)(6).*

28.     The New Reorganized Envision Parent Organizational Documents and the EVPS Plan prohibit the issuance of non-voting equity securities to the extent required to comply with section 1123(a)(6). Accordingly, the EVPS Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)     *Directors and Officers—Section 1123(a)(7).*

29.     The manner of selection of any officer, director, or trustee (or any successor of any officer, director, or trustee) of Reorganized Envision Parent will be determined in

accordance with the New Reorganized Envision Parent Organizational Documents, which is consistent with the interests of creditors and equity holders and with public policy. Accordingly, the EVPS Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

> (viii)   *Impairment / Unimpairment of Classes—Section 1123(b)(1).*

30.      Article III of the EVPS Plan impairs or leaves Unimpaired each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

> (ix)   *Assumption—Section 1123(b)(2).*

31.      Article V of the EVPS Plan provides that all Executory Contracts or Unexpired Leases not otherwise rejected will be deemed assumed or assumed and assigned by the applicable Reorganized EVPS Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed, assumed and assigned or rejected by the EVPS Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.  The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases as set forth in the EVPS Plan Supplement.  Accordingly, the EVPS Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

> (x)   *Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).*

32.      In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the EVPS Plan, upon the Effective Date, the provisions of the

EVPS Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the EVPS Plan. The compromises and settlements embodied in the EVPS Plan, including the Global Settlement and settlement of claims asserted in the Fourth Out Complaint, are the result of extensive, arm's-length, good faith negotiations that, in addition to the EVPS Plan, resulted in the execution of the EVPS Restructuring Support Agreement, which preserves value for the EVPS Debtors, their Estates, and all their stakeholders, avoid extended, uncertain, time-consuming, and value-destructive litigation that has the possibility of derailing the EVPS Debtors' reorganization efforts and the loss of the benefits to the EVPS Debtors and their Estates of the transactions contemplated by the EVPS Restructuring Support Agreement and the EVPS Plan, and represent a fair and reasonable compromise of all Claims, Interests, and controversies and entry into which represented a sound exercise of the EVPS Debtors' business judgment. The compromises and settlements in the EVPS Plan, including the Global Settlement and settlement of claims asserted in the Fourth Out Complaint, are fair, equitable, reasonable, and in the best interests of the EVPS Debtors and their Estates and satisfy the requirements of applicable law for approval pursuant to Bankruptcy Rule 9019.

(xi)    *Exit Capital Structure, Exit Facilities, and New Debt.*

33.    The evidentiary record demonstrates that the exit capital structure contemplated by the EVPS Plan and EVPS Plan Supplement is reasonable and appropriate and sufficient to fully perform all of the EVPS Debtors' obligations under the EVPS Plan, as well as all obligations of the Reorganized EVPS Debtors under all assumed agreements. The terms and structure of the Exit Term Loan Credit Facility and the New EVPS ABL Facility, as currently contemplated by the EVPS Plan (and any commitments, engagements, or similar arrangements with respect to the provisions, arrangement or structuring thereof), are fair and reasonable, reflect

the EVPS Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the EVPS Debtors' Estates and their creditors.

a.    **Debtor Release.**

34.    Article VIII.C of the EVPS Plan describes certain releases granted by the EVPS Debtors (the "<u>Debtor Release</u>").  The EVPS Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Release.  The Debtor Release is a necessary and integral element of the EVPS Plan, and is fair, reasonable, and in the best interests of the EVPS Debtors, the Estates, and holders of Claims and Interests.

35.    Also, including for the reasons set forth in the Keglevic Declaration, the Debtor Release:  (a) reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the EVPS Debtors to exit chapter 11 expeditiously, on the other hand; (b) is a good-faith settlement and compromise of the claims and Causes of Action released by the Debtor Release, which bore a substantial likelihood of complex and protracted litigation, with attendant expense, inconvenience, and delay that may have impeded the EVPS Debtors' efforts to reorganize; (c) is provided in exchange for the good and valuable consideration provided by the Released Parties following extensive, arm's-length negotiations between sophisticated parties represented by able counsel and advisors; (d) is given, and made, after due notice and opportunity for hearing; and (e) serves as a bar to any of the EVPS Debtors asserting any claim or Cause of Action released by the Debtor Release.  The EVPS Debtors' or the Reorganized EVPS Debtors' pursuit of any released claims or Causes of Action against the Released Parties is not in the best interests of the Estates or the

EVPS Debtors' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims or Causes of Action.

36.     The Debtor Release appropriately offers protection to parties that participated in the EVPS Debtors' restructuring process.   Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases.   The Debtor Release for the EVPS Debtors' current and former directors and officers is appropriate because the EVPS Debtors' directors and officers share an identity of interest with the EVPS Debtors, supported and made substantial contributions to the success of the EVPS Plan and these Chapter 11 Cases, actively participated in meetings, hearings, and negotiations during these Chapter 11 Cases, and have provided other valuable consideration to the EVPS Debtors to facilitate the EVPS Debtors' reorganization and continued operation.   The Debtor Release for the parties to the EVPS Restructuring Support Agreement (which has broad support of parties across the EVPS Debtors' capital structure) is appropriate because such parties, among other things, have actively supported the EVPS Plan, and, as applicable, have agreed to equitize their Claims to deleverage the EVPS Debtors' prepetition capital structure, agreed to the amendments of the EVPS Credit Agreements (including, among other things, extensions of maturities and/or changes to scheduled amortization and interest payments), are providing substantial new money financing that will fund distributions under the EVPS Plan and provide necessary liquidity for the Reorganized EVPS Debtors, provided the EVPS Debtors with liquidity (including by consenting to the use of cash collateral), or have otherwise provided financing and made other contributions of value to the EVPS Debtors' restructuring.   Moreover, the Debtor Release for the Consenting Stakeholders was a necessary element of consideration that the Consenting Stakeholders required as a condition to entering into the EVPS Restructuring Support Agreement and agreeing to

support the EVPS Plan. It would be a distraction to the EVPS Debtors' business and restructuring and would decrease rather than increase the value of the EVPS Debtors' Estates if the EVPS Debtors were to pursue litigation against the Consenting Stakeholders.

37.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the EVPS Debtors' Estates and the critical nature of the Debtor Release to the EVPS Plan.

b.     **Third-Party Release.**

38.     Article VIII.D of the EVPS Plan describes certain releases granted by holders of Claims and Interests (the "Third-Party Release"). The Third-Party Release is a necessary and integral element of the EVPS Plan, is fair, equitable, reasonable, and is in the best interests of the EVPS Debtors, the Estates, and all holders of Claims and Interests. Also, the Third-Party Release is: (a) consensual under controlling precedent as to those parties that did not specifically and timely opt-out of granting the Third-Party Release; (b) specific in language and scope; (c) given in exchange for the substantial contributions made and the good and valuable consideration provided by the Released Parties, which are integral to the success of the EVPS Plan; (d) a condition to the good-faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the EVPS Debtors and all holders of Claims and Interests; (f) fair, equitable, and reasonable; (g) given and made after due and adequate notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

39.     Like the Debtor Release, the Third-Party Release was critical to incentivizing parties to support the EVPS Plan, facilitated participation in the EVPS Restructuring Support Agreement, the EVPS Plan, and the chapter 11 process generally, and prevented significant,

time-consuming, and value-depleting litigation.  The Third-Party Release was a core negotiation point and an integral component of the EVPS Restructuring Support Agreement and was instrumental in developing a EVPS Plan that maximized value for all of the EVPS Debtors' stakeholders.  As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the EVPS Debtors' restructuring process by, among other things, supporting the EVPS Plan.

40.      The Third-Party Release is consensual as to all relevant parties, including all Releasing Parties, and such parties were provided notice of the Chapter 11 Cases, the EVPS Plan, and the deadline to object to Confirmation of the EVPS Plan, received the Confirmation Hearing Notice or the Non-Voting Status Notice, and were properly informed that the Holders of Claims against or Interests in the EVPS Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form, returned in advance of the Voting Deadline, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all claims and Causes of Action against the EVPS Debtors and the Released Parties.  Additionally, the release provisions of the EVPS Plan were conspicuous, emphasized with boldface type in the EVPS Plan, the EVPS Disclosure Statement, the Ballots, the Non-Voting Status Notice, and the Confirmation Hearing Notice.  Further, holders in the Non-Voting Classes also received a pre-addressed prepaid return envelope to facilitate the submission of any opt out election.

41.      The Third-Party Release provides finality for the EVPS Debtors, the Reorganized EVPS Debtors, and the Released Parties regarding the parties' respective obligations under the EVPS Plan and with respect to the Reorganized EVPS Debtors.  The Third-Party Release is specific in language, is integral to and a condition of the compromises and settlements embodied

in the EVPS Plan, and is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  The Confirmation Hearing Notice sent to holders of Claims and Interests and published in *The New York Times* (national edition) on August 7, 2023, and the Ballots sent to all holders of Claims and Interests entitled to vote on the EVPS Plan, in each case, unambiguously stated that the EVPS Plan contains the Third-Party Release.  The Releasing Parties were given due and adequate notice of the Third-Party Release, and thus the Third-Party Release is consensual under controlling precedent as to those Releasing Parties that did not elect to opt out of granting the Third-Party Release.  The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.

c.    **Exculpation.**

42.    The exculpation described in Article VIII.E of the EVPS Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and is appropriately released and exculpated from any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the EVPS Restructuring Support Agreement and related prepetition transactions, the EVPS Disclosure Statement, the EVPS Plan, any Restructuring Transaction, any contract, instrument, release or other agreement or document created or entered into in connection with the EVPS Disclosure Statement or the EVPS Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, and/or the administration and implementation of the EVPS Plan, including the issuance of securities pursuant to the EVPS Plan, the distribution of property under the EVPS Plan, and/or any other related

agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the EVPS Plan.  The Exculpation, including its carveout for actual fraud, gross negligence, or willful misconduct is consistent with established practice in this jurisdiction and others.

d.      **Injunction.**

43.     The injunction provisions set forth in Article VIII.F of the EVPS Plan are essential to the EVPS Plan and are necessary to implement, preserve, and enforce the EVPS Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation.  The injunction provisions are appropriately tailored to achieve those purposes.  Notwithstanding anything to the contrary in this EVPS Confirmation Order, no Person or Entity may commence or pursue a Claim, claim, or Cause of Action or Covered Claim, as applicable, of any kind against the EVPS Debtors, the Reorganized EVPS Debtors, the Exculpated Parties, the Covered Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim, claim, or Cause of Action or Covered Claim subject to Article VIII.C, Article VIII.D, or Article VIII.E of the EVPS Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim, claim, or Cause of Action or Covered Claim represents a colorable claim of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim, claim, or Cause of Action or Covered Claim against any EVPS Debtor, Reorganized EVPS Debtor, Exculpated Party, Covered Party, or Released Party.

e.      **Preservation of Causes of Action.**

44.      Pursuant to Article IV.Q of the EVPS Plan and in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, but subject to Article VIII of the EVPS Plan, each Reorganized EVPS Debtor shall retain and may enforce all Causes of Action of the applicable EVPS Debtor, whether arising before or after the Petition Date, including but not limited to any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized EVPS Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or waived by the EVPS Debtors pursuant to the Debtor Release or Exculpation, which shall be deemed released and waived by the EVPS Debtors and the Reorganized EVPS Debtors as of the Effective Date.  The provisions regarding the preservation of Causes of Action in the EVPS Plan, including those contained in the EVPS Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the VPS Debtors, the Estates, and holders of Claims and Interests.   The EVPS Plan and EVPS Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the EVPS Debtors may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action.  For the avoidance of any doubt, Causes of Action released or exculpated under the EVPS Plan will not be retained by the Reorganized EVPS Debtors.  Notwithstanding anything to the contrary, effective on the Effective Date, the EVPS Debtors and the Reorganized EVPS Debtors shall waive, release, and discharge the Released Parties from (a) any and all Avoidance Actions and (b) any and all Causes of Action concerning or relating to any alleged breach of fiduciary duty owed to the EVPS Debtors (or any equivalent or analogous contractual duty contained in the EVPS Debtors' organizational documents), and any such Avoidance Actions and Causes of Action against the Released Parties shall not be retained Causes of Action.

f.      **Lien Release.**

45.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the EVPS Plan (the "Lien Release") is essential to the EVPS Plan and necessary to implement the EVPS Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the EVPS Debtors, the Estates, and holders of Claims and Interests.

(xii)    *Additional Plan Provisions—Section 1123(b)(6)).*

46.     The other discretionary provisions of the EVPS Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiii)   *Cure of Defaults —Section 1123(d).*

47.     Article V.C of the EVPS Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned in accordance with sections 365 and 1123 of the Bankruptcy Code.  The EVPS Debtors or the Reorganized EVPS Debtors, as applicable, shall pay the Cure amounts, if any, in the ordinary course of their business, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree.  If there is any dispute regarding any Cure, the ability of the Reorganized EVPS Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, such dispute shall be determined in accordance with the terms set forth in Article V.C of the EVPS Plan.  Thus, the EVPS Plan complies with section 1123(d) of the Bankruptcy Code.

**P.      Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

48.      The EVPS Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each EVPS Debtor:

   a.      is eligible to be a debtor under section 109 of the Bankruptcy Code and a proper proponent of the EVPS Plan under section 1121(a) of the Bankruptcy Code;

   b.      has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

   c.      complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the EVPS Plan.

**Q.      Plan Proposed in Good Faith—Section 1129(a)(3).**

49.      The EVPS Debtors have proposed the EVPS Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the EVPS Plan, the EVPS Restructuring Support Agreement, the process leading to Confirmation, including the liability management transactions in 2022 that preceded the filing of these Chapter 11 Cases and established the EVPS Debtors' current capital structure, the overwhelming support of holders of Claims and Interests for the EVPS Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were Filed, and the EVPS Plan was proposed, with the legitimate and honest purpose of maximizing the value of the Estates and allowing the EVPS Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a

capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

50. The EVPS Plan is the product of good faith, arm's-length negotiations by and among the EVPS Debtors and the Consenting Stakeholders, among others. The EVPS Plan itself and the process leading to its formulation provide independent evidence of the EVPS Debtors' and such other parties' good faith, serves the public interest, and assures fair treatment of holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors Filed the Chapter 11 Cases with the belief that the EVPS Debtors were in need of reorganization, and the EVPS Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### R. Payment for Services or Costs and Expenses—Section 1129(a)(4).

51. The procedures set forth in the EVPS Plan for the Court's review and ultimate determination of any Restructuring Expenses and the fees and expenses to be paid to Professionals by the EVPS Debtors in connection with these Chapter 11 Cases, or in connection with the EVPS Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### S. Directors, Officers, and Insiders—Section 1129(a)(5).

52. The identities of or process for appointment of the Reorganized EVPS Debtors' directors and officers proposed to serve after the Effective Date were disclosed (to the extent known) in the EVPS Plan Supplement. The appointment to, or continuance in, such office of such persons is consistent with the interests of holders of Claims and Interests and with public policy. Accordingly, the EVPS Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**T.      No Rate Changes—Section 1129(a)(6).**

53.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The EVPS Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**U.      Best Interest of Creditors—Section 1129(a)(7).**

54.     The liquidation analysis attached as Exhibit E to the EVPS Disclosure Statement and the other evidence related thereto in support of the EVPS Plan that was proffered, prior to, or in connection with the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in each Class will recover at least as much under the EVPS Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the EVPS Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.  As a result, the EVPS Debtors have demonstrated that the EVPS Plan is in the best interests of their creditors, and the EVPS Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**V.      Acceptance by Certain Classes—Section 1129(a)(8).**

55.     Classes 1, 2, and 3 constitute the Unimpaired Classes, each of which is conclusively presumed to have accepted the EVPS Plan in accordance with section 1126(f) of the Bankruptcy Code.  As evidenced by the Voting Report, Classes 4, 5, and 6 have voted to accept the EVPS Plan.  Holders of Claims and Interests in Classes 10 and 11 are Unimpaired and conclusively presumed to have accepted the EVPS Plan (to the extent reinstated) or are Impaired and deemed to reject the EVPS Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the EVPS Plan.  Pursuant to the EVPS Plan, holders of Claims

and Interests in Classes 7, 8, 12 and 13 receive no recovery on account of their Claims and Interests and are deemed to reject the EVPS Plan.

**W.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

56.      The treatment of Allowed Administrative Claims, Professional Claims, Priority Tax Claims under Article II of the EVPS Plan, and Other Priority Claims against EVPS Debtors under Article III of the EVPS Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**X.      Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

57.      As evidenced by the Voting Report, the Classes 4, 5, and 6, each of which is Impaired, voted to accept the EVPS Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the EVPS Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**Y.      Feasibility—Section 1129(a)(11).**

58.      The financial projections attached to the EVPS Disclosure Statement and the other evidence supporting Confirmation of the EVPS Plan proffered or adduced by the EVPS Debtors at, prior to, or in the Confirmation Declarations Filed in connection with, the Confirmation Hearing (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the EVPS Plan is feasible and Confirmation of the EVPS Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized EVPS Debtors under the EVPS Plan, except as provided in the EVPS Plan; and (e) establish that

the Reorganized EVPS Debtors will have sufficient funds available to meet their obligations under the EVPS Plan. Accordingly, the EVPS Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**Z.      Payment of Fees—Section 1129(a)(12).**

59.     Article XII.C of the EVPS Plan provides for the payment of all fees payable by the EVPS Debtors under 28 U.S.C. § 1930(a). Accordingly, the EVPS Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**AA.      Continuation of Employee Benefits—Section 1129(a)(13).**

60.     Except as otherwise specified in the EVPS Plan, Article IV.P of the EVPS Plan provides that all employee wages, compensation, and benefit programs in place as of the Effective Date shall be assumed or assumed and assigned by the Reorganized EVPS Debtors and shall remain in place as of the Effective Date, and the Reorganized EVPS Debtors will continue to honor such agreements, arrangements, programs, and plans. From and after the Effective Date, all retiree benefits, as defined in section 1114 of the Bankruptcy Code, if any, shall continue to be paid in accordance with applicable law. Accordingly, the EVPS Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**BB.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

61.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The EVPS Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**CC.      "Cram Down" Requirements—Section 1129(b).**

62.     Notwithstanding the fact that Class 9 and the Deemed Rejecting Classes have rejected or been deemed to reject the EVPS Plan, the EVPS Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of

the Bankruptcy Code other than section 1129(a)(8) have been met, including at least one Impaired Class voted to accept the EVPS Plan. *Second*, the EVPS Plan is fair and equitable with respect to the Class 9 and the Deemed Rejecting Classes. The EVPS Plan has been proposed in good faith, is reasonable and meets the requirements that (a) no holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the EVPS Plan on account of such junior Claim or Interest and (b) no holder of a Claim or Interest in a Class senior to each such Class is receiving more than 100% on account of its Claim or Interest. Accordingly, the EVPS Plan is fair and equitable to all holders of Claims and Interests in Class 9 and the Deemed Rejecting Classes. *Third*, the EVPS Plan does not discriminate unfairly with respect to Class 9 and the Deemed Rejecting Classes because all similarly situated creditors and interest holders will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Further, although Class 7 originally voted on the EVPS Plan pursuant to such Claims treatment in Class 6 prior to the settlement with the Fourth Out Ad Hoc Group, consistent with the terms of the amended EVPS Plan, Class 7 is now a Deemed Rejecting Class. Class 7 is not receiving any recovery and the EVPS Debtors are not required to meet any particular standard with respect to the treatment of such claims so long as the proposed classification and treatment of the creditors fosters a reorganization of the EVPS Debtors. The EVPS Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the EVPS Plan.

**DD.    Only One Plan—Section 1129(c).**

63.    The EVPS Plan (including previous versions thereof) is the only chapter 11 plan Filed in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**EE.     Principal Purpose of the EVPS Plan—Section 1129(d).**

64.     No Governmental Unit has requested that the Court refuse to confirm the EVPS Plan on the grounds that the principal purpose of the EVPS Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the EVPS Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**FF.     Not Small Business Cases—Section 1129(e).**

65.     The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**GG.    Good Faith Solicitation—Section 1125(e).**

66.     The EVPS Debtors, along with the parties to the EVPS Restructuring Support Agreement, and with respect to each of the foregoing parties, each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable—have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the EVPS Plan, including the execution, delivery, and performance pursuant to the terms of the EVPS Restructuring Support Agreement, the Exit Term Loans, the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, and the New Warrants Agreement, and solicitation of acceptances of the EVPS Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

33

**HH.    Satisfaction of Confirmation Requirements.**

67.    Based on the foregoing, the EVPS Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**II.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

68.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the EVPS Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the EVPS Plan.

**JJ.    Implementation.**

69.    All documents necessary to implement the EVPS Plan and the transactions contemplated thereby, including those contained in the EVPS Plan Supplement, and all other relevant and necessary or desirable documents (including the EVPS Restructuring Support Agreement, the Exit Term Loan Credit Facility, the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, and the New Warrants Agreement) have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, including any securities issued thereunder, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign law.  The EVPS Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.  It is understood that the AmSurg Plan being confirmed contemporaneously herewith is consistent with the EVPS Restructuring Support Agreement.

**KK.    Disclosure of Facts.**

70.    The EVPS Debtors have disclosed all material facts regarding the EVPS Plan, including with respect to execution of the Exit Term Loans, the New Reorganized Envision Parent Organizational Documents, the New Warrants Agreement, and the fact that each

Reorganized EVPS Debtor will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations, as set forth in the EVPS Plan.

**LL.   Good Faith.**

71.     The EVPS Debtors and their respective directors, officers, management, counsel, advisors, and other agents, having properly considered the EVPS Debtors' capital structure, assets, liabilities, and the claims of their various stakeholders, have proposed the EVPS Plan in good faith, with the legitimate and honest purpose of maximizing the value of the EVPS Debtors' Estates for the benefit of their stakeholders.  The EVPS Plan accomplishes this goal. Accordingly, the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, and their respective officers, directors, and advisors have been, are, and will continue to act in good faith if they proceed to:   (a) consummate the EVPS Plan, the Restructuring Transactions, and all agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized or directed by this EVPS Confirmation Order and the EVPS Plan to reorganize the EVPS Debtors' businesses and effectuate the Exit Term Loans, the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, and the New Warrants Agreement, and the other Restructuring Transactions.

**MM.   Essential Elements of the EVPS Plan.**

72.     Each of the Exit Term Loans, the New Reorganized Envision Parent Organizational Documents, the New Warrants Agreement, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the documents related to the Reorganized Envision Parent Common Stock, and the Global Settlement is an essential element of the EVPS Plan, is necessary for the Consummation of the EVPS Plan, and is critical to the overall success and feasibility of

the EVPS Plan.  The terms of each such document and the other documents contemplated by the EVPS Plan are reasonable, are supported by reasonably equivalent and fair consideration, have been negotiated in good faith and at arm's-length, without the intent to hinder, delay, or defraud any of the EVPS Debtors' creditors, and are in the best interests of the EVPS Debtors, their Estates and their stakeholders.

**NN.  Exit Term Loans, Reorganized Envision Parent New Common Stock.**

73.     The execution, performance, and incurrence of all obligations by the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions and the creation and perfection and granting of the guaranties, pledges, Liens, security interests and other financial accommodations in connection therewith, including those under the Exit Term Loans, and the priority thereof, and the issuance of the Reorganized Envision Parent New Common Stock, are necessary and appropriate for Confirmation and Consummation of the EVPS Plan and the operations of the Reorganized EVPS Debtors, as applicable.  The Exit Term Loan Credit Facility constitutes the best financing available to the EVPS Debtors. Each party to the Exit Term Loan Credit Agreement and the New Reorganized Envision Parent Organization Documents, and the documents related thereto may rely upon the provisions of this EVPS Confirmation Order in implementing the terms thereof.  The EVPS Debtors have exercised sound business judgment in deciding to pursue and enter into the documents related to Exit Term Loan Credit Facility, the documents related to the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, and the New Warrants Agreement, and have provided adequate notice thereof.  The documents related to the Exit Term Loan Credit Facility were negotiated in good faith and at arm's length, without the intent to hinder, delay or defraud any creditor of the

EVPS Debtors, and any and all credit extended and loans made to the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, and any fees and expenses paid thereunder are deemed to have been extended, issued, and made in good faith. The EVPS Debtors have provided sufficient and adequate notice of the material terms of the Exit Term Loan Credit Facility, the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, and the New Warrants Agreement to all parties in interest in these Chapter 11 Cases. The execution, delivery, or performance by the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, the documents related to the Exit Term Loan Credit Facility, the documents related to the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, and the New Warrants Agreement and any agreements related thereto and compliance by the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, with the terms thereof is authorized by, and will not conflict with, the terms of the EVPS Plan or this EVPS Confirmation Order.

**OO.    Treatment of Executory Contracts and Unexpired Leases.**

74.    The EVPS Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the EVPS Debtors, are necessary to the implementation of the EVPS Plan and are in the best interests of the EVPS Debtors, their Estates, holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases. The Confirmation Declarations, the representations and arguments of counsel, and all evidence presented, proffered, or adduced at the Confirmation Hearing establish that, with respect to each Executory Contract and

Unexpired Lease to be assumed pursuant to the Plan, including those listed in the Assumed Executory Contracts and Unexpired Leases Schedule: (1) the EVPS Debtors shall have paid all Cure amounts (or demonstrated adequate assurance that they will promptly pay all Cure amounts) with respect to all monetary defaults under such Executory Contracts or Unexpired Leases as of the Effective Date or at such other times and on such other terms as agreed with the non-EVPS Debtor party to any Executory Contract or Unexpired Lease or ordered by the Court; and (2) the EVPS Debtors have provided adequate assurance of future performance under such Executory Contracts and Unexpired Leases. Accordingly, the EVPS Debtors have satisfied the requirements of sections 365 and 1123 in respect of the Executory Contracts and Unexpired Leases to be assumed pursuant to the EVPS Plan.

## **ORDER**

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

75.     **Findings of Fact and Conclusions of Law.**  The above findings of fact and conclusions of law, as well as any additional findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing, are hereby incorporated in this EVPS Confirmation Order.

76.     **Confirmation of the EVPS Plan.**  The EVPS Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the EVPS Plan, including the EVPS Plan Supplement, are incorporated by reference into and are an integral part of this EVPS Confirmation Order.

77.     This EVPS Confirmation Order approves the EVPS Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the EVPS Plan, subject to the consent rights set forth therein and in the EVPS Restructuring Support Agreement.  The terms of the EVPS Plan

(including the EVPS Plan Supplement), the EVPS Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this EVPS Confirmation Order; *provided* that if there is any direct conflict between the terms of the EVPS Plan (including the EVPS Plan Supplement) and the terms of this EVPS Confirmation Order, the terms of this EVPS Confirmation Order shall control solely to the extent of such conflict.

78. **Objections Overruled.** All objections, statements, and reservations of rights pertaining to Confirmation of the EVPS Plan that have not been withdrawn, waived, or settled are hereby OVERRULED and DENIED on the merits.

79. All objections to Confirmation not filed and served prior to the deadline for filing objections to the EVPS Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

80. **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests who voted to accept the EVPS Plan or who are conclusively presumed to accept the EVPS Plan are deemed to have accepted the EVPS Plan, as such EVPS Plan has been modified.

81. **No Action Required.** Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of any of the EVPS Debtors is required to authorize any of the EVPS Debtors to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the EVPS Plan, the Restructuring Transactions, including the EHC AmSurg Debtors Sale Transaction, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the EVPS Plan, including the Exit Term Loan Credit Facility, the documents

related to the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax

Separation Agreement, the New Reorganized Envision Parent Organizational Documents, the

New Warrants Agreement, and the appointment and election of the members of the board of

directors of Reorganized Envision Parent and the officers, directors, and/or managers of each of

the Reorganized EVPS Debtors.

82. **Binding Effect.** Subject to Article IX.A of the EVPS Plan and notwithstanding

Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the date of and after entry of this

EVPS Confirmation Order (but subject to the occurrence of the Effective Date), the terms of the

EVPS Plan and the Restructuring Transactions (and any documents related or ancillary thereto,

including any liens and security interests and, for the avoidance of doubt, the documents and

instruments contained in the EVPS Plan Supplement) shall be immediately effective and

enforceable and not subject to avoidance or other challenge, legal or otherwise, and deemed

binding upon the EVPS Debtors, the Reorganized EVPS Debtors, any and all holders of Claims

or Interests (irrespective of whether holders of such Claims or Interests have, or are deemed to

have accepted the EVPS Plan), all Entities that are parties to or are subject to the settlements,

compromises, releases, discharges, and injunctions described in the EVPS Plan, each Entity

acquiring property under the EVPS Plan, and any and all non-EVPS Debtor parties to Executory

Contracts and Unexpired Leases with the EVPS Debtors.

83. **Incorporation by Reference.** The terms and provisions of the EVPS Plan are

incorporated by reference and are an integral part of this EVPS Confirmation Order. The terms

of the EVPS Plan, the EVPS Plan Supplement, all exhibits thereto, this EVPS Confirmation

Order, the Definitive Documents, and all other relevant and necessary documents shall, on and

after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the

EVPS Debtors, their Estates and their creditors, and their respective successors and assigns, non-debtor affiliates, any affected third parties, all holders of equity interests in the EVPS Debtors, all holders of any Claims, whether known or unknown, against the EVPS Debtors, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities for the EVPS Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective affiliates, successors, and assigns.

84.     **Vesting of Assets in the Reorganized EVPS Debtors.**  Except as otherwise provided in the EVPS Plan (including, for the avoidance of doubt, the EVPS Plan Supplement and the Restructuring Transactions Memorandum), or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the EVPS Plan or EVPS Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action of the EVPS Debtors that are not released, waived, or extinguished pursuant to the EVPS Plan, and any property acquired by any of the EVPS Debtors under the EVPS Plan shall vest in each respective Reorganized EVPS Debtor, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the EVPS Plan, each Reorganized EVPS Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any

of the foregoing, and compromise or settle any claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

85.     **Effectiveness of All Actions.**  All actions contemplated by the EVPS Plan and the Definitive Documents and other documents necessary or appropriate to implement the EVPS Plan, including all actions in connection with Exit Term Loan Credit Facility, the documents related to the New EVPS ABL Facility, the EHC ASC Debtors SPA, the TSA, the Tax Separation Agreement, the New Reorganized Envision Parent Organizational Documents, the New Warrants Agreement, as may be modified from time to time prior to the Effective Date, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this EVPS Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the EVPS Debtors or the Reorganized EVPS Debtors and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

86.     **Release, Exculpation, Discharge, and Injunction Provisions.**  All release, exculpation, discharge, and injunction provisions embodied in the EVPS Plan, including those contained in Article VIII of the EVPS Plan are hereby approved and authorized in their entirety and shall be effective and binding on all parties and Entities, to the extent provided in the EVPS Plan, without further order or action by the Bankruptcy Court.

87.     **Preservation of Rights of Action.**  Except as otherwise provided in the EVPS Plan, this EVPS Confirmation Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the EVPS Plan, in accordance with

section 1123(b)(3) of the Bankruptcy Code, the Reorganized EVPS Debtors shall have vested in them as of the Effective Date, and the Reorganized EVPS Debtors shall retain and may enforce, any Causes of Action that the EVPS Debtors or the Estates may hold against any Entity, including but not limited to any actions described in the Schedule of Retained Causes of Action. Each Reorganized EVPS Debtor or its successor may pursue such retained Causes of Action, as appropriate, and may settle such Causes of Action after the Effective Date without notice to parties in interest or approval of this Court.  Unless any Causes of Action of any of the EVPS Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the EVPS Plan or pursuant to a Final Order, including this EVPS Confirmation Order, the Reorganized EVPS Debtors expressly reserve such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

88.     **Executory Contracts and Unexpired Leases.**  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the EVPS Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption, assumption and assignment or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.  For the avoidance of doubt, on the Effective Date, except as otherwise provided in the EVPS Plan or this EVPS Confirmation Order, each Executory Contract and Unexpired Lease (including those set forth in the Assumed Executory Contracts and Unexpired Leases Schedule) shall be assumed or assumed and assigned to the applicable Reorganized EVPS Debtor in accordance with the

provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than:  (a) those that are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (b) those that have been previously rejected by a Final Order; (c) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (d) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. Such assumption or assumption and assignment shall be effectuated without the need for any further notice to or action, order, or approval of the Court, under sections 365 and 1123 of the Bankruptcy Code.

89.     Unless a party to an Executory Contract or Unexpired Lease has objected to the applicable Cure Amount or the assumption or assumption and assignment of such Executory Contract or Unexpired Lease identified in the EVPS Plan Supplement and any amendments thereto, as applicable, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, shall pay such Cure amount in accordance with the terms of the EVPS Plan, and the assumption or assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the EVPS Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including relating to such assumption and assignment, defaults of any anti-assignment provisions or provisions restricting the change in control or ownership interest composition or bankruptcy-related defaults, arising under such Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment.  Any disputed Cure amounts shall be determined in accordance with the procedures set forth in Article V.C of the EVPS Plan, and applicable bankruptcy and nonbankruptcy law.  For the avoidance of doubt, any Executory Contract or Unexpired Lease

assumed or assumed and assigned pursuant to the EVPS Plan or otherwise may not be terminated on account of such assumption or assumption and assignment or on account of the EVPS Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date. Each Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the EVPS Plan shall revest in and be fully enforceable by the applicable Reorganized EVPS Debtors in accordance with its terms, except as modified by the provisions of the EVPS Plan or any order of this Court authorizing and providing for its assumption.

90.      The EVPS Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the EVPS Debtors, are necessary to the implementation of the EVPS Plan and are in the best interests of the EVPS Debtors, their Estates, holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases. This EVPS Confirmation Order shall constitute a Final Order approving the assumptions and assumptions and assignments of the Executory Contracts and Unexpired Leases as set forth in the EVPS Plan and the Assumed Executory Contracts and Unexpired Leases Schedule and the rejections of the Executory Contracts and Unexpired Leases as set forth in the Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

91.      **Plan Supplement**.   The EVPS Plan Supplement contains the following documents (each as defined in the EVPS Plan):  (a) the New EVPS ABL Facility and any definitive documentation related thereto; (b) the New Reorganized Envision Parent Organizational Documents; (c) the New Warrants Agreement; (d) the EHC AmSurg Debtors Sale Documents; (e) the Assumed Executory Contracts and Unexpired Leases Schedule; (f) the

Rejected Executory Contracts and Unexpired Leases Schedule; (g) the Restructuring Transactions Memorandum; (h) the Schedule of Retained Causes of Action; (i) documentation related to the Exit Term Loan Credit Agreement; (j) to the extent known, the identities of the board of directors of Reorganized Envision Parent; (k) [the Tax Separation Agreement]; (l) [the TSA]; and (m) the Separation Memorandum. The EVPS Debtors reserve the right to alter, amend, modify, or supplement any document in the EVPS Plan Supplement in accordance with the EVPS Plan and the EVPS Restructuring Support Agreement, including the consent rights set forth therein, at any time before the Effective Date of the EVPS Plan or any such other date as may be provided for by the EVPS Plan or by order of the Court. Notwithstanding anything in this EVPS Confirmation Order, the documents included in the EVPS Plan Supplement whether filed by the EVPS Debtors prior to or after the Confirmation Hearing, remain subject in all respects to the consent, approval and similar rights contained in the EVPS Restructuring Support Agreement and the EVPS Plan.

