United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 12, 2023
Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-90342 |
| ENVISION HEALTHCARE | § | |
| CORPORATION, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

### ORDER (I) DENYING GMC'S MOTION TO COMPEL ARBITRATION, (II) GRANTING DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF

This case involves a direct conflict between the United States Bankruptcy Code and the Delaware Limited Liability Company Act. Section 541(a) of the Bankruptcy Code says that commencing a bankruptcy case creates an estate. And that estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. Section 541(c)(1)(B) of the Bankruptcy Code ensures that a debtor's interest in property becomes "property of the estate" despite any contract term or state law that tries to prevent it.

The conflict here involves Section 18-304 of the Delaware Limited Liability Company Act (the "**Act**"). It says that "a person ceases to be a member of a limited liability company" when the person—which includes an LLC—starts a bankruptcy case. Del. Code Ann. tit. 6, § 18-304(1)(b) (West).

AmSurg Holdings, LLC started a bankruptcy case in May 2023. At the time it filed, it held managerial and voting interests in Folsom Endoscopy Center ("**FEC**"), a Delaware LLC. After the case started, relying on Section 18-304 of the Act, Gastroenterology Medical Clinic, Inc. ("**GMC**") and another FEC member amended the FEC LLC Agreement without AmSurg's vote. The amended LLC Agreement stripped AmSurg of its prepetition voting and related managerial rights. AmSurg asserted that GMC violated the automatic stay. GMC disagreed and moved to compel arbitration to resolve this dispute.

After careful consideration, the Court denies GMC's motion to compel arbitration and holds that Section 18-304 of the Act did not cause AmSurg to lose any legal or equitable rights in the LLC Agreement because of its bankruptcy filing. Section 18-304 must give way to the express language of the Bankruptcy Code.

## BACKGROUND

Before this case started, AmSurg held a 25% interest in FEC, a Delaware LLC.[1] GMC is the majority owner of FEC.[2] The prepetition LLC Agreement says that AmSurg controls two of five board seats, and the board cannot take certain actions without the consent of at least one of AmSurg's affiliated board members.[3]

AmSurg started a chapter 11 bankruptcy case in May 2023.[4] In August 2023, believing that AmSurg no longer held a voting or related managerial interest in FEC because of Section 18-304, GMC and Capital Gastroenterology (the entity holding the remaining interest in FEC) amended the LLC agreement to reflect as much.[5] They did so without the vote of the AmSurg affiliated board members.[6]

In September 2023, AmSurg filed its Motion to Enforce the Automatic Stay.[7] AmSurg argued that it was stripped of its voting and related managerial rights, which constituted an improper attempt to control property of the estate. In response, GMC filed a Motion to Compel Arbitration of the dispute.[8]

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has jurisdiction under 28 U.S.C. § 1334. The parties' express and implied consent also provides this Court constitutional authority to enter rulings on the motions under *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015) and *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).

---

[1] Joint Stipulation of Certain Undisputed Facts, ECF No. 1750 ⁋ 3.

[2] Joint Stipulation of Certain Undisputed Facts, ECF No. 1750 ⁋ 4.

[3] Joint Stipulation of Certain Undisputed Facts, ECF No. 1750 ⁋ 4.

[4] Case No. 23-90464, started on May 15, 2023.

[5] Joint Stipulation of Certain Undisputed Facts, ECF No. 1750 ⁋ 9.

[6] Joint Stipulation of Certain Undisputed Facts, ECF No. 1750 ⁋ 11.

[7] Debtors' Emergency Motion for Entry of an Order (I) Enforcing the Automatic Stay, (II) Enforcing the ASC Order, and (III) Granting Related Relief, ECF No. 1484.

[8] Motion to Compel Arbitration of Any Disputes Regarding the FEC Limited Liability Company Agreement, ECF No. 1520.