92.     **Restructuring Transactions**.  Subject to the terms of the EVPS Restructuring Support Agreement and the EVPS Plan, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, are hereby authorized, immediately upon entry of this EVPS Confirmation Order (but subject to the occurrence of the Effective Date), to enter into and take all steps desirable or necessary to effectuate the Restructuring Transactions, including the EHC AmSurg Debtors Sale Transaction and the entry into and consummation of the transactions contemplated by the EVPS Restructuring Support Agreement, the EVPS Plan, the EVPS Plan Supplement, the New Reorganized Envision Parent Organizational Documents, or the New Warrants Agreement, as the same may be modified in accordance with the EVPS Plan (including the consent rights set forth therein), the EVPS Restructuring Support Agreement from time to time prior to the

Effective Date (including, without limitation, the EHC AmSurg Debtors Sale Transaction and any restructuring transaction steps set forth in the Restructuring Transactions Memorandum or other exhibits to or referred to in the EVPS Plan Supplement), and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized EVPS Debtors, as and to the extent provided in the EVPS Plan.  Such actions may include the execution, delivery, issuance, filing, or recording of such documents, contracts, instruments, releases, and other agreements, including each of the documents contemplated by the EVPS Plan, the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to or the making of any filings or recordings that may be required by applicable law in connection with the EVPS Plan, in each case, subject to any conditions precedent included in the applicable documents in connection with the EVPS Plan, the implementation of the Restructuring Transactions, including the transactions set forth in the Restructuring Transaction Memorandum and as otherwise set forth in Article IV of the EVPS Plan, and any merger, consolidation, disposition, contribution, liquidation, conversion, or dissolution of any EVPS Debtor as set forth therein.  Any transfers of assets, Claims, claims, or equity interests effected or any obligations incurred through the Restructuring Transactions (including the deemed contributions of Claims or the transfers of assets of and/or Claims and Liens against an EVPS Debtor or Reorganized EVPS Debtor or its property contemplated in the Restructuring Transactions Memorandum) are hereby approved and shall be deemed not to constitute a fraudulent conveyance, fraudulent transfer, or undervalue transaction or any similar avoidable or voidable transaction and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes

whatsoever and shall not constitute an unfair preference or a preferential transfer, fraudulent conveyance, or any similar avoidable or voidable transaction under the Bankruptcy Code or any applicable law, whether federal, state, or foreign law.  Except as otherwise provided in the EVPS Plan, each Reorganized EVPS Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such EVPS Debtor is incorporated or formed.  The EVPS Debtors or Reorganized EVPS Debtors, as applicable, are hereby authorized, immediately upon entry of this EVPS Confirmation Order, without the need to seek any third-party consents, corporate approvals, or further approvals of this Court, to take any and all actions necessary to implement the Restructuring Transactions contemplated by the Restructuring Transactions Memorandum, including the EHC AmSurg Debtors Sale Transaction and the transfers of assets of and/or Claims and Liens against an EVPS Debtor or Reorganized EVPS Debtor or its property.  This EVPS Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all of the foregoing and all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the EVPS Plan and the EVPS Plan Supplement, including any and all actions required to be taken under applicable nonbankruptcy Law.

93.     **Cancellation of Existing Securities and Agreements.**  On the Effective Date, except for the purpose of evidencing a right to a distribution under the EVPS Plan or as otherwise provided in the EVPS Restructuring Term Sheet, the EVPS Plan, the EVPS Plan Supplement, or this EVPS Confirmation Order, all notes, instruments, certificates, credit

agreements, indentures, and other documents evidencing Claims or Interests (including, without limitation, the EVPS Unsecured Notes Documents) shall be cancelled and the obligations of the EVPS Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect, and the EVPS Unsecured Notes Trustee shall be discharged and released and fully relieved of any duties or responsibilities under or related to the EVPS Unsecured Notes Documents; *provided*, *however*, that notwithstanding the occurrence of the Effective Date, such cancelled instruments, Securities, and other documentation (including, without limitation, the EVPS Unsecured Notes Documents) shall continue in effect solely for the purposes of (a) allowing holders of Claims or Interests (including, without limitation, Allowed EVPS Unsecured Notes Claims), to receive and accept their respective distributions under the EVPS Plan on account of such Claims or Interests (with distributions in respect of Allowed EVPS Unsecured Notes Claims made in coordination with the EVPS Unsecured Notes Trustee), if any, subject to the EVPS Unsecured Notes Trustee Charging Lien; and (b) allowing and preserving the rights of the Agents and the EVPS Unsecured Notes Trustee, respectively, to (1) receive and make distributions on account of such Claims or Interests, subject to (as applicable) the EVPS Unsecured Notes Trustee's Charging Lien; (2) assert or maintain any rights the Agents and the EVPS Unsecured Notes Trustee, respectively, may have against any money or property distributable or allocable to holders of such Claims or Interests, including, without limitation, the EVPS Unsecured Notes Trustee Charging Lien; (3) receive compensation and reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation, consummation, and defense of the EVPS Plan; (4) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Agents or the EVPS

Unsecured Notes Trustee, respectively, may have under the EVPS Plan, the applicable credit agreement, letters of credit, indentures (including the EVPS Unsecured Notes Indenture and the EVPS Unsecured Notes), collateral agreements, or pledge agreements; and (5) preserve the rights of the holders of the Unsecured Notes, the Agents and the EVPS Unsecured Notes Trustee, respectively, to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited to, enforcing any obligations owed to the Agents or holders of such Claims or Interests and the EVPS Unsecured Notes Trustee, as applicable, under the EVPS Plan, the EVPS Plan Supplement, this EVPS Confirmation Order, or other document incorporated therein.  Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the EVPS Restructuring Term Sheet, the EVPS Plan (including any rights afforded to the Ad Hoc Group of EVPS Unsecured Notes Claims), the EVPS Plan Supplement, or this EVPS Confirmation Order. Except as provided in the EVPS Plan, the EVPS Plan Supplement, or this EVPS Confirmation Order, or as may be necessary to effectuate the terms of the EVPS Plan, on the Effective Date, the Agents and their respective agents, successors, and assigns, shall be automatically and fully discharged and released of all of their duties and obligations associated with the applicable credit agreement, letters of credit, indentures, collateral agreements, or pledge agreements, as applicable.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligations of the EVPS Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the EVPS Debtors pursuant to a Final Order or hereunder.

94. All distributions made under the EVPS Plan or on account of the Allowed Claims of holders of EVPS Unsecured Notes Claims shall be made in coordination with the EVPS Unsecured Notes Trustee. The EVPS Debtors shall use commercially reasonable efforts to coordinate with the EVPS Unsecured Notes Trustee under the EVPS Unsecured Notes Indenture with respect to any New Warrants to be distributed pursuant to the EVPS Plan.

95. Upon the final distribution on account of the EVPS Unsecured Notes, (i) the EVPS Unsecured Notes shall thereafter be deemed to be null, void, and worthless, and (ii) at the request of the EVPS Unsecured Notes Trustee, DTC shall take down the relevant position relating to the EVPS Unsecured Notes without any requirement of indemnification or security on the part of the EVPS Debtors, Reorganized EVPS Debtors or the EVPS Unsecured Notes Trustee.

96. **Distributions and Restructuring Expenses.** The procedures governing distributions contained in Article VI of the EVPS Plan shall be, and hereby are, approved in their entirety. The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be indefeasibly paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid) in accordance with, and subject to, as applicable, the terms of the EVPS Restructuring Support Agreement and any other fee arrangements, without any requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval.

97. **Subordination.** Pursuant to section 510 of the Bankruptcy Code, the Reorganized EVPS Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

98.    **Release of Liens.**  Except as otherwise provided (i) in the EVPS Plan or this EVPS Confirmation Order or (ii) in any contract, instrument, release, or other agreement or document amended or created pursuant to the EVPS Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the EVPS Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, (except for (x) the Liens securing Other EVPS Secured Claims that the EVPS Debtors elect to Reinstate in accordance with the EVPS Plan and (y) the Liens securing any undrawn EVPS Letters of Credit that remain outstanding under the EVPS ABL Credit Agreement as of the Effective Date in accordance with Article II.B of the EVPS Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized EVPS Debtors and their successors and assigns.  Any holder of such Secured Claim (and the applicable agents for such holder, including, without limitation, the Agents/Trustees) shall be authorized and directed, at the sole cost and expense of the Reorganized EVPS Debtors, to release any collateral or other property of any EVPS Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder, including, without limitation, the Agents/Trustees), and to take such actions as may be reasonably requested by the Reorganized EVPS Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of this EVPS Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

99.     To the extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to the EVPS Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the EVPS Debtors or the Reorganized EVPS Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized EVPS Debtors shall (a) pay the reasonable and documented fees and expenses of the Agents/Trustees, including the fees and expenses of their advisors, in each case including local counsel, to the extent payable under the applicable credit agreement or indenture, as applicable, in connection with the foregoing and (b) be entitled to make any such filings or recordings on such holder's behalf.

100.    **Exit Facilities.**   On the Effective Date, the applicable Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, shall enter into the Exit Term Loans.  To the extent applicable, entry of this EVPS Confirmation Order shall be deemed (a) approval of the Exit Term Loans (including the transactions and related agreements, documents and other instruments contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the applicable EVPS Debtors or the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, as applicable, in connection therewith), to the extent not approved by the Court previously, and (b) authorization for the applicable EVPS

Debtors or the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents and related agreements, documents and other instruments necessary or appropriate to pursue or obtain the Exit Term Loans and incur and pay any fees and expenses and/or incur any indemnification obligations in connection therewith, and (ii) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the EVPS Debtors or the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, as applicable, may deem to be necessary to consummate the Exit Term Loans.

101.    As of the Effective Date, the Exit Term Loans and all of the terms of the Exit Term Loan Credit Agreement shall constitute legal, valid, binding, and authorized obligations of the applicable Reorganized EVPS Debtors and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, enforceable in accordance with their terms.  Such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination for any purposes whatsoever under applicable federal, state, or foreign law, the EVPS Plan or this EVPS Confirmation Order, and upon the creation, granting or continuation of Liens in accordance with the EVPS Plan and other agreements or documentation related to the Exit Term Loan, such Liens shall constitute valid, binding, enforceable, and automatically perfected Liens in the collateral specified in the Exit Term Loans.  The Agents or holder(s) of Liens under the Exit Term Loans are authorized to file with the appropriate authorities

mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests.  The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the Exit Term Loan have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination for any purposes whatsoever under applicable federal, state, or foreign law, the EVPS Plan, or this EVPS Confirmation Order, and shall not constitute unfair preferences, preferential transfers, fraudulent transfers or fraudulent conveyances, or any similar avoidable or voidable transactions under the Bankruptcy Code or any applicable federal, state, or foreign law, and the priorities of such Liens and security interests shall be as set forth in the Exit Term Loan.  The Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or foreign law that would be applicable in the absence of the EVPS Plan and this EVPS Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this EVPS Confirmation Order), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

102.     **New Reorganized Envision Parent Organizational Documents and the New Warrants Agreement.**  The terms of the New Reorganized Envision Parent Organizational Documents (or the term sheets thereof) attached to the EVPS Plan Supplement as Exhibit A and the terms of the New Warrant Agreements attached to the Amended EVPS Plan Supplement as Exhibit C, in each case as may be amended, restated, amended and restated, supplemented or modified on or before the Effective Date consistent with the EVPS Plan and the EVPS Restructuring Support Agreement (subject, in each case, to the consent rights set forth therein), are approved in all respects.  To the extent any New Reorganized Envision Parent Organizational Document is not attached to the EVPS Plan Supplement or Amended EVPS Plan Supplement as of the entry of this EVPS Confirmation Order, such New Reorganized Envision Parent Organizational Document is approved to the extent it is consistent with this EVPS Confirmation Order, the EVPS Plan, the EVPS Plan Supplement, and the EVPS Restructuring Support Agreement (including any applicable consent rights set forth therein).  The obligations of the applicable Reorganized EVPS Debtors related thereto will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the EVPS Debtors or Reorganized EVPS Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state, federal, or foreign law.  To the extent applicable, entry of this EVPS Confirmation Order shall be deemed approval of the Reorganized Envision Parent New Common Stock (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the applicable EVPS Debtors or the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, as applicable, in connection therewith), to the

extent not approved by the Court previously, and on the Effective Date, without any further action by the Court or the directors, officers, or equity holders of any of the Reorganized EVPS Debtors, each Reorganized EVPS Debtor, as applicable, will be and is authorized to enter into the Reorganized Envision Parent New Common Stock, and all related documents, to which such Reorganized EVPS Debtor is contemplated to be a party on the Effective Date.  In addition, on the Effective Date, without any further action by the Court or the directors, officers or equity holders of any of the Reorganized EVPS Debtors, each applicable Reorganized EVPS Debtor will be and is authorized to:  (a) execute, deliver, file, and record any other contracts, assignments, certificates, instruments, agreements, guaranties, or other documents executed or delivered in connection with the New Reorganized Envision Parent Organizational Documents and the New Warrant Agreements; (b) issue the Reorganized Envision Parent New Common Stock, and the New Warrants (including the Reorganized Envision Parent New Common Stock that may be issuable upon exercise of the New Warrants); (c) perform all of its obligations under the New Reorganized Envision Parent Organizational Documents and the New Warrant Agreements; and (d) take all such other actions as any of the responsible officers of such Reorganized EVPS Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the New Envision Parent Organizational Documents and the New Warrant Agreements, in each case, in accordance with the EVPS Plan and this EVPS Confirmation Order and subject to all consent rights included therein. Notwithstanding anything to the contrary in this EVPS Confirmation Order or Article XI of the EVPS Plan, after the Effective Date, any disputes arising under the New Reorganized Envision Parent Organizational Documents and the New Warrant Agreements will be governed by the jurisdictional provisions therein.  For the avoidance of doubt, any claimant's acceptance of

Reorganized Envision Parent New Common Stock shall be deemed as its agreement to be bound by the New Reorganized Envision Parent Organizational Documents without the need for execution by any party other than Reorganized Envision Parent.

103.   **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the EVPS Plan, the provisions of the EVPS Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the EVPS Plan and the entry of this EVPS Confirmation Order constitutes approval of such compromise and settlement, including the Global Settlement and the settlement of the claims asserted in the Fourth Out Complaint, under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code.

104.   **Treatment of Executory Contracts and Unexpired Leases.**  Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the EVPS Plan provides for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases.  The EVPS Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the EVPS Debtors, are necessary to the implementation of the EVPS Plan and are in the best interests of the EVPS Debtors, their Estates, holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

105.   **Assumption and Assumption and Assignment of Contracts and Leases.**  On the Effective Date, each Executory Contract and Unexpired Lease shall be deemed assumed or assumed and assigned, without the need for any further notice to or action, order, or approval of the Court, under section 365 of the Bankruptcy Code, other than those Executory Contracts and Unexpired Leases that: (a) are identified on the Rejected Executory Contracts and Unexpired

Leases Schedule; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed, assumed and assigned or rejected by the EVPS Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date. The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases as set forth in the EVPS Plan Supplement. Accordingly, the EVPS Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases as set forth in the Restructuring Transactions Memorandum attached as Exhibit D to the EVPS Plan Supplement or the Assumed Executory Contracts and Unexpired Leases Schedule attached as Exhibit B to the EVPS Plan Supplement. Each assumed or assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the EVPS Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition executory or unexpired nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. The Reorganized EVPS Debtors may rely on the EVPS Plan and this EVPS Confirmation Order as a complete defense to any action by a party to an assumed or assumed and assigned Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease on account of such assumption or assumption and assignment or on account of the EVPS Plan, the

transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date.  This EVPS Confirmation Order shall constitute an order of this Court approving such assumptions pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Notwithstanding anything to the contrary in the EVPS Plan or this EVPS Confirmation Order, all obligations under assumed or assumed and assigned Executory Contracts shall be performed by the applicable Reorganized EVPS Debtor whether such obligation arises prior to or after the Effective Date.

106.    Unless otherwise provided in this EVPS Confirmation Order or the EVPS Plan, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the EVPS Plan or otherwise and full payment of any applicable Cure pursuant to Article V.C of the EVPS Plan shall result in the full release and satisfaction of all nonmonetary defaults and Cure amounts, including defaults of provisions relating to any anti-assignment provisions or restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment.  Any monetary defaults shall be reconciled and paid in the ordinary course of the EVPS Debtors' or the Reorganized EVPS Debtors' business, as applicable.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assumed and assigned in the Chapter 11 Cases, including pursuant to this EVPS Confirmation Order, and for which any Cure has been fully paid pursuant to Article V.C of the EVPS Plan shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.

107.    To the extent provided in the EVPS Plan, all existing employment agreements, indemnification agreements, or other agreements between the EVPS Debtors and the EVPS Debtors' current and former employees are hereby assumed and/or assumed and assigned to the applicable Reorganized EVPS Debtor on the Effective Date and in accordance with the provisions and requirements of section 365 and 1123 of the Bankruptcy Code.  Notwithstanding the foregoing, no employee equity or equity-based incentive plans, or any provisions set forth in any assumed compensation and benefit programs that provide for right to acquire Interests in any of the EVPS Debtors, shall be assumed under the EVPS Plan.

108.    The period to assume or reject an unexpired lease for nonresidential real property under which an EVPS Debtor is the lessee will be deemed to be extended to the earlier of the Effective Date or December 11, 2023, pursuant to section 365(d)(4) of the Bankruptcy Code, without such EVPS Debtor being required to File a motion with this Court.

109.    **Indemnification.**  All indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the Indemnified Parties, shall (a) not be discharged, impaired, or otherwise affected in any way, including by the EVPS Plan, the EVPS Plan Supplement, or this EVPS Confirmation Order, (b) remain intact, in full force and effect, and irrevocable, (c) not be limited, reduced or terminated after the Effective Date, and (d) survive the effectiveness of the EVPS Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the EVPS Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or

event occurring before, on or after the Petition Date, except for any obligations to indemnify for the conduct of current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the EVPS Debtors, in their capacities as such; *provided*, that such reinstatement shall also include such indemnification provisions for the benefit of Peter Stavros related to his service as a director during the time period from October 11, 2018, to September 27, 2021; *provided*, *further*, that no indemnification agreements, claims, or obligations related to the individual defendants in the Bettis Litigation shall be assumed or reinstated by the Reorganized EVPS Debtors, and any such agreements, claims, and/or obligations shall be discharged pursuant to the EVPS Plan.  All such obligations shall be deemed and treated as executory contracts to be assumed by the EVPS Debtors under the EVPS Plan and shall continue as obligations of the Reorganized EVPS Debtors, subject to the EHC AmSurg Debtors Sale Documents, the SPA Order, and the EVPS Plan Supplement documents, as applicable.

110.    **Authorization to Consummate.**  The EVPS Debtors and the Reorganized EVPS Debtors, as applicable, are authorized to consummate the EVPS Plan after the entry of this EVPS Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the EVPS Plan.

111.    **Professional Compensation.**  All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Court.  The Reorganized EVPS Debtors shall pay unpaid Professional Claims in Cash in the amount the Court allows, including from the

Professional Fee Escrow Account, as applicable. The Reorganized EVPS Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals other than with respect to potential distributions to Holders of Allowed General Unsecured Claims as contemplated under the EVPS Plan. Such funds shall not be considered property of the Estates of the EVPS Debtors or the Reorganized EVPS Debtors.

112. The amount of Allowed Professional Claims shall be paid in Cash to the Professionals by the Reorganized EVPS Debtors from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Claims are Allowed; *provided* that until the reconciliation of all General Unsecured Claims has been completed, the Professional Fee Escrow Account shall at all times hold no less than $1.5 million that was escrowed for payment of the EVPS Debtors' professionals. When such Allowed Professional Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized EVPS Debtors without any further notice to or action or order of the Bankruptcy Court or any other Entity, subject to at least $1.5 million remaining in the Professional Fee Escrow Account that was escrowed for payment of the EVPS Debtors' professionals until the reconciliation of all General Unsecured Claims has been completed. From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the EVPS Debtors or the Reorganized EVPS Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

113.  **Section 345 Waiver.**  Section 345 of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines requiring that the bank accounts listed in the EVPS Debtors' Cash Management Motion be U.S. Trustee authorized depositories is waived with respect to the bank accounts existing as of the Petition Date.

114.  **Certain Securities Law Matters**.  Pursuant to section 1145 of the Bankruptcy Code or any other applicable exemption, the offering, issuance, and distribution of the Reorganized Envision Parent New Common Stock (other than any Reorganized Envision Parent New Common Stock underlying the Reorganized Envision Parent Management Incentive Plan and the New Warrants (including the shares of Reorganized Envision Parent New Common Stock issuable upon the exercise of the New Warrants), as contemplated by Article IV.D of the EVPS Plan, (a) shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable federal, state, or local law requiring registration for the offer or sale of a Security or registration or licensing of an issuer of a security in reliance of section 1145 of the Bankruptcy Code to the fullest extent available, (b)(i) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) are freely tradable and transferable without restriction under the Securities Act by any initial recipient thereof that (A) is not an "affiliate" of the Reorganized EVPS Debtors as defined in Rule 144(a)(1) under the Securities Act, (B) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (C) has not acquired the Reorganized Envision Parent New Common Stock or the New Warrants from an "affiliate" of the Reorganized EVPS Debtors within one year of such transfer and (D) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of the Bankruptcy Code, and (c) will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an

underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the SEC or state or local securities laws, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) the restrictions in the New Reorganized Envision Parent Organizational Documents.

115. **Cooperation by the Depository Trust Company (the "DTC")**.  The DTC, and any participants and intermediaries, shall fully cooperate and facilitate distributions, as applicable, pursuant to the EVPS Plan.  The DTC and any transfer agent shall be required to accept and conclusively rely upon the EVPS Plan or EVPS Confirmation Order in lieu of a legal opinion regarding whether the Reorganized Envision Parent New Common Stock and the New Warrants (including the shares of Reorganized Envision Parent New Common Stock issuable upon the exercise of the New Warrants) is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

116. **Section 1146(a) Exemption.**  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from an EVPS Debtor to a Reorganized EVPS Debtor or to any other Person) of property under the EVPS Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the EVPS Debtors or the Reorganized EVPS Debtors, including the Reorganized Envision Parent New Common Stock, the Exit Term Loans,  and the New Warrants (if applicable); (2) the EHC AmSurg Debtors Sale Transaction and any Restructuring Transactions, as applicable; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Exit Term Loans; or (6) the making, delivery, or recording

of any deed or other instrument of transfer under, in furtherance of, or in connection with, the EVPS Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the EVPS Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this EVPS Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

117. **Provisions Regarding JV/ASC entities.**   Notwithstanding a provision in a contract or lease or any applicable law, including, for the avoidance of doubt, section 18-304 of the Delaware Code or other relevant state law, all non-EVPS Entities are enjoined pursuant to 11 U.S.C. §§ 105, 365(e), and/or 541(c) from terminating, modifying or asserting any rights under any contract or lease to which an EVPS Entity that is not-wholly owned directly or indirectly by Envision Parent is a party because, due to, or resulting from, directly or indirectly, the commencement or prosecution of these Chapter 11 Cases, the consummation of the

Restructuring Transactions, or any change of control or ownership interest composition (directly or indirectly) resulting from the Restructuring Transactions.

118. **Provisions Regarding the Texas Workforce Commission and the Texas Comptroller.** The Allowed claims of the Texas Workforce Commission and the Texas Comptroller of Public Accounts, Revenue Accounting Division (the "Comptroller") for 2022 and prior years that are entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code shall be paid in accordance with the requirements of section 1129(a)(9)(C) of the Bankruptcy Code, together with applicable interest (if any) to the extent allowed by the Bankruptcy Code and under applicable nonbankruptcy law. Payment for the Allowed claims of the Texas Workforce Commission and the Comptroller that constitute administrative claims pursuant to section 503(b)(1)(B) of the Bankruptcy Code shall be made in the ordinary course of business when due. The Texas Workforce Commission and the Comptroller shall retain their liens on the EVPS Debtors' property or any proceeds from the sale of such property, including, to the extent applicable, any tax reserve established pursuant to the EVPS Cash Collateral Order, until such time as the Texas Workforce Commission's and the Comptroller' claims (the "Texas Tax Claims") are paid in full (to the extent such claims are Allowed). The Texas Workforce Commission's and the Comptroller's lien priority shall not be primed or subordinated by any Exit Financing approved by the Court in conjunction with the Confirmation of the EVPS Plan. The Texas Tax Claims shall, subject to any applicable limitation in the Bankruptcy Code, include all accrued interest properly charged under applicable nonbankruptcy law through the date of payment, to the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Tax Claims. The Texas Workforce Commission and the Comptroller may amend the Texas Tax Claims after the Effective Date to reflect the final tax amounts for Texas Tax Claims

that constitute administrative tax claims pursuant to section 503(b)(1)(B) of the Bankruptcy Code without having to receive prior authorization to do so. All rights and defenses of the EVPS Debtors and the Reorganized EVPS Debtors under nonbankruptcy law and the Bankruptcy Code are reserved and preserved with respect to such Texas Tax Claims, including the right to object to the priority, validity, amount and extent of such Texas Tax Claims and liens asserted by the Texas Workforce Commission and the Comptroller.

119. **Provisions Regarding the Department of Justice.** As to the United States, nothing in the EVPS Plan or this EVPS Confirmation Order (collectively, "Documents") shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to, right of, or entitlement of, the United States, that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any claim of the United States arising after the Confirmation Date, or (c) any liability of any entity or person under federal police or regulatory statutes or regulations to the United States as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Effective Date; (2) release, nullify, preclude or enjoin the enforcement of any criminal action or any police or regulatory power, including that certain proceeding commenced by certain of relators under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, currently pending in the United States District Court for the Central District of California, Western Division, Case No. CV 21-04324 VAP (ASx); (3) authorize the assumption, sale, transfer or assignment of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) leases, (v) agreements, including but not limited to, Medicare agreements, (vi) license, (vii) permit, (viii) registration, (ix) authorization or (x) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and obligations under applicable nonbankruptcy laws; (4) confer exclusive jurisdiction to the Bankruptcy Court with

respect to the United States' interests, claims, liabilities and Causes of Action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (5) release, exculpate, enjoin, impair or discharge any non-Debtor from any claim, suit, right or Cause of Action of, or liability to, the United States; (6) enjoin or affect any valid setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, or recoupment rights, and such rights shall be preserved and are unaffected; (7) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under applicable nonbankruptcy law; (8) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States (provided that this sub-clause 8 shall not affect the discharge of the Debtors with respect to any Claim that is treated under the EVPS Plan); (9) cause (i) the Governmental Bar Date to be shortened or (ii) cause the filing of any amendment to a timely filed claim by the United States on or after the Effective Date, including, but not limited to any claim filed by the United States after the Effective Date but before the Governmental Bar Date, to be automatically disallowed and expunged; (10) restrain, limit or impact any action by the U.S. Department of Health and Human Services ("HHS"), the Centers for Medicare & Medicaid Services ("CMS"), the Health Resources and Services Administration ("HRSA"), or Medicare Administrative Contractors to administer, regulate and enforce the Medicare program, the Provider Relief Fund ("PRF") program, the American Rescue Plan Rural program, and other programs administered by the HHS (collectively, "Programs"); (11) be construed to affect or limit the exclusive jurisdiction of HHS to adjudicate and pay Medicare claims in the ordinary course; or (12) be construed to authorize the transfer to, or use by, any person or entity other than the original recipient(s) of any PRF distributions from the HRSA, or to permit the use of any PRF distributions in a manner

inconsistent with the associated statutory requirements or the terms and conditions associated therewith.  The EVPS Debtors' and the Reorganized EVPS Debtors' (as applicable) rights and defenses under applicable nonbankruptcy law and the Bankruptcy Code with respect to the foregoing are fully preserved.

120.  **Provisions Regarding the State of Texas.**  As to the State of Texas and its agencies, including but not limited to the Texas Health & Human Services Commission and Texas Medical Board (the "State of Texas"), nothing in the Documents shall (1) discharge, release, nullify, preclude, or enjoin:  (i) any liability to the State of Texas that is not a "claim" as defined in 11 U.S.C. §101(5), (ii) any liability to the State of Texas on the part of any Person other than the EVPS Debtors or Reorganized EVPS Debtors, with all respective rights, including all rights and defenses of such Persons under applicable nonbankruptcy law, reserved, or (iii) any liability of any entity to the State of Texas under police and regulatory statutes or regulations as the owner or operator of property after the Effective Date; (2) relieve any entity from any obligation to address or comply with information requests or inquiries from the State of Texas; (3) affect the exercise of any valid setoff or recoupment rights of the State of Texas; or (4) divest any tribunal of any jurisdiction it may have under police or regulatory law; provided that the Bankruptcy Court shall retain jurisdiction regarding, interpreting, enacting, or enforcing the EVPS Plan, this EVPS Confirmation Order, or any other order entered by the Bankruptcy Court in the Chapter 11 Cases.  Nothing in the EVPS Plan, this EVPS Confirmation Order, or related documents authorizes the transfer or assignment of any (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, in each case issued by the State of Texas, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  The State of Texas, the EVPS Debtors' and the

Reorganized EVPS Debtors' (as applicable) rights and defenses under applicable nonbankruptcy law and the Bankruptcy Code with respect to the foregoing are fully preserved. Further, the State of Texas is deemed to have opted out of any and all releases set forth in the EVPS Plan.

121.   **Provisions Regarding Unclaimed Property.**   On or within thirty (30) days after the Effective Date, the EVPS Debtors or Reorganized EVPS Debtors shall review their books and records and turn over to the Texas Comptroller of Public Accounts ("Texas Comptroller") any known unclaimed property (the "Texas Unclaimed Property") presumed abandoned under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "Texas Unclaimed Property Laws") before the Petition Date and reflected in property reports delivered by the EVPS Debtors to the Texas Comptroller under the Texas Unclaimed Property Laws (the "Reported Texas Unclaimed Property").   With respect to such Reported Texas Unclaimed Property, the Texas Comptroller will not seek payment of any interest or penalty by the EVPS Debtors or the Reorganized EVPS Debtors.   Nothing in the EVPS Plan or this EVPS Confirmation Order shall convert the Texas Unclaimed Property to property of the EVPS Debtors' estates or vest such property in the Reorganized EVPS Debtors and the Texas Unclaimed Property shall continue to be held by the EVPS Debtors or Reorganized EVPS Debtors until such time it is presumed abandoned, at which time the Texas Unclaimed Property shall be reported and remitted to the Texas Comptroller in accordance with the Texas Unclaimed Property Laws; *provided*, however, that the foregoing does not prejudice the EVPS Debtors' or the Reorganized EVPS Debtors' right or ability to challenge the determination of what property constitutes Texas Unclaimed Property.   Notwithstanding section 362 of the Bankruptcy Code and any injunction contained in the EVPS Plan, after the Effective Date, the Texas Comptroller and its agents may commence an audit of the EVPS Debtors in accordance with the Texas

Unclaimed Property Laws (the "Texas Unclaimed Property Audit") and pursue recovery of any unremitted Texas Unclaimed Property identified pursuant to the Texas Unclaimed Property Audit. To the extent reasonably practicable, the EVPS Debtors and the Reorganized EVPS Debtors shall cooperate with the auditors to enable them to accurately and timely perform the Texas Unclaimed Property Audit by making the entities' employees, professionals, books, and records reasonably available during normal business hours. Upon completion of the Texas Unclaimed Property Audit, the Texas Comptroller will promptly inform the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, that such audit is complete. The EVPS Debtors and Reorganized EVPS Debtors shall continue to comply with Texas Unclaimed Property Laws regarding retention of records. The EVPS Debtors', Reorganized EVPS Debtors' and Texas Comptroller's rights and defenses with respect to any allegations and/or claims asserted against the EVPS Debtors or Reorganized EVPS Debtors, as applicable, arising from or relating to the Texas Unclaimed Property Audit are hereby reserved; *provided*, *however*, that upon agreement between the EVPS Debtors or the Reorganized EVPS Debtors and the Texas Comptroller or a final non-appealable determination by a court or other tribunal with jurisdiction as to the amount of unremitted Texas Unclaimed Property, if any, that is due in connection with the Texas Unclaimed Property Audit, the EVPS Debtors or the Reorganized EVPS Debtors shall turn over such unremitted Texas Unclaimed Property to the Texas Comptroller. The Texas Comptroller may file or amend any Proofs of Claim in these Chapter 11 Cases following the Effective Date as a result of the filing of any property reports or in the ordinary course of the Texas Unclaimed Property Audit. Nothing herein precludes the EVPS Debtors and the Reorganized EVPS Debtors from compliance with continued obligations pursuant to Texas Unclaimed Property Laws.

122.    **Provisions Regarding Texas Taxing Authorities.**   The Allowed Secured Tax Claims of the Texas Taxing Authorities[6] shall be paid in full on the later of (a) the date that the Allowed Secured Tax Claims of the Texas Taxing Authorities become due pursuant to the Texas Tax Code (subject to any applicable extensions, grace periods, or similar rights under the Texas Tax Code) and (b) the Effective Date (or as soon as practical thereafter).   The Texas Taxing Authorities shall retain their liens on the Debtors' property or any proceeds from the sale of such property, including the tax reserve established pursuant to the Final Cash Collateral Orders and the Order Approving Procedures for De Minimis Asset Transactions, until such Secured Tax Claims are paid in full.   The Texas Taxing Authorities' lien priority shall not be primed or subordinated by any Exit Financing approved by the Court in conjunction with the Confirmation of the EVPS Plan or otherwise.   The Texas Tax Claims shall, subject to any applicable limitation in the Bankruptcy Code, include all accrued interest properly charged under applicable nonbankruptcy law through the date of payment, to the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Tax Claims.   The Texas Taxing Authorities may amend the Texas Tax Claims after the Effective Date to reflect the final tax amounts for the 2023 taxes without having to receive prior authorization to do so.   All rights and defenses of the Debtors and the Reorganized Debtors under nonbankruptcy law and the Bankruptcy Code are reserved and preserved with respect to such Texas Tax Claims.