## DISCUSSION

**I.    GMC's Motion to Compel Arbitration is Denied.**

GMC argues that its dispute with AmSurg is a contract dispute, and the LLC Agreement compels arbitration. The Federal Arbitration Act (the "**FAA**") says that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, the existence of an arbitration clause in an agreement doesn't mean it is automatic. "Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Primerica Life Ins. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (quoting *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). Thus, a bankruptcy court may decline to enforce an arbitration agreement involving a proceeding "whose underlying nature derives exclusively from the provisions of the Bankruptcy Code" when arbitration would conflict with the purposes of the Code. *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002).

Generally, a core proceeding "derives exclusively from the provisions of the Bankruptcy Code." *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997). But, even for core matters, courts must still analyze whether the Code provision inherently conflicts with the FAA. In making such a determination, courts may consider: "whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Id.* at 1069.

28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." "Arising under" jurisdiction covers any "cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) (internal citation omitted). "Arising in" jurisdiction is based on claims that "would have no existence outside of the bankruptcy." *Id.* at 97. Core proceedings resolve issues that arise exclusively in a bankruptcy case. *See id.* This is separate from non-core proceedings, which relate to cases under title 11 but do not arise exclusively in the bankruptcy context. *See id.*

28 U.S.C. § 157(b)(2) provides a non-exclusive list of core proceedings, which includes "(A) matters concerning the administration of the estate." Matters concerning the administration of the estate "pertain [] to matters that are integral, if not essential to the administration of the estate . . . ." *LTV Steel Co. v. Union*

*Carbide Corp. (In re Chateaugay Corp.)*, 193 B.R. 669, 677 (S.D.N.Y. 1996) (internal citation omitted).

A proceeding to determine whether a debtor's interest in property is "property of the estate" is a core proceeding under § 157(b)(2)(A). *See, e.g., Speer v. Tow (In re Royce Homes, LP)*, 652 B.R. 488, 495–96 (Bankr. S.D. Tex. 2023); *Manges v. Atlas (In re Duval Cty. Ranch Co.)*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994) ("a proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A)") (internal citation omitted).

The LLC Agreement contains a valid arbitration clause. But this is not a contract dispute that should be arbitrated. There is nothing in the LLC Agreement to interpret. That is because the FEC members couldn't amend the LLC Agreement postpetition without AmSurg's board appointees. Instead, GMC relied on Section 18-304 as authority that AmSurg lost its voting and related managerial rights once it started a bankruptcy case.

So this dispute is really about what legal rights AmSurg held in FEC as of the petition date. This requires addressing the direct conflict between § 541 of the Bankruptcy Code and Delaware law. If AmSurg lost its voting and managerial rights because it started a bankruptcy case—and such rights never became property of the estate—then GMC wins. If AmSurg didn't lose those rights, then GMC violated the automatic stay by trying to amend the LLC Agreement.

This dispute exclusively arises in and under chapter 11. Property of the estate is a quintessential part of the Bankruptcy Code. It is impossible to facilitate an equitable distribution of assets without it. Permitting arbitration here is inconsistent with the purpose of the Bankruptcy Code. This is as core of a proceeding as it gets in bankruptcy. This conflict must be resolved by this Court, not an arbitrator.

Thus, GMC's Motion to Compel Arbitration is denied. The next step is to address the conflict between § 541 of the Bankruptcy Code and Section 18-304 of the Act.

## II.   Section 541 of the Bankruptcy Code and Section 18-304 of the Act.

Interpreting the Bankruptcy Code begins with analyzing the text. *See Whitlock v. Lowe (In re DeBerry)*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha."); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [the court] to 'presume that [the] legislature says in a statute what it

means and means in a statute what it says there.'") (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

Section 541 of the Bankruptcy Code says an estate is created upon the commencement of a bankruptcy case. 11 U.S.C. § 541(a). Property of the estate is construed broadly. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 (1983). Property of the estate includes "all legal or equitable interests . . . in property as of the commencement of the case." § 541(a)(1). "All" is a broad term, but not an ambiguous one. We all know what "all" means.[9]

Section 541(c)(1)(B) of the Bankruptcy Code reinforces the Congressional mandate that *all* legal and equitable interests in property become property of the estate. It says that a debtor's interest in property becomes property of the estate despite any provision in an agreement or applicable nonbankruptcy laws conditioned on the commencement of a bankruptcy case that effects a forfeiture, modification, or termination of the debtor's interest in property. 11 U.S.C. § 541(c)(1)(B). In other words, parties cannot contract around what becomes estate property, and states cannot legislate estate property away.