123.    **Provisions Regarding Broward County.**   Notwithstanding anything else in the EVPS Plan or this EVPS Confirmation Order, Broward County, Florida, shall retain any

---

[6]   "Texas Taxing Authorities" means Bexar County, Bowie CAD, Brazos County, Burnet CAD, City of Waco, Waco Independent School District, Dallas County, Denton County, City of El Paso, City of Frisco, Harris County, Lewisville Independent School District, McLennan County, Montgomery County, City of Melissa, Plano Independent School District, Frisco Independent School District, Johnson County, City of Burleson, Burleson Independent School District, Richardson Independent School District, Westdor Municipal Utility District, Spring Independent School District, Clear Creek Independent School District, Chambers County, Barbers Hill Independent School District and Taylor County CAD.

prepetition statutory liens on the personal property of the EVPS Debtors to the same extent as if the bankruptcy had never occurred.

124. **Provisions Regarding Amedisys.**  For the avoidance of doubt, notwithstanding the entry of this EVPS Confirmation Order, or anything contained in or contemplated by the EVPS Plan and EVPS Plan Supplement and nothing herein deeming any contracts between the parties assumed pursuant to the EVPS Plan, (i) no liens, claims, rights or any other encumbrances shall attach, extend to, or otherwise apply to any escrowed funds provided under that certain Escrow Agreement entered into in connection with that certain Membership Interest Purchase Agreement (the "MIPA"), dated February 1, 2022, by and between Amedisys Holding, L.L.C., Amedisys, Inc., Emergency Medical Services LP Corporation (n/k/a Emergency Medical Services LLC) (the "Seller"), Evolution Health, LLC and Envision Healthcare Corporation for so long as such funds remain escrowed; provided that if such escrowed funds are to be released to Amedisys Holding, L.L.C. or its affiliates (together, the "Amedisys Escrow Parties") or parties other than the Seller or its affiliates ("Other Non-Seller Escrow Parties") pursuant to the MIPA and Escrow Agreement, then no liens, claims, rights or any other encumbrances shall attach, extend to, or otherwise apply to the escrowed funds released to any such Amedisys Escrow Party or Other Non-Seller Escrow Party; and (ii)(a) the EVPS Debtors' interest and rights, if any, in any escrowed funds under the MIPA and Escrow Agreement shall vest in the Reorganized EVPS Debtors subject to the terms and conditions of the MIPA and Escrow Agreement and (b) the Amedisys Escrow Parties' or Other Non-Seller Escrow Parties' interest and rights, if any, in any escrowed funds under the MIPA and Escrow Agreement shall be unaffected thereby and the release of any escrowed funds to any Amedisys Escrow Party or Other Non-Seller Escrow Party in accordance with the MIPA and Escrow Agreement shall not be stayed or enjoined thereby.

Amedisys Holding, L.L.C. and Amedisys, Inc. have executed, completed, and timely delivered their Ballots and Release Opt-Out Forms (each as defined in the Disclosure Statement Order), have each voted against the EVPS Plan, and are each deemed to opt-out of the third-party releases contained in Article VIII.D of the EVPS Plan and shall not be Releasing Parties or Released Parties thereunder.  For the avoidance of doubt and notwithstanding the inclusion of the MIPA in the Rejected Executory Contracts and Unexpired Leases Schedule in the EVPS Plan Supplement, (a) nothing shall affect or impair (i) the transactions consummated under and/or arising out of the MIPA, (ii) the immediately preceding provision regarding the MIPA and Escrow Agreement, and (iii) the Debtors shall reasonably cooperate in transitioning the defense of any matters that have been previously assumed under Article IX of the MIPA to Amedisys.

125.    **Surety Bond Obligations.**  Notwithstanding any provision of this EVPS Plan or this EVPS Confirmation Order, on the Effective Date, (i) all of the EVPS Debtors' obligations and commitments to surety bond provider RLI Insurance Company ("RLI"), including without limitation, obligations under any indemnity agreements, shall be deemed reinstated and reaffirmed, and shall be continuing obligations of the Reorganized EVPS Debtors; (ii) all bonded obligations of the EVPS Debtors for which such surety bonds secure performance by the EVPS Debtors shall be deemed assumed by the EVPS Debtors and shall be unimpaired by the EVPS Plan or this EVPS Confirmation Order; and (iii) to the extent any of the obligations and commitments set forth in this provision are secured by collateral, such collateral shall remain in place as continuing security.  Nothing in the EVPS Plan or this EVPS Confirmation Order shall be deemed to (i) modify or impair the rights of any party under the EVPS Debtors' surety bonds, related indemnity agreements, or applicable law; (ii) require RLI to issue any new surety bonds or extensions or renewals of any surety bonds; or (iii) affect RLI's rights (only to the extent such

rights exist with respect to the surety bonds, indemnity agreements or under applicable law) to require the Reorganized EVPS Debtors to execute and deliver to RLI new indemnity agreements containing such new or additional terms as RLI may require in its discretion.  For the avoidance of doubt, RLI and its affiliated companies shall not be deemed Releasing Parties under the EVPS Plan, and the release and injunction provisions of the EVPS Plan shall not impair RLI and its affiliates' rights with respect to any surety bonds issued on behalf of the EVPS Debtors or any indemnity agreements relating to the EVPS Debtors' surety bond program.

126.    **Provisions Regarding INSPYR Solutions.**  Notwithstanding anything in this EVPS Confirmation Order or the EVPS Plan to the contrary, this paragraph shall govern with respect to INSPYR Solutions, LLC ("Inspyr"), Genuent, LLC, MPLT Healthcare, LLC ("MPLT Healthcare") and any of their affiliates providing services to the EVPS Debtors on the Petition Date (collectively, the "Inspyr Parties" and such services, the "Services").  None of the Inspyr Parties' rights under or in connection with the MSA shall be impaired, altered, modified, or abridged in any way, notwithstanding anything in this EVPS Confirmation Order or the EVPS Plan to the contrary, including, for example:  (A) the Inspyr Parties shall be paid in the ordinary course for all Services rendered to the EVPS Debtors though the Effective Date notwithstanding the Inspyr Parties' failure to adhere to the cure objection procedures contemplated by the Confirmation Order or Plan or any provision therein purporting to release and satisfy Claims or other rights (*see, e.g.*, EVPS Plan, Art. V.D.); and (B) the Inspyr Parties' recoupment rights shall remain unbridged by the Confirmation Order or Plan (see, e.g., EVPS Plan, Art VI.J.). Moreover, the EVPS Debtors agree they are not retaining any right or cause of action, including causes of action under chapter 5 of the Bankruptcy Code against the Inspyr Parties to the extent

that maintaining such right or cause of action is inconsistent with the EVPS Debtors' assumption of the MSA.

127.    **Provisions Regarding Cardinal Health.**   Notwithstanding any provision herein to the contrary, to the extent Cardinal Health and its subsidiaries and/or its affiliates (together, "Cardinal Health") had Permitted Prior Senior Liens (as defined in the Final EVPS Cash Collateral Order), such Permitted Prior Senior Liens shall be senior to any liens and/or security interests granted pursuant to the Final EVPS Cash Collateral Order, and nothing herein shall be deemed to alter, limit, modify or impair any rights of Cardinal Health in, to, or under any of the collateral delivered to, in possession of, or controlled by, Cardinal Health as of the Petition Date, or the proceeds thereof, including, but not limited to, any deposits held by Cardinal Heath pursuant to that certain Prepaid Deposit Agreement dated April 25, 2023 (the "Deposit Agreement").  Nothing set forth herein shall operate as a waiver of the rights, if any exist under applicable nonbankruptcy law, of the EVPS Debtors and their estates, the Reorganized EVPS Debtors, the EVPS Secured Parties (as defined in the Final EVPS Cash Collateral Order), the Committee, or any other third party from challenging or otherwise objecting to the validity, priority, or extent of the liens and security interests of Cardinal Health or any claims relating thereto, and any and all such rights shall be reserved.  Nothing herein shall be construed as a waiver of rights of either party as they exist under applicable nonbankruptcy law with respect to the Deposit Agreement.

128.    **Provisions Regarding AmeriHealth Caritas Louisiana, Inc.**   The Limited Objection of the AmeriHealth Caritas Entities to Second Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors [Docket No. 1454] is resolved by and between the EVPS Debtors and the AmeriHealth Caritas Louisiana, Inc. f/k/a AmeriHealth Mercy of Louisiana, Inc.

and AmeriHealth Caritas Florida, Inc. f/k/a Florida True Health, Inc. formerly d/b/a Prestige Health Choice and their affiliates (collectively, the "AmeriHealth Caritas Entities") as set forth in this paragraph.  Notwithstanding other provisions of this EVPS Confirmation Order, the AmeriHealth Caritas Entities opt out of the EVPS Plan Third-Party Release as defined in the Second Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors [Docket No. 1228] (the "Second Amended Plan").  For the avoidance of doubt, the AmeriHealth Caritas Entities are not granting a release to third parties against claims or potential claims that would have otherwise been released under the EVPS Plan Third-Party Release.

129.    **Provisions Regarding MGPO.**  Notwithstanding anything in the EVPS Plan or this Order to the contrary, nothing in the in the EVPS Plan or this Order shall (a) prevent the appeal referenced in Stipulation and Agreed Order Granting Limited Relief from the Automatic Stay to Allow Appeal to Proceed [ECF No. 1012] (the "MGPO Stipulation and Agreed Order") from proceeding consistent with the terms of the MGPO Stipulation and Agreed Order; (b) affect the liability of RLI Insurance Company or any other non-debtor party to Massachusetts General Physicians Organization, Inc. or Gordon J. Harris, Ph.D. under the appeal bond referenced in the MGPO Stipulation and Agreed Order (the "Appeal Bond"); or (c) prevent execution on the Appeal Bond pursuant to applicable nonbankruptcy law.

130.    **Provisions Regarding Bettis Litigation.**  Notwithstanding any provision of the EVPS Plan or this EVPS Confirmation Order (including any definition ascribed to "D&O Liability Insurance Policies"), nothing in the EVPS Plan or this EVPS Confirmation Order shall modify, alter, or limit the rights and obligations (if any) provided under the terms and provisions of any insurance policy or insurance agreement related to the Bettis Litigation.   Furthermore, notwithstanding any provision of the EVPS Plan or this EVPS Confirmation Order, nothing in

the EVPS Plan or this EVPS Confirmation Order shall (i) relieve the EVPS Debtors, the Reorganized EVPS Debtors and/or their estates of any of their obligations under any insurance policies and insurance agreements related to the Bettis Litigation ("Bettis D&O Policies") (if any); (ii) limit or enhance the rights of the individual former directors and officers named as defendants in the Bettis Litigation ("Individual Insureds") (if any) against any of the EVPS Debtors' or Reorganized EVPS Debtors' insurers; or (iii) preclude or limit, in any way, the rights of insurers to contest and/or litigate the existence, primacy and/or scope of available coverage under any allegedly applicable insurance policies, including, without limitation, the Bettis D&O Policies, or to otherwise assert any defenses to coverage.

131. **Provisions Regarding UnitedHealthcare Insurance Company.** Notwithstanding anything to the contrary contained in this EVPS Confirmation Order, the provisions of the EVPS Plan, or the EVPS Plan Supplement:

(a)        all rights, claims, affirmative defenses, counterclaims or other defensive rights of UnitedHealthcare Insurance Company, Optum360, LLC and any of their affiliates, subsidiaries, and/or related parties (collectively, "United") (a) of or to setoff, (b) of or to recoupment, or (c) that are not discharged by section 1141(d) of the Bankruptcy Code ((a) through (c) collectively, the "Preserved Rights"), are expressly preserved and retained and shall not be enjoined, impaired, prejudiced, discharged, or released in any manner whatsoever against or with respect to the EVPS Debtors, Reorganized EVPS Debtors, or any other entity (including, without limitation, any Released Parties), including, without limitation, all Preserved Rights in any way related

to any "Payor Claim"[7] against United or in any way arising out of or related to (i) the case captioned *Envision Healthcare Corporation v. UnitedHealthcare Insurance Company, et al*., Case No. 22-00693, United States District Court for the Middle District of Tennessee, Nashville Division, (ii) the case captioned *UnitedHealthcare Insurance Company, et al. v. Envision Healthcare Corporation, et a*l., Case No. 22-00697, United States District Court for the Middle District of Tennessee, Nashville Division, (iii) the case captioned *Envision Healthcare Corp. et al. v. United Healthcare Insurance Co., et al*., Case No. 2022-012385, Superior Court of Arizona Maricopa County (iv) the case captioned *Envision Healthcare Corp. et al. v. United Healthcare Insurance Co., et al.*, Case No. 2022-011773-CA-01, Circuit Court of Eleventh Judicial Circuit for Miami-Dade County, Florida, and (v) *In the Matter of and among United HealthCare Insurance Company, Envision Healthcare Corporation, and Sheridan Healthcorp, Inc.*, case nos. 01-18-0003-7424,   01-18-0001-5134,   01-18-0001-6915,   before   the   American Arbitration Association ((i) through (vi) collectively, the "Litigations") provided, however, that the preservation and retention of Preserved Rights that are setoff rights shall be subject to compliance with section 553 of the Bankruptcy Code.  United's, the EVPS Debtors' and the Reorganized EVPS Debtors' (as applicable) and such other entity's rights and defenses under applicable nonbankruptcy law and the Bankruptcy Code with respect to the foregoing are fully preserved.

(b)        United is deemed to have opted-out of the third-party releases, including such releases contained in Article VIII.D. of the EVPS Plan and, solely to the

---

[7]  "Payor Claims" means any claims and/or Causes of Action on behalf of any EVPS Debtor that relate to, or are in connection with, any payor, insurer, or any of their respective affiliates, subsidiaries, and/or related parties, including, without limitation, United and any of its affiliates, subsidiaries, and/or related parties.

extent it applies to any Released Party that is not a Debtor, shall not be bound by Article VIII.F. of the EVPS Plan.  For the avoidance of doubt, United will not be required to take any additional action to opt out of the third-party releases contained in Article VIII.D. of the EVPS Plan (including, without limitation, opting out of such releases on any Ballot or submitting an objection to the EVPS Plan that objects to such releases) and United shall not be a Released Party under the EVPS Plan.

(c)          (i) to the extent any EVPS Debtor or Reorganized EVPS Debtor assumes any Executory Contract or Unexpired Lease to which United is a party (any such contract, a "<u>United Contract</u>"), neither the EVPS Debtors nor Reorganized EVPS Debtors will have any claim or Cause of Action for recovery of any amounts paid to United prior to the date of assumption related to any such executory contract under chapter 5 of the Bankruptcy Code, (ii) the EVPS Debtors must make a binding decision to assume or reject any United Contract prior to the Effective Date and shall not be permitted to add or remove any United Contract from the Assumed Executory Contract and Unexpired Leases Schedule or the Rejected Executory Contract and Unexpired Leases Schedule after the Effective Date, and (iii) in the event a United Contract is "deemed assumed" by any applicable Reorganized EVPS Debtor pursuant to Article V.A. of the EVPS Plan or otherwise, but such contract was not listed on any notice of proposed assumption and assignment required by Article V.C. of the EVPS Plan, any other cure notice or the Assumed Executory Contract and Unexpired Leases Schedule (any such United contract, a "<u>Deemed Assumed Contract</u>"), (A) none of the Claims, rights, or interests of United arising under such Deemed Assumed Contract, whether arising before or after the Petition Date (collectively, the "<u>Deemed Assumed Contract Claims</u>"), shall be deemed

"cured" under the Bankruptcy Code, released, waived or otherwise discharged, (B) United shall have the right to assert all Deemed Assumed Contract Claims against the applicable Reorganized EVPS Debtor(s), and (C) United shall have the right to contest and challenge that any Deemed Assumed Contract was an Executory Contract or Unexpired Lease subject to assumption under the Bankruptcy Code, including because such Deemed Assumed Contract terminated or expired by its own terms before or after the Petition Date.

(d)        the claims asserted or to be asserted (i) by United against the EVPS Debtors or Reorganized EVPS Debtors or (ii) by the EVPS Debtors or Reorganized EVPS Debtors against United, in each case in any Litigation, will not be liquidated in Bankruptcy Court for any purpose.

132. **Provisions Regarding HCA Healthcare, Inc.**  Pursuant to Article V of the EVPS Plan, all executory contracts and unexpired leases between the EVPS Debtors and HCA Healthcare, Inc. ("HCA") and all of its subsidiaries, affiliates, successors (collectively, and including HCA-EmCare Holdings LLC d/b/a Valesco Ventures for the avoidance of doubt, the "HCA Companies") (and all agreements between the parties related thereto, including any amendments, restatements, supplements, or other modifications to such executory contracts, unexpired leases, and/or such related agreements), shall be assumed and, notwithstanding any provision of the EVPS Plan or this Order to the contrary, any cure due and owing to the HCA Companies shall be determined and paid pursuant to the governing contracts and/or leases in the ordinary course, with any disputes related thereto to be resolved pursuant to the terms of such contracts and/or leases  Additionally, none of the contractual and legal rights of the HCA Companies, Valesco or the Reorganized EVPS Debtors, including, without limitation, setoff,

recoupment, or netting, related to any executory contract, a non-executory contract, or lease between the parties, shall be eliminated or superseded by the EVPS Debtors' Plans of Reorganization (or any amendments thereto), and no contract or lease between the parties shall be modified, waived, or compromised by the EVPS Plan or this EVPS Confirmation Order.

133.    Pursuant to Article V of the EVPS Plan, all executory contracts and unexpired leases between the EVPS Debtors and HCA-Sheridan Holdings, LLC. ("SPS") and all of its subsidiaries, affiliates, successors (collectively, the "SPS Companies") (and all agreements between the parties related thereto, including any amendments, restatements, supplements, or other modifications to such executory contracts, unexpired leases, and/or such related agreements), shall be assumed and, notwithstanding any provision of the EVPS Plan or this EVPS Confirmation Order to the contrary, any cure due and owing to the SPS Companies shall be determined and paid pursuant to the governing contracts and/or leases in the ordinary course, with any disputes related thereto to be resolved pursuant to the terms of such contracts and/or leases.  Additionally, none of the contractual and legal rights of the SPS Companies or the Reorganized EVPS Debtors, including, without limitation, setoff, recoupment, or netting, related to any executory contract, a non-executory contract, or lease between the parties, shall be eliminated or superseded by the EVPS Plan (or any amendments thereto), and no contract or lease between the parties shall be modified, waived, or compromised by the EVPS Plan or this EVPS Confirmation Order.

134.    **Provisions Regarding Ongoing Personal Injury Litigation.**  Once the Personal Injury Plaintiffs have opted out of the releases in the EVPS Plan, notwithstanding anything to the contrary in the EVPS Plan and this EVPS Confirmation Order, active litigation initiated by the Personal Injury Plaintiffs may proceed against the EVPS Debtors or Reorganized EVPS Debtors,

as applicable, as a nominal defendant only, to final judgment, including any appeals, and the EVPS Plan and this EVPS Confirmation Order do not prohibit or enjoin the Personal Injury Plaintiffs from continuing to pursue their Claims against the EVPS Debtors or Reorganized EVPS Debtors, as applicable, as a nominal defendant only; provided that any recovery or settlement in such action or on account of such Claims of the Personal Injury Plaintiffs is limited solely to amounts recoverable under applicable insurance policies, if any, and the Personal Injury Plaintiffs shall not seek, and shall not be entitled to, any recovery from the EVPS Debtors, the EVPS Debtors' estates, or the Reorganized EVPS Debtors on account of such Claims. For the avoidance of doubt, nothing in the EVPS Plan or this EVPS Confirmation Order shall be deemed to release, enjoin, bar, or otherwise impair the Personal Injury Plaintiffs' Claims against any other person or entity (including without limitation the EVPS Debtors' and Reorganized Debtors' employees and/or independent contractors such as doctors, physicians and physician assistants or any hospital in which such employees and/or independent contractors provided medical services), other than the EVPS Debtors, the EVPS Debtors' estates, the Reorganized EVPS Debtors and/or the assets of any of the foregoing entities. The Personal Injury Plaintiffs shall not seek any recovery from the EVPS Debtors, their estates, or their successors for any amounts that may be awarded to Personal Injury Plaintiffs in connection with any of their Claims.[8] Any motions for relief from stay filed by the Personal Injury Plaintiffs shall be deemed

---

[8] "Personal Injury Plaintiffs" mean Jacob Ahlquist, Individually, Jeff Ahlquist and Christine Ahlquist, as Natural Parents of Jacob Ahlquist; Anthony Burgess, as personal representative of estate of Boysita McCoy; Angela Solis [Docket No. 976]; Bonnie Hahn and David Hahn [Docket No. 478]; Jeffrey Davis and Barbara Davis [Docket No. 316]; Faith Richter as Personal Representative of the Estate of Elizabeth Richter [Docket No. 1367]; John Preston [Docket No. 1276]; Laura C. Johnson as Personal Representative of the Estate of Brendan J. Johnson, deceased [Docket No. 1277]; John Gainey, as Plenary Guardian of Eva Henley and her Children [Docket No. 315]; John Dicarlo as Personal Representative of the Estate of Danielle Dicarlo [Docket No. 314]; Edward Bruce Bennett as Personal Representative of the Estate of Bonnie Lynn Bennett [Docket No. 311]; DeAngelo Barkley and Murielle Barkley; Estate of Ivan Blakely, Shavona Blakely, Ivan Blakely, Jr., Javonna Nicola Blakely, Shakayla Sharell Blakely and J.R.B., a minor; Chad Eric Gerlaugh; Mar Halphen and Vanessa Halphen; Craig Janssen as personal representative of the Estate of Laura Janssen, deceased; Corina

withdrawn and any discovery requests shall be directed to appropriate state court counsel for the Personal Injury Plaintiffs upon entry of this EVPS Confirmation Order.[9]

135.    **Provisions Regarding the Chubb Companies.**  Notwithstanding anything to the contrary in this Documents (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction, discharge, or release, requires a party to opt out of or object to any releases, or confers Bankruptcy Court jurisdiction):

(a)              on the Effective Date, each EVPS Debtor shall assume pursuant to sections 105 and 365 of the Bankruptcy Code each insurance policy (including as such may have been extended or renewed and all agreements, documents or instruments related thereto) that has been issued at any time by ACE American Insurance Company,

---

Kowalski and Robert Kowalski, M.D.; Jeffrey Raymond LaGrasso, Deborah Elizabeth LaGrasso, and I.D.L., a minor; Pamela Sue McLelland, as personal representative of the Estate of Warren Lex McLelland, deceased; Estate of Juanona Reed, Janice Cooper a/k/a Janice Russell, Jhaniya Vontrell Knight, X.M.R., a minor, and K.L.R., a minor; Jamie E. Roberts, J.R., a minor, L.R., a minor, and W.R., a minor; Luis Rodriguez Boada and Luisa F. Rodriguez Neira; Patricia Ruberto, as Personal Representative of the Estate of Leo Ruberto, deceased; Melissa Shepard, Brad Shepard, and N.S., a minor; Kevin Sparks and Denise Sparks; Tara L. Suarez and Cesar A. Suarez; Ashley Van Peer f/k/a Ashley Kidd and Anna Van Peer; Stephan Vealey; Kelley Dawn Verbal; Richard Anthony Wyzik, Zina Ann Figgiani-Wyzik, and B.A.W., a minor; Caroline Washington; Joyce Webster, individually and as parent and natural guardian of C.S., a minor; Kimberlee Stiles, as Personal Representative of her Deceased Husband, Clayton Stiles; Antoinette and Anthony Edwards, individually and on behalf of their Minor Son (A.D.E.); Janet Highsmith, individually and on behalf of K.K., a minor; Louella Phillips; William T. Knotts; Suzana Miller; Sehriban Koulouvaris as personal representative to Christopher Koulouvaris; Gillian Sylvester, as Personal Representative of the Estate of Vanessa Souvenir, deceased; Robert Daniel Lewis and United Community Bank of West Kentucky, Inc. As Ancillary Administrator of The Estate of Joanne Walker [Docket No. 1423]; Jason D'Agata and Melisa D'Agata [Docket No. 1394]; Lehigh Valley Health Network [Docket No. 342]; Frank E. Fernandez and Frank E. Fernandez, II [Docket No. 975]; Isaiah Jones and Barbara Jones [Docket No. 1552]; Gwynn Colvin, Individually and as Administrator of the Estate of Joseph Edwynn McDaniel [Docket No. 1541 (amended at Docket No. 1553)]; Fernando Correa, Jr. and Nancy Elizabeth Correa-Centeno [Docket No. 1305]; Maria Chylinski, Individually and as Legal Guardian for, and on Behalf of Stanislaw Chylinski [Docket No. 1347]; Elwyn Brewster Quirk, Successor Administratrix of the Estate of Michael Lapierre; Davor Dakic; and John E. Garofalo, Administrator of the Estate of Jessica R. Garofalo and Harry Montgomery, Administrator of the Estate of Rayne Montgomery.

[9]    Pursuant to the *Stipulation and Agreed Order Granting Limited Relief from the Automatic Stay* [Filed at Docket No. 1633], Michael Harrington, as Administrator of the Estate of Lamissa Harrington, ("Harrington"); (b) Kimberly Simoniette ("Simoniette"); and (c) Louise E. Neiman, individually and as the Administratrix of the Estate of Andrew Neiman ("Neiman") (collectively, with Harrington and Simoniette, the "Claimants") dismissed the EVPS Debtors from the Claimants' action.  For the avoidance of doubt, nothing in the EVPS Plan or this EVPS Confirmation Order prohibits the Claimants from proceeding against other named defendants in the Claimants' actions.

Westchester Fire Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, ESIS, Inc., and/or each of their U.S.-based affiliates and successors (collectively, and solely in their capacities as insurers or third party administrators, as applicable, "Chubb") to which such EVPS Debtor is a first named insured or counterparty (including without limitation the Chubb D&O Liability Insurance Policies (defined below) and the workers' compensation plans and programs) (each as amended, modified or supplemented in accordance with its terms and including any exhibit or addenda thereto, collectively the "EVPS Chubb Insurance Contracts"), which are a subset of all insurance policies that have been issued at any time by Chubb to or which provide coverage to any of the Debtors, or any of their predecessors (including without limitation the Chubb D&O Liability Insurance Policies and workers' compensation policies and programs, each as amended, modified or supplemented in accordance with its terms and including any exhibit or addenda thereto, and all agreements, documents or instruments related thereto, collectively, the "Chubb Insurance Contracts");

(b) on and after the Effective Date each EVPS Chubb Insurance Contract shall continue in all force and effect in accordance with its respective terms; and each EVPS Debtor (or EVPS Reorganized Debtor) shall remain liable in full for its and its respective Debtor's obligations under and in accordance with the terms of the Chubb Insurance Contracts (including but not limited to deductible obligations), in each case, regardless of whether any such obligations arise or become due before or after the Effective Date, and notwithstanding any order of the Bankruptcy Court to the contrary, without the need or requirement for Chubb to file or serve any objection relating to any

Cure Amount or notice of recoupment, or to file or serve a request, motion, or application for payment of or proof of any Claim, Cure Amount, or Administrative Claim;

(c)          nothing shall alter or modify the terms and conditions of any EVPS Chubb Insurance Contracts, or release, discharge, modify or otherwise alter (I) any rights, obligations and defenses of Chubb or the EVPS Debtors (or after the Effective Date, the Reorganized EVPS Debtors) under the Chubb Insurance Contracts, (II) any valid setoff or recoupment rights under any EVPS Chubb Insurance Contract, or (III) Chubb's interests in (including any security interests in and liens on) any and all letters of credit, cash, trusts, accounts, credits and other collateral and security provided or held by Chubb in relation to the EVPS Chubb Insurance Contracts, notwithstanding anything to the contrary in the Documents or any other document related to the Documents;

(d)          nothing shall permit or otherwise effect a sale, assignment, or any other transfer of any of the EVPS Chubb Insurance Contracts and/or the proceeds, rights, benefits, claims, right to payments, or recoveries related thereto or thereunder to any party other than Reorganized Envision Parent or the Reorganized EVPS Debtors, as applicable, without the prior written consent of Chubb;

(e)          on and after the Effective Date, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the EVPS Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with workers' compensation claims or direct action claims against Chubb under applicable non-bankruptcy law to proceed with their claims; (II) Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims,

(B) claims where a claimant asserts a direct claim against Chubb under applicable nonbankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the EVPS Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing subject to the terms and conditions of such applicable Chubb Insurance Contract; (III) Chubb to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the EVPS Debtors (and the Reorganized EVPS Debtors, as applicable) and/or apply such proceeds to the obligations of the EVPS Debtors (and the Reorganized EVPS Debtors, as applicable) under the Chubb Insurance Contracts, in such order as Chubb may determine; and (IV) Chubb to cancel any Chubb Insurance Contract, and take other actions relating to any Chubb Insurance Contract (including effectuating a setoff) to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms and conditions of such Chubb Insurance Contract; provided, however, the EVPS Debtors and the Reorganized EVPS Debtors reserve all of their rights, if any, under applicable non-bankruptcy law and the Bankruptcy Code and the Chubb Insurance Contracts to the extent Chubb takes any action permitted by this paragraph XX(e)(IV);

(f)         on or after the Effective Date, all members, managers, directors, and officers of the EVPS Debtors who served in such capacity at any time prior to the Effective Date and all other individuals covered by any insurance policy (including any "tail policy") that has been issued at any time prior to the Effective Date or that provides coverage to any of the EVPS Debtors, or any of their predecessors, and all agreements, documents or instruments relating thereto for liability of any current or former directors,

managers, officers, and members of an EVPS Debtor issued at any time by Chubb (the "Chubb D&O Liability Insurance Policies") will be entitled to the full benefits of any such applicable Chubb D&O Liability Insurance Policies, to the extent such coverage applies to the EVPS Debtors, for the full term of such insurance policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date, and subject in all respects to the terms of any such applicable Chubb D&O Liability Insurance Policies; further, without in any way altering any of the foregoing, the terms of the EVPS Plan and the EVPS Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations of any EVPS Debtor under any Chubb D&O Liability Insurance Policy, and each such indemnity obligation will be assumed by the applicable EVPS Debtor under the EVPS Plan as part of treatment of such Chubb D&O Liability Insurance Policy pursuant to the EVPS Plan; and further, coverage for defense and indemnity under the Chubb D&O Liability Insurance Policies shall remain available to all individuals insured thereunder, subject in all respects to the terms of the Chubb D&O Liability Insurance Policies; and

(g)        nothing in paragraph 2 of Section F of Article VIII of the EVPS Plan requires, precludes, and/or prohibits Chubb to or from administering, handling, defending, settling and/or paying claims covered by any Chubb Insurance Contracts in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.

136.    **Provisions Regarding the Parsons Claimants.**  Notwithstanding anything to the contrary in the EVPS Plan, nothing set forth herein shall act as a release as to claims asserted by Michael Parsons, Mike Rzendzian, Carol Darcy, or Roberta Rose (the "Parsons Claimants") to

receive funds pursuant to the terms of the Value Creation Plan executed by Evolution Health, LLC, including but not limited to escrowed funds associated with the General Escrow # 2 (estimated at $4,000,000), GHH Tax Matter Escrow (estimated at $843,000) and Other Escrow (estimated at $3,152,000) accounts as set forth in the EVHealth Divestiture escrow details (the "Escrowed Funds").  The issue of whether the Parsons Claimants have legal title to their respective percentage interests in the Escrowed Funds is expressly reserved, as is any claim about the timing or amount of disbursement of the Escrowed Funds.  Further, any claim, defense, or affirmative defense Debtors may have concerning the status, disbursement, amount, or disposition of Escrowed Funds shall also be expressly reserved.  In addition, Claimants are not prohibited by any injunction from pursuing their claims related to the Escrowed Funds in this bankruptcy proceeding, whether by contested proceeding or adversary case.

137.    **Provisions Regard IPERS Galleria North Tower I.**  Notwithstanding anything to the contrary contained in the EVPS Plan or this EVPS Confirmation Order, the EVPS Debtors' lease with IPERS Galleria North Tower I, Inc. (the "Landlord") is rejected as of the earlier of (i) the Effective Date or (ii) November 30, 2023 and the EVPS Debtors may not alter or amend the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule to move this lease from rejected to assumed without the consent in writing of the Landlord.  Any personal property remaining in the leased premises is hereby abandoned and the Landlord may dispose of any remaining personal property in the leased premises without any further order of the Bankruptcy Court.

138.    **Provisions Regarding Relators in the Qui Tam Proceeding**.  The following provisions shall apply to the Claims against any of the EVPS Debtors and the Reorganized EVPS Debtors, asserted or assertable in the case captioned *United States et al. ex rel. J. Doe No. 1 and*

*J. Doe No. 2, Relators v. Envision Healthcare Corporation, et al.*, filed under seal on May 24, 2021, in the United States District Court for the Central District of California (the "Qui Tam Claims" in the "Qui Tam Proceeding") by the J. Doe #1 and/or J. Doe #2, Relators ("Relators"), as well as any domestic Governmental Unit that is or becomes a party to the Quit Tam Proceeding (such Governmental Unit, a "Qui Tam Governmental Unit"):

(a)        The Qui Tam Claims shall be adjudicated, defended, determined, disputed, fixed, investigated, liquidated, resolved, and/or settled in the Qui Tam Proceeding (the claims determined by such proceeding, the "Liquidated Qui Tam Claims");

(b)        The allowance and/or subordination of the Liquidated Qui Tam Claims under the Bankruptcy Code shall be made by the Bankruptcy Court, and the Bankruptcy Court retains exclusive jurisdiction with respect to all matters regarding the application of the Bankruptcy Code to such claims;

(c)        No injunction or stay contained in the Plan or Confirmation Order or otherwise in existence as a result of the Bankruptcy Cases, to the extent applicable, shall preclude or limit, in any way: (1) such Qui Tam Claims to be adjudicated, defended, determined, disputed, fixed, investigated, liquidated, resolved, and/or settled in the Qui Tam Proceeding; and/or (2) any insurer from which coverage is sought with respect to the Qui Tam Claims to administer, handle, defend, settle, and/or pay such Qui Tam Claims in the ordinary course of business and without further order of the Bankruptcy Court; provided, however, that Nothing herein (a) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under any allegedly applicable insurance policy or to otherwise assert any

defenses to coverage or (b) constitutes, or should be construed as, a determination or admission that coverage exists with respect to any Qui Tam Claims;

(d)        The EVPS Debtors and/ the EVPS Reorganized Debtors are not waiving and will not be deemed to have waived any available defenses, including at law, equity, or otherwise, with respect to the Qui Tam Proceeding.