Simultaneous with the creation of a bankruptcy estate, the Bankruptcy Code implements an automatic stay under § 362 of the Code. The automatic stay gives the debtor a breathing spell to focus on its bankruptcy case. It also protects creditors and other parties in interest by staying, among other things, any "act" to obtain property of the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). In the Fifth Circuit, acts that violate the automatic stay are voidable. *See Jones v. Garcia (In re Garcia)*, 63 F.3d 411, 412 (5th Cir. 1995).

At issue here is whether AmSurg's voting and related managerial interests under the LLC Agreement became estate property such that the August 2023 effort to amend the LLC Agreement violated the automatic stay. GMC relies on the text of Section 18-304 of the Act and Delaware case law.

Section 18-304 of the Act provides that "[a] person ceases to be a member of a limited liability company" when, among other events, the person "files a voluntary petition in bankruptcy." Del. Code Ann. tit. 6, § 18-304(1)(b) (West). A "person" means "a natural person, partnership (whether general or limited), limited liability company." § 18-101(14). GMC argues that AmSurg's voting and related managerial interests in FEC are not property of the estate because the act of filing the petition automatically revoked AmSurg's membership in the LLC under the Act. As a result,

---

[9] But for the sake of clarity, it means "the whole amount, quantity, or extent of," "as much as possible," and "every member of individual component." *All*, Merriam-Webster Online Dictionary (https://www.merriam-webster.com/dictionary/all) (last visited Dec. 10, 2023).

AmSurg only held an economic interest in FEC "as of the commencement of the case." And the August 2023 amendment would not violate the automatic stay. The economic versus other rights distinction is not in the text of Section 18-304. Instead, it is found in Delaware case law.

For example, a Delaware Chancery court in *Zachman v. Real Time Cloud Servs. LLC* held that under Section 18-304 of the Act, a debtor ceases to be a member of the company once it files for bankruptcy but retains certain economic rights under Section 18-702(b) (which deals with the rights of assignees, not necessarily the result of termination of a membership interest under Section 18-304). *Zachman v. Real Time Cloud Servs. LLC*, No. 260, 2020, 2021 WL 1561430, at *2 (Del. Apr. 20, 2021). Citing other cases, the Chancery court held that "statutory ipso facto provisions similar to section 18-304 are not preempted by the Bankruptcy Code to the extent that they divest members who file for bankruptcy of the right to participate in the management of the company but not of their economic rights." *Id.* at 3. *Zachman* relied on the reasoning *in Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 740 (Del. Ch. 2004). The *Milford* court focused its analysis on the policy behind § 365(e)(2) of the Bankruptcy Code. *Id.* (Bankruptcy Code preempted ipso facto clause in LLC agreement only to the extent that it deprived minority member of economic rights but not to the extent that it divested minority member of its governance rights). That court, however, never directly confronted the broad "all legal and equitable interests" requirement under § 541(a)(1) or the prohibition on ipso facto clauses based on a bankruptcy filing in § 541(c)(1) that reinforces 541(a)(1).

In any case, this Court need not opine on whether "ceases to be a member" under Section 18-304 means keeping economic, but not other rights. It doesn't change the fact that Section 18-304 directly conflicts with § 541(a)(1). Or that it is a state law that ceases, modifies, and amends an LLC member's rights only because it filed for bankruptcy, which means it directly conflicts with § 541(c)(1)(B). Nothing in the Bankruptcy Code renders the economic v. managerial distinction meaningful in the context of the creation of the estate. Any such legal or equitable interest at the time of filing comes into the estate.