(e)        Treatment of any Allowed Liquidated Qui Tam Claims that are subject to discharge under 11 U.S.C. § 1141(d)(1) shall be pursuant to Article III of the Plan;

(f)        To the extent the Court determines that any Allowed Qui Tam Claims are not subject to discharge under 11 U.S.C. § 1141(d)(1) no injunction or stay contained in the Plan or Confirmation Order or otherwise in existence as a result of the Bankruptcy Cases shall preclude or limit enforcement and/or recovery against the EVPS Debtors, the Reorganized EVPS Debtors, any Third-Party, Third-Parties, Related Party, and/or Released Parties;

(g)         No injunction or stay contained in the Plan or Confirmation Order or otherwise in existence as a result of the Bankruptcy Cases, to the extent applicable, shall preclude or limit the commencement or continuation of any action in connection with the Qui Tam Proceeding of any Qui Tam Governmental Unit to enforce such Qui Tam Governmental Unit's police and regulatory power, including the enforcement of any judgment other than a money judgment, obtained in the Qui Tam Proceeding against the EVPS Debtors, the Reorganized EVPS Debtors or any third-party;

(h)        The Relators and any Qui Tam Governmental Units shall be neither a "Releasing Party" nor a "Released Party" under the Plan;

(i)         The Bankruptcy Court will retain exclusive jurisdiction with respect to all matters regarding the implementation, interpretation, and/or enforcement of the forgoing provisions regarding the Qui Tam Claims.

139.    **Provisions Regarding American Academy of Emergency Medicine Physician Group, Inc ("AAEMPG").**  Nothing in this EVPS Confirmation Order shall discharge, release, nullify, or preclude any Cause of Action of the plaintiff in *AAEMPG v. Envision Healthcare Corporation*, Case No. 3:22-cv-00421 pending in the United States District Court for the Northern District of California (the "AAEMPG Litigation") for injunctive and/or declaratory relief.  AAEMPG has properly opted out of the Proposed Plan release provisions.  The plaintiff in the AAEMPG Litigation shall be granted relief from the automatic stay and/or discharge injunction, as applicable, with respect to the AAEMPG Litigation as of the earlier of (a) the Effective Date or (b) November 15, 2023.  No injunction or stay contained in the EVPS Plan or this EVPS Confirmation Order, shall preclude or limit enforcement and/or recovery against the EVPS Debtors, the Reorganized EVPS Debtors, any Third-Party, Third-Parties, Related Party, and/or Released Parties of any (i) injunctive relief and/or declaratory relief arising from the AAEMPG Litigation or (ii) Allowed Claims arising from the AAEMPG Litigation that are not subject to discharge under 11 U.S.C. § 1141(d)(1).  For purposes of the foregoing, the EVPS Debtors are expressly reserving their rights to assert that any claim for attorneys' fees associated with the AAEMPG Litigation based on fees or expenses accrued prior to the Effective Date prior to the Effective Date constitutes a "claim" under 11 U.S.C. § 101(5), subject to the terms of the EVPS Plan, and subject to discharge as appropriate under the EVPS Plan and the Bankruptcy Code.  For the avoidance of doubt, (a) any Claims arising out of or related to the AAEMPG Litigation are subject to the terms of the EVPS Plan, but all parties' rights are reserved

concerning any determination or adjudication regarding the applicability of and/or operation of 11 U.S.C. §§ 523(a)(2)(A) or (B), 1141(d)(5). The EVPS Debtors agree that they shall not remove the AAEMPG Litigation to the Bankruptcy Court pursuant to 28 U.S.C. § 1452. Any litigation hold or document retention policy implemented or document retention obligation required by law in connection with the AAEMPG Litigation shall control over any contrary document retention contemplated by the EVPS Plan.

140. **Provisions Regarding Assumption Disputes.** Pursuant to Article V.C. of the EVPS Plan, the EVPS Debtors will continue to engage in ordinary course negotiations with counterparties to Executory Contracts and Unexpired Leases regarding matters pertaining to assumption, including Cure disputes (collectively, "Assumption Disputes"). The EVPS Debtors and those counterparties may reconcile and settle any Assumption Dispute without any further notice to or action, order, or approval of the Bankruptcy Court. Neither entry of this EVPS Confirmation Order nor the occurrence of the Effective Date shall accomplish the assignment of any contract subject to an Assumption Dispute. Instead, notwithstanding entry of this Confirmation Order, all rights and remedies with respect to Assumption Disputes are hereby reserved until such dispute is resolved by agreement of the parties or entry of a Final Order by the Bankruptcy Court.

141. **Provisions Relating to Statements of Bankruptcy or Receivership**. For the avoidance of doubt, the EVPS Debtors are not required to comply with state law provisions concerning statements of bankruptcy or receivership.

142. **Provisions Relating to EVPS ABL Credit Agreement.** Notwithstanding anything to the contrary herein or in the Final EVPS Cash Collateral Order, from and after the Confirmation Date (for the avoidance of doubt including prior to the Effective Date) the EVPS

Debtors (with the consent of the Required Consenting Stakeholders) shall be authorized, but not directed, to finally and indefeasibly repay all or any portion of the EVPS Prepetition ABL Obligations owed to the ABL Agent (for the benefit of the ABL Lenders) pursuant to and subject to the terms of the ABL Credit Agreement, whether or not such payments are contained in the Approved Budget and without being limited by the dollar estimates contained in the Approved Budget.

143.    **Provisions Relating to Replacement LC Facility.**   Upon entry of this EVPS Confirmation Order, the EVPS Debtors (with the consent of the Required Consenting Stakeholders) are authorized to take any and all actions necessary to pursue or obtain a new replacement letter of credit facility (the "LC Facility") as necessary to replace any outstanding letters of credit outstanding as of the Effective Date.  To the extent applicable, entry of this EVPS Confirmation Order shall be deemed authorization for the applicable EVPS Debtors or the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the Restructuring Transactions, as applicable, to, without further notice to or order of the Bankruptcy Court, (a) execute and deliver those documents and related agreements, documents and other instruments necessary or appropriate to pursue or obtain the LC Facility and incur and pay any fees and expenses, incur any indemnification obligations and/or provide cash collateral in connection therewith, and (b) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the EVPS Debtors or the Reorganized EVPS Debtors, and/or any successors, assigns, or transferees of the applicable EVPS Debtors or Reorganized EVPS Debtors, including in connection with the

Restructuring Transactions, as applicable, may deem to be necessary to consummate the LC Facility.

144.  **Documents, Mortgages, and Instruments.**  This EVPS Confirmation Order is, and shall be, binding upon and shall govern the acts of all Persons or Entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and state officials, and corresponding officials in all applicable jurisdictions, both foreign and domestic, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, local, and foreign government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the EVPS Plan, including the Restructuring Transactions, the EHC AmSurg Debtors Sale Transaction, and this EVPS Confirmation Order without payment of any stamp tax or similar tax imposed by state, local, or foreign law, or, to the extent such persons or entities are not identified by the EVPS Debtors or Reorganized EVPS Debtors, as applicable, after reasonable due inquiry, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, shall be granted power of attorney to sign on behalf of such person or entity.

145.  **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the EVPS Plan or this EVPS Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence upon entry of this EVPS Confirmation Order shall remain in full force and effect until

the Effective Date. All injunctions or stays contained in the EVPS Plan or this EVPS Confirmation Order shall remain in full force and effect in accordance with their terms.

146. **Nonseverability of Plan Provisions Upon Confirmation.** Each provision of the EVPS Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the EVPS Plan and may not be deleted or modified without the EVPS Debtors' or Reorganized EVPS Debtors' consent, as applicable; *provided* that any such deletion or modification must be made in accordance with the EVPS Plan (and subject to any consents included therein, including any consent required under the EVPS Restructuring Support Agreement); and (c) nonseverable and mutually dependent.

147. **Post-Confirmation Modifications.** In accordance with Article X.A of the EVPS Plan, without need for further order or authorization of the Court, the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary or desirable to effectuate the EVPS Plan that are consistent with the EVPS Plan, subject to any applicable consents or consultation rights set forth therein or in the EVPS Restructuring Support Agreement, as applicable. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the EVPS Plan and the EVPS Restructuring Support Agreement, the EVPS Debtors and the Reorganized EVPS Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the EVPS Plan with respect to such EVPS Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the EVPS Plan, or remedy any defect or omission, or reconcile any inconsistencies in the EVPS Plan, the EVPS Disclosure Statement, or this EVPS Confirmation

Order, in such manner as may be necessary to carry out the purposes and intent of the EVPS Plan. Any such modification or supplement shall be considered a modification of the EVPS Plan and shall be made in accordance with Article X.A of the EVPS Plan and subject to any applicable consent rights under the EVPS Plan.

148. **Applicable Nonbankruptcy Law.** The provisions of this EVPS Confirmation Order, the EVPS Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable federal, state, or foreign law.

149. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the EVPS Debtors to File any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

150. **Governmental Approvals Not Required.** This EVPS Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, foreign, or any other governmental authority with respect to the dissemination, implementation, or consummation of the EVPS Plan and the EVPS Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the EVPS Plan and the EVPS Disclosure Statement, including the documents contained in the EVPS Plan Supplement, the implementation and consummation of the Restructuring Transactions, including the EHC AmSurg Debtors Sale Transaction, and any other documents that are necessary or desirable to implement or consummate the Restructuring Transactions.

151. **Reporting.** After entry of this EVPS Confirmation Order, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, shall have no obligation to File with the Court, serve

on any parties, or otherwise provide any party with any other report that the EVPS Debtors or Reorganized EVPS Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases and (b) monthly operating reports (even for those periods for which a monthly operating report was not Filed before the Confirmation Date); *provided* that the EVPS Debtors or Reorganized EVPS Debtors, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements. From the Confirmation Date through the Effective Date, the EVPS Debtors will File such reports as are required under the Bankruptcy Local Rules.

152.    **Notices of Confirmation and Effective Date.**  The Reorganized EVPS Debtors shall serve notice of entry of this EVPS Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (as may be revised by the applicable EVPS Debtors, the "Notice of Effective Date"), in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Interests within ten (10) Business Days after the Effective Date.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the EVPS Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the EVPS Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The Confirmation Hearing Notice, this EVPS Confirmation Order, and the Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

153.   **Failure of Consummation.**   If Consummation does not occur for an EVPS Debtor, the EVPS Plan and the findings in this EVPS Confirmation Order shall be null and void in all respects as to such EVPS Debtor and nothing contained in the EVPS Plan, the EVPS Disclosure Statement, the EVPS Restructuring Support Agreement as to such EVPS Debtor shall:  (a) constitute a waiver or release of any claims by the EVPS Debtors, Claims, or Interests; (b) prejudice in any manner the rights of the EVPS Debtors, any holders of Claims or Interests, the Committee, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by the EVPS Debtors, any holders of Claims or Interests, the Committee, or any other Entity; *provided* that the provisions of the EVPS Restructuring Support Agreement that survive termination thereof on account of a failure of the Effective Date to occur shall remain in effect in accordance with the respective terms thereof.

154.   **Substantial Consummation.**   On the Effective Date, the EVPS Plan shall be deemed to be substantially consummated under section 1101(2) of the Bankruptcy Code.

155.   **Challenge Deadline**.   Upon entry of this EVPS Confirmation Order, the "Challenge Deadline" under the EVPS Cash Collateral Order for challenges brought by the Committee, the Consenting Stakeholders, or any Affiliate thereof (a "Pending Challenge") will be extended until (and will lapse upon the occurrence of) the earlier of (a) the Effective Date and (b) a hearing on such Pending Challenge.  Upon the Effective Date, any Pending Challenge shall be deemed forever waived, withdrawn, released, and barred.

156.   **Envision Parent and Reorganized Envision Parent Matters**.   On or after the Effective Date, the EVPS Debtors and Reorganized EVPS Debtors, as applicable, are authorized, but not directed, in their discretion, to effect the dissolution and liquidation of Envision Parent in accordance with applicable law.  For the avoidance of doubt and notwithstanding anything herein

to the contrary, on and after the Effective Date, none of the Reorganized EVPS Debtors shall have any liability with respect to any Claim against, or the other obligation of, Envision Parent arising on or before the Effective Date.

157.    Without the need for any further corporate action or without any further action by holders of Claims or Interests, the Consenting Sponsor is hereby authorized to designate (a) one or several of the Consenting Sponsors or an affiliate thereof to receive any Reorganized Envision Parent New Common Stock distributable to such Consenting Sponsor pursuant to the EVPS Plan.  On the Effective Date, Reorganized Envision Parent shall issue the Reorganized Envision Parent New Common Stock in accordance with Article IV.E.3 of the EVPS Plan and this EVPS Confirmation Order.

158.    **Waiver of 14-Day Stay.**  Notwithstanding Bankruptcy Rule 3020(e) or 6004, this EVPS Confirmation Order is effective immediately and not subject to any stay.

159.    **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the EVPS Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the EVPS Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the EVPS Plan in this EVPS Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the EVPS Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

160.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the EVPS Plan or this EVPS Confirmation Order for any other purpose.

161.     **Effect of Conflict.**  This EVPS Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this EVPS Confirmation Order.  If there is any inconsistency between the terms of the EVPS Plan and the terms of this EVPS Confirmation Order, the terms of this EVPS Confirmation Order govern and control.

162.     **Final Order.**  This EVPS Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

163.     **Retention of Jurisdiction.**  Notwithstanding anything in the EVPS Plan or this EVPS Confirmation Order to the contrary, the Bankruptcy Court retains jurisdiction to the maximum extent otherwise allowed by law under the applicable circumstances.

Signed:  October 11, 2023

Christopher Lopez
United States Bankruptcy Judge

**<u>EXHIBIT A</u>**

**EVPS Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) | Case No. 23-90342 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF REORGANIZATION OF THE EVPS DEBTORS (TECHNICAL MODIFICATIONS)**

---

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Rebecca Blake Chaikin (TX Bar No. 24133055)
Vienna Anaya (TX Bar No. 24091225)
Javier Gonzalez (TX Bar No. 24119697)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:           rchaikin@jw.com
                     vanaya@jw.com
                     jgonzalez@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           esassower@kirkland.com
                     jsussberg@kirkland.com
                     ngreenblatt@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
John R. Luze (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           john.luze@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*

---

[1]   A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' Claims and Noticing Agent at https://restructuring.ra.kroll.com/Envision.  The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
        GOVERNING LAW ............................................................................................................1
    A.      Defined Terms. ...........................................................................................................1
    B.      Rules of Interpretation. ............................................................................................19
    C.      Computation of Time. ..............................................................................................20
    D.      Governing Law. ........................................................................................................20
    E.      Reference to Monetary Figures. ...............................................................................20
    F.      Reference to the Debtors or the Reorganized Debtors. ...........................................20
    G.      Controlling Document. .............................................................................................20
    H.      Consultation, Information, Notice, and Consent Rights ..........................................20

ARTICLE II. ADMINISTRATIVE CLAIMS,  PRIORITY CLAIMS, AND RESTRUCTURING
        EXPENSES ........................................................................................................................21
    A.      Administrative Claims. .............................................................................................21
    B.      EVPS L/C Claims. ....................................................................................................21
    C.      Professional Claims. .................................................................................................22
    D.      Funding of General Unsecured Claims' Recovery Pool ..........................................23
    E.      Priority Tax Claims. ..................................................................................................23
    F.      Restructuring Expenses. ...........................................................................................23

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................24
    A.      Classification of Claims and Interests. ....................................................................24
    B.      Treatment of Claims and Interests. ..........................................................................25
    C.      Special Provision Governing Unimpaired Claims. ..................................................29
    D.      Elimination of Vacant Classes. ................................................................................29
    E.      Voting Classes, Presumed Acceptance by Non-Voting Classes. .............................29
    F.      Intercompany Interests. .............................................................................................29
    G.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................29
    H.      Controversy Concerning Impairment. ......................................................................29
    I.      Subordinated Claims. ...............................................................................................30
    J.      Consideration Available for Distributions. ..............................................................30
    K.      Special Provisions Regarding EVPS Unsecured Notes Claims. ..............................30
    L.      Special Provisions Regarding EVPS Debtors' General Unsecured Claims. ...................30

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................31
    A.      General Settlement of Claims and Interests. ............................................................31
    B.      Settlement of Challenge Claims and Claim Objections. ..........................................31
    C.      Settlement of Fourth Out Causes of Actions. ..........................................................33
    D.      Restructuring Transactions. ......................................................................................33
    E.      Reorganized EVPS Debtors .....................................................................................34
    F.      Sources of Consideration for Plan Distributions. ....................................................34
    G.      Corporate Action. .....................................................................................................36
    H.      Section 1146 Exemption. ..........................................................................................37
    I.      Reorganized Envision Parent Management Incentive Plan. .....................................37
    J.      Corporate Existence. .................................................................................................37
    K.      New Reorganized Envision Parent Organizational Documents. ..............................38
    L.      Directors and Officers of the Reorganized EVPS Debtors. .....................................38
    M.      Vesting of Assets in the Reorganized EVPS Debtors. .............................................38
    N.      Cancellation of Existing Securities and Agreements. ..............................................38
    O.      Indemnification Obligations. ....................................................................................39
    P.      Effectuating Documents; Further Transactions. .......................................................40
    Q.      Director and Officer Liability Insurance. .................................................................40
    R.      EVPS ABL Agent Obligations. ...............................................................................40

S.     EVPS Term Loan Agent Obligations...........................................................................40
T.     Employee and Retiree Benefits..................................................................................41
U.     Preservation of Causes of Action...............................................................................41
V.     Private Company.........................................................................................................42
W.     Shared Services...........................................................................................................42

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................42
A.     Assumption and Rejection of Executory Contracts and Unexpired Leases. ..............42
B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases..................43
C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases...............44
D.     Preexisting Obligations to the EVPS Debtors Under Executory Contracts and Unexpired
        Leases.........................................................................................................................45
E.     Insurance Policies. .....................................................................................................45
F.     Modifications, Amendments, Supplements, Restatements, or Other Agreements........45
G.     Reservation of Rights..................................................................................................45
H.     Nonoccurrence of Effective Date................................................................................45
I.     Employee Compensation and Benefits. ......................................................................45
J.     Contracts and Leases Entered Into After the Petition Date.........................................46

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ......................................................46
A.     Distributions on Account of Claims Allowed as of the Effective Date.......................46
B.     Distribution Agent......................................................................................................47
C.     Rights and Powers of the Distribution Agent..............................................................47
D.     Special Rules for Distributions to Holders of Disputed Claims and Interests..............47
E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions...................48
F.     Manner of Payment.....................................................................................................49
G.     Section 1145 and 4(a)(2) Exemption. .........................................................................49
H.     Compliance with Tax Requirements............................................................................50
I.     Allocations. ................................................................................................................50
J.     Foreign Currency Exchange Rate. ..............................................................................50
K.     Setoffs and Recoupment. ...........................................................................................51
L.     Claims Paid or Payable by Third Parties.....................................................................51

ARTICLE VII. PROCEDURES FOR RESOLVING  CONTINGENT, UNLIQUIDATED, AND
        DISPUTED CLAIMS ...................................................................................................52
A.     Allowance of Claims...................................................................................................52
B.     Claims Administration Responsibilities......................................................................52
C.     Disputed Claims Process............................................................................................52
D.     Estimation of Claims and Interests .............................................................................53
E.     Adjustment to Claims or Interests Without Objection.................................................53
F.     Time to File Objections to Claims...............................................................................53
G.     Disallowance of Claims or Interests...........................................................................53
H.     Amendments to Claims...............................................................................................54
I.     No Distributions Pending Allowance..........................................................................54
J.     Distributions After Allowance. ...................................................................................54
K.     No Postpetition Interest on Claims..............................................................................54

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...........................55
A.     Discharge of Claims and Termination of Interests......................................................55
B.     Release of Liens. ........................................................................................................55
C.     Releases by the EVPS Debtors....................................................................................56
D.     Releases by Holders of Claims and Interests. .............................................................56
E.     Exculpation. ...............................................................................................................57
F.     Injunction. ..................................................................................................................57
G.     Protections Against Discriminatory Treatment............................................................58
H.     Document Retention. ..................................................................................................58

I.      Reimbursement or Contribution....................................................................................58

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN..........................................59
     A.      Conditions Precedent to the Effective Date. ...............................................................59
     B.      Waiver of Conditions. .................................................................................................61
     C.      Effect of Failure of Conditions. ..................................................................................61
     D.      Substantial Consummation ..........................................................................................61

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .......................................62
     A.      Modification and Amendments. ...................................................................................62
     B.      Effect of Confirmation on Modifications. ...................................................................62
     C.      Revocation or Withdrawal of Plan. .............................................................................62

ARTICLE XI. RETENTION OF JURISDICTION ...........................................................................................63

ARTICLE XII. MISCELLANEOUS PROVISIONS ..........................................................................................64
     A.      Immediate Binding Effect. ...........................................................................................64
     B.      Additional Documents. ................................................................................................65
     C.      Payment of Statutory Fees. ..........................................................................................65
     D.      Statutory Committee and Cessation of Fee and Expense Payment. ..............................65
     E.      Reservation of Rights. .................................................................................................65
     F.      Successors and Assigns................................................................................................65
     G.      Notices. .......................................................................................................................66
     H.      Term of Injunctions or Stays.......................................................................................67
     I.      Entire Agreement. ........................................................................................................68
     J.      Plan Supplement. .........................................................................................................68
     K.      Nonseverability of Plan Provisions. ............................................................................68
     L.      Votes Solicited in Good Faith. .....................................................................................68
     M.      Closing of Chapter 11 Cases. ......................................................................................68
     N.      Waiver or Estoppel......................................................................................................69
     O.      Creditor Default ..........................................................................................................69
     P.      Termination of the Patient Care Ombudsman's Duties.................................................69

**INTRODUCTION**

Envision Healthcare Corporation and the above-captioned debtors and debtors in possession other than the AmSurg Debtors (as defined below) (collectively, the "Debtors"), propose this joint chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") for the resolution of the outstanding claims against, and equity interests in, the EVPS Debtors. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the EVPS Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters. The EVPS Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

"*Ad Hoc Advisors*" means (a) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc Group, (b) Evercore Group L.L.C., as co-financial advisor to the Ad Hoc Group, (c) AlixPartners LLP, as co-financial advisor to the Ad Hoc Group, (d) Munsch Hardt Kopf & Harr, as local counsel to the Ad Hoc Group, (e) any consultant selected by the Ad Hoc Group for the purposes of identifying candidates for the New Reorganized Envision Parent Board, and (f) such other professionals as may be retained by or on behalf of the Ad Hoc Group, including, without limitation, an accounting firm or auditor, with the consent of the Debtors.

"*Ad Hoc Group*" means, collectively, the holders of, or investment advisors, sub advisors, or managers of holders of, the EVPS Term Loans and EVPS Unsecured Notes represented by the Ad Hoc Advisors.

"*Ad Hoc Group of EVPS Unsecured Notes Claims*" means, collectively, the holders of EVPS Unsecured Notes Claims represented by the Ad Hoc Group of EVPS Unsecured Notes Claims Advisor.

"*Ad Hoc Group of EVPS Unsecured Notes Claims Advisor*" means Dechert LLP, as counsel to the Ad Hoc Group of EVPS Unsecured Notes Claims.

"*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than the EVPS L/C Claims), including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the EVPS Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Claims, shall be forty-five (45) days after the Effective Date.

"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

"*Agent*" means, with respect to the EVPS Term Loan Credit Agreement, the EVPS Term Loan Agent, including any successors thereto, with respect to the EVPS ABL Credit Agreement, the EVPS ABL Agent, including any successors thereto, and, with respect to the Intercompany Loan Claim, the Intercompany Loan Agent.

1

"*Agents/Trustee*" means, collectively, each of the Agents and the Trustee, in each case including any successors thereto.

"*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under this Plan, the Bankruptcy Code, or a Final Order); (b) a Claim that is scheduled by the EVPS Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to this Plan or a Final Order; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the EVPS Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable EVPS Debtor or Reorganized EVPS Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

"*AmSurg Backstop Commitment Agreement*" means the backstop commitment agreement in connection with the AmSurg Rights Offering.

"*AmSurg Cash Amount*" means Cash in an amount of $15.3 million funded by the AmSurg Debtors to be used by the EVPS Debtors to fund distributions of Cash to holders of EVPS Unsecured Notes Claims and Allowed EVPS Debtors' General Unsecured Claims against the EVPS Debtors in accordance with this Plan.

"*AmSurg Committed Term Loan Exit Facility*" means the senior secured term loan facility to be provided by certain Consenting Stakeholders and described in the term sheet attached to the AmSurg Exit First Lien Term Loan Facility Commitment Letter.

"*AmSurg Debtors*" means AmSurg Parent and its direct and indirect subsidiaries that are Debtors in the Chapter 11 Cases.  For the avoidance of doubt, none of the AmSurg Debtors are EVPS Debtors.

"*AmSurg Entities*" means AmSurg Parent or Reorganized AmSurg Parent, as applicable, and its direct and indirect subsidiaries.

"*AmSurg Exit Facility*" means (a) the AmSurg Committed Term Loan Exit Facility, or (b) a third-party market exit term facility on terms and conditions reasonably acceptable to the AmSurg Debtors and the Required Consenting AmSurg Second Lien Term Lenders.

"*AmSurg Exit First Lien Term Loan Facility Commitment Letter*" means the commitment letter provided by certain Consenting Stakeholders to provide the AmSurg Committed Term Loan Exit Facility, which shall be included in the AmSurg Plan Supplement.

"*AmSurg Parent*" means AmSurg Holdco, LLC, a limited liability company organized under the Laws of the state of Delaware.

"*AmSurg Plan*" means the joint plan of reorganization filed by the AmSurg Debtors under chapter 11 of the Bankruptcy Code.

"*AmSurg Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of May 14, 2023, by and among the AmSurg Debtors, the Consenting AmSurg First Lien Term Lenders, and the

Consenting AmSurg Second Lien Term Lenders, including all exhibits, schedules, and other attachments thereto, as such agreement may be further amended, modified, or supplemented from time to time, in accordance with its terms.

"*AmSurg Review Matters*" means the provisions of this Plan and the Confirmation Order and each Plan Supplement document directly relating to or impacting (i) the Intercompany Loan Claim, the treatment thereof, the economic entitlements with respect thereto and (ii) the release, injunction and related provisions of this Plan relating to the AmSurg Debtors, the Reorganized AmSurg Debtors or the AmSurg Stakeholders and their respective Related Parties, in each case in their respective capacities as such.

"*AmSurg Rights Offering*" means the new money equity rights offering or offerings consummated by Reorganized AmSurg Parent on the Effective Date.

"*AmSurg Consenting Stakeholders*" means the "Consenting Stakeholders" under and as defined in the AmSurg Restructuring Support Agreement.

"*AmSurg Stakeholders*" means holders of Claims or Interests of the AmSurg Debtors.

"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the EVPS Debtors pursuant to this Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, and shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Initial Lenders.

"*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims and Causes of Action that may be brought by or on behalf of the EVPS Debtors or their estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended, and as applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time, and as applicable to the Chapter 11 Cases.

"*Bar Date Order*" means the order of the Bankruptcy Court establishing the dates by which Proofs of Claim must be Filed with respect to such Claims, including the Claims Bar Date, the Governmental Bar Date, and the Administrative Claims Bar Date.

"*Bettis Litigation*" means *In re Envision Healthcare Corporation Securities Litigation*, Civil Action No. 3:17-cv-01112.

"*Board Selection Committee*" means the five unaffiliated institutions (at a consolidated fund manager level) that are Consenting EVPS Initial Term Loan Lenders that, as of the Voting Record Date, are projected to receive the largest percentage of Reorganized Envision Parent New Common Stock based upon Plan treatment of their EVPS Term Loan Claims.

"*Business Day*" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

"*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

"*Cash Amount*" means the EVPS Cash Amount plus the AmSurg Cash Amount.

"*Cash Collateral*" has the meaning given to it in section 363(a) of the Bankruptcy Code.

"*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

"*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

"*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

"*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

"*Claims Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

"*Claims Reconciliation Deadline*" means the date that is six months after the Effective Date by which the Debtors, or Reorganized Debtors, as applicable, shall allow, object to, or settle all General Unsecured Claims and may be extended by the Bankruptcy Court for cause; provided that if the EVPS Debtors fail to allow, object to, or settle any General Unsecured Claims prior to the date that is six months after the Effective Date without cause, the Bankruptcy Court will hold a hearing to (a) determine whether to extend the Claims Reconciliation Deadline or (b) allow or disallow such claims.

"*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

"*Class*" means a class of Claims or Interests as set forth in Article III of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

"*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

"*Committee*" means the statutory committee of unsecured creditors, appointed in the Chapter 11 Cases by the U.S. Trustee, pursuant to the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 240], on May 30, 2023.

"*Company Claims/Interests*" means any Claim against, or Equity Interest in, an EVPS Debtor, including the EVPS L/C Claims, EVPS ABL Claims, EVPS Term Loan Claims, and EVPS Unsecured Notes Claims.

"*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all employment, compensation, and benefit plans, policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability

plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the EVPS Debtors, and all amendments and modifications thereto prior to the Petition Date, applicable to the EVPS Debtors' employees, former employees, retirees, and non-employee directors and the employees, former employees and retirees of their subsidiaries, including all savings plans, retirement plans, health care plans, disability plans, severance benefit agreements, and plans, incentive plans, deferred compensation plans and life, accidental death, and dismemberment insurance plans in effect on the Petition Date.

"*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

"*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court on confirmation of this Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

"*Consenting AmSurg First Lien Term Lenders*" means the holders (or beneficial holders) of, or investment advisors, subadvisors, or managers of funds or discretionary accounts that hold, AmSurg First Lien Term Loan Claims that have executed and delivered counterpart signature pages to the AmSurg Restructuring Support Agreement, a joinder, or a transfer agreement to counsel to the Debtors.

"*Consenting AmSurg Second Lien Term Lenders*" means the holders (or beneficial holders) of, or investment advisors, subadvisors, or managers of funds or discretionary accounts that hold, AmSurg Second Lien Term Loan Claims that have executed and delivered counterpart signature pages to the AmSurg Restructuring Support Agreement, a joinder, or a transfer agreement to counsel to the Debtors.

"*Consenting EVPS Initial Term Loan Lenders*" means holders (or beneficial holders) of, or investment advisors, sub-advisors, or managers of funds or accounts in their capacities as holder, of EVPS Term Loan Claims that were signatories to the EVPS Restructuring Support Agreement (via Joinder, Transfer Agreement or otherwise) no later than 11:59 p.m. (ET) on May 20, 2023.

"*Consenting EVPS Term Loan Lenders*" means the holders (or beneficial holders) of, or investment advisors, sub-advisors, or managers of funds or accounts in their capacities as holders, of EVPS Term Loan Claims and, in some instances, EVPS Unsecured Notes, that have executed and delivered counterpart signature pages to the EVPS Restructuring Support Agreement, a Joinder, or a Transfer Agreement to counsel to the EVPS Debtors.

"*Consenting First-Out Lender*" means a holder (or beneficial holder) of, or investment advisor, sub-advisor, or manager of funds or accounts in their capacities as a holder, of EVPS First-Out Term Loan Claims that is a signatory to the EVPS Restructuring Support Agreement.

"*Consenting Second-Out Lender*" means a holder (or beneficial holder) of, or investment advisor, sub-advisor, or manager of funds or accounts in their capacities as a holder, of EVPS Second-Out Term Loan Claims that is a signatory to the EVPS Restructuring Support Agreement.

"*Consenting Sponsors*" means the Entities listed on <u>Exhibit B</u> of the EVPS Restructuring Support Agreement, in their capacity as direct or indirect holders of EVPS Term Loan Claims, EVPS Unsecured Notes, and/or Equity Interests that have executed and delivered counterpart signature pages to the EVPS Restructuring Support Agreement, a Joinder, or a Transfer Agreement to counsel to the EVPS Debtors.

"*Consenting Stakeholders*" means the Consenting EVPS Term Loan Lenders and the Consenting Sponsors.

"*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

"*Covered Claim*" means any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of:  (a) the Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases; (c) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the Chapter 11 Cases; (d) the pursuit of Consummation; and/or implementation of the Chapter 11 Cases, or the distribution of property in connection therewith or thereunder.

"*Covered Party*" means, each in their capacities as such, each of:  (a) the EVPS Debtors; (b) the directors, managers, and officers of any of the EVPS Debtors; (c) the Reorganized EVPS Debtors; (d) the Committee; (e) the Consenting Stakeholders; (f) the Patient Care Ombudsman and each Professional employed by the Patient Care Ombudsman; and (g) with respect to the foregoing parties, the Related Parties thereof.

"*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the EVPS Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

"*D&O Liability Insurance Policies*" means all insurance policies of any of the EVPS Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

"*Definitive Documents*" means the documents listed in Section 3 of the EVPS Restructuring Support Agreement.

"*Disclosure Statement*" means the related disclosure statement with respect to this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and shall be in form and substance acceptable to the EVPS Debtors, the EVPS ABL Agent, and the Required Consenting Stakeholders.

"*Disclosure Statement and Solicitation Motion*" means the motion seeking, among other things, entry of an order (i) approving the adequacy of the Disclosure Statement, (ii) approving the procedures for soliciting, receiving, and tabulating votes on this Plan and for filing objections to this Plan, (iii) approving the Solicitation Materials, and (iv) scheduling the hearing to consider confirmation of this Plan, and shall be in form and substance acceptable to the EVPS Debtors, the EVPS ABL Agent, and the Required Consenting Stakeholders.

"*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, and shall be in form and substance acceptable to the EVPS Debtors, the EVPS ABL Agent, and the Required Consenting Stakeholders.

"*Disputed*" means, as to a Claim or an Interest, any Claim or Interest:  (a) that is not Allowed; (b) that is not disallowed under this Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which an objection or request for estimation has been Filed; and (e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to an EVPS Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

"*Distribution Agent*" means the Reorganized EVPS Debtors or the Entity or Entities selected by the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, with the consent of the Required Consenting Initial Lenders, to make or facilitate distributions pursuant to this Plan; *provided* that all distributions on account of the EVPS Unsecured Notes Claims shall be made to, or at the direction of, the EVPS Unsecured Notes Trustee for distribution in accordance with this Plan and the procedures specified in the EVPS Unsecured Notes Documents.

"*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the EVPS Debtors or the Reorganized EVPS Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Distribution Agent shall make distributions

to holders of Allowed Claims (including to, or as directed by, the EVPS Unsecured Notes Trustee as holder of the EVPS Unsecured Notes Claims) entitled to receive distributions under this Plan.

"*Distribution Record Date*" means, other than with respect to publicly held Securities (including the EVPS Unsecured Notes), the record date for purposes of making distributions under this Plan on account of Allowed Claims, which date shall be on the Confirmation Date.  For the avoidance of doubt, no distribution record date shall apply to holders of public Securities (including the EVPS Unsecured Notes).

"*DTC*" means the Depositary Trust Company.