Federal bankruptcy law determines the scope of a debtor's bankruptcy estate. *See Whiting Pools, Inc.,* 462 U.S. at 204–05. A debtor's pre-bankruptcy rights in property are determined according to state law. *Butner v. United States,* 440 U.S. 48, 55 (1979). But where state and federal law "directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 607 (2011). A judge "must simply ask himself or herself whether the relevant federal and state laws 'irreconcilably conflic[t].'" *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. ___, 139 S. Ct. 1668, 1679 (2019) (internal citation omitted).

Federal bankruptcy law says that the creation of an estate is automatic and immediate upon a bankruptcy filing. There is no metaphysical moment in time for state law to alter or modify any prepetition legal rights between the filing of the petition and creation of the estate. And the automatic stay begins at the same time the petition is filed to protect a debtor and its creditors. Congressional intent that these events occur simultaneously and instantaneously is supported by § 541(c)(1)(B), which ensures that state law cannot be used to deprive a debtor of property rights because of a bankruptcy filing.

A *Butner* state law analysis is not required here. This case is not about construing prepetition provisions in an LLC agreement that may impact a debtor member's rights for reasons other than a bankruptcy case, or the financial condition or insolvency of a member.[10] This decision clarifies that a member of a Delaware LLC who starts a bankruptcy case keeps *all* legal and equitable interests in the LLC that it held as of the commencement of the case. Managerial and voting rights are legal and equitable interests that AmSurg held as of the petition date, so they are included as property of its estate. Prepetition, the vote of an AmSurg affiliated board member was required before the FEC could take certain important actions. AmSurg was improperly stripped of rights simply because it sought relief under federal bankruptcy law. This decision restores AmSurg's rights.

Other courts have reached the same conclusion about similar state laws. *See, e,g., Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 647, 656 (Bankr. N.D. W. Va. 2012) ("[B]ecause non-economic rights are property of the estate and fit under the canopy of § 362(a)(3), the provision in the Defendants' Resolution that disassociates the debtor is void. . .. § 541(c)(1) acts to vitiate the application of the Operating Agreement calling for dissolution upon the AmSurg's bankruptcy filing."); *Pearce v. Woodfield (In re Woodfield)*, 602 B.R. 747, 756 (Bankr. D. Or. 2019) (debtor's governance rights as an LLC member could not be terminated just because of a bankruptcy case); *Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.)*, 648 B.R. 434, 456 (S.D.N.Y. 2022), appeal withdrawn, No. 23-71, 2023 WL 2944995 (2d Cir. Feb. 1, 2023) ("laws cannot be read to terminate or modify LLC membership interests solely due to a bankruptcy filing," and under the appellant's reading of state law, "[debtor's] membership interest would be terminated, ipso facto, solely due to its chapter 11 filing. As Section 541(c) squarely precludes that result, the Bankruptcy Code must prevail over Appellant's reading.").

---

[10] This decision also does not address cases involving whether state law limitations have any bearing on whether derivative standing may be authorized on behalf of the LLC's bankruptcy estate. *See, e.g., In re HH Liquidation, LLC*, 590 B.R. 211, 284 (Bankr. D. Del. 2018). The legal analysis required on that issue is very different than one required to answer the questions before the Court here.

Section 18-304 of the Act directly conflicts with, and must give way to, § 541 of the Bankruptcy Code. The August 2023 attempt to amend the LLC Agreement without AmSurg's affiliated board members violated the automatic stay. To rectify this matter, this Court declares the August 2023 amendment void.

## **CONCLUSION**

For the reasons stated above, it is ORDERED that:

1. GMC's Motion to Compel Arbitration is denied.

2. All legal and equitable interest AmSurg held according to the FEC Limited Liability Company Agreement as of the commencement of AmSurg's bankruptcy case are property of the estate, notwithstanding Del. Code Ann. tit. 6, § 18-304(1)(b).

3. The August 2023 amendment to the FEC Limited Liability Company Agreement is voided without any legal effect as of the date of its purported enactment. The pre-August 2023 amendment version of the FEC Limited Liability Company Agreement is the effective agreement between the FEC members as of the commencement of the AmSurg bankruptcy petition date.

Signed: December 12, 2023

_____
Christopher Lopez
United States Bankruptcy Judge