"*Effective Date*" means, as to the applicable Debtor, the date that is determined by the Debtors, the Required Consenting Initial Lenders, and the EVPS ABL Agent on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of this Plan have been satisfied or waived in accordance with Article IX.B of this Plan.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

"*EHC AmSurg Debtors*" means AmSurg Anesthesia Management Services, LLC, AmSurg Suncoast, Inc., AmSurg EC Washington, Inc., AmSurg KEC, Inc., AmSurg EC Centennial, Inc., AmSurg Miami, Inc., AmSurg Escondido CA, Inc., AmSurg Temecula II, Inc., AmSurg Topeka, Inc., AmSurg Naples, Inc., AmSurg Glendale, Inc., AmSurg Hillmont, Inc., AmSurg Inglewood, Inc., AmSurg Finance, Inc., AmSurg Kissimmee FL, Inc., AmSurg La Jolla, Inc., AmSurg Melbourne, Inc., AmSurg Northwest Florida, Inc., AmSurg Altamonte Springs FL, Inc., AmSurg Fresno Endoscopy, Inc., AmSurg Palmetto, Inc., AmSurg Colton CA, Inc., AmSurg Temecula CA, Inc., AmSurg EC St. Thomas, Inc., Austin NSC, LP, AmSurg EC Beaumont, Inc., AmSurg Crystal River, Inc., AmSurg San Luis Obispo CA, Inc., AmSurg Torrance, Inc., AmSurg San Antonio TX, Inc., AmSurg Scranton PA, Inc., AmSurg Ocala, Inc., AmSurg Maryville, Inc., AmSurg El Paso, Inc., AmSurg EC Santa Fe, Inc., AmSurg Burbank, Inc., AmSurg Arcadia CA, Inc., AmSurg Oakland CA, Inc., AmSurg Abilene, Inc., AmSurg Abilene Eye, Inc., AmSurg Glendora CA, Inc., AmSurg Pottsville PA, LLC, AmSurg Lancaster PA, LLC, AmSurg Main Line PA, LLC, ASDH I, LLC, ASDH II, LLC, or such other Entities comprising the ambulatory surgery centers and associated assets in which the EVPS Debtors had an interest as of May 1, 2023.

"*EHC AmSurg Debtors Sale Transaction*" means the transaction the EVPS Debtors will consummate on the Effective Date to sell their equity interests, directly or indirectly, in the EHC AmSurg Debtors to Reorganized AmSurg Parent (or its designee) in accordance with, and subject to, the terms of the EHC ASC Debtors SPA.

"*EHC AmSurg Debtors Sale Documents*" means the EHC ASC Debtors SPA, any other definitive documents governing the EHC AmSurg Debtors Sale Transaction, and any ancillary documents required in connection therewith, and shall be in form and substance acceptable to the EVPS Debtors, the Required Consenting Stakeholders, the AmSurg Debtors, and the Required Consenting AmSurg Second Lien Term Lenders.

"*EHC AmSurg Debtors Termination Fee*" means a termination fee of $20 million payable by the EVPS Debtors pursuant to the terms set forth in the EHC ASC Debtors SPA and the SPA Order.

"*EHC ASC Debtors SPA*" means the share purchase agreement entered into by the EVPS Debtors and Reorganized AmSurg Parent related to the EHC AmSurg Debtors Sale Transaction, which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Stakeholders, the AmSurg Debtors, and the Required Consenting AmSurg Second Lien Term Lenders.

"*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"*Envision*" means Envision Healthcare Corporation, a company organized under the Laws of Delaware.

"*Envision Parent*" means Enterprise Parent Holdings Inc., a corporation organized under the Laws of the state of Delaware.

"*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

"*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

"*EVPS ABL Agent*" means Citibank, N.A., in its capacity as administrative agent and collateral agent under the EVPS ABL Credit Agreement.

"*EVPS ABL Claim*" means any Claim (other than the EVPS L/C Claims) arising under, in connection with, or on account of the EVPS ABL Credit Agreement or any other agreement, instrument, or document executed at any time in connection therewith, including all obligations under and as defined in the EVPS ABL Credit Agreement.

"*EVPS ABL Credit Agreement*" means that certain ABL credit agreement, dated as of October 11, 2018, among Envision, as borrower, Enterprise Intermediate Holdings Inc., the other guarantors from time to time party thereto, the lenders from time to time party thereto, the issuers of letters of credit thereunder, and Citibank, N.A., as EVPS ABL Agent, an EVPS Letter of Credit issuer, and the swingline lender (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

"*EVPS ABL Review Matters*" means (i) the provisions of the Confirmation Order and each Plan Supplement document relating to or directly impacting the treatment under this Plan of EVPS ABL Claims, EVPS L/C Claims, EVPS Letters of Credit, or Restructuring Expenses related to any of the foregoing, (ii) the releases, injunction, and related provisions relating to the EVPS ABL Agent, holders of EVPS L/C Claims or EVPS ABL Claims, and their respective Related Parties, and (iii) any consent rights of or other provisions directly impacting any of the parties described in the immediately preceding clause (ii).

"*EVPS Cash Amount*" means Cash in an amount of $25.7 million funded by the EVPS Debtors to fund distributions of Cash to holders of EVPS Unsecured Notes Claims and Allowed EVPS Debtors' General Unsecured Claims against the EVPS Debtors in accordance with this Plan.

"*EVPS Cash Collateral Order*" means, individually or collectively (as the context may require), any order or orders entered in the Chapter 11 Cases authorizing the use of Cash Collateral (whether interim or final) for the EVPS Debtors, and shall be in form and substance acceptable to the EVPS Debtors, the Required Consenting Stakeholders, and the EVPS ABL Agent.

"*EVPS Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance consistent with the EVPS Restructuring Support Agreement and the SPA Order (to the extent applicable), and, with respect to the EVPS ABL Review Matters, shall be in form and substance acceptable to the EVPS Debtors, the Required Consenting Stakeholders, and the EVPS ABL Agent, and solely with respect to the AmSurg Review Matters, the Consenting AmSurg Second Lien Term Lenders.

"*EVPS Credit Agreements*" means the EVPS ABL Credit Agreement and the EVPS Term Loan Credit Agreement.

"*EVPS Debtors*" means Envision Parent, Envision, and each of their direct and indirect subsidiary Entities that are Debtors in the Chapter 11 Cases other than the AmSurg Debtors.

"*EVPS Entities*" means Envision Parent and its direct and indirect subsidiaries, except for the AmSurg Entities.

"*EVPS Initial Term Loans*" means EVPS Term Loans held by a Consenting EVPS Initial Term Loan Lender that were beneficially owned as of 11:59p.m. (EST) on May 20, 2023.

"*EVPS L/C Claim*" means any Claim arising under, in connection with, or on account of the EVPS Letters of Credit or any other agreement, instrument, or document executed at any time governing or giving rise to the EVPS Letters of Credit, including all obligations related to the EVPS Letters of Credit under and as defined in the EVPS ABL Credit Agreement, which Claim constitutes an allowed superpriority administrative expense claim secured by a priming lien in accordance with the terms of the EVPS Cash Collateral Order.

"*EVPS Letters of Credit*" means those letters of credit issued under the EVPS ABL Credit Agreement.

"*EVPS Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of May 14, 2023, by and among the Debtors and the Consenting Stakeholders, including all exhibits, schedules, and other attachments thereto, as such agreement may be further amended, modified, or supplemented from time to time, in accordance with its terms.

"*EVPS Restructuring Term Sheet*" means the Restructuring Term Sheet attached as <u>Exhibit B</u> to the EVPS Restructuring Support Agreement.

"*EVPS Term Loan Agent*" means Ankura Trust Company, LLC, in its capacity as administrative agent and collateral agent under the EVPS Term Loan Credit Agreement.

"*EVPS Term Loan Claim*" means any Claim arising under, in connection with, or on account of the EVPS Term Loan Credit Agreement.

"*EVPS Term Loan Credit Agreement*" means that certain credit agreement, dated October 11, 2018 (as amended by that certain Amendment Agreement, dated as of July 22, 2022, and as further amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof), between Envision, as borrower, and Ankura Trust Company, LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as agent.

"*EVPS Term Loans*" means any loans outstanding under the EVPS Term Loan Credit Agreement, including:

(a)     the first-out tranche of the EVPS Term Loans issued, in the original aggregate principal amount of $300 million, pursuant to the EVPS Term Loan Credit Agreement (the "*EVPS First-Out Term Loans*," and any Claim arising under, in connection with, or on account of such term loans, an "*EVPS First-Out Term Loan Claim*");

(b)     the second-out tranche of the EVPS Term Loans issued, in the original aggregate principal amount of $2.19 billion, pursuant to the EVPS Term Loan Credit Agreement (the "*EVPS Second-Out Term Loans*," and any Claim arising under, in connection with, or on account of such term loans, an "*EVPS Second-Out Term Loan Claim*");

(c)     the third-out tranche of the EVPS Term Loans issued, in the original aggregate principal amount of $1.0 billion, pursuant the EVPS Term Loan Credit Agreement, and any Claim arising under, in connection with, or on account of such term loans, an "*EVPS Third-Out Term Loan Claim*"); and

(d)     the initial term loans originally issued on October 11, 2018 pursuant to the EVPS Term Loan Credit Agreement (the "*EVPS 2018 Initial Term Loans*"), and the incremental term loans issued under the EVPS Term Loan Credit Agreement as of April 27, 2020 (the "*EVPS 2020 Incremental Term Loans*," and any Claim arising under, in connection with, or on account of the EVPS 2018 Initial Term Loans, the EVPS 2020 Incremental Term Loans, or the EVPS Term Loan Credit Agreement (other than an EVPS First-Out Term Loan Claim, an EVPS Second-Out Term Loan Claim, or an EVPS Third-Out Term Loan Claim) an "*EVPS Fourth-Out Term Loan Claim*").

"*EVPS Unsecured Notes*" means those certain 8.75% senior unsecured notes, due 2026, issued pursuant to the EVPS Unsecured Notes Indenture.

"*EVPS Unsecured Notes Claim*" means any Claim against any Debtor derived from, based upon, or arising under, in connection with, or on account of the EVPS Unsecured Notes or the EVPS Unsecured Notes Indenture, excluding the EVPS Unsecured Notes Trustee Fees.  All EVPS Unsecured Notes Claims shall be deemed Allowed for purposes of this Plan.

"*EVPS Unsecured Notes Documents*" means the EVPS Unsecured Notes Indenture and all related agreements and documents, including, without limitation, any agreements executed by any of the Debtors or their Affiliates in connection with the EVPS Unsecured Notes Indenture.

"*EVPS Unsecured Notes Indenture*" means collectively, that certain indenture, dated as of October 11, 2018, by and between Enterprise Merger Sub Inc., as issuer, and the EVPS Unsecured Notes Trustee, as supplemented by that certain Supplemental Indenture dated as of October 11, 2018, by and among Envision, the signatories thereto that are Guarantors, and the EVPS Unsecured Notes Trustee, as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

"*EVPS Unsecured Notes Trustee*" means Wilmington Trust, National Association and any successors thereto, in its capacity as trustee, note registrar, or paying agent for the EVPS Unsecured Notes.

"*EVPS Unsecured Notes Trustee Fees*" means all reasonable and documented fees and out-of-pocket expenses incurred by or owed to (or reasonably estimated to be incurred by or owed to) (i) the EVPS Unsecured Notes Trustee and (ii) counsel to the EVPS Unsecured Notes Trustee, whether incurred before or after the Petition Date.

"*EVPS Unsecured Notes Trustee Charging Lien*" means the Lien and priority of payment rights in favor of the EVPS Unsecured Notes Trustee under the EVPS Unsecured Notes Indenture and/or the EVPS Unsecured Notes Documents, on or with respect to distributions to be made on account of EVPS Unsecured Notes Claims.

"*EVPS Unsecured Term Loan Claim*" means an Allowed EVPS Third-Out Term Loan Claim or an Allowed EVPS Fourth-Out Term Loan Claim.

"*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, as amended from time to time.

"*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the EVPS Debtors and (b) the Committee and each of its members.

"*Executory Contract*" means a contract to which one or more of the EVPS Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Exit Term Loan Agent*" means an Entity in its capacity as administrative agent under the Exit Term Loan Credit Agreement, the identity of which shall be acceptable to the Required Consenting Initial Lenders.

"*Exit Term Loan Credit Agreement*" means a credit agreement evidencing the Exit Term Loans to be issued pursuant to the Exit Term Loan Credit Facility in form and substance acceptable to the EVPS Debtors and the Required Consenting Initial Lenders.

"*Exit Term Loan Credit Facility*" means the term loan credit facility governed by the Exit Term Loan Credit Agreement in form and substance acceptable to the EVPS Debtors and the Required Consenting Second-Out Lenders in an amount of $400 million (inclusive of original issue discount) *plus* any fees paid-in-kind.

"*Exit Term Loans*" means the term loans to be used under the Exit Term Loan Credit Facility.

"*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

"*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter that has not been reversed, vacated, stayed, modified, or amended, including any Order subject to appeal but for which no stay of such Order has been entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, stay, vacatur, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, stay, vacatur, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought or the new trial, reargument, stay, vacatur, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

"*First-Out Cash Payment*" means an amount of cash equal to $392 million.

"*Fourth Out Ad Hoc Advisors*" means (a) Herrick, Feinstein LLP, as counsel to the Fourth Out Ad Hoc Group and (b) Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C., as local counsel to the Fourth Out Ad Hoc Group.

"*Fourth Out Complaint*" means the complaint initiating *Vibrant Capital Partners, Inc., Vibrant Credit Partners, LLC, Saratoga Investment Corp. CLO 2013-1 Ltd., and Crescent Capital Group, LP v. Envision Healthcare Corporation; Arrowmark Colorado holdings LLC; as Birch Grove, LP; Barings LLC; Benefit Street Partners, LLC; Black Diamond Credit Strategies Master Fund, LLC; Blackrock Financial Management, Inc; Blackstone Alternative Credit Advisors LP; BOFA Securities, Inc; Brigade Capital Management LP; Broadriver Asset Management LLC; CIFC Asset Management LLC; Columbia Cent CLO Advisers, LLC; Eaton Vance Management; First Eagle Alternative Credit, LLC; First Trust Capital Solutions, L.P.; First Trust Advisors, L.P.; HPS Investment Partners, LLC; HSBC Investment Partners, LLC; HSBC Americas Corporation (Delaware); Intermediate Capital Group, Inc.; Invesco Senior Loan Fund; Irradiant Partners, LP; King Street  Capital Management, L.P.; Marathon Asset Management, L.P.; Mariner Investment Group LLC; Midocean Partners, L.P.; MJX Asset Management LLC; Napier Park Global Capital (US) LLC; Neuberger Berman Investment Advisers LLC; NYL Investors LLC; Oak Hill Advisors, L.P.; Octagon Credit Investors, LLC; Palmer Square Capital Management, LLC; PGIM, Inc.; PPM Loan Management Company, LLC; Redding Ridge Asset Management LLC; Redwood Capital Management, LLC; Sculptor Loan Management LP; Sound Point Capital Management, LP; Strategic Value Partners, LLC; Victory Capital Mgmt, Inc.; Voya Alternative Asset Management; Voya Investment Management Co, LLC; Wellfleet Credit Partners LLC;* Case No. 23-90342; Adv. Proc. No. 23-03140 [Docket No. 1].

"*Fourth Out Ad Hoc Group*" means, collectively, the holders of, or investment advisors, sub advisors, or managers of holders of, the EVPS Fourth-Out Term Loan Claims represented by the Fourth Out Ad Hoc Advisors, including, without limitation, the holders of EVPS Fourth-Out Term Loan Claims listed on the *First Supplemental Verified Statement of the Ad Hoc Group of Fourth Out Lenders Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 408].

"*General Unsecured Claim*" means any Claim against any of the EVPS Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an EVPS L/C Claim, (c) an Administrative Claim; (d) an Other EVPS Secured Claim; (e) an Other EVPS Priority Claim; (f) an EVPS ABL Claim; (g) an EVPS First-Out Term Loan Claim; (h) an EVPS Second-Out Term Loan Claim; (i) an EVPS Third-Out Term Loan Claim; (j) an EVPS Fourth-Out Term Loan Claim; (k) an Intercompany Loan Claim; (l) an Intercompany Claim; (m) an Intercompany Interest; (n) an Equity Interest; (o) a Section 510(b) Claim; or (p) an EVPS Unsecured Notes Claim. Subject to and upon the occurrence of the Effective Date, the Consenting Sponsors shall be deemed to have waived their right to and shall not receive any recovery on account of any EVPS Debtors' General Unsecured Claims; *provided, however*, that such waiver by the Consenting Sponsors shall not include any indemnification claims or rights as beneficiaries under the D&O Liability Insurance Policies that are preserved or assumed under this Plan.

"*General Unsecured Claims' Recovery Pool*" means $6 million in Cash funded on the Effective Date into an escrow account established by the EVPS Debtors or Reorganized EVPS Debtors, as applicable, for distribution to holders of Allowed EVPS Debtors' General Unsecured Claims.

"*General Unsecured Claims' Recovery Pool Escrow Account*" means an interest-bearing escrow account funded by the EVPS Debtors or Reorganized EVPS Debtors, as applicable, with Cash on the Effective Date in an amount equal to the General Unsecured Claims' Recovery Pool, the terms of such escrow account must be acceptable to the Committee.

"*Governmental Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim of Governmental Units must be Filed.

"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"*Indemnified Parties*" means current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the EVPS Debtors as of the Petition Date.

"*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"*Intercompany Claim*" means any Claim against one EVPS Debtor held by another EVPS Debtor that is not an Intercompany Loan Claim.

"*Intercompany Credit Agreement*" means that certain Credit Agreement, dated as of April 29, 2022, among Envision, as borrower, AmSurg, LLC, as lender, and Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

"*Intercompany Interest*" means an Interest in an EVPS Debtor held by another EVPS Debtor that is not an Equity Interest in Envision Parent.

"*Intercompany Loan Agent*" means Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent under the Intercompany Credit Agreement.

"*Intercompany Loan Claim*" means any Claim arising under, in connection with, or on account of the Intercompany Credit Agreement.

"*Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

"*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, and as applicable to the Chapter 11 Cases.

"*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Liquidity Trough Date*" means the date, as agreed between the Required Consenting Stakeholders and the EVPS Debtors, on which the sum of (i) unrestricted cash and (ii) aggregate undrawn availability of any post-emergence credit facility is expected to be lowest.

"*Net EHC AmSurg Debtors Sale Proceeds*" means the proceeds of the EHC AmSurg Debtors Sale Transaction, net of any and all working capital adjustments (inclusive of prepaid capital leases), if any, proceeds associated with any intercompany loans related to the EHC AmSurg Debtors and/or their non-Debtor subsidiaries or Affiliates, if any, tax payments due to be paid by the EVPS Debtors arising from the EHC AmSurg Debtors Sale Transaction, if any, and any other monetary adjustments pursuant to the terms of the EHC ASC Debtors SPA.

"*New EVPS ABL Facility*" means the senior secured asset-based revolving credit and letter of credit facility governed by the New EVPS ABL Credit Agreement in form and substance acceptable to the EVPS Debtors, the Required Consenting Initial Lenders.

"*New EVPS ABL Facility Agent*" means an Entity in its capacity as administrative agent under the New EVPS ABL Facility, the identity of which shall be acceptable to the EVPS ABL Agent.

"*New Intercreditor Agreement*" means that certain intercreditor agreement, if applicable, to be entered into on the Effective Date, in form and substance acceptable to the Required Consenting Initial Lenders and the EVPS ABL Agent, by and between the Exit Term Loan Agent and the New EVPS ABL Facility Agent.

"*New Reorganized Envision Parent Board*" means the new board of directors of Reorganized Envision Parent.

"*New Reorganized Envision Parent Organizational Documents*" means the corporate governance documents for Reorganized Envision Parent, including charters, bylaws, operating agreements, or other organization documents, as applicable, which shall be included in the Plan Supplement, which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Initial Lenders.

"*New Warrant Agreements*" means the documents or agreements governing the New Warrants, which shall be included in the Plan Supplement, which will be consistent in all material respects with the terms of this Plan, which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Initial Lenders.

"*New Warrants*" means six-year warrants issued by Reorganized Envision Parent on the Effective Date, convertible into up to 5% of the Reorganized Envision Parent New Common Stock, at a strike price equal to the value at which holders of Allowed EVPS Second-Out Term Loan Claims receive a full recovery on all Allowed EVPS Second-Out Term Loan Claims (including the full Prepayment Premium (as defined in the EVPS Term Loan Credit Agreement) calculated as set forth in the EVPS Term Loan Credit Agreement (through maturity of the facility), and shall not include any Black-Scholes protection).

"*Non-Debtor*" means direct and indirect subsidiaries of Envision Parent that are not Debtors.

"*Operational Separation Consultant*" means advisors acceptable to the Required Consenting Lenders engaged by the Debtors to provide consulting services at the direction of the Debtors to analyze and facilitate the operational separation of the Reorganized AmSurg Debtors and the Reorganized EVPS Debtors, and the development of capabilities of the AmSurg Entities to operate separately from the EVPS Entities and for the EVPS Entities to operate separately from the AmSurg Entities on and after the Effective Date.

"*Organizational Documents*" means, with respect to any Person other than a natural person, the documents by which such Person was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership, or articles of organization) or which relate to the internal governance of such Person (such as by-laws or a partnership agreement, or an operating, limited liability company, or members agreement).

"*Other EVPS Priority Claim*" means any Claim against any of the EVPS Debtors other than an EVPS L/C Claim, an Administrative Claim, or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Other EVPS Secured Claim*" means any Secured Claim other than an EVPS L/C Claim, a Secured Tax Claim, an EVPS ABL Claim, or an EVPS Term Loan Claim.

"*Patient Care Ombudsman*" means Daniel T. McMurray, who was appointed to serve as the Patient Care Ombudsman in these Chapter 11 Cases by order of the Bankruptcy Court.

"*Payor Claims*" means any claims and/or Causes of Action on behalf of any EVPS Debtor that relate to, or are in connection with, any payor, insurer, or any of their respective affiliates, subsidiaries, and/or related parties, including, without limitation, UnitedHealthcare and any of its affiliates, subsidiaries, and/or related parties.

"*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"*Petition Date*" means May 15, 2023.

"*Plan*" means this joint plan of reorganization filed by the EVPS Debtors under chapter 11 of the Bankruptcy Code that embodies the Restructuring Transactions, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the EVPS Restructuring Support Agreement, and the terms hereof, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

"*Plans*" means, collectively, the AmSurg Plan and this Plan.

"*Plan Distribution*" means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under this Plan.

"*Plan Objection Deadline*" means the date the Bankruptcy Court establishes as the deadline to File an objection to Confirmation of this Plan.

"*Plan Supplement*" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to this Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and thereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules) to be Filed seven (7) days prior to the deadline to object to this Plan, to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable:  (a) the New EVPS ABL Facility (if any) and any definitive documentation related thereto; (b) the New Reorganized Envision Parent Organizational Documents; (c) the Definitive Documents related to the Reorganized Envision Parent New Common Stock; (d) the New Warrant Agreements; (e) the EHC AmSurg Debtors Sale Documents; (f) the Assumed Executory Contracts and Unexpired Leases Schedule; (g) the Rejected Executory Contracts and Unexpired Leases Schedule; (h) the Restructuring Transactions Memorandum; (i) the Schedule of Retained Causes of Action; (j) the Exit Term Loan Credit Agreement and any other documentation related thereto; (k) to the extent known, the identities of the board of directors of Reorganized Envision Parent, (l) the Tax Separation Agreement, (m) the TSA, (n) the Separation Memorandum, all of which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Stakeholders.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

"*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 105, 327, 333, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or

on the Confirmation Date, or, as to the Patient Care Ombudsman and professionals employed by the Patient Care Ombudsman, the Effective Date, pursuant to sections 105, 327, 328, 329, 330, 331, 333, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code; *provided that*, with respect to the Patient Care Ombudsman or Professionals retained by the Committee or Patient Care Ombudsman, Professional Claims shall include Claims for compensation for services rendered and reimbursement of expenses through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"*Professional Fee Amount*" means the aggregate amount of unpaid Professional Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will reasonably incur in rendering services to the EVPS Debtors as set forth in Article II.C of this Plan; *provided* that in calculating the Professional Fee Amount, only the amounts enumerated in this definition shall be included and not any additional amounts or estimate of any additional amounts for Cash from the Professional Fee Escrow Account that may be added to the General Unsecured Claims' Pool pursuant to Article III.B.9 of this Plan.

"*Professional Fee Escrow Account*" means an interest-bearing escrow account funded by the EVPS Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount, the terms of which shall be reasonably acceptable to the Committee and the Required Consenting Stakeholders; *provided* that the terms shall not be amended or modified post-Effective Date absent consent of the individual or entity appointed to monitor the claims reconciliation process with respect to EVPS Debtors' General Unsecured Claims pursuant to Article VII.B and the Required Consenting Stakeholders.

"*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

"*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the EVPS Debtors pursuant to this Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Initial Lenders.

"*Related Party*" means each of, and in each case in its capacity as such, current and former, in each case, directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the EVPS Debtors; (b) each of the Reorganized EVPS Debtors; (c) each Consenting Stakeholder; (d) each of the AmSurg Debtors; (e) each of the Reorganized AmSurg Debtors; (f) each AmSurg Consenting Stakeholder; (g) each Agent; (h) the EVPS ABL Agent; (i) the EVPS Unsecured Notes Trustee; (j) the Ad Hoc Group of EVPS Unsecured Notes Claims and each member of the Ad Hoc Group of EVPS Unsecured Notes Claims; (k) the Committee and each member of the Committee; (l) the Fourth Out Ad Hoc Group and each member of the Fourth Out Ad Hoc Group; (m) each defendant named in the Fourth Out Complaint; (n) each holder of EVPS L/C Claims or EVPS ABL Claims;

15

(o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through (o); *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the release contained in this Plan; or (y) timely objects to the releases contained in this Plan, either by means of (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation; *provided, further* that none of the AmSurg Entities, Reorganized AmSurg Debtors, or any holder of a Claim or Interest in an AmSurg Debtor or Reorganized AmSurg Debtor or any of their respective Related Parties, each in their respective capacity as such, shall be a Released Party until the occurrence of both the Effective Date and the effective date of an AmSurg Plan that is consistent with the EVPS Restructuring Support Agreement.

"*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the EVPS Debtors; (b) each of the Reorganized EVPS Debtors; (c) each Consenting Stakeholder; (d) each of the AmSurg Debtors; (e) each of the Reorganized AmSurg Debtors; (f) each Agent; (g) the EVPS ABL Agent; (h) the Committee and each member of the Committee; (i) the Ad Hoc Group of EVPS Unsecured Notes Claims and each member of the Ad Hoc Group of EVPS Unsecured Notes Claims; (j) the Fourth Out Ad Hoc Group and each member of the Fourth Out Ad Hoc Group; (k) each holder of EVPS L/C Claims or EVPS ABL Claims; (l) the EVPS Unsecured Notes Trustee; (m) each AmSurg Consenting Stakeholder; (n) all holders of Claims that vote to accept this Plan; (o) all holders of Claims that are presumed to accept this Plan who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable Notice of Non-Voting Status indicating that they opt not to grant the releases provided in this Plan; (p) all holders of Claims that abstain from voting on this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in this Plan; (q) all holders of Claims or Interests that are deemed to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan by checking the box on the Notice of Non-Voting Status indicating that they opt not to grant the releases provided in this Plan; (r) each current and former Affiliate of each Entity in clause (a) through the following clause (s); and (s) each Related Party of each Entity in clause (a) through (r) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable law.

"*Reorganized AmSurg Parent*" means AmSurg Parent or one of its direct or indirect subsidiaries, or any such Person as reorganized pursuant to the AmSurg Plan, including any successor or assignee thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, or one or more new entities.

"*Reorganized AmSurg Debtors*" means Reorganized AmSurg Parent and its direct and indirect subsidiaries that are Debtors in the Chapter 11 Cases, on and after the effective date of the AmSurg Plan.

"*Reorganized Debtors*" means the Reorganized EVPS Debtors.

"*Reorganized Envision Parent*" means Envision Parent or one of its direct or indirect subsidiaries or parent entities, or any such Person as reorganized pursuant to this Plan, including any successor or assignee thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, or one or more new entities, in each case as determined by the Debtors and the Required Consenting Initial Lenders.

"*Reorganized Envision Parent Management Incentive Plan*" has the meaning set forth in the EVPS Restructuring Term Sheet.

"*Reorganized Envision Parent New Common Stock*" has the meaning given to such term in the EVPS Restructuring Term Sheet.

"*Reorganized EVPS Debtors*" means Reorganized Envision Parent and its direct and indirect subsidiaries that are Debtors in the Chapter 11 Cases, on and after the Effective Date, other than any Reorganized AmSurg Debtors.

"*Required Consenting First-Out Lenders*" means as of the relevant date, Consenting First-Out Lenders holding at least two-thirds of the aggregate outstanding principal amount of EVPS First-Out Term Loans that are held by Consenting First-Out Lenders.

"*Required Consenting Lenders*" means, as of the relevant date, Consenting EVPS Term Loan Lenders holding at least 50.01% of the aggregate outstanding principal amount of EVPS First-Out Term Loans and EVPS Second-Out Term Loans that are held by Consenting EVPS Term Loan Lenders, as well as any relevant Agents.

"*Required Consenting Initial Lenders*" means, as of the relevant date, Consenting EVPS Initial Term Loan Lenders holding at least 50.01% of the aggregate outstanding principal amount of EVPS First-Out Term Loans and EVPS Second-Out Term Loans that are held by Consenting EVPS Initial Term Loan Lenders.

"*Required Consenting Second-Out Lenders*" means, as of the relevant date, Consenting Second-Out Lenders holding at least 50.01% of the aggregate outstanding principal amount of EVPS Second-Out Term Loans that are held by Consenting Second-Out Lenders.

"*Required Consenting Stakeholders*" means (a) the Required Consenting Initial Lenders, except where any required approval, consent, amendment or waiver adversely affects the economic treatment of the EVPS First-Out Term Loans (as a class) or the EVPS Second-Out Term Loans (as a class) in which event the consent of the Required Consenting First-Out Lenders or the Required Consenting Second-Out Lenders (as applicable) shall additionally be required (for the avoidance of doubt, without limitation, solely as to the parties in this clause (a), any modification or waiver of a Milestone shall materially and adversely affect economic treatment); and (b) the Consenting Sponsors but only to the extent any required approval, consent, amendment, or waiver (i) materially, directly, and adversely affects their rights, obligations, or treatment (including the treatment of any Company Claims/Interests held by a Consenting Sponsor) under the EVPS Restructuring Support Agreement, this Plan, or any other Definitive Document or (ii) relates to the release, indemnification, or insurance provisions under the EVPS Restructuring Support Agreement, this Plan, or any other Definitive Document.

"*Restructuring Expenses*" means the prepetition and postpetition reasonable and documented fees and expenses of (i) the Ad Hoc Advisors (in each case, in accordance with the terms of their respective engagement letters with their respective clients or agreements with the EVPS Debtors, if any), (ii) the Consenting Sponsors; and (iii) the Ad Hoc Group of EVPS Unsecured Notes Claims Advisor (provided that the reasonable and documented fees and out-of-pocket expenses of the Ad Hoc Group of EVPS Unsecured Notes Claims Advisor shall not exceed $750,000); *provided* that any fees expressly set forth in any such engagement letter signed by any of the EVPS Debtors prior to or after the Petition Date shall be deemed reasonable for all purposes hereunder and, as applicable, and (iii) all parties whose fees and expenses are entitled to be paid under the EVPS Cash Collateral Order, including the Agents and their respective advisors.

"*Restructuring Transactions*" means any transactions and any actions as may be necessary or appropriate to effect a restructuring of the EVPS Debtors' and the Reorganized EVPS Debtors' respective businesses or a restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, the Plan Supplement, and the EVPS Restructuring Support Agreement (including, for the avoidance of doubt, the EVPS Restructuring Term Sheet) all of which, for the avoidance of doubt, shall be in form, substance and structure acceptable to the Required Consenting Stakeholders and with respect to EVPS ABL Review Matters, the EVPS ABL Agent.

"*Restructuring Transactions Memorandum*" means the summary of transaction steps to complete the Restructuring Transactions contemplated by this Plan, which shall be included in the Plan Supplement, which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Stakeholders.

"*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the EVPS Debtors that are not released, waived, or transferred pursuant to this Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, and shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Stakeholders.

"*SEC*" means the U.S. Securities and Exchange Commission.

"*Section 510(b) Claim*" means any Claim or Equity Interest against an EVPS Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract and shall include, without limitation, any Claims arising (directly or indirectly) from the class action lawsuit captioned *In re Envision Healthcare Corporate Securities Litigation*, pending in the United States District Court for the Middle District of Tennessee in consolidated docket number 3:17-cv-01112 or from the facts alleged therein.

"*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

"*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

"*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

"*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

"*Separation Memorandum*" means the summary of steps to complete the operational separation of the Reorganized AmSurg Debtors and the EVPS Debtors or the Reorganized Debtors, as applicable, and the stand-up capabilities of the Reorganized AmSurg Debtors on and after the Effective Date, the structure and terms of which is acceptable to the EVPS Debtors and the Required Consenting Initial Lenders, in each case in consultation with the Operational Separation Consultant.

"*Shared Services Agreement*" means that certain Shared Services Agreement by and between AmSurg, LLC and Envision, dated April 29, 2022, as amended by that certain First Agreement, dated January 1, 2023, and as further amended, restated, supplemented, or otherwise modified from time to time accordance with the terms thereof.

"*Solicitation Materials*" means any materials used in connection with the solicitation of votes on this Plan, including the Disclosure Statement and related ballots, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on this Plan, which shall be in form and substance acceptable to the EVPS Debtors, the Required Consenting Stakeholders, and the EVPS ABL Agent.

"*Solicitation Scheduling Order*" means the order approving the Disclosure Statement and Solicitation Motion, which shall be in form and substance acceptable to the EVPS Debtors, the Required Consenting Stakeholders, and the EVPS ABL Agent.

"*SPA Order*" means the order approving entry into the EHC ASC Debtors SPA and approving the EHC AmSurg Debtors Termination Fee, which shall be in form and substance acceptable to the EVPS Debtors and the Required Consenting Stakeholders.

"*Supermajority Equityholders*" means, Consenting EVPS Initial Term Loan Lenders that, as of the Voting Record Date, are projected to receive at least two-thirds of Reorganized Envision Parent New Common Stock based upon Plan treatment of their EVPS Term Loan Claims.

"*Tax Separation Agreement*" means any agreement entered into by and among the Reorganized Debtors and the AmSurg Debtors or Reorganized AmSurg Debtors, as applicable, on certain tax matters.

"*Transfer Agreement*" means an executed form of the transfer agreement providing, among other things, that a transferee is bound by the terms of the EVPS Restructuring Support Agreement and substantially in the form attached thereto as <u>Exhibit C</u>.

"*Transfer*" means to sell, resell, reallocate, use, pledge, assign, transfer, hypothecate, participate, donate or otherwise encumber or dispose of, directly or indirectly (including through derivatives, options, swaps, pledges, forward sales or other transactions).

"*Trustee*" means any indenture trustee, collateral trustee, or other trustee or similar entity under the EVPS Unsecured Notes Indenture.

"*TSA*" means a transition services agreement between Reorganized AmSurg Parent (or a designee) and Reorganized Envision Parent (or a designee reasonably satisfactory to the Reorganized Envision Parent) which transition services agreement shall be on arms'-length market terms, shall be in form and substance reasonably acceptable to the AmSurg Debtors, the EVPS Debtors, and the Required Consenting Initial Lenders, in consultation with the Operational Separation Consultants, and shall be included in the Plan Supplement.

"*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

"*Unexpired Lease*" means a lease to which one or more of the EVPS Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

"*Voting Record Date*" means the record date established pursuant to the order approving the Disclosure Statement for determining which holders of Claims are entitled to cast votes in favor of or against this Plan.

B.      *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context and unless otherwise specified, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized EVPS Debtors in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or

any other Entity; and (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date subject to the consent of the Required Consenting Initial Lenders and with respect to EVPS ABL Review Matters, the EVPS ABL Agent.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the EVPS Debtors and the EVPS Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan, including the Plan Supplement, the Confirmation Order shall control.

H.      *Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the EVPS Restructuring Support Agreement or the EVPS Cash Collateral Order, as applicable, and as respectively set forth therein, with respect to the form and substance of this Plan, all exhibits to this Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the EVPS Restructuring Support Agreement or the EVPS Cash Collateral Order, as applicable, shall not impair such rights and obligations.

Notwithstanding any provision of this Plan to the contrary, any provision of this Plan or the Definitive Documents materially affecting the rights of holders of EVPS Unsecured Notes Claims or the EVPS Debtors' General Unsecured Claims shall be reasonably acceptable to the Committee, the Ad Hoc Group of EVPS Unsecured Notes Claims, the EVPS Unsecured Notes Trustee, the Debtors, and the Required Consenting Stakeholders.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS,
## PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, EVPS L/C Claims, Professional Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, or otherwise provided for under this Plan, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the EVPS Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the EVPS Debtors or the Reorganized EVPS Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of this Plan, and except with respect to Administrative Claims that are Professional Claims, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the EVPS Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the EVPS Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.      *EVPS L/C Claims.*

Except to the extent that a holder of an EVPS L/C Claim agrees to less favorable treatment of its Allowed EVPS L/C Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for such Allowed Claim, on the Effective Date, each holder of an Allowed EVPS L/C Claim shall receive (a) in respect of drawn EVPS Letters of Credit, payment in full in Cash and (b) in respect of undrawn EVPS Letters of Credit, in its sole discretion, either (i) cancellation and return of such undrawn EVPS Letters of Credit or (ii) cash collateral to secure such undrawn EVPS Letters of Credit in the amount required by the EVPS ABL Credit Agreement.

C.      *Professional Claims.*

    1.      <u>Final Fee Applications and Payment of Professional Claims.</u>

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized EVPS Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, as applicable. The Reorganized EVPS Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

    2.      <u>Professional Fee Escrow Account.</u>

As soon as reasonably practicable after the Confirmation Date, and no later than one Business Day prior to the Effective Date, the Reorganized EVPS Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized EVPS Debtors using Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals other than with respect to potential distributions to Holders of Allowed General Unsecured Claims as contemplated under this Plan. Such funds shall not be considered property of the Estates of the EVPS Debtors or the Reorganized EVPS Debtors. No liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. The amount of Allowed Professional Claims shall be paid in Cash to the Professionals by the Reorganized EVPS Debtors from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Claims are Allowed; provided that until the reconciliation of all General Unsecured Claims has been completed, the Professional Fee Escrow Account shall at all times hold no less than $1.5 million that was escrowed for payment of the Debtors' professionals. When such Allowed Professional Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized EVPS Debtors without any further notice to or action or order of the Bankruptcy Court or any other Entity, subject to at least $1.5 million remaining in the Professional Fee Escrow Account that was escrowed for payment of the Debtors' professionals until the reconciliation of all General Unsecured Claims has been completed.

    3.      <u>Professional Fee Escrow Amount.</u>

Professionals shall reasonably estimate their unpaid Professional Claims and other unpaid fees and expenses incurred in rendering services to the EVPS Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the EVPS Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the EVPS Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the Reorganized EVPS Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

    4.      <u>Post-Confirmation Fees and Expenses.</u>

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the EVPS Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the EVPS Debtors; *provided* that the EVPS Debtors shall pay the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Patient Care Ombudsman, the Patient Care Ombudsman's Professionals, or Professionals retained by the Committee pursuant to a final invoice sent to the EVPS Debtors as soon as reasonably practicable after the Effective Date and subject to the terms of Article XII.D of this Plan. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the EVPS Debtors

22

may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, nothing in the foregoing or otherwise in this Plan shall modify or affect the Debtors' obligations under the EVPS Cash Collateral Order, including in respect of the Approved Budget (as defined therein), prior to the Effective Date.

     5.    <u>Allocation of Professional Claims.</u>

Any payments made on account of any Professional Claims shall be consistent with the allocation methodology set forth in paragraphs 23(f)(i)-(iii) of the AmSurg Cash Collateral Order (without regard to the proviso contained in paragraph 23(f)(iii) thereof).

D.    *Funding of General Unsecured Claims' Recovery Pool*

As soon as reasonably practicable after the Confirmation Date, and no later than one Business Day prior to the Effective Date, the Reorganized EVPS Debtors shall establish and fund the General Unsecured Claims' Recovery Pool Escrow Account with Cash equal to the General Unsecured Claims' Recovery Pool, which shall be funded by the Reorganized EVPS Debtors.  The General Unsecured Claims' Pool Escrow Account shall be maintained in trust solely for the payment of Allowed General Unsecured Claims.  No liens, claims, or interests shall encumber the General Unsecured Claims' Pool Escrow Account or Cash held in the General Unsecured Claims' Pool Escrow Account in any way.

E.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

F.    *Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be indefeasibly paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid) in accordance with, and subject to, as applicable, the terms of the EVPS Restructuring Support Agreement and any other fee arrangements, without any requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses.  Following the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Reorganized EVPS Debtors and be paid as reasonably practicable.  Any Restructuring Expenses that constitute EVPS L/C Obligations or EVPS Adequate Protection Obligations are entitled to all rights and protections of other EVPS L/C Obligations or EVPS Adequate Protection Obligations, respectively.

G.    *Payment of EVPS Unsecured Notes Trustee Fees.*

The Debtors shall pay in Cash the EVPS Unsecured Notes Trustee Fees (including attorneys' fees and out-of-pocket expenses) incurred up to and including the Effective Date), without any requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval, on or as soon as reasonably practicable after the Effective Date.  In addition, within ten (10) days after presentation of a summary invoice generally describing the services rendered (but without the need for itemized time detail), the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, all EVPS Unsecured Notes Trustee Fees (including attorneys' fees and out-of-pocket expenses) related to implementation and Consummation of this Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document related thereto, including, without limitation, making (or directing) distributions on account of the EVPS Unsecured Notes Claims,  The EVPS Unsecured Notes Trustee Fees to be paid on the Effective Date shall be estimated

prior to and as of the Effective Date and such estimates shall be delivered (in the form of a summary invoice and without the need for itemized time detail) to the Debtors at least two (2) Business Days before the anticipated Effective Date.  So that the EVPS Unsecured Notes Trustee can timely provide such estimate, the Debtors shall provide the EVPS Unsecured Notes Trustee with seven (7) Business Days' prior notice of the anticipated Effective Date.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A.    Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the EVPS Debtors pursuant to this Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other EVPS Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other EVPS Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | EVPS ABL Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | EVPS First-Out Term Loan Claims | Impaired | Entitled to Vote |
| Class 5 | EVPS Second-Out Term Loan Claims | Impaired | Entitled to Vote |
| Class 6 | EVPS Unsecured Notes Claims | Impaired | Entitled to Vote |
| Class 7 | EVPS Unsecured Term Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | General Unsecured Claims against EVPS Debtors | Impaired | Entitled to Vote |
| Class 10 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or  Deemed to Reject) |
| Class 11 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or  Deemed to Reject) |
| Class 12 | Equity Interests in Envision Parent | Impaired | Not Entitled to Vote (Deemed to Reject) |

24

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 13 | Section 510(b) Claims | Impaired | Not Entitled to Vote<br>(Deemed to Reject) |

B.     *Treatment of Claims and Interests.*

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized EVPS Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.   <u>Class 1 – Other EVPS Secured Claims</u>

(a)   *Classification*:  Class 1 consists of all Other EVPS Secured Claims.

(b)   *Treatment*:   On the Effective Date, in exchange for the full and final satisfaction, settlement, release, and discharge of the Other EVPS Secured Claims, each holder of an Allowed Other EVPS Secured Claim shall receive, at the EVPS Debtors' option, in consultation with the Required Consenting Lenders:

(i)     payment in full in Cash;

(ii)    the collateral securing its Allowed Other EVPS Secured Claim;

(iii)   Reinstatement of its Allowed Other EVPS Secured Claim; or

(iv)    such other treatment rendering its Allowed Other EVPS Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)   *Voting*:  Class 1 is Unimpaired under this Plan.  Holders of Allowed Other EVPS Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject this Plan.

2.   <u>Class 2 – Other EVPS Priority Claims</u>

(a)   *Classification*:  Class 2 consists of all Other EVPS Priority Claims.

(b)   *Treatment*:  Each holder of an Allowed Other EVPS Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)   *Voting*:  Class 2 is Unimpaired under this Plan.  Holders of Allowed Other EVPS Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject this Plan.

3.   <u>Class 3 – EVPS ABL Claims</u>

(a)   *Classification*:  Class 3 consists of all EVPS ABL Claims.

(b)   *Treatment*:  Except to the extent that a holder of an EVPS ABL Claim agrees to less favorable treatment of its Allowed EVPS ABL Claim, in full and final satisfaction,

settlement, release, and discharge in exchange for such Allowed Claim, on the Effective Date, each holder of an Allowed EVPS ABL Claim shall receive payment in full in Cash.

 (c) *Voting:*  Class 3 is Unimpaired under this Plan.  Holders of Allowed EVPS ABL Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject this Plan.

4. <u>Class 4 – EVPS First-Out Term Loan Claims</u>

 (a) *Classification*:  Class 4 consists of all EVPS First-Out Term Loan Claims.

 (b) *Treatment*:  Except to the extent that a holder of an EVPS First-Out Term Loan Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed EVPS First-Out Term Loan Claim, on the Effective Date, each holder of an Allowed EVPS First-Out Term Loan Claim shall receive its Pro Rata share of the First-Out Cash Payment; *provided* that, for the avoidance of doubt, holders of *pari passu* Allowed Intercompany Loan Claims waive their right to and shall not receive any such recovery on the Effective Date.

 (c) *Voting*:  Class 4 is Impaired under this Plan.  Holders of EVPS First-Out Term Loan Claims are entitled to vote to accept or reject this Plan.

5. <u>Class 5 – EVPS Second-Out Term Loan Claims</u>

 (a) *Classification:*  Class 5 consists of all EVPS Second-Out Term Loan Claims.

 (b) *Treatment*:  Except to the extent that a holder of an EVPS Second-Out Term Loan Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed EVPS Second-Out Term Loan Claim, on the Effective Date, each holder of an Allowed EVPS Second-Out Term Loan Claim shall receive its Pro Rata share of 98.25% of the Reorganized Envision Parent New Common Stock, subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants; *provided* that, for the avoidance of doubt, holders of *pari passu* Allowed Intercompany Loan Claims waive their right to and shall not receive any such recovery on the Effective Date.

 (c) *Voting:*  Class 5 is Impaired under this Plan.  Holders of Allowed EVPS Second-Out Term Loan Claims are entitled to vote to accept or reject this Plan.

6. <u>Class 6 – EVPS Unsecured Notes Claims</u>

 (a) *Classification:*  Class 6 consists of EVPS Unsecured Notes Claims.

 (b) *Treatment:*  Except to the extent that a holder of an EVPS Unsecured Notes Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed EVPS Unsecured Notes Claim, on the Effective Date or as soon thereafter as is practicable, each holder of an Allowed EVPS Unsecured Notes Claim shall receive its Pro Rata share of: (a) $35 million in Cash; and (b) 1.5% of Reorganized Envision Parent New Common Stock, subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants.  For the avoidance of doubt, distribution to holders of Allowed EVPS Unsecured Notes Claims

shall be allocated first to principal outstanding and then, if principal is paid in full, to interest.

(c) *Voting:* Class 6 is Impaired under this Plan. Holders of Allowed EVPS Unsecured Notes Claims are entitled to vote to accept or reject this Plan.

7. <u>Class 7 – EVPS Unsecured Term Loan Claims</u>

(a) *Classification:* Class 7 consists of EVPS Unsecured Term Loan Claims.

(b) *Treatment*: Each Allowed EVPS Unsecured Term Loan Claim, on the Effective Date, each holder of an Allowed EVPS Unsecured Term Loan Claim shall receive no recovery and such Allowed EVPS Unsecured Term Loan Claims shall be cancelled, released, and extinguished without any distribution.

(c) *Voting:* Class 7 is Impaired under this Plan. Holders of Allowed EVPS Unsecured Term Loan Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject this Plan.

8. <u>Class 8 – Intercompany Loan Claims</u>

(a) *Classification*: Class 8 consists of all Intercompany Loan Claims.

(b) *Treatment*: Subject to and upon the consummation of the EHC ASC Debtors SPA, holders of *pari passu* Allowed Intercompany Loan Claims shall have such Intercompany Loan Claim cancelled, released, and extinguished on the Effective Date without any distribution.

(c) *Voting*: Class 8 is Impaired under this Plan. Holders of Allowed Intercompany Loan Claims are conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject this Plan.

9. <u>Class 9 – General Unsecured Claims against EVPS Debtors</u>

(a) *Classification*: Class 9 consists of all General Unsecured Claims against EVPS Debtors.

(b) *Treatment*: Except to the extent that a holder of an EVPS Debtors' General Unsecured Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed EVPS Debtors' General Unsecured Claim, on the Effective Date, each holder of an Allowed EVPS Debtors' General Unsecured Claim shall receive its Pro Rata share of the General Unsecured Claims' Pool; *provided* that if the aggregate amount of Allowed EVPS Debtors' General Unsecured Claims is more than $150 million but equal to or less than $187.5 million, the amount of Cash funded into the General Unsecured Claims' Pool shall be increased, solely from Cash in the Professional Fee Escrow Account reserved for payment to the Debtors' Professionals, to provide such holders with a 4% recovery in the aggregate; *provided, further,* that if the aggregate amount of Allowed EVPS Debtors' General Unsecured Claims is greater than $187.5 million, each holder of an Allowed EVPS Debtors' General Unsecured Claim shall receive its Pro Rata share of the amounts funded into the General Unsecured Claims' Pool of the Effective Date *plus* $1.5 million in Cash from the Professional Fee Escrow Account.

(c) *Voting*: Class 9 is Impaired under this Plan. Holders of Allowed General Unsecured Claims against EVPS Debtors are entitled to vote to accept or reject this Plan.

27

10. Class 10 – Intercompany Claims

    (a)    *Classification*: Class 10 consists of all Intercompany Claims.

    (b)    *Treatment*: On the Effective Date, each holder of an Allowed Intercompany Claim shall have its Claim reinstated, set off, settled, distributed, contributed, cancelled, and released without any distribution on account of such Intercompany Claims, or such other treatment as is reasonably determined by the EVPS Debtors, at the EVPS Debtors' election with the consent of the Required Consenting Lenders; *provided,* for the avoidance of doubt, that such Allowed Intercompany Claims shall not include the Intercompany Loan Claims.

    (c)    *Voting*: Class 10 is either Unimpaired, in which case the holders of Allowed Intercompany Claims in Class 10 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under this Plan, in which case the holders of such Allowed Intercompany Claims in Class 9 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Allowed Intercompany Claim in Class 10 will not be entitled to vote to accept or reject this Plan.

11. Class 11 – Intercompany Interests

    (a)    *Classification*: Class 11 consists of all Intercompany Interests.

    (b)    *Treatment*: On the Effective Date, Intercompany Interests shall be reinstated, set off, settled, distributed, contributed, cancelled, and released without any distribution on account of such Intercompany Interests, or such other treatment as is determined by the EVPS Debtors with the consent of the Required Consenting Lenders; *provided*, for the avoidance of doubt, that such Allowed Intercompany Interests shall not include any Equity Interest in AmSurg Parent.

    (c)    *Voting*: Class 11 is either Unimpaired, in which case the holders of Allowed Intercompany Interests in Class 11 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under this Plan, in which case the holders of such Allowed Intercompany Interests in Class 10 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Allowed Intercompany Interest in Class 10 will not be entitled to vote to accept or reject this Plan.

12. Class 12 – Equity Interests in Envision Parent

    (a)    *Classification*: Class 12 consists of all Equity Interests in Envision Parent.

    (b)    *Treatment*: On the Effective Date, each holder of an Equity Interest in Envision Parent shall have such Equity Interest cancelled, released, and extinguished without any distribution.

    (c)    *Voting*: Class 12 is Impaired under this Plan. Holders of Allowed Equity Interests in Envision Parent are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject this Plan.

13. Class 13 – Section 510(b) Claims

    (a)    *Classification*: Class 13 consists of all Section 510(b) Claims.

      (b)    *Treatment*:  Each Allowed Section 510(b) Claim will be discharged and released and each holder of such Allowed Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Allowed Section 510(b) Claim.

      (c)    *Voting*:  Class 13 is Impaired under this Plan.  Holders of Allowed Section 510(b) Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject this Plan.

C.     *Special Provision Governing Unimpaired Claims.*

      Except as otherwise provided in this Plan or the EVPS Cash Collateral Order, nothing herein shall affect the EVPS Debtors' or the Reorganized EVPS Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.     *Elimination of Vacant Classes.*

      Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.     *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

      If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject this Plan, the holders of such Claims or Interests in such Class shall be presumed to have accepted this Plan.

F.     *Intercompany Interests.*

      To the extent Reinstated under this Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Common Stock, and in exchange for the EVPS Debtors' and Reorganized EVPS Debtors' agreement under this Plan to make certain distributions to the holders of Allowed Claims.

G.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

      Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more of the Classes entitled to vote pursuant to Article III.B of this Plan.  The EVPS Debtors may seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The EVPS Debtors reserve the right to modify this Plan in accordance with Article X hereof, the EVPS Restructuring Support Agreement, and the EVPS Cash Collateral Order, including the consent rights respectively set forth therein, to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.     *Controversy Concerning Impairment.*

      If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to this Plan.

J.      *Consideration Available for Distributions*.

This Plan provides for the distribution of 1.5% of the Reorganized Envision Parent New Common Stock to holders of EVPS Unsecured Notes Claims (subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants) and for the distribution of $35 million of the Cash Amount to Holders of the EVPS Unsecured Notes Claims and the remaining $6 million of the Cash Amount to holders of General Unsecured Claims, in each case, as provided in Article III; *provided* that if the aggregate amount of Allowed EVPS Debtors' General Unsecured Claims is greater than $150 million, up to $1.5 million of cash in the Professional Fee Escrow Account funded by the EVPS Debtors on the Effective Date shall be added to the General Unsecured Claims' Pool and made available for distribution only to holders of Allowed EVPS Debtors' General Unsecured Claims on the terms set forth in Article III.B.9 of this Plan (and such amounts shall remain in escrow pending completion of reconciliation of all Allowed EVPS Debtors' General Unsecured Claims).  In no event shall the EVPS Debtors have any funding obligation in respect of the EVPS Cash Amount in excess of $25.7 million, other than Cash from the Professional Fee Escrow Account in accordance with the terms of the Global Settlement and this Plan.  In no event shall the AmSurg Debtors have any funding obligation in respect of the AmSurg Cash Amount in excess of $15.3 million.  For the avoidance of doubt, (a) if any amounts are added to the General Unsecured Claims' Pool from the Professional Fee Escrow, such amounts shall not be replenished or otherwise topped up in the Professional Fee Escrow and (b) the Professional Fee Amount shall not include any amount or estimate of any amount that may be added to the General Unsecured Claims' Pool.

K.      *Special Provisions Regarding EVPS Unsecured Notes Claims*.

Subject to and upon the occurrence of the Effective Date, any recovery on account of Allowed EVPS Unsecured Notes Claims held by the Consenting Sponsors shall be deemed to have been waived or otherwise assigned for the benefit of holders of Allowed EVPS Unsecured Notes Claims without an affiliation to the Consenting Sponsors. The Consenting Sponsors hold $253,338,000.01 of Allowed EVPS Unsecured Notes Claims and the Consenting Sponsors agree to not transfer any of its Allowed EVPS Unsecured Notes Claims to any entity that is not also a Consenting Sponsor and any such transfer in contravention of this agreement will be deemed by this Plan to be *void ab initio*.

L.      *Special Provisions Regarding EVPS Debtors' General Unsecured Claims*.

Holders of EVPS First-Out Term Loan Claims and EVPS Second-Out Term Loan Claims shall not receive any recovery on account of unsecured deficiency portions of such Claims for purposes of recovery as a EVPS Debtors' General Unsecured Claim under this Plan.  The Consenting Stakeholders agree not to transfer any such Claims to any entity that is not also a Consenting Stakeholder (or would become a Consenting Stakeholder by virtue of such transfer pursuant to the terms of any restructuring support agreement or otherwise) and any such transfer in contravention of this agreement will be deemed by this Plan to be *void ab initio*.  Subject to and upon the occurrence of the Effective Date, the Consenting Sponsors shall be deemed to have waived their right to and shall not receive any recovery on account of any EVPS Debtors' General Unsecured Claims; *provided*, *however*, that such waiver shall not include any indemnification claims or rights as beneficiaries under the D&O Liability Insurance Policies that are preserved or assumed under this Plan.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan, including (1) any challenge to the amount, validity, perfection, enforceability, priority, or extent of the EVPS L/C Claims, EVPS ABL Claims, EVPS First-Out Term Loan Claims, EVPS Second-Out Term Loan Claims, EVPS Unsecured Term Loan Claims, EVPS Unsecured Notes Claims, and General Unsecured Claims against EVPS Debtors, (2) any claim to avoid, subordinate, or disallow any EVPS L/C Claims, EVPS ABL Claims, EVPS First-Out Term Loan Claims, EVPS Second-Out Term Loan Claims, EVPS Unsecured Term Loan Claims, EVPS Unsecured Notes Claims, and General Unsecured Claims against EVPS Debtors, whether under any provision of chapter 5 of the Bankruptcy Code on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise, (3) any claim that the Committee has asserted in these Chapter 11 Cases related to the existence of or potential existence of unencumbered assets, (4) any claim that the holders of EVPS Second-Out Term Loan Claims are entitled to receive on account of unsecured deficiency portions of such Claims, (5) any claim that such deficiency claim is properly classified with EVPS Debtors' General Unsecured Claim under this Plan, and (6) any claim of the Consenting Sponsors to receive any recovery on account of any EVPS Debtors' General Unsecured Claims (except with respect to any indemnification claims or rights as beneficiaries under the D&O Liability Insurance Policies that are preserved or assumed under this Plan or the AmSurg Plan).  This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the EVPS Debtors and their Estates.  Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Settlement of Challenge Claims and Claim Objections.*

Pursuant to Bankruptcy Rule 9019, as of the Effective Date, for good and valuable consideration including that provided in connection with this Plan, the AmSurg Restructuring Support Agreement, the EVPS Restructuring Support Agreement, the EHC AmSurg Debtors Sale Documents and other applicable Definitive Documents, the adequacy of which is hereby confirmed, any Causes of Action referenced in the claims objections and standing motions filed by the Committee [Docket Nos. 1167, 1168, 1169, 1170, 1171, 1172, 1173, 1174, 1175, 1176, 1177, 1178, 1312, 1313, and 1361] held by the Committee, with respect to such claims objections or standing motions, or the Debtors that may exist against the applicable Released Parties shall be deemed forever released, waived and discharged conclusively, absolutely, unconditionally, and irrevocably by the Committee, with respect to such claims objections or standing motions, and the EVPS Debtors, the EVPS Debtors' Estates and the Reorganized EVPS Debtors to the maximum extent permitted by applicable law.  This Plan incorporates and reflects certain compromises and settlements (the "Global Settlement"), by and among the EVPS Debtors, the AmSurg Debtors, the Committee, the Ad Hoc Group of EVPS Unsecured Notes Claims, the AmSurg Consenting Stakeholders, the Consenting Sponsors, and the Required Consenting Lenders (collectively, the "Settlement Parties"), as such compromises and settlements pertain to the EVPS Debtors.  In addition to the other provisions reflected in this Plan, the Global Settlement shall consist of the following compromises and settlements.

1.      Subject to the consummation of this Plan, in a form consistent with the consent rights set forth in the EVPS Restructuring Support Agreement, the AmSurg Restructuring Support Agreement, and that certain Settlement Term Sheet, dated September 23, 2023 [Docket No. 1527, Ex. A] (the "Global Settlement Term Sheet"), the AmSurg Debtors shall fund the $15.3 million AmSurg Cash Amount to the EVPS Debtors and the EVPS Debtors shall fund the $25.7 million EVPS Cash Amount, each for purposes of funding the Cash distributions required under Article III of this Plan to holders of EVPS Unsecured Notes Claims and holders of EVPS Debtors' General Unsecured Claims. In no event shall the EVPS Debtors have any funding obligation in excess of the EVPS Cash Amount.  In no event

shall the AmSurg Debtors have any funding obligation in excess of the AmSurg Cash Amount.

2.      As a condition precedent to the consummation of the Global Settlement, the Committee and the Ad Hoc Group of EVPS Unsecured Notes Claims shall (i) support and not object to or take any action that is inconsistent with or that would reasonably be expected to prevent, interfere with, delay, or impede the confirmation or consummation of, the Plans, as each has been amended as contemplated by the Global Settlement Term Sheet, or the definitive documents contemplated in the Plans as reflected in the Global Settlement Term Sheet, (ii) with respect to the members of the Ad Hoc Group of EVPS Unsecured Notes Claims, "opt in" or not "opt out" of, as applicable, the consensual "Third-Party" releases, and (iii) use reasonable best efforts to support confirmation of the Plans, as each has been amended as contemplated by the Global Settlement Term Sheet, including, but not limited to, in the case of the holders of EVPS Unsecured Notes Claims, voting their Allowed Claims to accept the applicable Plan(s).

3.      As a condition precedent to the consummation of the Global Settlement, the Committee and the Ad Hoc Group of EVPS Unsecured Notes Claims shall further support and not object to or take any action that is inconsistent with or that would reasonably be expected to prevent, interfere with, delay, or impede the confirmation or consummation of, the SPA Order, the order approving the AmSurg Backstop Commitment Agreement, and the order approving the AmSurg Exit First Lien Term Loan Facility Commitment Letter and the AmSurg Exit Facility, so long as the EVPS Debtors and the AmSurg Debtors confirm the Plans, as each has been amended as contemplated by the Global Settlement Term Sheet.

4.      As a condition precedent to the consummation of the Global Settlement, the members of the Committee and the Ad Hoc Group of EVPS Unsecured Notes Claims shall have represented and warranted that they are not receiving any consideration for their support of the Plans from any entity (other than the consideration being provided under the Plans).

5.      As a condition precedent to the consummation of the Global Settlement, (a)(x) the AmSurg Debtors shall have funded the $15.3 million AmSurg Cash Amount and (y) the EVPS Debtors shall have funded the $25.7 million EVPS Cash Amount, in each case for the benefit of holders of EVPS Unsecured Notes Claims and Allowed EVPS Debtors' General Unsecured Claims against the EVPS Debtors, on the terms pursuant to the Plans, and (b) the EVPS Debtors shall have issued 1.5% of the Reorganized Envision Parent New Common Stock to holders of EVPS Unsecured Notes Claims (subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants).

6.      As a condition precedent to the consummation of the Global Settlement, the EVPS Debtors shall have funded $1.5 million of cash in the Professional Fee Escrow Account intended for the Debtors' Professional Claims. For the avoidance of doubt, (a) if any amounts are added to the General Unsecured Claims' Pool from the Professional Fee Escrow Account, such amounts shall not be replenished or otherwise topped up in the Professional Fee Escrow Account and (b) the Professional Fee Amount shall not include any amount or estimate of any amount that may be added to the General Unsecured Claims' Pool.

7.      As a condition precedent to the consummation of the Global Settlement, the EVPS Debtors or Reorganized Debtors shall fund $6 million in Cash on the Effective Date into the General Unsecured Claims' Recovery Pool and $35 million in Cash on the Effective Date to holders of the EVPS Unsecured Notes Claims.

8.      As a condition precedent to the consummation of the Global Settlement, the EVPS Debtors and Consenting Stakeholders agree that EVPS First-Out Term Loan Claims and EVPS Second-Out Term Loan Claims shall waive their right to and shall not receive any recovery on account of unsecured deficiency portions of such Claims for purposes of recovery as a EVPS Debtors' General Unsecured Claim under this Plan.

9.      As a condition precedent to the consummation of the Global Settlement, the Consenting Sponsors shall waive their right to and shall not receive any recovery on account of any EVPS Debtors' General Unsecured Claims; *provided*, however, that such waiver shall not include any indemnification claims or rights as beneficiaries under the D&O Liability Insurance Policies that are preserved or assumed under the Plans.

C.      *Settlement of Fourth Out Causes of Actions.*

Pursuant to Bankruptcy Rule 9019, as of the Effective Date, for good and valuable consideration including that provided in connection with this Plan and other applicable Definitive Documents, the adequacy of which is hereby confirmed, any Causes of Action referenced in the Fourth Out Complaint and/or any other claims or Causes of Action held by holders of EVPS Fourth-Out Term Loan Claims or the Debtors, with respect to or arising out of the facts referenced in the Fourth Out Complaint and/or arising out of or related to the 2022 Liability Management Transactions generally that may exist against the applicable Released Parties shall be deemed forever released, waived and discharged conclusively, absolutely, unconditionally, and irrevocably by the holders of EVPS Fourth-Out Term Loan Claims that are Consenting Stakeholders, the members of the Fourth Out Ad Hoc Group, and the EVPS Debtors, the EVPS Debtors' Estates, and the Reorganized EVPS Debtors, in each case, to the maximum extent permitted by applicable law; *provided*, *however*, that notwithstanding anything to the contrary, nothing in this Plan shall release or modify any claims or obligations under the Exit Term Loan Credit Facility or the New Reorganized Envision Parent Organizational Documents.  In return for such release, holders of EVPS Fourth-Out Term Loan Claims that are Consenting Stakeholders and members of the Fourth Out Ad Hoc Group shall receive their pro rata share (based on the aggregate amount of EVPS Fourth-Out Term Loan Claims held by the Consenting Stakeholders and the members of the Fourth Out Ad Hoc Group) of 0.25% of the Reorganized Envision Parent New Common Stock (subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants) and the New Warrants.  On the Effective Date, the Fourth Out Complaint shall be deemed automatically withdrawn and dismissed with prejudice.

D.      *Restructuring Transactions.*

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into and shall take all actions set forth in, and in accordance with, the Restructuring Transactions Memorandum, the Tax Separation Agreement, and the Separation Memorandum, and shall take any actions as may be necessary or appropriate to effect the Restructuring Transactions, including as set forth in this Plan, the Plan Supplement, the EVPS Restructuring Support Agreement, the EVPS Restructuring Term Sheet, and the EHC ASC Debtors SPA, as applicable.  The actions to implement the Restructuring Transactions (which, for the avoidance of doubt, shall be in form, substance, and structure acceptable to the Required Consenting Stakeholders) shall include:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable Law; (4) the execution and delivery of New EVPS ABL Facility; (5) the execution and delivery of the EHC ASC Debtors SPA and any filings related thereto to the extent not already executed and delivered, and the implementation and consummation of the EHC AmSurg Debtors Sale Transaction and any filings related thereto pursuant to the terms set forth in the EHC AmSurg Debtors Sale Documents and the SPA Order; (6) the issuance of the Reorganized Envision Parent New Common Equity and the New Warrants; (7) the execution and delivery of the New Reorganized Envision Parent Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized EVPS Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the EVPS Debtors and/or the Reorganized EVPS Debtors, as applicable); (8) the execution and delivery of the Exit Term Loans under the Exit Term Loan Credit Facility (if applicable); and (9) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable Law in connection with this Plan.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all of the foregoing and all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Plan and the Plan Supplement, including any and all actions required to be taken under applicable non-bankruptcy Law.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors, as applicable, shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Restructuring Transactions.

In addition, the Reorganized EVPS Debtors may raise exit capital at the Effective Date, as determined by the EVPS Debtors and the Required Consenting Initial Lenders, in the form of (i) a new money equity rights offering, (ii) a new money debt rights offering, or (iii) a combination thereof which, in each case, will be offered on a Pro Rata basis to the Consenting EVPS Initial Term Loan Lenders on the same terms (including fees).

E.      *Reorganized EVPS Debtors*

On the Effective Date, the board of directors of Reorganized Envision Parent shall be established, and the Reorganized EVPS Debtors shall adopt their New Reorganized Envision Parent Organizational Documents.  The Reorganized EVPS Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan.  Cash payments to be made pursuant to this Plan will be made by the EVPS Debtors or Reorganized EVPS Debtors.  The EVPS Debtors and Reorganized EVPS Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the EVPS Debtors or Reorganized EVPS Debtors, as applicable, to satisfy their obligations under this Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the EVPS Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

From and after the Effective Date, the Reorganized EVPS Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Reorganized Envision Parent Organizational Documents, as the boards of directors of the applicable Reorganized EVPS Debtors deem appropriate.

F.      *Sources of Consideration for Plan Distributions.*

The EVPS Debtors and the Reorganized EVPS Debtors, as applicable, shall fund distributions under this Plan with:  (1) Cash on hand, including Cash from operations and the proceeds of the EHC AmSurg Debtors Sale Transaction and the proceeds of the New EVPS ABL Facility; (2) the Reorganized Envision Parent New Common Stock; (3) the issuance of the Exit Term Loans under the Exit Term Loan Credit Facility; (4) the issuance of New Warrants; (5) General Unsecured Claims' Recovery Pool Escrow Account; and (6) the Professional Fee Escrow Account.

1.      Cash on Hand.

The EVPS Debtors or Reorganized EVPS Debtors, as applicable, shall use Cash on hand, if any, to fund distributions to certain holders of Claims in accordance with the terms hereof.

2.      Proceeds from the EHC AmSurg Debtors Sale Transaction.

On the Effective Date, the EVPS Debtors and the Reorganized EVPS Debtors shall be authorized to consummate the EHC AmSurg Debtors Sale Transaction and execute and deliver the EHC AmSurg Debtors Sale Documents and any related agreements without the need for further corporate or organizational action and without further action by or approval of the Bankruptcy Court.  Confirmation shall be deemed approval of the EHC AmSurg Debtors Sale Transaction (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses paid in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Reorganized EVPS Debtors are authorized to execute and deliver those documents necessary or appropriate to effectuate the EHC AmSurg Debtors Sale Transaction, including any and all documents required to be filed or executed in connection with the EHC ASC Debtors SPA without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate the EHC AmSurg Debtors Sale Transaction, with any such modifications in form and substance acceptable to the EVPS Debtors, the AmSurg Debtors, and the Required Consenting Stakeholders.

3.    Issuance of the Reorganized Envision Parent New Common Stock.

The issuance of the New Common Stock, including the shares of Reorganized Envision Parent New Common Stock, which will be distributed to holders of Allowed EVPS Second-Out Term Loan Claims and the Allowed EVPS Unsecured Notes Claims, subject to dilution by the Reorganized Envision Parent Management Incentive Plan and the New Warrants, by the Reorganized EVPS Debtors shall be authorized without the need for any further corporate action or without any further action by holders of Claims or Interests. The Reorganized EVPS Debtors shall be authorized to issue a certain number of shares of Reorganized Envision Parent New Common Stock as required under this Plan and pursuant to the New Reorganized Envision Parent Organizational Documents.

On the Effective Date, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, shall issue all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to this Plan. All of the shares of Reorganized Envision Parent New Common Stock issued or authorized to be issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of Reorganized Envision Parent New Common Stock shall be deemed as its agreement to the New Reorganized Envision Parent Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms, and each such Entity will be bound thereby in all respects.

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Envision Parent New Common Stock will be distributed in accordance with this Plan. The issuance and delivery of the Reorganized Envision Parent New Common Stock shall be exempt from the registration requirements of section 5 of the Securities Act and any similar federal, state, or local law in reliance of section 1145 of the Bankruptcy Code to the fullest extent available. To the extent section 1145 is not available, the issuance and delivery of the Reorganized Envision Parent New Common Stock shall be exempt from the registration requirements of the Securities Act as a private placement pursuant to section 4(a)(2) thereunder and/or the safe harbor of Regulation D, Regulation S, or another available exemption from registration under the Securities Act. Accordingly, the Reorganized Envision Parent New Common Stock will not be registered under the Securities Act or listed on any exchange as of the Effective Date; *provided, however* that the New Reorganized Envision Parent Organizational Documents shall contain customary registration rights that are in form and substance acceptable to the Required Consenting Initial Lenders.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the Reorganized Envision Parent New Common Stock through the facilities of DTC, and presuming DTC agrees to such request, the Reorganized Debtors need not provide any further evidence, including any legal opinion, other than this Plan or the Confirmation Order with respect to the treatment of the Reorganized Envision Parent New Common Stock under applicable securities laws.

4.    Issuance of Exit Term Loans.

On the Effective Date, in accordance with, and subject to, the terms and conditions of the Exit Term Loan Credit Agreement, the Debtors will enter into the Exit Term Loan Credit Agreement. All Liens and security interests granted pursuant to the Exit Term Loan Credit Facility Agreement shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law and as provided for in the New Intercreditor Agreement, and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law, this Plan or the Confirmation Order.

On or before (as applicable) the Effective Date, the Debtors shall be authorized to execute, deliver, and enter into and perform under the Exit Term Loan Credit Agreement without further (a) notice to or order or other approval of the Bankruptcy Court, (b) act or omission under applicable law, regulation, order, or rule, (c) vote, consent, authorization, or approval of any Person, or (d) action by the holders of Claims or Interests. The Exit Term Loan Credit Agreement shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized EVPS Debtors, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, this

Plan or the Confirmation Order.  The Exit Term Loan Credit Agreement (and other definitive documentation related thereto) are reasonable and are being entered into in good faith.

The Reorganized EVPS Debtors and the Persons granted Liens and security interests under the Exit Term Loan Credit Facility are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

On the Effective Date, the Exit Term Loan Agent and the New EVPS ABL Facility Agent shall enter into the New Intercreditor Agreement.  Each lender under the Exit Term Loan Credit Agreement and the New EVPS ABL Facility shall be deemed to have directed the Exit Term Loan Agent or the New EVPS ABL Facility Agent, as applicable, to execute the New Intercreditor Agreement and shall be bound to the terms of the New Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

     5.    <u>Issuance of New Warrants</u>.

In the event that holders of EVPS Unsecured Term Loan Claims vote as a class to accept this Plan, then on the Effective Date, Reorganized Envision Parent will issue the New Warrants.  All of the New Warrants issued pursuant to this Plan and the shares of Reorganized Envision Parent New Common Stock that may be issued upon exercise of the New Warrants shall be duly authorized without the need for any further corporate action and without any further action by the EVPS Debtors or Reorganized EVPS Debtors, as applicable, validly issued, fully paid, and non-assessable.  Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in this Plan, the EVPS Restructuring Support Agreement, and the New Warrant Agreements applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s).  The issuance and delivery of the New Warrants shall be exempt from the registration requirements of section 5 of the Securities Act and any similar federal, state, or local law in reliance of section 1145 of the Bankruptcy Code to the fullest extent available.  The New Warrants will not be registered under the Securities Act or listed on any exchange as of the Effective Date.  Any Entity that accepts the New Warrants shall be deemed bound by the New Reorganized Envision Parent Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms, with respect to the New Warrants.

*G.*    *Corporate Action.*

On the Effective Date, all actions contemplated under this Plan shall be deemed authorized and approved in all respects, including: (1) implementation of the Restructuring Transactions, including the EHC AmSurg Debtors Sale Transaction and the issuance of the New Warrants; (2) selection of the directors and officers for the Reorganized Envision Parent; (3) issuance and distribution of the Reorganized Envision Parent New Common Stock and the New Warrants; (4) adoption of the New Reorganized Envision Parent Organizational Documents; (5) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (6) the execution and delivery of the Exit Term Loans under the Exit Term Loan Credit Facility; and (7) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Plan (whether to occur on or before the Effective Date).  All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or prior to the Effective Date, as applicable, the appropriate officers of the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized EVPS Debtors, including

the Reorganized Envision Parent New Common Stock, the New Reorganized Envision Parent Organizational Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non-bankruptcy law.

H.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the EVPS Debtors or the Reorganized EVPS Debtors, including the Reorganized Envision Parent New Common Stock, the Exit Term Loans, and the New Warrants; (2) the EHC AmSurg Debtors Sale Transaction and any Restructuring Transactions, as applicable; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Exit Term Loans; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

I.      *Reorganized Envision Parent Management Incentive Plan.*

On the Effective Date, Reorganized Envision Parent may implement the Reorganized Envision Parent Management Incentive Plan the form, terms, allocation and vesting of awards of which shall be determined by the New Reorganized Envision Parent Board, subject to the terms of the EVPS Restructuring Support Agreement.

J.      *Corporate Existence.*

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended, amended and restated, or replaced under this Plan or otherwise, including pursuant to the New Reorganized Envision Parent Organizational Documents, in each case, consistent with this Plan and the EVPS Restructuring Support Agreement , as applicable, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to this Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized EVPS Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. After the Effective Date, one or more of the Reorganized EVPS Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

K.      *New Reorganized Envision Parent Organizational Documents.*

On or immediately prior to the Effective Date, the New Reorganized Envision Parent Organizational Documents shall be automatically adopted by the applicable Reorganized EVPS Debtors.  To the extent required under this Plan or applicable non-bankruptcy law, each of the Reorganized EVPS Debtors will file its New Reorganized Envision Parent Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable laws of the respective state or country of organization.  The New Reorganized Envision Parent Organizational Documents shall be determined by the Required Consenting Stakeholders and prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code, and shall be disclosed in the Plan Supplement.  For the avoidance of doubt, any claimant's acceptance of Reorganized Envision Parent New Common Stock shall be deemed as its agreement to be bound by the New Reorganized Envision Parent Organizational Documents without the need for execution by any party other than Reorganized EVPS Debtors.

After the Effective Date, the Reorganized EVPS Debtors may amend and restate their respective New Reorganized Envision Parent Organizational Documents in accordance with the terms thereof, and the Reorganized EVPS Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Reorganized Envision Parent Organizational Documents.

L.      *Directors and Officers of the Reorganized EVPS Debtors.*

As of the Effective Date, the terms of the current members of the board of directors of Envision Parent shall expire and the New Reorganized Envision Parent Board shall be appointed by the Board Selection Committee, as consented to by the Supermajority Equityholders.  Corporate governance for Reorganized Envision Parent, including charters, bylaws, operating agreements, or other organization documents, as applicable, shall be consistent with section 1123(a)(6) of the Bankruptcy Code and the New Reorganized Envision Parent Organizational Documents.

M.      *Vesting of Assets in the Reorganized EVPS Debtors.*

Except as otherwise provided in (i) the Confirmation Order or this Plan (including Article VIII hereof), or (ii) any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, this Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the EVPS Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, including Article VIII hereof, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

N.      *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except for the purpose of evidencing a right to a distribution under this Plan or as otherwise provided in the EVPS Restructuring Term Sheet, this Plan, the Plan Supplement, or the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests (including, without limitation, the EVPS Unsecured Notes Documents) shall be cancelled and the obligations of the EVPS Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect, and the EVPS Unsecured Notes Trustee shall be discharged and released and fully relieved of any duties or responsibilities under or related to the EVPS Unsecured Notes Documents; *provided, however*, that notwithstanding the occurrence of the Effective Date, such cancelled instruments, Securities, and other documentation (including, without limitation, the EVPS Unsecured Notes Documents) shall continue in effect solely for the purposes of (a) allowing holders of Claims or Interests (including, without limitation, Allowed EVPS Unsecured Notes Claims), to receive and accept their respective distributions under this Plan on account of such Claims or Interests (with distributions in respect of Allowed EVPS Unsecured Notes Claims being made to, or at the direction of, the EVPS Unsecured Notes Trustee), if any, subject to the EVPS Unsecured Notes Trustee Charging Lien; and (b) allowing and preserving the rights of the Agents and the EVPS Unsecured Notes Trustee, respectively, to (1) receive and make

distributions on account of such Claims or Interests, subject to (as applicable) the EVPS Unsecured Notes Trustee's Charging Lien; (2) assert or maintain any rights the Agents and the EVPS Unsecured Notes Trustee, respectively, may have against any money or property distributable or allocable to holders of such Claims or Interests, including, without limitation, the EVPS Unsecured Notes Trustee Charging Lien; (3) receive compensation and reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation, consummation, and defense of this Plan; (4) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Agents or the EVPS Unsecured Notes Trustee, respectively, may have under this Plan, the applicable credit agreement, letters of credit, indentures (including the EVPS Unsecured Notes Indenture and the EVPS Unsecured Notes), collateral agreements, or pledge agreements; and (5) preserve the rights of the Agents and the EVPS Unsecured Notes Trustee, respectively, to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited to, enforcing any obligations owed to the Agents or holders of such Claims or Interests and the EVPS Unsecured Notes Trustee, as applicable, under this Plan, the Plan Supplement, the Confirmation Order, or other document incorporated therein.  Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the EVPS Restructuring Term Sheet, this Plan, the Plan Supplement, or the Confirmation Order.  Except as provided in this Plan, the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of this Plan, on the Effective Date, the Agents and their respective agents, successors, and assigns, shall be automatically and fully discharged and released of all of their duties and obligations associated with the applicable credit agreement, letters of credit, indentures, collateral agreements, or pledge agreements, as applicable.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligations of the EVPS Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the EVPS Debtors pursuant to a Final Order or hereunder.

All distributions made under this Plan or on account of the Allowed Claims of holders of EVPS Unsecured Notes Claims shall be made to, or at the direction of, the EVPS Unsecured Notes Trustee.  The Debtors shall use commercially reasonable efforts to coordinate with the EVPS Unsecured Notes Trustee under the EVPS Unsecured Notes Indenture with respect to any New Warrants to be distributed pursuant to this Plan.

Upon the final distribution on account of the EVPS Unsecured Notes, (i) the EVPS Unsecured Notes shall thereafter be deemed to be null, void, and worthless, and (ii) at the request of the EVPS Unsecured Notes Trustee, DTC shall take down the relevant position relating to the EVPS Unsecured Notes without any requirement of indemnification or security on the part of the Debtors, Reorganized Debtors or the EVPS Unsecured Notes Trustee.

O.      *Indemnification Obligations.*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for Indemnified Parties, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the effectiveness of this Plan on terms no less favorable to such current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the EVPS Debtors as of the Petition Date than the indemnification provisions in place prior to the Restructuring Transactions, except for any obligations to indemnify for the conduct of current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the AmSurg Debtors, in their capacities as such; *provided*, that such reinstatement shall also include such indemnification provisions for the benefit of Peter Stavros related to his service as a director during the time period from October 11, 2018 to September 27, 2021; provided, further, that no indemnification agreements, claims, or obligations related to the individual defendants in the Bettis Litigation shall be assumed or reinstated by the Reorganized EVPS Debtors, and any such agreements, claims, and/or obligations shall be discharged pursuant to this Plan.  None of the Reorganized EVPS Debtors shall amend and/or restate their respective charters, bylaws, operating agreements, or other organization documents (as applicable) on or after the Effective Date to terminate, reduce, discharge, impair or adversely affect any of the Reorganized EVPS Debtors' obligations referred to in the preceding sentence.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under this Plan and shall continue as obligations of the Reorganized Debtors, subject to the EHC AmSurg Debtors Sale Documents, the SPA Order, and the Plan Supplement documents, as applicable.

P.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized EVPS Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, the EVPS Restructuring Support Agreement, the Restructuring Transactions Memorandum, the Separation Memorandum, and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized EVPS Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

Q.      *Director and Officer Liability Insurance.*

Notwithstanding anything in this Plan to the contrary, the Reorganized EVPS Debtors shall be deemed to have assumed all of the EVPS Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized EVPS Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the EVPS Debtors under this Plan as to which no Proof of Claim need be Filed. Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals insured thereunder; *provided* that, except as otherwise set forth in Article IV.N herein, the EVPS Debtors shall not be liable for any amounts in excess of the amounts covered by the D&O Liability Insurance Policies.

In addition, after the Effective Date, none of the Reorganized EVPS Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers of the EVPS Debtors who served in such capacity at any time prior to the Effective Date and all other individuals covered by such insurance policies will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date.

R.      *EVPS ABL Agent Obligations.*

Notwithstanding anything contained herein, on or after the Effective Date all duties and responsibilities of the EVPS ABL Agent arising under or related to the EVPS ABL Credit Agreement shall be discharged except to the extent required in order to effectuate this Plan. For the avoidance of doubt and notwithstanding the foregoing, nothing contained in this Plan shall in any way limit or affect the standing of the EVPS ABL Agent to appear and be heard by the Bankruptcy Court in the Chapter 11 Cases or any related proceedings before any court of competent jurisdiction, on and after the Effective Date. The EVPS ABL Agent shall be entitled to reimbursement of reasonable and documented fees and expenses (including reasonable and documented fees and expenses of its Related Parties) incurred in connection with the matters set forth herein.

Notwithstanding anything to the contrary herein, any and all indemnification and reimbursement or other obligations in the EVPS ABL Credit Agreement and the other Credit Documents (as defined in the EVPS ABL Credit Agreement) that would survive the satisfaction and discharge of all other Obligations (as defined in the EVPS ABL Credit Agreement) shall survive the occurrence of the Effective Date.

S.      *EVPS Term Loan Agent Obligations.*

Notwithstanding anything contained herein, on or after the Effective Date all duties and responsibilities of the EVPS Term Loan Agent arising under or related to the EVPS Term Loan Credit Agreement shall be discharged except to the extent required in order to effectuate this Plan. For the avoidance of doubt and notwithstanding the foregoing, nothing contained in this Plan shall in any way limit or affect the standing of the EVPS Term Loan Agent to appear and be heard by the Bankruptcy Court in the Chapter 11 Cases or any related proceedings before any court of competent jurisdiction, on and after the Effective Date. The EVPS Term Loan Agent shall be entitled to

reimbursement of reasonable and documented fees and expenses (including reasonable and documented fees and expenses of its Related Parties) incurred in connection with the matters set forth herein.

Notwithstanding anything to the contrary herein, any and all indemnification and reimbursement or other obligations in the EVPS Term Loan Credit Agreement and the other Credit Documents (as defined in the EVPS Term Loan Credit Agreement) that would survive the satisfaction and discharge of all other Obligations (as defined in the EVPS Term Loan Credit Agreement) shall survive the occurrence of the Effective Date.

T.      *Employee and Retiree Benefits.*

Unless otherwise provided herein, and subject to Article V hereof, pursuant to the EVPS Restructuring Support Agreement and the EVPS Restructuring Term Sheet, all employee wages, compensation, and benefit programs according to existing terms and practices and payment in full in cash of all claims arising thereunder or related thereto, including executive compensation programs (but excluding non-ordinary course bonus payments or any other payments other than ordinary course compensation and benefits programs), and any motions in the Bankruptcy Court for approval thereof (provided that payments made by the EVPS Debtors shall be solely for costs attributable to the EVPS Debtors' businesses, and shall not include any payments (including, without limitation, bonus payments) to insiders other than ordinary wages and benefits) in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans.  For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.  On the Effective Date, the EVPS Debtors shall (a) in consultation with the Required Consenting Initial Lenders and solely following diligence reasonably acceptable to the Required Consenting Initial Lenders, assume all employment agreements, existing indemnification agreements (except as otherwise set forth herein), or other agreements with current employees; *provided, however* that any employment agreements or other agreements, claims, and/or obligations related to Insiders shall not be assumed absent the consent of the Required Consenting Initial Lenders; or (b) enter into new agreements with such employees on terms and conditions acceptable to the EVPS Debtors, such employee, and the Required Consenting Initial Lenders.  Notwithstanding the foregoing, no employee equity or equity-based incentive plans, or any provisions set forth in any assumed compensation and benefit programs that provide for rights to acquire Interests in any of the EVPS Debtors, shall be assumed hereunder.

U.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IV.B and Article VIII hereof, each Reorganized EVPS Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the EVPS Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized EVPS Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the EVPS Debtors pursuant to the releases and exculpations contained in this Plan, including in Article IV.B and Article VIII hereof, which shall be deemed released and waived by the EVPS Debtors and the Reorganized EVPS Debtors as of the Effective Date.

The Reorganized EVPS Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized EVPS Debtors.  **No Entity (other than the Released Parties) may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, will not pursue any and all available Causes of Action of the EVPS Debtors against it.  Except as specifically released under this Plan, the EVPS Debtors and the Reorganized EVPS Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, including Article IV.B and Article VIII hereof.  Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized EVPS Debtor, without the need for any objection or responsive pleading by the Reorganized EVPS Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  The**

Reorganized EVPS Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court.  If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the EVPS Debtors or Reorganized EVPS Debtors, as applicable, and the objection party for thirty (30) days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the EVPS Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order, the Reorganized EVPS Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized EVPS Debtors reserve and shall retain such Causes of Action of the EVPS Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or pursuant to a Final Order, any Causes of Action that an EVPS Debtor may hold against any Entity shall vest in the Reorganized EVPS Debtors, except as otherwise expressly provided in this Plan, including Article VIII hereof.  The applicable Reorganized EVPS Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized EVPS Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

For the avoidance of doubt, Payor Claims shall be retained, reserved, and preserved, including, without limitation, all rights to commence, continue, pursue, prosecute, recover, and/or settle such Payor Claims.

*V.      Private Company.*

The Reorganized EVPS Debtors shall not have any class of equity securities listed on a national securities exchange and shall make commercially reasonable efforts to take the steps necessary to be a private company without Exchange Act reporting obligations upon emergence or as soon as practicable thereafter in accordance with and to the extent permitted by the Exchange Act; *provided*, *however*, the New Reorganized Envision Parent Organizational Documents shall contain customary registration rights.

*W.      Shared Services.*

On the Effective Date, the Shared Services Agreement shall be terminated and shall be of no further force and effect, and, as of the Effective Date, to the extent necessary or appropriate in connection with implementing the Restructuring Transactions, shall be replaced by the TSA.  Pursuant to such transition services agreement, as applicable, the parties thereto shall provide transition services, including certain shared services that had been provided pursuant to the Shared Services Agreement, for a period of up to two years.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in Article V.I.1 and elsewhere herein, all Executory Contracts or Unexpired Leases that are not otherwise rejected will be deemed assumed by the applicable Reorganized EVPS Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected by the EVPS Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in this Plan, the Assumed Executory Contract and Unexpired Leases Schedule, or the Rejected Executory Contracts and Unexpired Leases Schedule, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized EVPS Debtor in accordance with its terms, except as such terms may have been modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized EVPS Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in this Plan, the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to forty-five (45) days after the Effective Date, so long as such allocation, amendment, modification, or supplement is consistent with the EVPS Restructuring Support Agreement and the consent rights set forth therein.

The EVPS Debtors shall not reject any Executory Contract or Unexpired Lease other than those set forth on such list unless (1) the EVPS Debtors decide in good faith and based on new or changed information available after October 3, 2023, that it is in the best interests of the EVPS Debtors' Estates to reject such Executory Contract or Unexpired Lease, or (2)(a) the proposed rejection follows good faith negotiations between the EVPS Debtors and the counterparty to such Executory Contract or Unexpired Lease or an Affiliate of such counterparty and (b) such Executory Contract or Unexpired Lease is not replaced by a new agreement or other understanding between the EVPS Debtors and the counterparty or an affiliate of such counterparty unless such new agreement or understanding waives any potential rejection damages.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the EVPS Debtors or the Reorganized EVPS Debtors, the Estates, or their property without the need for any objection by the Reorganized EVPS Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the EVPS Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.12 and Article III.B.13 of this Plan, as applicable. General Unsecured Claims resulting from the rejection of Executory Contracts and Unexpired Leases of the EHC AmSurg Debtors shall be treated ratably with General Unsecured Claims against the other EVPS Debtors.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

No later than seven (7) calendar days before the Confirmation Hearing, the EVPS Debtors shall serve notices of proposed assumptions and proposed Cure amounts to the counterparties to the agreements listed on the Assumed Executory Contracts and Unexpired Leases Schedule, which shall include a description of the procedures for resolving disputes related to the proposed assumption of applicable Executory Contracts and Unexpired Leases.  In the event that any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after the provision of notices of proposed assumptions described above, a notice of proposed assumption and proposed Cure amount with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof.

Unless otherwise agreed in writing by the parties in the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be Filed, served, and actually received by counsel to the Debtors no later than the date and time specified in the notice (which shall not be less than fourteen (14) days after such notice is served).  The EVPS Debtors or the Reorganized EVPS Debtors, as applicable, may reconcile and settle in the ordinary course of the EVPS Debtors' business any dispute (following a timely filed objection) regarding any Cure or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court, and to the extent that an Executory Contract or Unexpired Lease is to be assumed but is not listed on the Assumed Executory Contracts and Unexpired Leases Schedule, the party to such Executory Contract or Unexpired Lease shall have its rights reserved to assert a Cure amount.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount (including any request for an additional or different Cure amount) will be deemed to have assented to such assumption or Cure amount and any untimely request for an additional or different Cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized EVPS Debtor, without the need for any objection by the Reorganized EVPS Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

The EVPS Debtors or the Reorganized EVPS Debtors, as applicable, shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that if a dispute regarding assumption or Cure is unresolved as of the Effective Date, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after such dispute is resolved.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.

The assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.  To the extent any provision (including, without limitation, any "change of control" provision) in any Executory Contract or Unexpired Lease assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including as a result of any of the Restructuring Transactions, then such provision shall be deemed modified such that the assumption contemplated by this Plan shall not entitle the counterparty thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, except for asserting and pursuing a Cure Amount.  Entry of the Confirmation Order shall constitute an order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, approving the assumption of the Executory Contracts and Unexpired Leases as set forth in this Article V.C.

D.     *Preexisting Obligations to the EVPS Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized EVPS Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the EVPS Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.     *Insurance Policies.*

Each of the EVPS Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder.  Unless otherwise provided in this Plan, on the Effective Date, (1) the EVPS Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized EVPS Debtors.

F.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the EVPS Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.     *Reservation of Rights.*

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the EVPS Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized EVPS Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.     *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.     *Employee Compensation and Benefits.*

1.     <u>Compensation and Benefit Programs</u>.

Subject to the provisions of this Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under this Plan and, following diligence reasonably acceptable to the Required Consenting Initial Lenders,

deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

    (a)    all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Program that provide for rights to acquire equity Interests in any of the EVPS Debtors;

    (b)    Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court;

    (c)    Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract; and

    (d)    Compensation and Benefits Programs that relate to insider employees, which such Compensation and Benefit Programs shall only be assumed or modified with the consent of the Required Consenting Stakeholders.

Any assumption of Compensation and Benefits Programs pursuant to the terms herein and the Restructuring Transactions and related matters contemplated by this Plan shall be deemed not to trigger (i) any applicable change of control, immediate vesting, termination (similar provisions therein) and (ii) an event of "Good Reason" (or a term of like import), in each case as a result of the consummation of the Restructuring Transactions. No counterparty shall have rights under a Compensation and Benefits Program assumed pursuant to this Plan other than those applicable immediately prior to such assumption.

    2.    <u>Workers' Compensation Programs</u>.

As of the Effective Date, the EVPS Debtors and the Reorganized EVPS Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws in jurisdictions in which the Reorganized EVPS Debtors operate; and (b) the EVPS Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance. All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the EVPS Debtors' or Reorganized EVPS Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs, and plans; *provided further* that nothing herein shall be deemed to impose any obligations on the EVPS Debtors in addition to what is provided for under applicable state law.

*J.*    *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any EVPS Debtor, including any Executory Contracts and Unexpired Leases assumed by such EVPS Debtor, will be performed by the applicable EVPS Debtor or the Reorganized EVPS Debtor in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.*    *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the EVPS Debtors or the Reorganized EVPS Debtors, as the case may be, and the holder of the applicable Allowed Claim on the first Distribution Date, the Reorganized EVPS Debtors shall, on or as soon as reasonably practicable after the Effective Date, make initial distributions under this Plan on account of Claims Allowed as of the Effective Date, subject to the Reorganized EVPS Debtors' right to object to Disputed Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the EVPS Debtors in the ordinary course of business during the Chapter 11 Cases

or assumed by the EVPS Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.E of this Plan, and (3) Allowed General Unsecured Claims shall be paid in accordance with Article III.B.9 of this Plan, as applicable.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the EVPS Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. Thereafter, a Distribution Date shall occur no less frequently than once in every ninety (90) day period, as necessary, in the Reorganized EVPS Debtors' sole discretion.

The EVPS Debtors shall use reasonable best efforts to make an interim distribution of Cash for Holders of General Unsecured Claims within six months of the Effective Date based on a calculation of the Allowed General Unsecured Claims and remaining Disputed General Unsecured Claims, as of such date.

B.      *Distribution Agent.*

All distributions under this Plan shall be made by the Reorganized EVPS Debtors; *provided,* that any distributions with respect to the EVPS L/C Claims and EVPS ABL Claims shall be made in accordance with the EVPS ABL Credit Agreement.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized EVPS Debtors.

C.      *Rights and Powers of the Distribution Agent.*

        1.      Powers of the Distribution Agent.

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

        2.      Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Distribution Agent shall be paid in Cash by the Reorganized EVPS Debtors.

D.      *Special Rules for Distributions to Holders of Disputed Claims and Interests*

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed by the relevant parties, unless as otherwise agreed to by the EVPS Debtors or set forth in an order of the Bankruptcy Court:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; *provided, however,* that if a portion of a Claim is not Disputed, the Distribution Agent may make a partial distribution based on such portion of such Claim that is not Disputed; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.  Any dividends or other distributions arising from property distributed to holders of Allowed Claims or Interests, as applicable, in a Class and paid to such holders under this Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Interests in such Class.

E.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.  For the avoidance of doubt, the Distribution Record Date shall not apply to the beneficial holders of EVPS Unsecured Notes Claims which shall receive a distribution from the Distribution Agent in accordance with the terms of this Plan and the customary practices of DTC and subject to the EVPS Unsecured Notes Trustee Charging Lien.

2.      Delivery of Distributions in General.

Except as otherwise provided herein (including with respect to the EVPS Unsecured Notes Claims), the Distribution Agent shall make distributions to holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such holder as indicated on the EVPS Debtors' records as of the date of any such distribution or at the address in any written notice of address change delivered to the Debtors or the Distribution Agent; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized EVPS Debtors.

All distributions to holders of EVPS Unsecured Notes Claims shall be deemed completed when made to (or at the direction of) the EVPS Unsecured Notes Trustee, which shall be deemed to be the single holder of all EVPS Unsecured Notes Claims for purposes of distributions to be made hereunder.  Subject to the EVPS Unsecured Notes Trustee Charging Lien, the EVPS Unsecured Notes Trustee may transfer or direct the transfer of such distributions (and may rely upon information received from the Debtors for purposes of such transfer) through the facilities of DTC in accordance with DTC's customary practices.  For the avoidance of doubt, DTC shall be considered a single holder with respect to distributions made on account of the EVPS Unsecured Notes.  The EVPS Unsecured Notes Trustee shall not incur any liability whatsoever on account of any distributions under this Plan except for gross negligence or willful misconduct.  If the EVPS Unsecured Notes Trustee is unable to make, or consents to the Reorganized Debtors making, such distributions through the facilities of DTC, the Reorganized Debtors shall make such distribution (subject to the EVPS Unsecured Notes Trustee Charging Lien).  Notwithstanding any other provision of this Plan, the EVPS Unsecured Notes Trustee shall have no duties, obligations, responsibilities, or liability with respect to any form of distribution to holders of EVPS Unsecured Notes Claims that is not DTC eligible, and the Debtors or the Reorganized Debtors, as applicable, shall make such distributions (subject to the EVPS Unsecured Notes Trustee Charging Lien).

3.      Minimum Distributions.

No fractional shares of Reorganized Envision Parent New Common Stock or New Warrants shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to this Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of Reorganized Envision Parent New Common Stock or New Warrants that is not a whole number, the actual distribution of shares of Reorganized Envision Parent New Common Stock or New Warrants shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of reorganized Envision Parent New Common Stock and New Warrants to be distributed to holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.

4.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such holder shall be made unless and until the Distribution Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized EVPS Debtors automatically and without need for a further order

by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

       5.   Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.N hereof shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the EVPS Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under this Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under this Plan.

*F.    Manner of Payment.*

       1.   Except as otherwise set forth herein, all distributions of the Reorganized Envision Parent New Common Stock, Exit Term Loans, and New Warrants to the holders of the applicable Allowed Claims under this Plan shall be made by the Distribution Agent on behalf of the EVPS Debtors or Reorganized EVPS Debtors, as applicable.

       2.   All distributions of Cash to the holders of the applicable Allowed Claims under this Plan shall be made by the Distribution Agent on behalf of the applicable EVPS Debtor or Reorganized EVPS Debtor.

       3.   At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

*G.    Section 1145 and 4(a)(2) Exemption.*

To the extent offered, issued, and distributed pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the Reorganized Envision Parent New Common Stock (other than any Reorganized Envision Parent New Common Stock underlying the Reorganized Envision Parent Management Incentive Plan) and the New Warrants (including the shares of Reorganized Envision Parent New Common Stock issuable upon the exercise of the New Warrants), as contemplated by Article IV.D hereof, (a) shall be exempt from the registration requirements of section 5 of the Securities Act and any state or local law requiring registration for the offer or sale of a Security or registration or licensing of an issuer of a security in reliance of section 1145 of the Bankruptcy Code to the fullest extent available, (b)(i) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) are freely tradable and transferable without restriction under the Securities Act by any initial recipient thereof that (A) is not an "affiliate" of the Reorganized EVPS Debtors as defined in Rule 144(a)(1) under the Securities Act, (B) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (C) has not acquired the Reorganized Envision Parent New Common Stock or the New Warrants from an "affiliate" of the Reorganized EVPS Debtors within one year of such transfer and (D) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of the Bankruptcy Code, and (c) will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the SEC or state or local securities laws, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) the restrictions in the New Reorganized Envision Parent Organizational Documents.

To the extent section 1145 is not available, distribution of Reorganized Envision Parent New Common Stock shall be exempt from the registration requirements of the Securities Act as a private placement pursuant to section 4(a)(2) thereunder, and/or the safe harbor of Regulation D, Regulation S, or another available exemption from registration under the Securities Act.

All Reorganized Envision Parent New Common Stock authorized, issued and distributed pursuant to this Plan in reliance upon the exemption from registration provided in section 1145 of the Bankruptcy Code may be resold without registration under the Securities Act by the recipients thereof that are not "underwriters" (as defined in section 2(a)(11) of the Securities Act and in the Bankruptcy Code), subject to: (1) compliance with any rules and regulations of the SEC or other federal, state, local or and foreign securities laws applicable at the time of any future transfer of such Reorganized Envision Parent New Common Stock, and obtaining any applicable regulatory approvals and (2) the transfer restrictions set forth in the New Reorganized Envision Parent Organizational Documents, if any.  Any Securities distributed pursuant to section 4(a)(2) of the Securities Act will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act or applicable state securities laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and applicable state Securities Laws and subject to any restrictions in the New Reorganized Envision Parent Organizational Documents.

Should the Reorganized Debtors elect, on or after the Effective Date, to reflect any ownership of the Reorganized Envision Parent New Common Stock or New Warrants through the facilities of DTC, and presuming DTC agrees to such request, DTC is authorized to rely solely on this Plan and the Confirmation Order, and the Reorganized Debtors need not provide any further evidence other than this Plan or the Confirmation Order with respect to the treatment of the Reorganized Envision Parent New Common Stock or New Warrants under applicable securities laws. The DTC and all other Persons and Entities shall be required to accept and conclusively rely upon this Plan and the Confirmation Order in lieu of a legal opinion regarding whether the Reorganized Envision Parent New Common Stock and New Warrants to be issued under this Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in this Plan, no Entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by this Plan, including, for the avoidance of doubt, whether the Reorganized Envision  Parent New Common Stock and New Warrants (to the extent they are deemed to be Securities) to be issued under this Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

H.      *Compliance with Tax Requirements.*

In connection with this Plan, to the extent applicable, the EVPS Debtors, Reorganized EVPS Debtors, Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The EVPS Debtors and Reorganized EVPS Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

I.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

J.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

K.      *Setoffs and Recoupment.*

Except as expressly provided in this Plan or the EVPS Cash Collateral Order, including pursuant to Article VIII hereof, each Reorganized EVPS Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized EVPS Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized EVPS Debtor(s) and the holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized EVPS Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized EVPS Debtor or its successor may possess against the applicable holder.  In no event shall any holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the EVPS Debtors in accordance with Article XII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

L.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The EVPS Debtors or the Reorganized EVPS Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not an EVPS Debtor or a Reorganized EVPS Debtor (including, but not limited to, amounts recovered from any applicable insurance provider).  Subject to the second to last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not an EVPS Debtor or a Reorganized EVPS Debtor on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized EVPS Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized EVPS Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the EVPS Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the EVPS Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

If an applicable insurance policy has a self-insured retention ("SIR") or a deductible, the Holder of an Allowed Claim that is payable pursuant to such insurance policy shall have an Allowed General Unsecured Claim against the applicable Debtor's estate up to the amount of the SIR or deductible amount that may be established upon the liquidation of the Claim and such Holder's recovery from the Debtors or Reorganized Debtors shall be solely in the form of its distribution on account of such Allowed General Unsecured Claim under this Plan.  Any recovery on account of the Claim in excess of the SIR or deductible established upon the liquidation of the Claim shall be recovered solely from insurance coverage (if any) and only to the extent of available insurance coverage and any proceeds thereof, if any.  Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy. **Nothing herein relieves any Entity from the requirement to timely file a Proof of Claim by the applicable Claims Bar Date.**

3.   Applicability of Insurance Policies.

Except as otherwise provided in this Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Causes of Action that the EVPS Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING**
**CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Allowance of Claims.*

The EVPS Debtors and the Reorganized EVPS Debtors, as applicable, subject to Article VII.B and any applicable restrictions in the EVPS Restructuring Support Agreement or the EVPS Cash Collateral Order, and the Reorganized EVPS Debtors, as applicable, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed.  Upon such determination, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, may update the Claims Register to reflect such Proofs of Claim as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims under Article III.B (including, for the avoidance of doubt, Reinstatement), to mark such Proofs of Claims as satisfied.  The EVPS Debtors may determine, in their sole discretion, to Reinstate a claim that would be an Unimpaired Claim under this Plan, even if no timely Proof of Claim is filed therefor.

B.    *Claims Administration Responsibilities.*

The EVPS Debtors and the Reorganized EVPS Debtors, as applicable, shall have the authority, without further notice to or action, order, or approval of the Bankruptcy Code, to (i) File, prosecute, litigate to judgment, or withdraw any objections to Claims, (ii) settle, compromise, or resolve any such objections to Claims, and (iii) administer and adjust the Claims Register to reflect such settlements or compromises.  Except as otherwise provided herein, from and after the Effective Date, each Reorganized EVPS Debtor shall have and retain any and all rights and defenses such EVPS Debtor had immediately prior to the Effective Date with respect to any Claim or Interest (including any Disputed Claim or Interest), including the Causes of Action retained pursuant to Article IV.U of this Plan.

The Committee shall have the right to appoint an individual or entity to monitor the claims reconciliation process with respect to EVPS Debtors' General Unsecured Claims and the EVPS Debtors shall consult with such individual regarding such claims reconciliation process and such individual will have a consent right, not to be unreasonably withheld and to be exercised in good faith, with respect to all resolutions of General Unsecured Claims.  The fees and expenses payable to such individual will be payable only from cash in the General Unsecured Claims' Pool or such other source that is acceptable to the EVPS Debtors, the Committee, the Ad Hoc Group of EVPS Unsecured Notes Claims, and the Consenting Stakeholders.  The EVPS Debtors shall complete such reconciliation process by the Claims Reconciliation Deadline; *provided, further*, that the EVPS Debtors may request an extension of the Claims Reconciliation Deadline from the Bankruptcy Court for cause.  Except as aforesaid, the individual or entity appointed to monitor the claims reconciliation process shall, to the fullest extent permitted by applicable law, not be held liable for any and all losses, claims, costs, expenses, and liabilities for which the individual or entity appointed to monitor the claims reconciliation may be subject by reason of the individual's or entity's execution of such claim monitor's duties under this Plan.

C.    *Disputed Claims Process.*

On or before the Effective Date, the EVPS Debtors or Reorganized EVPS Debtors, as applicable, shall be authorized, but not directed, to establish one or more reserves for alleged General Unsecured Claims that are Disputed, contingent, or have not yet been Allowed, in an estimated amount or amounts as reasonably determined by the applicable EVPS Debtors or Reorganized EVPS Debtors, as applicable, in their discretion, consisting of the applicable

consideration in the same proportions and amounts as provided for in this Plan. The Reorganized EVPS Debtors shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed as Claims as of the Effective Date under Article III of this Plan solely to the extent of the amounts available in the applicable reserves.

Any assets held in any such reserve shall be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9. Such assets will therefore be subject to entity-level taxation, and the EVPS Debtors and Reorganized EVPS Debtors, as applicable, will be required to comply with the relevant rules.

D.     *Estimation of Claims and Interests*

Before, on, or after the Effective Date, the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under this Plan (including for purposes of distributions), and the relevant Reorganized EVPS Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.     *Adjustment to Claims or Interests Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that is substantiated by an invoice that is invalid, previously rejected, or otherwise deemed erroneous by the Debtors, or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized EVPS Debtors without the Reorganized EVPS Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.     *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the later of (1) the Claims Reconciliation Deadline and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such claims. For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims set forth in this paragraph at any time in its discretion or upon request by the EVPS Debtors, the Reorganized EVPS Debtors, or any party in interest; *provided* that such request is Filed prior to the Claims Reconciliation Deadline.

G.     *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, and subject to the terms hereof, including Article VIII, all Claims and Interests of any Entity from which property is sought by the EVPS Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the EVPS Debtors or the Reorganized EVPS Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed if: (a) the Entity, on the one hand, and the EVPS Debtors or the Reorganized EVPS

Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as otherwise provided herein and subject to Article VI.B, if a party Files a Proof of Claim and the EVPS Debtors or the Reorganized EVPS Debtors, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VII of this Plan. **Except as otherwise provided herein or as agreed to by the Reorganized EVPS Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

H.      *Amendments to Claims.*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized EVPS Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

I.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of this Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

J.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Interest in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

K.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, including the EVPS Cash Collateral Order, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in this Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any intercompany claims that the Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities, liens on, obligations of, rights against, and Interests in the EVPS Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the EVPS Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of such a Claim or Interest has accepted this Plan.  The Confirmation Order, if applicable, shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date. Notwithstanding anything to the contrary, nothing in this Plan shall release or modify any claims or obligations under the TSA, the EHC ASC Debtors SPA, the SPA Order, any Tax Separation Agreement, the Exit Term Loan Credit Facility, the New Reorganized Envision Parent Organizational Documents, or any assumed contracts or other obligations or arrangements that are expressly contemplated to be preserved under this Plan.

B.      **Release of Liens.**

**Except as otherwise provided (i) in this Plan or the Confirmation Order or (ii) in any contract, instrument, release, or other agreement or document amended or created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, (except for (x) the Liens securing Other EVPS Secured Claims that the Debtors elect to Reinstate in accordance with this Plan and (y) the Liens securing any undrawn EVPS Letters of Credit that remain outstanding under the EVPS ABL Credit Agreement as of the Effective Date in accordance with Article II.B of this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized EVPS Debtors and their successors and assigns.  Any holder of such Secured Claim (and the applicable agents for such holder, including, without limitation, the Agents/Trustees) shall be authorized and directed, at the sole cost and expense of the Reorganized EVPS Debtors, to release any collateral or other property of any EVPS Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder, including, without limitation, the Agents/Trustees), and to take such actions as may be reasonably requested by the Reorganized EVPS Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the EVPS Debtors or the Reorganized EVPS Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized EVPS Debtors shall (a) pay the reasonable and documented fees and expenses of the**

Agents/Trustees, including the fees and expenses of their advisors, in each case including local counsel, to the extent payable under the applicable credit agreement or indenture, as applicable, in connection with the foregoing and (b) be entitled to make any such filings or recordings on such holder's behalf.

C.      *Releases by the EVPS Debtors.*

Except as expressly set forth in this Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the EVPS Debtors and the Reorganized EVPS Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the EVPS Debtors or the Reorganized EVPS Debtors, which the EVPS Debtors or Reorganized EVPS Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the EVPS Debtors or Reorganized EVPS Debtors, based on or relating to, or in any manner arising from, in whole or in part, (i) the management, ownership, or operation of an EVPS Debtor, (ii) the purchase, sale, or rescission of any security or debt instrument of the EVPS Debtors, the EVPS Credit Agreements and any other Loan Documents (as defined in the EVPS Credit Agreements), (iii) the subject matter of, or the transactions, events, circumstances, acts, or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including, the negotiation, formulation, or preparation of the Restructuring Transactions, (iv) the business or contractual arrangements between any EVPS Debtor and any other Person or Entity, (v) the EVPS Debtors' in- or out-of-court restructuring efforts, (vi) intercompany transactions, (vii) the EVPS Restructuring Support Agreement, the Definitive Documents, or any Restructuring Transactions, (viii) any contract, instrument, release, or other agreement or document created or entered into in connection with the EVPS Restructuring Support Agreement, the Separation Memorandum and any operative documents in connection therewith, the Definitive Documents or the Restructuring Transactions, including the issuance or distribution of securities pursuant to the Restructuring Transactions, (ix) the distribution of property under the Restructuring Transactions or any other related agreement, or (x) any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations, after the Effective Date, of any party or Entity under this Plan, the Confirmation Order, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.  Notwithstanding anything to the contrary, nothing in this Plan shall release or modify any claims or obligations under the TSA, the EHC ASC Debtors SPA, the SPA Order, any Tax Separation Agreement, the Exit Term Loan Credit Facility, the New Reorganized Envision Parent Organizational Documents, or any assumed contracts or other obligations or arrangements that are expressly contemplated to be preserved under this Plan.

D.      *Releases by Holders of Claims and Interests.*

Except as expressly set forth in this Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the EVPS Debtors or Reorganized EVPS Debtors which the EVPS Debtors or Reorganized EVPS Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the EVPS Debtors or Reorganized EVPS Debtors, based on or relating to, or in any manner arising from, in whole or in part, (i) the management, ownership, or operation of the EVPS Debtors, (ii) the purchase, sale, or rescission of any security or debt instrument of the EVPS Debtors, the EVPS Credit Agreements and any of the other Loan Documents (as defined in the EVPS Credit Agreements), (iii) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the EVPS Restructuring Transactions, including, the negotiation, formulation, or preparation of the Restructuring Transactions,

(iv) the business or contractual arrangements between any EVPS Debtor and any other Person or Entity, (v) the EVPS Debtors' in-or out-of-court restructuring efforts, (vi) intercompany transactions, (vii) the EVPS Restructuring Support Agreement, the Definitive Documents, or any Restructuring Transactions, (viii) any contract, instrument, release, or other agreement or document created or entered into in connection with the EVPS Restructuring Support Agreement, the Separation Memorandum and any operative documents in connection therewith, the Definitive Documents, or the Restructuring Transactions, including the issuance or distribution of securities pursuant to the Restructuring Transactions, (ix) the distribution of property under the Restructuring Transactions or any other related agreement, or (x) any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations, after the Effective Date, of any party or Entity under this Plan, the Confirmation Order, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.  Notwithstanding anything to the contrary, nothing in this Plan shall release or modify any claims or obligations under the TSA, the EHC ASC Debtors SPA, the SPA Order, any Tax Separation Agreement, the Exit Term Loan Credit Facility, the New Reorganized Envision Parent Organizational Documents, or any assumed contracts or other obligations or arrangements that are expressly contemplated to be preserved under this Plan.

E.      *Exculpation.*

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the EVPS Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation of this Plan, the pursuit of Consummation of this Plan, the Patient Care Ombudsman's evaluations, reports, pleadings, or other writings filed by or on behalf of the Patient Care Ombudsman in or in connection with the Chapter 11 Cases, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan, or such distributions made pursuant to this Plan.

F.      *Injunction.*

Except as otherwise expressly provided in this Plan, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the EVPS Debtors, the Reorganized EVPS Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest

or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to this Plan.

**No Person or Entity may commence or pursue a Claim or Cause of Action or Covered Claim, as applicable, of any kind against the EVPS Debtors, the Reorganized EVPS Debtors, the Exculpated Parties, the Released Parties, or the Covered Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action or Covered Claim, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action or Covered Claim, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action or Covered Claim, as applicable, against any such EVPS Debtor, Reorganized EVPS Debtor, Exculpated Party, Released Party, or Covered Party, as applicable. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action or Covered Claim, as applicable, represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any EVPS Debtor, EVPS Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action or Covered Claim, as applicable, file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action or Covered Claim as applicable, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.**

**No Person or Entity shall seek or initiate formal or informal discovery requests, demands, or proceedings upon or from the Patient Care Ombudsman or Professionals employed by the Patient Care Ombudsman without first seeking permission, upon sufficient prior notice to the Patient Care Ombudsman or Professionals employed by the Patient Care Ombudsman, from the Bankruptcy Court.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

G.     *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized EVPS Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized EVPS Debtors, or another Entity with whom the Reorganized EVPS Debtors have been associated, solely because each EVPS Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the EVPS Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.     *Document Retention.*

On and after the Effective Date, the Reorganized EVPS Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized EVPS Debtors so long as such alteration, amendment, modification, or supplement is not inconsistent with state law or regulations and so long as the Reorganized EVPS Debtors maintain all patient records in accordance with all applicable nonbankruptcy laws and regulations.

I.     *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of

the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

a.   the Bankruptcy Court shall have entered the Confirmation Order, which shall:

   i.   authorize the EVPS Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan;

   ii.   provide for, subject to the occurrence of the Effective Date, the waiver and cancellation of the Intercompany Loan Claims in accordance with the EHC AmSurg Debtors Sale Transaction and EHC ASC Debtors SPA;

   iii.   decree that the provisions in the Confirmation Order and this Plan are nonseverable and mutually dependent;

   iv.   authorize the Debtors, as applicable and/or necessary, to:  (a) implement the Restructuring Transactions, including the EHC AmSurg Debtors Sale Transaction; (b) distribute the Reorganized Envision Parent New Common Stock; and the New Warrants pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (c) distribute the Exit Term Loans; (d) make all distributions and issuances as required under this Plan, including cash, the Reorganized Envision Parent New Common Stock, and the New Warrants; and (e) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement, including the Reorganized Envision Parent Management Incentive Plan;

   v.   authorize the implementation of this Plan in accordance with its terms; and

   vi.   provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under this Plan, and including the EHC AmSurg Debtors Sale Transaction, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

b.   the EVPS Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Plan;

c.   the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the EVPS Restructuring Support Agreement, the EVPS Restructuring Term Sheet, and this Plan and, with respect to the EVPS ABL Review Matters, acceptable in form and substance to the EVPS ABL Agent;

d.   the EVPS Restructuring Support Agreement and AmSurg Restructuring Support Agreement shall remain in full force and effect;

e.  all professional fees and expenses of retained professionals that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in a professional fee escrow account pending the approval of such fees and expenses by the Bankruptcy Court;

f.  the Exit Term Loan Credit Facility and the New EVPS ABL Credit Facility shall have been duly executed and delivered by all of the entities that are party thereto and all conditions precedent (other than conditions related to the occurrence of the Effective Date) to the effectiveness of such facility shall have been satisfied or waived in writing in accordance with the terms thereof and the closing thereof shall have occurred;

g.  the SPA Order shall have been entered by the Bankruptcy Court and shall remain in full force and effect;

h.  the EHC AmSurg Debtors Sale Documents shall have been duly executed and delivered and all conditions precedent (other than conditions related to the occurrence of the Effective Date) to the effectiveness of the EHC AmSurg Debtors Sale Transaction shall have been satisfied or waived in accordance with the terms of the EHC AmSurg Debtors Sale Documents and the EHC AmSurg Debtors Sale Transaction shall have occurred;

i.  the Intercompany Loan Claim shall not have been disallowed and is not subject to Challenge (as defined in the EVPS Cash Collateral Order);

j.  the EVPS Debtors' and/or AmSurg Debtors' use of Cash Collateral shall not have been terminated and the EVPS Cash Collateral Order shall not have been vacated, stayed, or modified without the prior written consent of the EVPS ABL Agent and the Ad Hoc Group;

k.  none of the Chapter 11 Cases of the EVPS Debtors shall have been converted to a case under chapter 7 of the Bankruptcy Code or shall have been dismissed;

l.  no trustee or examiner with expanded powers shall have been appointed under any chapter of the Bankruptcy Code with respect to the EVPS Debtors;

m.  all reasonable and documented fees and out-of-pocket expenses of (1) the Ad Hoc Group of EVPS Unsecured Notes Claims Advisors, (2) the Ad Hoc Group, and (3) the Fourth Out Ad Hoc Group Advisors, including, without limitation, the fees and out-of-pocket costs and expenses of each of the Ad Hoc Advisors, in each case, shall have been paid in full; *provided* that the reasonable and documented fees and out-of-pocket costs and expenses of the Ad Hoc Group of EVPS Unsecured Notes Claims Advisor shall not exceed $750,000; *provided, further,* that the reasonable and documented fees and out-of-pocket costs and expenses of the Fourth Out Ad Hoc Group Advisors shall not exceed $950,000;

n.  each document or agreement constituting the applicable Definitive Documents shall have been executed and/or effectuated and remain in full force and effect, shall be in form and substance acceptable to the EVPS Debtors, the Required Consenting Stakeholders, and consistent with the EVPS Restructuring Support Agreement, and any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived; *provided* that any provision of the Definitive Documents (including any conditions precedent to such Definitive Documents' effectiveness and any waiver thereof) materially affecting the rights of holders of EVPS Unsecured Notes Claims or the EVPS Debtors' General Unsecured Claims shall be reasonably acceptable to the Committee, the Ad Hoc Group of EVPS Unsecured Notes Claims, the EVPS Unsecured Notes Trustee, the Debtors, and the Required Consenting Stakeholders;

o.  the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated in the EVPS Restructuring Term Sheet in a manner consistent with the EVPS Restructuring Support Agreement, the EVPS Restructuring Term Sheet, and this Plan;

p. all Restructuring Expenses, to the extent invoiced as provided herein at least two (2) Business Days before the Effective Date, shall have been indefeasibly paid in full in cash in accordance with the terms and conditions set forth in the Restructuring Support Agreement and the EVPS Cash Collateral Order;

q. all EVPS Unsecured Notes Trustee Fees, to the extent invoiced as provided herein at least two (2) Business Days before the Effective Date, shall have been indefeasibly paid in full in cash;

r. the Indemnified Parties constitute Released Parties pursuant to this Plan;

s. the EVPS Debtors and the AmSurg Debtors shall have funded their respective portion of the Cash Amount in full, and the EVPS Debtors shall have established and funded the General Unsecured Claims' Recovery Pool Escrow Account and shall have funded $35 million in Cash to holders of EVPS Unsecured Notes Claims in accordance with this Plan,

t. the Professional Fee Escrow Account shall have been funded by the EVPS Debtors and the AmSurg Debtors; and

u. the conditions precedent to the Effective Date in Article IX.A of the AmSurg Plan shall have been satisfied (or such conditions have been waived in accordance with the AmSurg Plan), and the AmSurg Debtors are prepared to emerge from their Chapter 11 Cases and the AmSurg Plan is set to go effective contemporaneously with the EVPS Debtors and this Plan, respectively.

B.      *Waiver of Conditions.*

Except as otherwise specified in this Plan, any one or more of the conditions to Consummation (or component thereof) set forth in this Article IX may be waived by the EVPS Debtors with the prior written consent of the Required Consenting Stakeholders and the Agents, where applicable and subject to their consent rights as provided in this Plan, (not to be withheld unreasonably), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan; *provided* that, any waiver which would materially affect the rights of holders of EVPS Unsecured Notes Claims or the EVPS Debtors' General Unsecured Claims shall be reasonably acceptable to the Committee, the Ad Hoc Group of EVPS Unsecured Notes Claims, the EVPS Unsecured Notes Trustee, the Debtors, and the Required Consenting Stakeholders; *provided, further* that the condition precedent set forth in Article IX.A(p) may only be waived by the EVPS Term Loan Agent, the EVPS ABL Agent or the Ad Hoc Group, as applicable, as to the Restructuring Expenses owing to such parties or their respective Related Parties, and; *provided, further* that the consent of AmSurg Parent or Reorganized AmSurg Parent, as applicable, shall be required to waive or amend the condition precedent set forth in Article IX.A(g), Article IX.A(h), and Article IX.A(i); and *provided*, further, that the consent of the Committee shall be required to waive or amend the condition precedent set forth in Article IX.A(s), Article IX.A(t), and Article IX.A(u) (with such consent not to be unreasonably withheld, conditioned, or delayed); and *provided*, *further*, that the consent of the EVPS Unsecured Notes Trustee shall be required to waive or amend the condition precedent set forth in Article IX.A(q).

C.      *Effect of Failure of Conditions.*

Subject to the EVPS Restructuring Support Agreement, if Consummation does not occur as to any Debtor, this Plan shall be null and void in all respects as to such Debtor and nothing contained in this Plan, the Disclosure Statement, or the EVPS Restructuring Support Agreement shall:  (1) constitute a waiver or release of any Claims by the EVPS Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the EVPS Debtors, any holders of Claims or Interests, or any other Entity;  or (3) constitute an admission, acknowledgment, offer, or undertaking by the EVPS Debtors, any holders of Claims or Interests, or any other Entity.

D.      *Substantial Consummation*

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the EVPS Restructuring Support Agreement and the EVPS Cash Collateral Order, the EVPS Debtors reserve the right to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to (x)  those restrictions on modifications set forth in this Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, (y) the consent rights set forth in the EVPS Restructuring Support Agreement, the EVPS Cash Collateral Order, and this Plan, and (z) the consent of the Committee and the EVPS Unsecured Notes Trustee (with such consent not to be unreasonably withheld, conditioned, or delayed and solely with respect to matters materially affecting the rights of holders of EVPS Unsecured Notes Claims and EVPS Debtors' General Unsecured Claims), the EVPS Debtors expressly reserve their right to revoke or withdraw, or to alter, amend, or modify this Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court so to alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan. Notwithstanding the foregoing, (1) none of the EVPS ABL Review Matters shall be modified or amended in a manner adverse to the rights, recoveries, or distributions on account of (or the expense reimbursement, releases, and injunction in favor of) the EVPS ABL Agent or the holders of EVPS L/C Claims or EVPS ABL Claims without the prior written consent of the EVPS ABL Agent (which may be by email from its primary restructuring counsel), (2) none of the AmSurg Review Matters (including the definition thereof) shall be modified or amended in a manner inconsistent with the terms of this Plan, the EHC ASC Debtors SPA, or SPA Order without the prior written consent of the Required Consenting AmSurg Second Lien Term Lenders (which may be by email from its primary restructuring counsel), and (3) any such modification to this Plan which would materially affect the rights of holders of EVPS Unsecured Notes Claims or the EVPS Debtors' General Unsecured Claims shall be reasonably acceptable to the Committee, the EVPS Unsecured Notes Trustee, the Unsecured Bondholders, the Debtors, and the Required Consenting Stakeholders; *provided* that none of the provisions herein regarding payment of the EVPS Unsecured Notes Trustee Fees shall be modified or amended without the prior written consent of the EVPS Unsecured Notes Trustee.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

To the extent permitted by the EVPS Restructuring Support Agreement and the EVPS Cash Collateral Order, the EVPS Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the EVPS Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

b.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

c.   resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a EVPS Debtor is party or with respect to which a EVPS Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized EVPS Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

d.   ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

e.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a EVPS Debtor that may be pending on the Effective Date;

f.   adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

g.   enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan or the Disclosure Statement;

h.   enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

i.   resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

j.   issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

k.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

63

l.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K hereof;

m.    enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

n.    determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, including the EVPS Restructuring Support Agreement;

o.    enter an order concluding or closing the Chapter 11 Cases;

p.    adjudicate any and all disputes arising from or relating to distributions under this Plan;

q.    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

r.    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

s.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

t.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

u.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII hereof;

v.    enforce all orders previously entered by the Bankruptcy Court;

w.    hear any other matter not inconsistent with the Bankruptcy Code; and

x.    resolve any and all suits, proceedings, or other matters against or involving the Patient Care Ombudsman or the Patient Care Ombudsman's Professionals

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Reorganized Envision Parent Organizational Documents and the New EVPS ABL Facility, if any, and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the EVPS Debtors, the Reorganized EVPS Debtors, any and all holders of Claims or Interests (irrespective of whether such holders of Claims or Interests have, or are deemed to have accepted this Plan), all Entities that are parties

to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the EVPS Debtors.

B.     *Additional Documents.*

On or before the Effective Date, and consistent in all respects with the terms of the EVPS Restructuring Support Agreement, the EVPS Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and the EVPS Restructuring Support Agreement.  The EVPS Debtors or the Reorganized EVPS Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

C.     *Payment of Statutory Fees.*

All monthly reports shall be filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by the EVPS Debtors or the Reorganized EVPS Debtors on the Effective Date, and following the Effective Date, the Reorganized EVPS Debtors shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof), and shall file quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Reorganized EVPS Debtor shall remain obligated to pay such quarterly fees to the U.S. Trustee and to file quarterly reports until the earliest of that particular Reorganized EVPS Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

D.     *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and the members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases except (a) for purposes of prosecution of requests for payment of Professional Claims for services rendered and reimbursement of expenses on a final basis and (b) with respect to any consent or consultation rights of the Committee that remain applicable after the Effective Date.  Except as otherwise provided for in this Plan with respect to the payment of EVPS Unsecured Notes Trustee Fees, the Reorganized EVPS Debtors shall not be responsible for paying any fees or expenses incurred by the members or Professionals of the Committee after the Effective Date except with respect to (a) the prosecution of requests for payment of Professional Claims for services rendered and reimbursement of expenses on a final basis and (b) any consent or consultation rights of the Committee that remain applicable after the Effective Date.

E.     *Reservation of Rights.*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

F.     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

   All notices, requests, and demands to or upon the EVPS Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Envision Healthcare Corporation<br>1A Burton Hills Boulevard<br>Nashville, TN 37215<br>Attention:  Ilene Moore, General Counsel<br>E-mail address:  Ilene.Moore@envisionhealth.com | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Edward O. Sassower; Joshua A. Sussberg; Nicole L. Greenblatt<br>E-mail address:  jsussberg@kirkland.com; ngreenblatt@kirkland.com<br><br>and<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attention:  John R. Luze<br>E-mail address:  john.luze@kirkland.com<br><br>and<br><br>Jackson Walker L.L.P.<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Attention:  Rebecca Blake Chaikin; Vienna Anaya; Javier Gonzalez<br>E-mail address:  rchaikin@jw.com; vanaya@jw.com; jgonzalez@jw.com |
| **United States Trustee** | **Counsel to the Consenting EVPS Term Lenders** |
| Office of The United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002 | Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attention:  Scott J. Greenberg; Jason Zachary Goldstein; Keith Martorana<br>E-mail address:  sgreenberg@gibsondunn.com; jgoldstein@gibsondunn.com; kmartorana@gibsondunn.com |
| **Counsel to the EVPS ABL Agent** | **Counsel to the Consenting Sponsor** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attention: Kenneth Steinberg; Eli Vonnegut; Gene Goldmintz<br>E-mail address:  kenneth.steinberg@davispolk.com; eli.vonnegut@davispolk.com; gene.goldmintz@davispolk.com | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Attention:  Brian S. Hermann; Jacob A. Adlerstein; Brian Bolin<br>E-mail address:  bhermann@paulweiss.com; jadlerstein@paulweiss.com; bbolin@paulweiss.com |

| **Counsel to the Committee** | **Counsel to the Consenting AmSurg Second Lien Term Lenders** |
|---|---|
| White & Case LLP<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Attention:  Thomas Lauria<br>E-mail address:  tlauria@whitecase.com<br><br>and<br><br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Attention:  Harrison Denman<br>E-mail address:  harrison.denman@whitecase.com<br><br>and<br><br>White & Case LLP<br>111 S Wacker Dr #5100<br>Chicago, IL 60606<br>Attention:  Will Guerrieri<br>E-mail address:  william.guerrieri@whitecase.com | Milbank LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Attention:  Dennis Dunne; Samuel Khalil; Michael Price<br>E-mail address: ddunne@milbank.com;<br>skhalil@milbank.com; mprice@milbank.com |
| **Counsel to the EVPS Term Loan Agent** | **Counsel to the Ad Hoc Group of EVPS Unsecured Notes Claims** |
| Kilpatrick Townsend & Stockton LLP<br>1114 Avenue of the Americas<br>New York, NY 10036-7703<br>Attention:  Gianfranco Finizio<br>E-mail address:<br>gfinizio@kilpatricktownsend.com | Dechert LLP<br>Three Bryant Park<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Attention: Stephen Zide, Eric Hilmo<br>E-mail address: Stephen.Zide@dechert.com;<br>eric.hilmo@dechert.com |
| **Counsel to the Fourth Out Ad Hoc Group** | |
| Herrick, Feinstein LLP<br>Two Park Avenue<br>New York, NY 10016<br>Attention: Christopher Carty, Sean O'Donnell<br>E-mail address: ccarty@herrick.com;<br>sodonnell@herrick.com | |

After the Effective Date, the Reorganized EVPS Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized EVPS Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**Notwithstanding anything to the contrary herein, the automatic stay imposed by section 362 of the Bankruptcy Code and the injunctions set forth in Article VIII.F of this Plan shall remain applicable to all Claims arising prior to the Effective Date up to the amount of the applicable SIR or deductible, which Claims shall be treated as General Unsecured Claims.**

I.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the EVPS Restructuring Support Agreement, this Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

J.      *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at: https://restructuring.ra.kroll.com/Envision or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of this Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that any such alteration or interpretation shall be consistent with the EVPS Restructuring Support Agreement. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the EVPS Debtors' or Reorganized EVPS Debtors' consent, as applicable; *provided* that any such deletion or modification must be consistent with the EVPS Restructuring Support Agreement, the EVPS Cash Collateral Order, and the consent rights respectively set forth therein, and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, each of the Released Parties and Exculpated Parties will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, each of the Released Parties and Exculpated Parties and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, none of such parties or individuals or the Reorganized EVPS Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan or any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

When all Disputed Claims have become Allowed or disallowed and all distributions have been made in accordance with this Plan, the Reorganized EVPS Debtors shall seek authority to close any remaining Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

N.      *Waiver or Estoppel.*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the EVPS Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Creditor Default*

An act or omission by a holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Reorganized EVPS Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Reorganized EVPS Debtors in remedying such default.  Upon the finding of such a default by a holder of a Claim or Interest, the Bankruptcy Court may:  (a) designate a party to appear, sign and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce this Plan by order of specific performance; (c) award judgment against such defaulting holder of a Claim or Interest in favor of the Reorganized EVPS Debtor in an amount, including interest, to compensate the Reorganized EVPS Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of this Plan.

P.      *Termination of the Patient Care Ombudsman's Duties*

The duties, responsibilities, and obligations of the Patient Care Ombudsman and the retention or employment of the Patient Care Ombudsman's Professionals shall be terminated on the Effective Date, except with respect to all Professional Claims and related matters regarding the Patient Care Ombudsman or his Professionals.  Upon termination, the Patient Care Ombudsman may dispose of any documents provided to him in the course of his reporting. Nothing herein shall in any way limit or otherwise affect the Patient Care Ombudsman's obligations of confidentiality under confidentiality agreements, if any, under Section 333 of the Bankruptcy Code or under orders of the Bankruptcy Court.

Dated: October 10, 2023

ENVISION HEALTHCARE CORPORATION

on behalf of itself and all other EVPS Debtors

_/s/ Paul Keglevic_
Paul Keglevic
Chief Restructuring Officer

# **EXHIBIT B**

**Proposed Notice of Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-90342 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re:  Docket No. __** |

**NOTICE OF (I) ENTRY OF AN
ORDER CONFIRMING THE THIRD AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF THE
EVPS DEBTORS AND (II) OCCURRENCE OF EFFECTIVE DATE**

On [____], 2023, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Court"), entered the *Order Approving the Third Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. [●]] (the "EVPS Confirmation Order") confirming the EVPS Plan.[2]

The Effective Date of the EVPS Plan occurred on **[_____], 2023**.

This EVPS Confirmation Order and the EVPS Plan are available for inspection.  If you would like to obtain a copy of this EVPS Confirmation Order or the EVPS Plan, you may contact Kroll Restructuring Administration, LLC, the notice, claims, and solicitations agent retained by the Debtors in these Chapter 11 Cases, by:  (a) calling the Debtors' restructuring hotline at (833) 477-3499 (US toll free) or (646) 440-4804 (international); or (b) visiting the Debtors' restructuring website at:  https://restructuring.ra.kroll.com/Envision.  You may also obtain copies of any pleadings Filed in these Chapter 11 Cases for a fee via PACER at:  www.txs.uscourts.gov.

The Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the EVPS Plan.

The EVPS Plan and its provisions are binding on the EVPS Debtors, the Reorganized EVPS Debtors, the [Distribution] Agent, and any holder of a Claim or an Interest and such

---

[1]  A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Envision.  The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of the EVPS Debtors* [Docket No. 1228] (as modified, amended, and including all supplements, the "EVPS Plan").

holder's respective successors and assigns, whether or not the Claim or the Interest of such holder is Impaired under the EVPS Plan, and whether or not such holder voted to accept the EVPS Plan.

The EVPS Plan and this EVPS Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the EVPS Plan and this EVPS Confirmation Order in their entirety.

Houston, Texas
[●], 2023

/s/ *Draft*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | Edward O. Sassower, P.C. |
| Rebecca Blake Chaikin (TX Bar No. 24133055) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Vienna Anaya (TX Bar No. 24091225) | Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) |
| Javier Gonzalez (TX Bar No. 24119697) | 601 Lexington Avenue |
| 1401 McKinney Street, Suite 1900 | New York, New York 10022 |
| Houston, TX 77010 | Telephone:  (212) 446-4800 |
| Telephone:  (713) 752-4200 | Facsimile:  (212) 446-4900 |
| Facsimile:  (713) 752-4221 | Email:  esassower@kirkland.com |
| Email:  rchaikin@jw.com | jsussberg@kirkland.com |
| vanaya@jw.com | ngreenblatt@kirkland.com |
| jgonzalez@jw.com | |

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
John R. Luze (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:    john.luze@kirkland.com

*Co-Counsel to the Debtors*                    *Co-Counsel to the Debtors*
*and Debtors in Possession*                    *and Debtors in Possession*